# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] | Case No. 20-12168 (CSS) |
| Debtors. | (Joint Administration Requested) |

## MOTION OF DEBTORS PURSUANT TO SECTIONS 105(a), 365(a), AND 554(a) OF THE BANKRUPTCY CODE, AUTHORIZING THE DEBTORS TO (I) REJECT CERTAIN UNEXPIRED LEASES OF NONRESIDENTIAL REAL PROPERTY EFFECTIVE AS OF THE PETITION DATE AND (II) ABANDON PROPERTY IN CONNECTION THEREWITH

The above-captioned debtors and debtors in possession (collectively, the "**Debtors**") hereby move this Court (this "**Motion**") for entry of an order (the "**Proposed Order**"), substantially in the form attached hereto as **Exhibit A**, pursuant to sections 105(a), 365(a), and 554(a) of title 11 of the United States Code (the "**Bankruptcy Code**"), authorizing, but not directing, the Debtors to (i) reject, effective as of the date hereof (the "**Petition Date**"), the unexpired leases of nonresidential real property (the "**Rejected Leases**") identified on **Exhibits 1 and 2** to the Proposed Order (including, without limitation, any and all amendments, modifications, side letters, memoranda of understanding, documents incorporated by reference) and, (ii) abandon, effective as of the Petition Date, any personal property of the Debtors, including, but not limited to, furniture, fixtures, and equipment (collectively, the "**Personal Property**") that remains, as of the Petition Date, on the premises (the "**Premises**") subject to the

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. Due to the large number of debtors in these cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' proposed claims and noticing agent at http://dm.epiq11.com/TownSports, or by contacting the proposed undersigned counsel for the Debtors.

27000208.3

Rejected Leases, as applicable.  In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Phillip Juhan in Support of Debtors' Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"),[2] filed contemporaneously herewith.   In further support of this Motion, the Debtors respectfully state as follows

## JURISDICTION AND VENUE

1.      The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference from the United States District Court for the District of Delaware, dated as of February 29, 2012 (the "**Amended Standing Order**"). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and the Court may enter a final order consistent with Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.      The statutory bases for the relief requested herein are sections 105(a), 365(a), and 554(a) of the Bankruptcy Code and Rules 6006 and 6007 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

## BACKGROUND

### I.      General

3.      On the Petition Date, each of the Debtors commenced a voluntary case under chapter 11 of the Bankruptcy Code.  The Debtors are authorized to operate their businesses and manage their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No official committees have been appointed in these chapter 11 cases and no request has been made for the appointment of a trustee or examiner.

---

[2] Each capitalized term used but not defined herein shall have the meaning ascribed to it in the First Day Declaration

27000208.3

4.      Additional information regarding the Debtors' businesses, capital structure and the circumstances leading to the filing of these chapter 11 cases is set forth in the First Day Declaration.

**II.        Rejection of the Leases**

5.      As set forth in more detail in the First Day Declaration, the Debtors are currently lessees under various unexpired nonresidential leases. In the months leading up to the Petition Date, the Debtors engaged in extensive negotiations in an attempt to renegotiate the terms of certain leases, seeking, *inter alia*, rent concessions from the applicable landlords. Ultimately, however, Debtors have determined that, in an exercise of their sound business judgment, the rejection of the Rejected Leases on **Exhibit 1** is in the best interests of the Debtors and their estates.   The Rejected Leases on **Exhibit 2** are to be considered rejected unless parties are successfully able to reach mutually satisfactory lease modifications ("**Modifications**"); absent the agreement to such Modifications, in which case the Debtors would partially withdraw this motion solely with the consent of the applicable counterparty, the Debtors unequivocally intend to proceed with rejection.

6.      Because the Rejected Leases are not essential to the Debtors' ongoing operations and restructuring strategy, the Debtors have determined that rejecting the Rejected Leases is appropriate and, importantly, will avoid any further risks or costs that may be associated with the Rejected Leases on a postpetition basis.

## RELIEF REQUESTED

7.      By this Motion, to preserve and maximize the value of their estates, the Debtors seek to reject the Rejected Leases and abandon any interest that the Debtors have in the underlying Premises, effective as of the Petition Date.   The Debtors have determined that the Rejected Leases are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to

27000208.3

the Debtors' estates, and present burdensome contingent liabilities. In addition, the Debtors seek to abandon, effective as of the Petition Date, any Personal Property that remains as of such date on the Premises, to the extent applicable. In light of the Debtors' efforts to preserve and maximize the value of their estates, and to avoid incurring costs and expenses that are no longer integral to the Debtors' business operations and these chapter 11 efforts, the Debtors submit that this related relief is necessary and appropriate.

## BASIS FOR RELIEF

I.      **Rejection of the Rejected Leases Effective as of the Petition Date Reflects the Debtors' Sound Business Judgment.**

8.      Section 365(a) of the Bankruptcy Code provides, in pertinent part, that a debtor-in-possession "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a). As courts have held, "[t]he purpose behind allowing the assumption or rejection of executory contracts is to permit the trustee or debtor-in-possession to use valuable property of the estate and to 'renounce title to and abandon burdensome property.'" Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.), 4 F.3d 1095, 1098 (2d Cir. 1993) (quoting 2 Collier on Bankruptcy ¶ 365.01[1] (15th ed. 1993)).

9.      The standard applied to determining whether the rejection of an unexpired lease should be authorized is the "business judgment" standard. See Sharon Steel Corp. v. Nat'l Fuel Gas Distr. Corp., 872 F.2d 36, 40 (3d Cir. 1989); see also In re HQ Global Holdings, Inc., 290 B.R. 507, 513 (Bankr. D. Del. 2003) (stating that a debtor's decision to reject an executory contract is governed by the business judgment standard and can only be overturned if the decision was the "product of bad faith, whim, or caprice"). Once a debtor states a valid business justification, "[t]he business judgment rule 'is a presumption that in making a business decision

the directors of a corporation acted on an informed basis, in good faith and in the honest belief that the action taken was in the best interests of the company.'" Official Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.), 147 B.R. 650, 656 (S.D.N.Y. 1992) (quoting Smith v. Van Gorkom, 488 A.2d 858, 872 (Del. 1985)).

10.    The business judgment rule is crucial in chapter 11 cases and shields a debtor's management from judicial second-guessing. See Comm. of Asbestos Related Litigants and/or Creditors v. Johns-Manville Corp., 60 B.R. 612, 615–16 (Bankr. S.D.N.Y. 1986) ("The Code favors the continued operation of a business by a debtor and a presumption of reasonableness attached to a debtor's management decisions."). Generally, courts defer to a debtor-in-possession's business judgment to reject a lease. See, e.g., NLRB v. Bildisco & Bildisco, 465 U.S. 513, 523 (1984); In re Minges, 602 F.2d 38, 43 (2d Cir. 1979); In re Riodizio, 204 B.R. 417, 424–25 (Bankr. S.D.N.Y. 1997); In re G Survivor Corp., 171 B.R. 755, 757 (Bankr. S.D.N.Y. 1994).

11.    Upon finding that the Debtors have exercised their sound business judgment in determining that the rejection of the Rejected Leases is in the best interests of the Debtors and their estates, the Court should approve the proposed rejections under section 365(a) of the Bankruptcy Code. See, e.g., Westbury Real Estate Ventures, Inc. v. Bradlees, Inc. (In re Bradlees Stores, Inc.), 194 B.R. 555, 558 n.1 (Bankr. S.D.N.Y. 1996); see also Summit Land Co. v. Allen (In re Summit Land Co.), 13 B.R. 310, 315 (Bankr. D. Utah 1981) (holding that, absent extraordinary circumstances, court approval of a debtor's decision to assume or reject an executory contract "should be granted as a matter of course"). If a debtor's business judgment has been reasonably exercised, a court should approve the assumption or rejection of an unexpired lease. See, e.g., Sharon Steel Corp., 872 F.2d at 39–40.

12.    As discussed above, the Debtors have ceased operating out of the leased premises before or on the Petition Date.  The Debtors submit that, in their business judgment, the Rejected Leases are unnecessary to the continued conduct of the Debtors' operations and the Debtors.  As a result, the Debtors submit that there is no basis to retain the Rejected Leases on Exhibit 1 and that rejecting those Rejected Leases would provide a benefit to the Debtors and their estates by removing any ongoing costs or obligations in connection with the Exhibit 1 Rejected Leases on Exhibit 1.  The Rejected Leases on Exhibit 2 will additionally be rejected unless parties are willing to negotiate Modifications.

13.    To avoid paying any unnecessary expenses related to the Rejected Leases, the Debtors seek to reject the Rejected Leases effective as of the Petition Date.  A court may permit such retroactive rejection to avoid unduly exposing a debtor's estate to unwarranted postpetition administrative or other expenses.  See Thinking Machs. v. Mellon Fin. Servs. Corp. (In re Thinking Machs. Corp.), 67 F.3d 1021, 1028 (1st Cir. 1995) ("In the section 365 context . . . bankruptcy courts may enter retroactive orders of approval, and should do so when the balance of equities preponderates in favor of such remediation."); In re DBSI, Inc., 409 B.R. 720, 734 n.4 (Bankr. D. Del. 2009) ("Under appropriate circumstances, [a] Court may enter a lease rejection order with an effective date earlier than the date the order is entered."); In re Chi-Chi's, Inc., 305 B.R. 396, 399 (Bankr. D. Del. 2004) (finding that "the court's power to grant retroactive relief is derived from the bankruptcy court's equitable powers so long as it promotes the purposes of §365(a)" and granting retroactive relief to the date on which the debtors surrendered the premises to their landlords); In re Fleming Cos., Inc., 304 B.R. 85, 96 (Bankr. D. Del. 2003) (retroactive rejection permitted to the date of the motion or the date the premises surrendered).

27000208.3

14.    When principles of equity so dictate, courts may permit retroactive rejection to the date on which the counterparty to the lease was given definitive notice of the debtor's intent to reject.  See In re KDA Grp., Inc., No. 16-21821-GLT, 2017 WL 4216563, at *4 (Bankr. W.D. Pa. Sept. 20, 2017) ("[M]any courts within the Third Circuit have adopted the notion that a lease may be retroactively rejected when principles of equity so dictate.") (quotations omitted); In re Fleming Cos. Inc., 304 B.R. at 96 ("[T]o grant nunc pro tunc rejection, the Debtors must have stated an unequivocal intent to reject the leases.").  Courts in this jurisdiction have previously considered the question of retroactive rejection of unexpired leases.  See In re Namco Cybertainment, Inc., Case No. 98-00173 (PJW) (Bankr. D. Del. Feb. 6, 1998).  In Namco, the court permitted retroactive rejection on the conditions that (a) the property (and the keys thereto) subject to a lease were surrendered with an unequivocal statement of abandonment to the landlord or lessor, (b) the motion was filed and served on the landlord or lessor, (c) the official committee consented to the relief requested in the motion, and (d) the debtor acknowledged that it would not have the right to withdraw the motion prior to the hearing.

15.    Here, the Debtors submit that the Court should authorize the rejection of the Rejected Leases effective as of the Petition Date.  *First*, there is no benefit to the Debtors' estates from the Rejected Leases because the Debtors no longer occupy the Premises.  The Debtors do not need the leasehold interests created by the Rejected Leases to conduct their go-forward businesses.  On the other hand, requiring the Debtors to continue to perform under the Rejected Leases after the Petition Date could impose onerous obligations on the Debtors and their estates.  *Second*, the Debtors believe that the filing and service of this Motion fulfills the purpose of the Namco factors under the circumstances here – establishing an unequivocal relinquishment.  The filing of this Motion serves to underscore and reiterates the Debtors'

unequivocal intent to abandon their interest in the Premises.  Without a retroactive date of rejection, the Debtors may incur unnecessary administrative charges for a lease and contract that are not necessary to their ongoing business operations.  As mentioned, however, Debtors are willing to negotiate Modifications for those Rejected Leases on Exhibit 2.

16.	Moreover, the lessor under the Rejected Leases will not be unduly prejudiced if the Rejected Leases are rejected effective as of the Petition Date because, on the Petition Date, the Debtors have served this Motion on the lessor and/or its agents or representatives by overnight delivery, electronic mail and/or facsimile, thereby advising such lessor that the Debtors intend to reject the Rejected Leases effective as of the Petition Date. Furthermore, the Debtors have, on or before the date hereof, relinquished the keys to the Premises and provided the alarm code(s) to the lessor or its representative, abandoned the Premises and, in conjunction therewith, indicated that they were unequivocally surrendering possession as a result thereof.  The keys were delivered to the lessor under the Rejected Leases, together with an appropriate correspondence, on or before the Petition Date. With respect to the Rejected Leases on Exhibit 2, the Debtors are advising the lessors of the Debtors' intention to relinquish the keys to the Premises immediately and to not withdraw the Motion unless the lessors wish to accept the Modifications.

17.	In light of the foregoing facts and circumstances, the Debtors respectfully submit that their rejection of the Rejected Leases under section 365(a) of the Bankruptcy Code, effective as of the Petition Date, is a sound exercise of their business judgment and is necessary, prudent, and in the best interests of the Debtors, their estates, and their creditors.

II.    **Authorizing the Debtors to Abandon Any Personal Property**
<u>**Remaining at the Premises as of the Petition Date is Appropriate.**</u>

18.    Although the Debtors have not operated at the Premises for months prior to the Petition Date, and they do not believe that there is any Personal Property remaining thereon, in the event that any Personal Property does remain on the Premises as of the Petition Date, the Debtors request the Court's approval of the Debtors' abandonment of such Personal Property (collectively, the "**Abandoned Personal Property**"), pursuant to section 554(a) of the Bankruptcy Code, effective as of the Petition Date.

19.    Section 554(a) of the Bankruptcy Code provides that "[a]fter notice and a hearing, the [debtor] may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate."  11 U.S.C. § 554(a).  The right to abandon is virtually unfettered, unless abandonment of the property will contravene laws designed to protect public health and safety and the property poses an imminent threat to the public's welfare.  <u>See</u> <u>In re Midlantic Nat'l Bank</u>, 474 U.S. 494, 501 (1986).  Neither of these limitations is relevant in this case.

20.    The Debtors submit that any Abandoned Personal Property is of inconsequential value or burdensome to the Debtors' estates to remove.  Among other things, the Debtors believe that the cost of retrieving, marketing, and reselling the Abandoned Personal Property—to the extent there is any—outweighs any recovery that the Debtors and their estates could reasonably hope to attain for such Abandoned Personal Property.  As a result, the Debtors have determined, in their business judgment, that the abandonment of any such Abandoned Personal Property, effective as of the Petition Date, is a sound exercise of their business judgment, and is necessary, prudent, and in the best interests of the Debtors, their estates, and creditors.

27000208.3

## **RESERVATION OF RIGHTS**

21.     Nothing contained herein should be construed as a waiver of any of the Debtors' rights, defenses, or counterclaims with respect to the Rejected Leases.  Nor does anything contained herein constitute an acknowledgement that either the Rejected Leases constitute an unexpired lease of nonresidential real property or executory contract under section 365 of the Bankruptcy Code, and have not otherwise expired by its own terms or upon agreement of the parties as of the date hereof.

## **NOTICE**

22.     Notice of this Motion has been provided to:  (i) the U.S. Trustee, (ii) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis, (iii) counsel to the Ad Hoc Group of Term Loan Lenders, and (iv) the lessors under the Rejected Leases (via overnight delivery).  In light of the nature of the relief requested herein, the Debtors submit that no other or further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Debtors request the entry of the Proposed Orders, granting the

relief requested herein and such other and further relief as is just and proper.

Dated: Wilmington, Delaware
      September 14, 2020

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Jordan E. Sazant*
Robert S. Brady (No. 2847)
Sean T. Greecher. (No. 4484)
Jordan E. Sazant (No. 6515)
1000 North King Street
Wilmington, Delaware 19801
Telephone: (302) 571-6600
Facsimile: (302) 571-1253
Email: rbrady@ycst.com
      sgreecher@ycst.com
      jsazant@ycst.com

and

KIRKLAND & ELLIS LLP
Nicole L. Greenblatt, P.C. (pro hac vice pending)
Derek I. Hunter (pro hac vice pending)
601 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

KIRKLAND & ELLIS LLP
Mark McKane, P.C. (pro hac vice pending)
555 California Street
San Francisco, CA 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

27000208.3