## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

--------------------------------------------------------------x
                                                              :
In re:                                                        :  Chapter 11
                                                              :
TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] :  Case No. 20-12168 (CSS)
                                                              :
          Debtors.                                            :  (Jointly Administered)
                                                              :
--------------------------------------------------------------x  **Re: Docket No. 146, 159, 205**

**FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION
FINANCING, (II) AUTHORIZING THE DEBTORS TO USE CASH COLLATERAL,
(III) GRANTING LIENS AND PROVIDING SUPERPRIORITY ADMINISTRATIVE
EXPENSE STATUS, (IV) GRANTING ADEQUATE PROTECTION TO THE
PREPETITION LENDERS, (V) MODIFYING THE AUTOMATIC STAY,
AND (VI) GRANTING RELATED RELIEF**

Upon the motion (the "<u>DIP Motion</u>") of the above-captioned debtors and debtors in

possession (collectively, the "<u>Debtors</u>") in the above-captioned chapter 11 cases (the "<u>Chapter 11</u>

<u>Cases</u>") for entry of a final order (this "<u>Final DIP Order</u>"), pursuant to sections 105, 361, 362,

363(b), 363(c)(2), 363(e), 364(c), 364(d)(1), 364(e), 503, 507, and 552 of title 11 of the United

States Code (the "<u>Bankruptcy Code</u>"), Rules 4001, 6004, and 9014 of the Federal Rules of

Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>"), and Rules 2002-1, 4001-1, 6004-2, and 9014-1

of the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court

for the District of Delaware (the "<u>Local Rules</u>"), seeking, among other things:

---

[1]      The last four digits of Town Sports International, LLC's federal tax identification number are 7365.  The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523.  A complete list of all the Debtors in these jointly administered cases, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports.

(1)    authorization for the Borrower (as defined below) to obtain up to an aggregate principal amount not to exceed USD $32,000,000 (the "DIP Commitment"), in senior secured postpetition financing on a superpriority, priming basis (the "DIP Facility"), pursuant to (and in accordance with the terms of) that certain Supplemental Term Sheet for Debtor-In-Possession Financing and Alternatively a Sale of Assets Under Section 363 of the Bankruptcy Code, substantially in the form attached to this Final DIP Order as **Exhibit A** (as amended, restated, supplemented, or otherwise modified from time to time, the "Supplemental DIP Term Sheet," and collectively with any other credit agreement and related agreements, security agreements, or pledge agreements, including this Final DIP Order, the "DIP Facility Documents"), by and among Town Sports International, LLC ("TSI" or the "Borrower"), as borrower, the guarantors under the Prepetition Loan Agreement (as defined below) that are also Debtors in these Chapter 11 Cases (collectively, the "Guarantors"), and Fitness Recovery Holdings, LLC (the "DIP Lender"), which DIP Facility shall be available as a multi-draw term loan to the Borrower and the Guarantors upon entry of this Final DIP Order and satisfaction of the other conditions set forth in the DIP Facility Documents in multiple draws in the aggregate not to exceed $12,000,000 (collectively, the "Final DIP Loan," and collectively with the Initial DIP Loan and the Supplemental DIP Loan, the "DIP Loan");

(2)    authorization for the Borrower and the other Debtors in these Chapter 11 Cases to enter into and be bound by the Supplemental DIP Term Sheet and the other DIP Facility Documents, and to take such other and further actions as may be required in connection with the DIP Facility Documents;

(3)    authorization for the Debtors to pay all amounts, obligations, and liabilities owing or payable to the DIP Lender pursuant to the DIP Facility Documents, including, without

limitation, any principal, interest, fees, commitment fees, administrative agent fees, audit fees, closing fees, service fees, facility fees, original issue discounts, maintenance fees, or other fees, costs, expenses, charges, and disbursements of the DIP Lender (including the reasonable and documented fees and expenses of the DIP Lender's attorneys, advisors, accountants, consultants, and other professionals incurred prepetition and postpetition), any obligations with respect to indemnity claims, whether contingent or absolute, including, without limitation, any and all obligations in connection with any interest rate, currency swap, or other hedging agreement or arrangement, in each case, to the extent constituting obligations of any kind under the DIP Facility Documents (such obligations, the "DIP Obligations"), subject to the terms of this Final DIP Order and the DIP Facility Documents.

(4)    authorization for the Debtors, immediately upon entry of this Final DIP Order and the closing under the applicable DIP Facility Documents, to use proceeds of the Final DIP Loan as expressly provided in the DIP Facility Documents and solely in accordance with this Final DIP Order and the applicable Approved Budget (subject to Permitted Variances and other exclusions set forth in the DIP Facility Documents) to: (a) pay interest, fees, and expenses associated with the DIP Facility, including the reasonable fees and expenses of the DIP Lender; (b)  pay costs, premiums, fees, expenses, and other costs incurred to administer or related to these Chapter 11 Cases in accordance with the Approved Budget (as defined below) including professionals' fees and associated fees of the U.S. Trustee (as defined below); (c) provide financing for working capital and for other general corporate purposes of the Debtors in accordance with the Approved Budget (subject to Permitted Variances and other exclusions set forth in the DIP Facility Documents); and (d) make Adequate Protection Payments (as defined below);

(5)      authorization for the Debtors to grant superpriority administrative expense claim status, pursuant to sections 364(c)(1), 503(b)(1), and 507(b) of the Bankruptcy Code, to the DIP Lender with respect to all of the DIP Obligations;

(6)      authorization for the Debtors to grant the DIP Lender valid, enforceable, non-avoidable, priming, automatically and fully perfected DIP Liens (as defined below) in all DIP Collateral (as defined below), including, without limitation, all property constituting Prepetition Collateral (as defined below), including, without limitation, any Cash Collateral (as defined by section 363(a) of the Bankruptcy Code and further defined below), to secure the DIP Obligations, which DIP Liens shall be subject to the relevant rankings and priorities set forth herein;

(7)      authorization for the Debtors to (a) use, among other things, solely in accordance with the Approved Budget (subject to Permitted Variances and other exclusions set forth in the DIP Facility Documents) and the limitations provided in this Final DIP Order, any Cash Collateral in which any of the Prepetition Lenders (as defined below) may have an interest, and (b) grant adequate protection to the Prepetition Lenders to the extent of any postpetition diminution in value of the Prepetition Lenders' respective interests in the Prepetition Collateral, including, without limitation, the Cash Collateral, as a result of, among other things: (i) the incurrence of the DIP Obligations, (ii) the Debtors' use of Cash Collateral as set forth in this Final DIP Order, (iii) the subordination of the Prepetition Obligations (as defined below) to the Carve Out and the DIP Obligations, (iv) any other diminution in value of the Prepetition Lenders' respective interests in the Prepetition Collateral arising from the Debtors' use, sale, or disposition of such Prepetition Collateral or the proceeds thereof, (v) the priming of the Prepetition Liens (as defined below) to

4

the extent set forth in this Final DIP Order, and (vi) the imposition of the automatic stay pursuant to section 362 of the Bankruptcy Code.

(8)    modification of the automatic stay imposed by section 362 of the Bankruptcy Code to the extent necessary to implement and effectuate the terms and provisions of this Final DIP Order and the other DIP Facility Documents;

(9)    authorization for the Debtors to waive any right (a) to surcharge pursuant to section 506(c) of the Bankruptcy Code against any DIP Collateral and the Prepetition Collateral, and (b) under the "equities of the case" exception under section 552(b) of the Bankruptcy Code;

(10)    waiver of any applicable stay (including under Bankruptcy Rule 6004) and provision for the immediate effectiveness of this Final DIP Order;

(11)    to grant the Debtors such other and further relief as this Court deems just and proper.

This Court having held the first interim hearing on the DIP Motion on October 2, 2020 (the "First Interim Hearing") the second interim hearing on the DIP Motion on October 9, 2020 (the "Second Interim Hearing,"), and the final hearing on October 16, 2020 (the "Final Hearing," and together with the First Interim Hearing and the Second Interim Hearing, the "Hearings"), and upon the record made by the Debtors at the Hearings, including the DIP Motion, the *Declaration of Phillip Juhan in Support of Chapter 11 Petitions and First Day Motions* [Docket No. 12] (the "First Day Declaration"), the *Declaration of Jason Feintuch in Support of the Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and*

5

*(VII) Granting Related Relief* [Docket No. 147] (the "<u>Feintuch Declaration</u>") and the *Declaration of John DiDonato in Support of Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, (VI) Scheduling a Final Hearing, and (VII) Granting Related Relief* [Docket No. 155] (the "<u>DiDonato Declaration</u>"), any exhibits in connection with the foregoing, and the filings and pleadings in these Chapter 11 Cases; the Court having found that the supplemental interim relief requested is fair and reasonable and is in the best interests of the Debtors, their estates (as defined by section 541 of the Bankruptcy Code), their stakeholders, and other parties in interest, and represents a sound exercise of the Debtors' business judgment and is essential for the maximization and preservation of the Debtors' estates; the Court having found that granting the final relief is necessary to avoid immediate and irreparable harm to the Debtors and their estates; and notice of the DIP Motion and the Final Hearing having been served by the Debtors to the Notice Parties (as defined below) in accordance with Bankruptcy Rule 4001 and 9014 and the Local Rules; and all objections, if any, to the relief requested in the DIP Motion having been withdrawn, resolved, or overruled by the Court; and after due deliberation and sufficient cause appearing therefor;

**THE COURT HEREBY MAKES THE FOLLOWING FINDINGS OF FACT AND CONCLUSIONS OF LAW:**[2]

A.    <u>Petition Date</u>.  On September 14, 2020 (the "<u>Petition Date</u>"), each Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code with the United States Bankruptcy

---

[2]    The findings and conclusions set forth in this Final DIP Order constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

Court for the District of Delaware (the "Court").  The Debtors continue to manage their business and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No chapter 11 trustee or examiner has been appointed in any of these Chapter 11 Cases.

B.    Jurisdiction and Venue.  This Court has jurisdiction over these Chapter 11 Cases, the Debtors, property of the Debtors' estate, and this matter under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).  Pursuant to Local Rule 9013-1(f), the Debtors consent to the entry of a final judgment or order with respect to the DIP Motion if it is determined that this Court, absent the consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.   Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409.  The statutory and legal bases for the relief granted in this Final DIP Order are sections 105, 361, 362, 363, 364, 503, 507, and 552 of the Bankruptcy Code, Bankruptcy Rules 2002, 4001, 9013, and 9014, and Local Rules 7007-1, 9013-1, 9013-4, and 9014-2.

C.    Committee Formation.  On September 24, 2020, the Office of the United States Trustee for the District of Delaware (the "U.S. Trustee") appointed an official committee of unsecured creditors (the "Committee") in connection with these Chapter 11 Cases.

D.    Notice.  Notice of the DIP Motion and the Final Hearing was provided by the Debtors to: (i) the U.S. Trustee; (ii) the United States Attorney for the District of Delaware; (iii) Cole Schotz P.C., as proposed counsel to the Committee; (iv) the Internal Revenue Services; (v) the Securities and Exchange Commission; (vi) DLA Piper LLP (US), as counsel to the DIP Lender; (vii) Gibson, Dunn & Crutcher LLP, as counsel to the Prepetition Lenders; (viii) any

party that has requested notice pursuant to Bankruptcy Rule 2002; and (ix) any other party in interest entitled to notice of the DIP Motion (collectively, the "Notice Parties").

      E.      Parties' Acknowledgements, Agreements, and Stipulations.   In requesting the DIP Facility and use of Cash Collateral, and in exchange for and as a material inducement to the DIP Lender and the Prepetition Lenders to agree to provide, or consent to, the DIP Facility, the use of Cash Collateral, and subordination of the Prepetition Liens to the DIP Liens and of the DIP Liens and the Prepetition Liens to the Carve Out, as provided in this Final DIP Order, and as a condition to providing financing under the DIP Facility, subject to the rights of the Committee or other parties in interest (other than the Debtors) set forth in Section 5.11 of this Final DIP Order with respect to each subsection (i) through (ix) in this paragraph E below, the Debtors permanently and irrevocably admit, stipulate, acknowledge, and agree as follows:

      (i)      Prepetition Loan Agreement.  TSI, TSI Holdings II, LLC ("Holdings II"), the other Debtors, the other guarantors from time to time as parties (the other Debtors and the other guarantors, collectively, the "Guarantors," and together with TSI and Holdings II, the "Credit Parties"), Deutsche Bank AG, as administrative agent (together with any successors, the "Prepetition Agent"),[3] and KeyBank National Association, as syndication agent, and the other financial institutions or entities from time to time as lender parties (the "Prepetition Lenders," and together with the Prepetition Agent, the "Prepetition Secured Parties") are party to that certain Loan Agreement, dated as of November 15, 2013 (as amended, restated, supplemented, amended and restated, or otherwise modified from time to time in accordance with the terms thereof, the "Prepetition Loan Agreement").

---

[3]     All rights of the Prepetition Agent hereunder shall be the Prepetition Agent acting at the direction of the "Required Lenders" pursuant to the Prepetition Loan Agreement.

(ii)        The Prepetition Loan Agreement is secured by the "Collateral" as defined therein (the "Prepetition Collateral").  As of the Petition Date, the outstanding balance due under the Prepetition Loan Agreement was $167,163,283.26 (the "Prepetition Loans").  As of the Petition Date, the Debtors were jointly and severally indebted to the Prepetition Secured Parties pursuant to the Prepetition Loan Documents (as defined below), without defense, counterclaim, or offset of any kind, in an amount equal to the aggregate principal amount of the Prepetition Loans *plus* accrued and unpaid interest with respect thereto and any additional fees, costs, expenses (including any attorneys', financial advisors', and other professionals' fees and expenses), reimbursement obligations, indemnification obligations, contingent obligations, and other charges of whatever nature, whether or not contingent, whenever arising, due, or owing, and all other Obligations (as defined in the Prepetition Loan Agreement) owing under or in connection with the Prepetition Loan Documents (collectively, the "Prepetition Obligations").

(iii)        Prepetition Secured Obligations.  To secure the Prepetition Obligations, the Debtors entered into and granted, among other things, (i) that certain Security Agreement, among TSI, Holdings II, the other Credit Parties, and the Prepetition Agent, as collateral agent, dated as of November 15, 2013 (as amended, supplemented, amended and restated, or otherwise modified from time to time in accordance with the terms thereof, the "Security Agreement"), (ii) that certain pledge agreement, among TSI, Holdings II, the other Credit Parties, and the Prepetition Agent, as collateral agent, dated as of November 15, 2013 (as amended, supplemented, amended and restated, or otherwise modified from time to time in accordance with the terms thereof, the "Pledge Agreement"), and (iii) that certain guaranty agreement, among the Credit Parties thereto and the Prepetition Agent, dated as of November 15, 2013 (as amended, supplemented, amended and restated, or otherwise modified from time to time in accordance with the terms thereof, the

"Guaranty Agreement," and together with the Security Agreement and the Pledge Agreement, collectively, the "Prepetition Loan Documents") governing the Prepetition Lenders' security interests in the Prepetition Collateral. Pursuant to the Prepetition Loan Documents, and on the terms set forth therein, the Debtors granted to the Prepetition Lenders the Prepetition Liens on the Prepetition Collateral.

(iv)    Prepetition Liens. The Prepetition Liens granted to the Prepetition Lenders constitute first priority, legal, valid, binding, enforceable, and perfected security interests in and liens on the Prepetition Collateral, were granted to, or for the benefit of the Prepetition Lenders for fair consideration and reasonably equivalent value, and are not subject to defense, counterclaim, recharacterization, subordination, avoidance, or recovery pursuant to the Bankruptcy Code or applicable non-bankruptcy law or regulation by any person or entity.

(v)    No Challenges/Claims. Subject to the Challenge Period (as defined below) for the Committee and other parties in interest, each of the Debtors acknowledges and agrees that, in each case as of the Petition Date: (a) the Prepetition Liens are valid, binding, enforceable, non-avoidable, and properly perfected liens on and security interests in the Prepetition Collateral; (b) the Prepetition Obligations constitute legal, valid, binding, and non-avoidable obligations of the Debtors; (c) no offsets, challenges, objections, defenses, claims, or counterclaims of any kind or nature to any of the Prepetition Liens or Prepetition Obligations exist, and no portion of the Prepetition Liens or Prepetition Obligations is subject to any challenge or defense including impairment, set-off, right of recoupment, avoidance, attachment, disallowance, disgorgement, reduction, recharacterization, recovery, subordination (whether equitable or otherwise), attack, offset, defense, counterclaims, cross-claims, or "claim" (as defined in the Bankruptcy Code), pursuant to the Bankruptcy Code or applicable nonbankruptcy law, and the Debtors are unaware

of any facts that would support the assertion of any challenge; and (d) the Debtors and their estates have no claims, objections, challenges, causes of actions, recoupments, counterclaims, cross-claims, setoff rights, and/or choses in action, including "lender liability" causes of action or avoidance claims under chapter 5 of the Bankruptcy Code, whether arising under applicable state law or federal law (including any recharacterization, subordination, avoidance, disgorgement, recovery, or other claims arising under or pursuant to sections 105, 510, or 542 through 553 of the Bankruptcy Code), against the Prepetition Agent, the Prepetition Secured Parties, or any of their respective affiliates, agents, representatives, attorneys, advisors, professionals, officers, directors, and employees arising out of, based upon, or related to their loans under the Prepetition Loan Documents, the Prepetition Obligations, or the Prepetition Liens.

(vi)      Indemnity.  The DIP Lender and the Prepetition Lenders have acted in good faith, and without negligence or violation of public policy or law, with respect to all actions taken by the DIP Lender and Prepetition Lenders, as applicable, in connection with or related in any way to negotiating, implementing, documenting, or obtaining the requisite approvals of the DIP Facility and the use of Cash Collateral, including with respect to the granting of the DIP Liens and the Adequate Protection Liens (as defined below), and all documents related to any and all transactions contemplated by the foregoing.  Accordingly, in addition to any indemnification provided for under the Prepetition Loan Documents, the Prepetition Lenders (subject to the rights of the Committee and other parties in interest (other than the Debtors) set forth in Section 5.11 of this Final DIP Order) and the DIP Lender (upon entry of this Final DIP Order without regard to Section 5.11) shall be indemnified and held harmless by the Debtors with respect to any claim or liability incurred in respect thereof or in any way related thereto; *provided* that no such parties will be indemnified for any cost, expense, or liability to the extent determined in a final, non-appealable

judgment of a court of competent jurisdiction to have resulted from such parties' fraud, gross negligence and/or willful misconduct; *provided*, *further*, that notwithstanding anything in this Final DIP Order, the DIP Facility Documents, or the DIP Loan, nothing shall have any effect on any indemnification provided for under the Prepetition Loan Documents.  No exception or defense exists in contract, law, or equity as to any obligation set forth, as the case may be, in this paragraph (vi), in the Prepetition Loan Documents, or in the DIP Facility Documents, to the Debtors' obligation to indemnify and/or hold harmless the Prepetition Lenders and the DIP Lender, as the case may be.

(vii)    <u>Sale and Credit Bidding</u>.  In connection with any sale process or sale authorized by the Court, (a) the DIP Lender or any assignee or designee of the DIP Lender, shall have the right to credit bid for the entirety (or any portion) of the DIP Collateral pursuant to section 363(k) of the Bankruptcy Code and (b) subject to the rights preserved in Section 5.11, the Prepetition Lenders, or any assignee or designee of the foregoing, shall have the right to credit bid for the entirety (or any portion) of the Prepetition Collateral pursuant to section 363(k) of the Bankruptcy Code, subject to a credit bid cap of $80,000,000, in each of clause (a) and (b) subject to certain conditions as specified in the Supplemental DIP Term Sheet; provided, however, that this credit bid cap shall not apply in the event a DIP Termination Event (as defined below) has occurred.  For the avoidance of doubt, the DIP Lender shall have the right to credit the total amount of the DIP Commitment pursuant to section 363(k) of the Bankruptcy Code.

(viii)    <u>Release</u>.  Subject to the rights of the Committee and parties in interest under Section 5.11 herein, each of the Debtors, their estates, the Borrower, and the Guarantors, on their own behalf and on behalf of each of their past, present, and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release,

discharge, and acquit each of the DIP Lender and the Prepetition Secured Parties, and each of their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders, investors, and employees, past, present, and future, and their respective heirs, predecessors, successors, and assigns (the "Released Parties") of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, suspected or unsuspected, matured or contingent, arising under, in connection with, or relating to the DIP Facility Documents, DIP Obligations, DIP Liens, Prepetition Obligations, or the Prepetition Loan Documents, including, without limitation, (a) any "lender-liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar provision of applicable state, federal, or common law, any proceeding seeking equitable remedies, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, DIP Facility Documents, DIP Liens, the Prepetition Obligations, the Prepetition Loan Documents, or the Prepetition Liens, and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the DIP Obligations

13

and Prepetition Obligations that the Debtors now or in the future have or may claim to have against

the DIP Lender or the Prepetition Secured Parties, arising under, in connection with, based upon,

or related to any and all acts, omissions, conduct undertaken, or events occurring prior to the entry

of the First Interim DIP Order [Docket No. 159].

(ix)     Cash Collateral.  All of the cash of the Debtors, wherever located, and all

cash equivalents, including, but not limited to, any cash in deposit accounts, now existing or after

acquired proceeds of Prepetition Collateral, constitutes "cash collateral" of the Prepetition Lenders

or proceeds of the DIP Collateral within the meaning of section 363(a) of the Bankruptcy Code

(the "Cash Collateral").

F.     Findings Regarding the Postpetition Financing and Use of Cash Collateral.

(i)     Postpetition Financing.  The Debtors have requested from the DIP Lender,

and the DIP Lender is willing, subject to the satisfaction (or in the DIP Lender's sole and absolute

discretion, waiver) of the conditions set forth in the Supplemental DIP Term Sheet, to extend the

Final DIP Loan on the terms and conditions set forth in this Final DIP Order and the DIP Facility

Documents, and, subject to the satisfaction (or in the DIP Lender's sole and absolute discretion,

waiver) of the conditions set forth in the Supplemental DIP Term Sheet, to extend the Final DIP

Loan.  Pursuant to the First Interim DIP Order, the DIP Lender extended the Initial DIP Loan in

the principal amount of $15,000,000.  Pursuant to the Second Interim DIP Order [Docket No. 205],

the DIP Lender extended the Supplemental DIP Loan in the principal amount of $5,000,000.  Upon

entry the satisfaction (or in the DIP Lender's sole and absolute discretion, waiver) of the conditions

set forth in the Supplemental DIP Term Sheet, the Debtors will have authorization to obtain Final

DIP Loan in the principal amount of $12,000,000.

(ii)        Need for Postpetition Financing and the Use of Cash Collateral.    The

Debtors have an immediate and critical need to use Cash Collateral and to obtain the DIP Facility

in order to, among other things, (a) maintain, administer, and preserve their business, (b) maintain

business relationships with vendors, suppliers, and customers, (c) make payroll, (d) fund expenses

of these Chapter 11 Cases, and (e) maximize the value of their assets.    In the absence of the

DIP Facility and the use of Cash Collateral, the Debtors and their estates would suffer immediate

and irreparable harm, including, without limitation, a cessation of substantially all of their

operations.    The access by the Debtors to sufficient working capital and liquidity through the use

of Cash Collateral, the incurrence of new indebtedness under the Supplemental DIP Term Sheet

and other DIP Facility Documents and this Final DIP Order, and the other financial

accommodations provided under the DIP Facility Documents is necessary and vital to, among

other things, minimize the disruption to the Debtors' business operations and preserve and

maximize the going concern value of the assets of the Debtors' estates to maximize the recovery

to all creditors of the estates.

(iii)        No Credit Available on More Favorable Terms.    The Debtors are unable to

obtain financing in the form of unsecured credit allowable as an administrative expense under

sections 364(a), 364(b), or 503(b)(1) of the Bankruptcy Code or in exchange for the grant of a

superpriority administrative expense, or liens on property of the estates not subject to a lien

pursuant to sections 364(c)(1), 364(c)(2), or 364(c)(3) of the Bankruptcy Code.    The Debtors are

also unable to obtain sufficient financing on more favorable terms from sources other than the

DIP Lender under the DIP Facility Documents.    In light of the foregoing, the Debtors have

reasonably and properly concluded, in the exercise of their business judgment, that the DIP Facility

represents the best financing available to the Debtors at this time, and is in the best interests of the Debtors, their estates, and their stakeholders.

(iv)      Budget.  The Debtors prepared and delivered to the DIP Lender and the Prepetition Secured Parties an initial budget (the "Initial Budget").  The Initial Budget reflected the Debtors' anticipated cash receipts and anticipated disbursements for each calendar week during the period from September 19, 2020 through and including the end of the seventh calendar week following thereto (the Initial Budget and each subsequent budget approved by the DIP Lender and the Prepetition Secured Parties then in effect, an "Approved Budget") a copy of the initial Approved Budget is attached to this Final DIP Order as **Exhibit B**.  The Debtors believe that the initial Approved Budget is reasonable under the facts and circumstances.  The DIP Lender and the Prepetition Lenders are relying upon the Debtors' agreement to comply with the terms set forth in the DIP Facility Documents, the Approved Budget, and this Final DIP Order in determining to enter into the postpetition financing arrangements provided for herein and the DIP Facility Documents and to consent to the Debtors' use of Cash Collateral.

(v)      Certain Conditions to DIP Facility.  The DIP Lender's willingness to make the Final DIP Loan is conditioned upon, among other things: (a) satisfaction of the conditions precedent as set forth in the Supplemental DIP Term Sheet; (b) the Debtors obtaining Court approval to enter into the DIP Facility Documents and to incur all of the obligations thereunder, and to confer, as applicable, upon the DIP Lender all rights, powers, and remedies thereunder in each case as modified by this Final DIP Order; (c) subject to the Carve Out, the provision of adequate protection of the Prepetition Secured Parties' interests in the Prepetition Collateral pursuant to sections 361, 363, and 364 of the Bankruptcy Code; and (d) the DIP Lender being granted, subject to the Permitted Prior Liens (as defined below), as security for the prompt payment

16

of the DIP Obligations and performance of all other obligations of the Debtors under the DIP Facility Documents, priming, superpriority, perfected security interests in and liens upon all property and assets of the Debtors, including, but not limited to, a valid and perfected security interest in and lien upon all of the now existing or hereafter arising or acquired assets, including: (i) assets constituting Prepetition Collateral and (ii) any assets of the Debtors that, as of the Petition Date, were not otherwise subject to a valid, perfected, enforceable, and unavoidable security interest (collectively hereinafter referred to as the "DIP Collateral;" *provided, however*, that the DIP Collateral shall not include the Debtors' commercial tort claims; *provided, further*, the "DIP Collateral" shall include the proceeds (the "Avoidance Proceeds") of any claim or cause of action arising under or pursuant to chapter 5 of the Bankruptcy Code or under any other similar provisions of applicable state, federal, or foreign law (including any other avoidance actions under the Bankruptcy Code) (collectively, the "Avoidance Actions")).

(vi)        Business Judgment and Good Faith Pursuant to Section 364(e). Any credit extended, loans made, and other financial accommodations extended to the Debtors by the DIP Lender, including, without limitation, pursuant to this Final DIP Order, have been extended, issued, or made, as the case may be, in "good faith" within the meaning of section 364(e) of the Bankruptcy Code and in express reliance upon the protections offered by section 364(e) of the Bankruptcy Code, and the DIP Lender, the DIP Facility, the DIP Liens, and the DIP Superpriority Claims (as defined below) shall be entitled to the full protection of section 364(e) of the Bankruptcy Code in the event that this Final DIP Order or any provision hereof is vacated, reversed, or modified on appeal or otherwise.

G.        Adequate Protection. Subject to the Carve Out, the Prepetition Secured Parties are entitled, pursuant to sections 361, 362, 363, and 364 of the Bankruptcy Code, to receive adequate

protection against any diminution in value of their respective interests in the Prepetition Collateral (including Cash Collateral), to the extent set forth in this Final DIP Order.

H.  <u>Sections 506(c) and 552(b)</u>.  Subject solely to the Carve Out, the Debtors have agreed as a condition to obtaining financing under the DIP Facility and the use of Cash Collateral, as set forth in this Final DIP Order, that as a material inducement to the DIP Lender to agree to provide the DIP Facility and the Prepetition Lenders' consent to the use of Cash Collateral as set forth in this Final DIP Order, and in exchange for (a) the DIP Lender's willingness to provide the DIP Facility to the extent set forth herein, (b) the DIP Lender's agreement to subordinate its liens and superpriority claims to the Carve Out, as provided herein, (c) the Prepetition Lenders' agreement to subordinate their liens and superpriority claims to the Carve Out and DIP Liens, as provided herein, and (d) the consensual use of Cash Collateral consistent with the Approved Budget, which is adequate to provide for the anticipated expenses that may accrue during the period this Final DIP Order shall be in effect, the terms of the Supplemental DIP Term Sheet, and the terms of this Final DIP Order, the DIP Lender (solely in its capacity as DIP Lender) and the Prepetition Lenders shall receive (1) a waiver of any "equities of the case" exception or claims under section 552(b) of the Bankruptcy Code and a waiver of unjust enrichment and similar equitable relief as set forth below, (2) a waiver of the provisions of section 506(c) of the Bankruptcy Code as to the Prepetition Collateral and the DIP Collateral, and (3) other statutory or equitable claims of, relief or surcharge against the Prepetition Collateral or DIP Collateral.

I.  <u>Good Cause</u>.  Good cause has been shown for the entry of this Final DIP Order. The relief requested in the DIP Motion is necessary, essential, and appropriate and is in the best interest of and will benefit the Debtors, their creditors, and their estates, as its implementation will, among other things, provide the Debtors with the necessary liquidity to (a) minimize disruption to

the Debtors' business and ongoing operations, (b) preserve and maximize the value of the Debtors'

estates for the benefit of all the Debtors' stakeholders, and (c) avoid immediate and irreparable

harm to the Debtors, their creditors, their business, their employees, and their assets.  The terms of

the DIP Facility and this Final DIP Order are fair and reasonable, reflect each Debtor's exercise of

its business judgment, and are supported by reasonably equivalent value and fair consideration.

The DIP Facility and this Final DIP Order are the product of reasonable, arm's length, good faith

negotiations between the Debtors, the DIP Lender, and the Prepetition Lenders.

      J.    <u>Immediate Entry</u>.  Sufficient cause exists for immediate entry of this Final DIP

Order pursuant to Bankruptcy Rule 4001(c)(2).

      Based upon the foregoing, and upon the record made before the Court at the Second Interim

Hearing, and after due consideration and good cause appearing therefor;

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

Section 1.    <u>DIP Motion Approval</u>

      1.1.    <u>Interim Approval of the DIP Motion</u>.  The DIP Motion is GRANTED on a

final basis to the extent provided in this Final DIP Order.  Any objections to the entry of this Final

DIP Order that have not been withdrawn, waived, resolved, or settled, and all reservations of rights

included therein, are hereby denied and overruled on the merits.

Section 2.    <u>DIP Facility Authorization</u>.

      2.1.    <u>Authorization of the DIP Facility</u>.

      (a)    The Debtors are hereby authorized to immediately execute and

deliver the DIP Facility Documents and to incur, be bound by, and perform the DIP Obligations,

pursuant to the terms and conditions of the DIP Facility Documents and this Final DIP Order, with

the Final DIP Loan, in the aggregate principal amount of $12,000,000, to be made following the

entry of this Final DIP Order and upon the satisfaction of other conditions set forth in the DIP Facility Documents.

(b)    The Debtors are hereby authorized to (i) borrow under the DIP Facility during the Final Financing Period (as defined below) in accordance with, and for the purposes permitted by, the DIP Facility Documents, this Final DIP Order, and the Approved Budget and, (ii) pay all interest, costs, fees, and other amounts and obligations accrued or accruing under the Supplemental DIP Term Sheet and other DIP Facility Documents, pursuant to the terms and conditions of this Final DIP Order, the Supplemental DIP Term Sheet, and the other DIP Facility Documents, in each case during the period commencing on the date of the entry of the First Interim DIP Order through and including a DIP Termination Event (the "Final Financing Period").  The Debtors shall use the proceeds of the DIP Facility solely in a manner consistent with the Approved Budget (subject to Permitted Variances (as defined in the Supplemental DIP Term Sheet) and other exclusions set forth in the DIP Facility Documents) and the terms and conditions of the DIP Facility Documents and this Final DIP Order.

2.2.    Financing Documents.

(a)    Authorization.  The Debtors are hereby authorized to enter into, execute, deliver, and perform all obligations under the DIP Facility Documents.  Subject to the Challenge Period (as provided in Section 5.11), no obligation, payment, transfer, or grant of security hereunder or under the DIP Facility Documents shall be stayed, restrained, void, avoidable, or recoverable under the Bankruptcy Code or under any applicable state, federal, or common law (including, without limitation, under chapter 5 of the Bankruptcy Code or under any applicable state Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, or similar statute or common law), or be subject to any defense, reduction, setoff, counterclaim, recoupment,

offset, recharacterization, subordination (whether equitable, contractual or otherwise), cross-claims, or any other challenge under the Bankruptcy Code or any applicable law, rule, or regulation by any person or entity.

(b)    Approval; Evidence of Borrowing Arrangements.    All terms, conditions, and covenants set forth in the DIP Facility Documents (including, without limitation, the Supplemental DIP Term Sheet) are approved.  Such terms, conditions, and covenants shall be sufficient and conclusive evidence of (i) the borrowing arrangements by and among the Debtors and the DIP Lender and (ii) each Debtor's assumption and adoption of, and agreement to comply with, all the terms, conditions, and covenants of the Supplemental DIP Term Sheet and the other DIP Facility Documents for all purposes.  Upon effectiveness, the DIP Facility Documents shall evidence the DIP Obligations, which DIP Facility Documents and DIP Obligations shall be continuing, valid, binding, and enforceable against the Debtors, their estates, and any successors thereto, including, without limitation, any trustee appointed in any of these Chapter 11 Cases or any case under chapter 7 of the Bankruptcy Code upon the conversion of any of these Chapter 11 Cases (collectively, the "Successor Cases"), and their creditors and other parties in interest, in each case, in accordance with the terms of this Final DIP Order and the DIP Facility Documents.

(c)    Payment of DIP Fees and Other Expenses.  Any and all fees and expenses payable pursuant to the DIP Facility Documents (collectively, any and all such fees and expenses, the "DIP Fees") are hereby approved and the Debtors are hereby authorized and directed to pay, currently in cash or as otherwise provided in the DIP Facility Documents and the Approved Budget, all reasonable and documented out-of-pocket costs, disbursements, and expenses of the DIP Lender due under the DIP Facility Documents incurred at any time, as provided by the DIP Facility Documents, Approved Budget, and this Final DIP Order in accordance with

21

Section 5.14 hereof.  The DIP Fees shall not be subject to any offset, defense, claim, counterclaim, or diminution of any type, kind, or nature whatsoever.

2.3.     <u>Indemnification</u>.     The Debtors are authorized to indemnify and hold harmless the DIP Lender (upon entry of this Final DIP Order) and the Prepetition Secured Parties (subject to the Challenge rights in Section 5.11), and, solely in its capacity as such, their respective successors, assigns, affiliates, parents, subsidiaries, partners, controlling persons, representatives, agents, attorneys, advisors, financial advisors, consultants, professionals, officers, directors, members, managers, shareholders and employees, past, present and future, and their respective heirs, predecessors, successors and assigns (each, an "<u>Indemnified Party</u>"), in accordance with, and subject to, the DIP Facility Documents and the Prepetition Loan Documents, as applicable, which indemnification is hereby authorized and approved as to the DIP Lender upon entry of this Final DIP Order and as to the Prepetition Secured Parties and their related Indemnified Parties subject to the Challenge rights in Section 5.11 of this Final DIP Order; *provided, however*, that notwithstanding anything to the contrary in the DIP Facility Documents and the Prepetition Loan Documents, the Debtors shall not indemnify and hold harmless the DIP Lender and the Prepetition Secured Parties for any action or omission that is determined by a final order of a court of competent jurisdiction to constitute fraud, willful misconduct, or gross negligence; *provided*, *further*, that notwithstanding anything in this Final DIP Order, the DIP Facility Documents, or the DIP Loan, nothing shall have any effect on any indemnification provided for under the Prepetition Loan Documents.

2.4.     <u>DIP Liens</u>.

(a)     <u>DIP Liens</u>.  To secure performance and payment when due (whether at the stated maturity, by acceleration or otherwise) of any and all DIP Obligations of the Debtors

to the DIP Lender of whatever kind, nature, or description, whether absolute or contingent, now existing or hereafter arising, the DIP Lender shall have and is hereby granted, effective as of the Petition Date, continuing, valid, binding, enforceable, non-avoidable, and automatically and properly perfected security interests in and liens (collectively, the "DIP Liens") upon all DIP Collateral, subject to the rankings and priorities set forth in Section 2.4(b) below.

(b)    DIP Lien Priority in DIP Collateral.  Subject to and except for the Carve Out, the DIP Liens on the DIP Collateral securing the DIP Obligations shall be first and senior in priority to all other interests and liens of every kind, nature, and description, whether created consensually, by an order of the Court or otherwise, including, without limitation, liens or interests granted in favor of third parties in conjunction with sections 363, 364, or any other section of the Bankruptcy Code or other applicable law; *provided, however*, that the DIP Liens shall in each case be subject and subordinate to liens that (a) are valid, perfected, enforceable and nonavoidable as of the Petition Date or validly perfected subsequent to the Petition Date to the extent permitted by section 546(b) of the Bankruptcy Code, (b) under applicable law, are senior to, and have not been subordinated to, the Prepetition Liens, and (c) are not subject to avoidance, reduction, disgorgement, counterclaim, surcharge, or subordination pursuant to the Bankruptcy Code or applicable non-bankruptcy law (the "Permitted Prior Liens").

2.5.    Superpriority Administrative Expenses.  Subject to the Carve Out, all DIP Obligations now existing or hereafter arising pursuant to this Final DIP Order, the DIP Facility Documents, or otherwise, the DIP Lender is granted an allowed superpriority administrative expense claim pursuant to section 364(c)(1) of the Bankruptcy Code, having priority in right of payment over any and all other obligations, liabilities, and indebtedness of the Debtors, whether now in existence or hereafter incurred by the Debtors, and over any and all

administrative expenses or priority claims of the kind specified in, or ordered pursuant to, inter alia, sections 105, 328, 330, 331, 364(c)(1), 503(b), 507(a), 507(b), or 546(c) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other non-consensual lien, levy, or attachment, which allowed superpriority administrative claim shall be payable from and have recourse to all prepetition and postpetition property of the Debtors and all proceeds thereof (including, Avoidance Proceeds, but excluding the Debtors' commercial tort claims) (such superpriority administrative expense claims, the "<u>DIP Superpriority Claims</u>").

Section 3.    <u>Use of Cash Collateral</u>.

3.1.    <u>Authorization to Use Cash Collateral</u>.  Subject to the terms and conditions of this Final DIP Order (as operating in conjunction with and supplementing the First Interim DIP Order, the Second Interim DIP Order, and superseding the *Interim Order (I) Authorizing Use of Cash Collateral and Affording Adequate Protection; (II) Modifying Automatic Stay; and (III) Scheduling a Final Hearing* [Docket No. 64]) and in accordance with the Approved Budget, the Debtors are authorized to use Cash Collateral as set forth in this Final DIP Order until the occurrence of a DIP Termination Event; *provided, however*, that during the Remedies Notice Period (as defined below), the Debtors may use Cash Collateral solely to pay expenses critical to the administration of the Debtors' estates strictly in accordance with the Approved Budget, or as otherwise agreed by the DIP Lender and a majority of the Prepetition Lenders.

3.2.    <u>Termination Date</u>.  Upon a DIP Termination Event, without further notice or order of Court: (a) the Debtors' authorization to use Cash Collateral hereunder will automatically terminate and (b) the Debtors shall be prohibited from using Cash Collateral for any purpose except to pay expenses critical to the preservation of the Debtors and their estates strictly

in accordance with the Approved Budget, or as approved by DIP Lender and a majority of the Prepetition Lenders.

Section 4.    <u>Prepetition Secured Parties' Adequate Protection</u>.

      4.1.    <u>Adequate Protection Liens, Payments, and Superpriority Claims</u>.    The Prepetition Lenders are entitled, pursuant to sections 361, 363(e), and 364 of the Bankruptcy Code and *nunc pro tunc* to the Petition Date, to adequate protection of their respective interests in the Prepetition Collateral, including the Cash Collateral, in an amount equal to the diminution in value of the Prepetition Secured Parties' respective interests in the Prepetition Collateral from and after the Petition Date.    On account of such adequate protection claims, the Prepetition Secured Parties are hereby granted the following, in each case subject to the Carve Out (collectively, the "<u>Adequate Protection</u>"):

      (a)    <u>Adequate Protection Liens</u>.    The Prepetition Secured Parties are hereby granted (effective and perfected upon the date of entry of this Final DIP Order and without the necessity of any Perfection Act (as defined below)) valid and perfected postpetition replacement security interests in and liens upon the DIP Collateral and all proceeds or property recovered from Avoidance Actions (the "<u>Adequate Protection Liens</u>"), which liens shall: (i) be subject and subordinate only to first, the Carve Out; second, the Permitted Prior Liens; and third, the DIP Liens; and (ii) be, subject and subordinate only to the Carve Out, the Permitted Prior Liens, and the DIP Liens, senior to all other security interests in, liens on, or claims against the Prepetition Collateral, whether now existing or hereafter arising or acquired.[4]  The Adequate Protection Liens shall otherwise be senior to all other security interests in, liens on, or claims against any of the

---

[4]     For the avoidance of doubt and notwithstanding anything to the contrary in this Final DIP Order, Adequate Protection Liens shall not attach to the Debtors' real property leaseholds, but shall attach to the proceeds of such real property leaseholds, subject to the DIP Liens.

DIP Collateral (including, for the avoidance of doubt, any lien or security interest that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code, any which lien is preserved for the benefit of the DIP Lender and secured by the DIP Liens).

(b)    Adequate Protection Superpriority Claims.  The Prepetition Secured Parties are hereby granted allowed superpriority administrative expense claims pursuant to sections 503(b), 507(a), and 507(b) of the Bankruptcy Code (the "Adequate Protection Superpriority Claims"), which Adequate Protection Superpriority Claims shall be allowed claims against each of the Debtors (jointly and severally), with priority (except they shall be junior to the Carve Out and as otherwise provided herein) over any and all administrative expenses and all other claims against the Debtors, other than the DIP Superpriority Claims, which shall be senior in all respects to the Adequate Protection Superpriority Claims, now existing or hereafter arising, of any kind specified in sections 503(b) and 507(b) of the Bankruptcy Code, and all other administrative expenses or other claims arising under any other provision of the Bankruptcy Code, including, without limitation, sections 105, 326, 327, 328, 330, 331, 503(b), 507(a), or 507(b) of the Bankruptcy Code, whether or not such expenses or claims may become secured by a judgment lien or other nonconsensual lien, levy, or attachment.  The Adequate Protection Superpriority Claims shall be (i) *pari passu* with each other and be payable from and have recourse to all prepetition and postpetition property (including all claims and causes of action) of the Debtors other than commercial tort claims, and (ii) subject and junior to the Carve Out.

(c)    Adequate Protection Payments.  As further adequate protection, the Debtors are authorized and directed to pay, in accordance with the terms of Section 5.14 of this Final DIP Order, all reasonable and documented fees and expenses (the "Adequate Protection Fees"), whether incurred before or after the Petition Date, including all reasonable and documented

fees and expenses of counsel and other professionals retained including, for the avoidance of doubt, of (i) DLA Piper LLP (US), as counsel to the DIP Lender, (ii) counsel to the Prepetition Agent, (iii) Gibson, Dunn & Crutcher LLP and Pachulski Stang Ziehl & Jones LLP as counsel to the Ad Hoc Lender Group of Prepetition Lenders (the "Ad Hoc Lender Group") and FTI Consulting, Inc. as financial advisor to the Ad Hoc Lender Group, and (iv) to the extent necessary to exercise and fulfill its obligations under the Prepetition Loan Documents, one counsel to the Prepetition Secured Parties (taken as a whole) in each local jurisdiction that is material to the Prepetition Secured Parties (taken as a whole) (all payments referenced in this sentence, collectively, the "Adequate Protection Payments").  None of the Adequate Protection Fees shall be subject to separate approval by this Court or the U.S. Trustee Guidelines, and no recipient of any such payment shall be required to file any interim or final fee application with respect thereto or otherwise seek the Court's approval of any such payments.

Section 5.      Provisions Common to DIP Facility and Use of Cash Collateral.

      5.1.   Postpetition Lien Perfection.

      (a)     This Final DIP Order shall be sufficient and conclusive evidence of the priority, perfection, and validity of the DIP Liens, the Adequate Protection Liens, and the other security interests granted herein, effective as of the Petition Date, without any further act and without regard to any other federal, state, or local requirements or law requiring notice, filing, registration, recording, or possession of the DIP Collateral, or other act to validate or perfect such security interest or lien, including, without limitation, control agreements with any financial institution party to a control agreement or other depository account consisting of DIP Collateral, or requirement to register liens on any certificates of title (a "Perfection Act").  Notwithstanding the foregoing, if the DIP Lender or any Prepetition Lenders, as applicable, shall, in its sole

discretion, elect for any reason to file, record, or otherwise effectuate any Perfection Act, then the DIP Lender or the Prepetition Lenders, as applicable, are authorized to perform such act, and the Debtors are authorized and directed to perform such act to the extent necessary or required by the DIP Facility Documents, which act or acts shall be deemed to have been accomplished as of the date and time of entry of this Final DIP Order notwithstanding the date and time actually accomplished, and, in such event, the subject filing or recording office is authorized to accept, file, or record any document in regard to such act in accordance with applicable law.  The DIP Lender and the Prepetition Lenders, as applicable, may choose to file, record, or present a certified copy of this Final DIP Order in the same manner as a Perfection Act, which shall be tantamount to a Perfection Act, and, in such event, the subject filing or recording office is authorized to accept, file, or record such certified copy of this Final DIP Order in accordance with applicable law. Should the DIP Lender or Prepetition Lenders, as applicable, so choose and attempt to file, record, or perform a Perfection Act, no defect or failure in connection with such attempt shall in any way limit, waive, or alter the validity, enforceability, attachment, priority, or perfection of the postpetition liens and security interests granted herein by virtue of the entry of this Final DIP Order.

(b)      Nothing herein shall excuse the Debtors from payment of any local fees, if any, required in connection with such liens.  By virtue of the terms of this Final DIP Order, to the extent that the DIP Lender or Prepetition Lenders, as applicable, has filed Uniform Commercial Code financing statements, mortgages, deeds of trust, or other security or perfection documents under the names of any of the Debtors (including all Guarantors), such filings shall be deemed to properly perfect its liens and security interests granted and confirmed by this Final DIP Order without further action by the DIP Lender or Prepetition Lenders, as applicable.

(c)        Except as provided in Section 5.11 herein and with respect and subordinate to the Carve Out, the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims (i) shall not be made subject to or *pari passu* with (A) any lien, security interest, or claim heretofore or hereinafter granted in any of these Chapter 11 Cases or any Successor Cases and shall be valid and enforceable against the Debtors, their estates, any trustee, or any other estate representative appointed or elected in these Chapter 11 Cases or any Successor Cases and/or upon the dismissal of any of these Chapter 11 Cases or any Successor Cases; (B) any lien that is avoided and preserved for the benefit of the Debtors and their estates under section 551 of the Bankruptcy Code or otherwise; or (C) any intercompany or affiliate lien or claim; and (ii) shall not be subject to sections 510, 549, 550, or 551 of the Bankruptcy Code.

5.2.    <u>Amendments to DIP Facility Documents</u>.    Subject to the terms and conditions of the applicable DIP Facility Documents, the DIP Lender may waive any provisions or conditions contained in the DIP Facility Documents in its sole and absolute discretion, without further approval of the Court, other than terms and conditions of the applicable DIP Facility Documents that affect any rights of the Prepetition Lenders, including, without limitation, with respect to Adequate Protection and all related rights and remedies.    Any amendments, modifications, or supplements to any DIP Facility Document that operate to increase the aggregate commitments, the rate of interest payable thereunder, or existing fees or add new fees thereunder (excluding, for the avoidance of doubt, any amendment, consent or waiver fee) other than as currently provided in the DIP Facility Documents (collectively, the "<u>Material DIP Amendments</u>"), shall be filed with the Court, and subject to notice and an opportunity for a hearing, in advance of the effective date of such Material DIP Amendments, and the Debtors shall provide prior written

notice of the Material DIP Amendment to (i) counsel for each of the Prepetition Secured Parties, (ii) counsel to the Committee, and (iii) the U.S. Trustee; *provided, further*, that the consent of the foregoing parties will not be necessary to effectuate any such amendment, modification or supplement, except that any Material DIP Amendment subject to a timely and unresolved objection must be approved by the Court.  For the avoidance of doubt, the Debtors must receive written consent as to any Material DIP Amendment (i) from the DIP Lender prior to filing notice thereof with the Court and (ii) from the Prepetition Lenders, as applicable, for any amendment, modification, supplement, or waiver to the Approved Budget or that materially adversely affects any rights of the applicable Prepetition Lenders hereunder or the treatment of the applicable Prepetition Obligations hereunder.

  5.3. <u>DIP Termination Event</u>.  The occurrence of one or more of the following shall constitute a "<u>DIP Termination Event</u>" (unless waived in writing by the DIP Lender and a majority of the Prepetition Lenders): (i) any "Event of Default" as that term is defined in the Supplemental DIP Term Sheet; (ii) any failure timely and completely to meet or satisfy any Milestone (as defined in Section 5.5 herein) in accordance with the Supplemental DIP Term Sheet; (iii) the Maturity Date under the Supplemental DIP Term Sheet; (iv) Debtors' failure to comply with any of its covenants or obligations under and in strict accordance with the terms of this Final DIP Order, including, without limitation, the failure to make any required Adequate Protection Payments pursuant to paragraph 4 of this Final DIP Order; (vi) any act of the Debtors, without the consent of Prepetition Secured Parties, seeking the use of Cash Collateral other than in accordance with the terms of this Final DIP Order; (vii) the termination of the DIP Facility Documents, or if this Final DIP Order or DIP Facility Documents are modified in a manner adverse to Prepetition Lenders, without the Prepetition Lenders' prior written consent; (viii) entry of any order

authorizing any party in interest to reclaim any of the DIP Collateral, granting any party in interest relief from the automatic stay with respect to the DIP Collateral in an aggregate value in excess of $50,000 without prior written consent of the DIP Lender, or requiring that the Debtors turn over any of the DIP Collateral, in each case prior to the full, final, and indefeasible repayment of all Prepetition Obligations; (ix) any of these Chapter 11 Cases is converted to a case under chapter 7 of the Bankruptcy Code; (x) a trustee is appointed or elected in any of these Chapter 11 Cases, or an examiner with the power to operate the Debtors' business is appointed in any of these Chapter 11 Cases; (xi) any ruling in favor of a plaintiff or movant of an adversary proceeding or contested matter challenging or otherwise objecting to the extent, validity, or priority of any Prepetition Obligations and/or the Prepetition Liens, (xii) the date that is forty (40) days following the Petition Date if a Final DIP Order in form and substance acceptable to the DIP Lender and the Prepetition Lenders is not entered by such date; or (xiii) this Final DIP Order, or any other order of this Court is modified, amended, vacated or stayed in any manner not consented to in writing by DIP Lender.

      5.4.   <u>Rights and Remedies upon a DIP Termination Event</u>.  During the period covered by this Final DIP Order, after five (5) business days following the delivery of a written notice by the DIP Lender or a majority of the Prepetition Lenders to counsel for the Debtors and the Committee of the occurrence of and during the continuance of a DIP Termination Event (the "<u>Remedies Notice Period</u>") unless ordered otherwise by the Court pursuant to an objection filed by the Committee during the Remedies Notice Period, (a) the DIP Lender shall be entitled to independently take any act or exercise any right or remedy as provided in this Final DIP Order or any DIP Facility Document, as applicable, including, without limitation, (i) declare all DIP Obligations owing under the DIP Facility Documents to be immediately due and payable; (ii) terminate, reduce, or restrict any commitment to extend additional credit to the Debtors to the

extent any such commitment remains; (iii) terminate the DIP Facility and any DIP Facility Document as to any future liability or obligation of the DIP Lender, but without affecting any of the DIP Obligations or the DIP Liens securing the DIP Obligations; (iv) invoke the right to charge interest at the default rate under the DIP Facility Documents; and/or (v) stop lending or making advances under the Supplemental DIP Term Sheet; and (b) in the event of any failure to make the required Adequate Protection Payments pursuant to paragraph 4 of this Final DIP Order, the Prepetition Secured Parties shall be entitled to take any act or exercise any right or remedy in conjunction therewith, and as to clauses (a) and (b) of this paragraph, the automatic stay imposed by section 362 of the Bankruptcy Code shall be deemed modified to the extent necessary to implement and effectuate the foregoing.

5.5.    Milestones. As a condition to the DIP Facility and the use of Cash Collateral, the Debtors shall comply with the milestones, annexed hereto as **Exhibit C** (collectively, the "Milestones"), as modified from those ordered by the First Interim DIP Order and the Second Interim DIP Order.  Any Milestone that would otherwise fall on a Saturday, Sunday or federal holiday will be treated in accordance with Bankruptcy Rule 9006.  For the avoidance of doubt, the failure of the Debtors to comply with any of the Milestones shall (a) constitute a DIP Termination Event under this Final DIP Order, (b) an Event of Default (as defined in the Supplemental DIP Term Sheet) under the DIP Facility Documents, and (c) subject to (i) the absence of an order of the Court determining that a DIP Termination Event is not continuing, and (ii) the expiration of the Remedies Notice Period, shall result in the automatic termination of the Debtors' authority to use Cash Collateral under this Final DIP Order; and (d) permit the (i) DIP Lender to exercise the rights and remedies provided for in this Final DIP Order and the DIP Facility

Documents; and (ii) Prepetition Agent to exercise the rights and remedies provided for in this Final DIP Order.

5.6.    Debtors' Waivers.

(a)    Prior to the indefeasible payment in full of all Prepetition Obligations and all DIP Obligations, any request by the Debtors with respect to the following shall also constitute a DIP Termination Event: (i) to obtain postpetition loans or other financial accommodations pursuant to sections 364(c) or 364(d) of the Bankruptcy Code that does not provide for the repayment in full of the DIP Obligations and the Prepetition Obligations, other than as provided in this Final DIP Order or, with respect to the DIP Obligations, as may be otherwise permitted pursuant to the DIP Facility Documents; (ii) to challenge the application of any payments authorized by this Final DIP Order pursuant to section 506(b) of the Bankruptcy Code; or (iii) to propose or support any challenge by any party in interest to seek to limit or prevent the DIP Lender or the Prepetition Lenders, from exercising their credit bid rights (as limited herein) in connection with the sale of any assets of the Debtors.

(b)    It shall also be a DIP Termination Event if, prior to the indefeasible payment in full of the DIP Facility or the Prepetition Obligations, the Debtors propose or support any chapter 11 plan or sale of all or substantially all of the Debtors' assets, or order confirming such plan or approving such sale, that is not conditioned upon the payment of the DIP Obligations and the Prepetition Obligations in full in cash and the payment of the Debtors' obligations with respect to the adequate protection hereunder, in full in cash, without the written consent of the DIP Lender and the Prepetition Lenders, as applicable.

5.7.    Modification of the Automatic Stay.  The automatic stay provisions of section 362 of the Bankruptcy Code and any other restriction imposed by an order of the Court or

applicable law are hereby modified without further notice, application, or order of the Court to the extent necessary to permit the Debtors and each of the DIP Lender or the Prepetition Lenders, as applicable, to perform any act authorized or permitted under or by virtue of this Final DIP Order, the Supplemental DIP Term Sheet, or the other DIP Facility Documents, as applicable, including, without limitation, (a) to execute, deliver, and implement the postpetition financing arrangements authorized by this Final DIP Order, (b) to take any act to create, validate, evidence, attach, or perfect any lien, security interest, right or claim in the DIP Collateral, (c) to assess, charge, collect, advance, deduct, and receive payments with respect to the Prepetition Obligations and DIP Obligations (or any portion thereof), including, without limitation, all interests, fees, costs, and expenses permitted under any of the DIP Facility Documents, the Prepetition Loan Documents or this Final DIP Order and apply such payments to the applicable obligations, and (d) subject to the Remedies Notice Period, to take any action and exercise all rights and remedies provided to it by this Final DIP Order, the DIP Facility Documents, or applicable law.

5.8.   <u>Reporting.</u>  The Debtors shall, in compliance with and as set forth fully in the Supplemental DIP Term Sheet, among other things, deliver a budget variance report/reconciliation (the "<u>Budget Variance Report</u>") to the DIP Lender, the Committee Professionals, and the Prepetition Agent by 4:00 p.m. (prevailing Eastern Time) on the fourth business day of each calendar week (*provided* that the reconciliations in (ii) below shall be delivered beginning on the fourth business day after completion of the first two calendar weeks after the Petition Date), each in a form and in substance reasonably satisfactory to the DIP Lender and the Prepetition Agent, which shall: (i) then current cash balance calculations as of the immediately preceding Friday (showing actual cash receipts, disbursements, professional fees, capital expenditures, and billings for the immediately preceding week, the immediately preceding

rolling two week cumulative period on and after the closing date); (ii) provide cash flow reconciliations showing actual payments versus the Approved Budget items for prior periods ended (noting therein all variance, on an aggregate basis, from amounts set forth for such period in the Approved Budget, and shall include explanations for all material variance for such week); *provided* that in the case of clauses (i) and (ii), such calculations and reconciliations, as applicable, shall not reflect any credit card processing reserves; and (iii) be certified by a responsible officer of the Borrower.

5.9.    <u>Budget Maintenance</u>.  The use of borrowings under the DIP Facility and the use of Cash Collateral shall be in accordance with the initial Approved Budget for the seven week period from and after September 19, 2020, which shall be in form and substance satisfactory to, and approved by, the DIP Lender in its sole discretion (as so approved, the Approved Budget). The Approved Budget shall be updated by the Debtors (with the consent and/or at the reasonable request of the DIP Lender from time to time in accordance with the DIP Facility Documents and upon consultation with the Committee).  No such updated, modified, or supplemented budget shall be effective until so approved the DIP Lender, and once approved shall be deemed the "Approved Budget".  A copy of any Approved Budget shall be delivered to counsel for Prepetition Lenders, the Committee, and the U.S. Trustee after (or if) it has been approved by the DIP Lender.

5.10.    <u>Carve Out</u>.

(a)    <u>Carve Out</u>.  As used in this Final DIP Order, the "<u>Carve Out</u>" means the sum of (i) all fees required to be paid to the Clerk of the Court and to the U.S. Trustee under section 1930(a) of title 28 of the United States Code plus interest at the statutory rate (without regard to the notice set forth in (iii) below); (ii) all reasonable fees and expenses up to $50,000 incurred by a trustee under section 726(b) of the Bankruptcy Code (without regard to the notice

set forth in (iii) below); (iii) to the extent allowed at any time, whether by interim order, procedural order, or otherwise, all unpaid fees and expenses (the "Allowed Professional Fees") incurred by persons or firms retained by the Debtors pursuant to section 327, 328, or 363 of the Bankruptcy Code (the "Debtor Professionals") and the Committee pursuant to section 328 or 1103 of the Bankruptcy Code (the "Committee Professionals" and, together with the Debtor Professionals, the "Professional Persons") at any time before or on the first business day following delivery by the DIP Lender of a Carve Out Trigger Notice (as defined below), whether allowed by the Court prior to or after delivery of a Carve Out Trigger Notice; and (iv) Allowed Professional Fees of Professional Persons in an aggregate amount not to exceed $1,500,000 incurred after the first business day following delivery by the DIP Lender of the Carve Out Trigger Notice, to the extent allowed at any time, whether by interim order, procedural order, or otherwise (the amounts set forth in this clause (iv) being the "Post-Carve Out Trigger Notice Cap").  For purposes of the foregoing, "Carve Out Trigger Notice" shall mean a written notice delivered by email (or other electronic means) by the DIP Lender to the Debtors, their lead restructuring counsel, the U.S. Trustee, and counsel to the Committee, which notice may be delivered following the occurrence and during the continuation of an Event of Default and acceleration of the DIP Obligations under the DIP Facility, stating that the Post-Carve Out Trigger Notice Cap has been invoked.

(b)    Fee Estimates.  Not later than 7:00 p.m. New York time on the third day of each week starting with the first full calendar week following entry of the First Interim DIP Order, each Professional Person shall deliver to the Debtors a statement setting forth a good-faith estimate of the amount of fees and expenses incurred during the preceding week by such Professional Person (through Saturday of such week, the "Calculation Date") (collectively,

"Estimated Fees and Expenses"), along with a good-faith estimate of the cumulative total amount of unreimbursed fees and expenses incurred through the applicable Calculation Date and a statement of the amount of such fees and expenses that have been paid to date by the Debtors (each such statement, a "Weekly Statement"); *provided* that within one business day of the occurrence of the Termination Declaration Date (as defined below), each Professional Person shall deliver one additional statement (the "Final Statement") setting forth a good-faith estimate of the amount of fees and expenses incurred during the period commencing on the calendar day after the most recent Calculation Date for which a Weekly Statement has been delivered and concluding on the Termination Declaration Date (and the Debtors shall cause such Weekly Statement and Final Statement to be delivered on the same day received to the DIP Lender).  If any Professional Person fails to deliver a Weekly Statement within three calendar days after such Weekly Statement is due, such Professional Person's entitlement (if any) to any funds in the Carve Out Reserves (as defined below) with respect to the aggregate unpaid amount of Allowed Professional Fees for the applicable period(s) for which such Professional Person failed to deliver a Weekly Statement covering such period shall be limited to the aggregate unpaid amount of Allowed Professional Fees included in the Approved Budget for such period for such Professional Person.

(c)     Carve Out Reserves.  Commencing effective with the week ended September 26, 2020,[5] and on or before the Thursday of each week thereafter, the Debtors shall utilize all cash on hand as of such date and any available cash thereafter held by any Debtor to fund a reserve in an amount equal to the greater of (x)(i) for the week ending September 26, 2020, the aggregate amount of all Estimated Fees and Expenses reflected in all Weekly Statements

---

[5]     For the avoidance of doubt, should the DIP Lender deliver a Carve Out Trigger Notice prior to this date, the Debtors shall utilize all cash on hand to fund a reserve in an amount equal to the then unpaid amounts of the Allowed Professional Fees and any other reserves contemplated by this Final DIP Order.

delivered to the Debtors and the Prepetition Agents between the Petition Date and the immediately

prior Wednesday and (ii) for all weeks after the week ending September 26, 2020, the aggregate

amount of all Estimated Fees and Expenses reflected in the Weekly Statement delivered on the

immediately prior Wednesday to the Debtors and the DIP Lender, and (y)(i) for the week ending

September 26, 2020, the aggregate amount of Allowed Professional Fees contemplated to be

incurred in the Approved Budget during all prior weeks of these Chapter 11 Cases and (ii) for all

weeks after the week ending September 26, 2020, the aggregate amount of Allowed Professional

Fees contemplated to be incurred in the Approved Budget during such week.  The Debtors shall

deposit and hold such amounts in a segregated account in trust to pay such then unpaid Allowed

Professional Fees (the "Pre-Carve Out Trigger Notice Reserve") prior to any and all other claims,

and all payments of Allowed Professional Fees incurred prior to the Termination Declaration Date

shall be paid first from such Pre-Carve Out Trigger Notice Reserve account.  Upon the foregoing

funding, the DIP Lender shall have no further obligation to fund the Pre-Carve Out Trigger Notice

Reserve or subordinate their liens or claims on any Allowed Professional Fees incurred through

the Termination Declaration Date for the most recent Weekly Statement delivered in accordance

with the foregoing.  On the day on which a Carve Out Trigger Notice is given by the DIP Lender

to the Debtors with a copy to counsel to the Committee (the "Termination Declaration Date"), the

Carve Out Trigger Notice shall (i) be deemed a draw request by the Debtors under the Final DIP

Loan (on a pro rata basis based on the then outstanding DIP Commitment), in an amount equal to

the Post-Carve Out Trigger Notice Cap (any such amounts actually advanced shall constitute

Final DIP Loans) and (ii) constitute a demand to the Debtors to, and the Debtors shall, utilize all

cash on hand as of such date and any available cash thereafter held by any Debtor to fund (A) the

Pre-Carve Out Trigger Notice Reserve account in an amount equal to the aggregate amount of all

Estimated Fees and Expenses reflected in the Final Statement delivered to the Debtors and the DIP Lender plus the amounts set forth in (a)(i) and (a)(ii) of this paragraph above, and (B) after funding the Pre-Carve Out Trigger Notice Reserve account, a reserve in an amount equal to the Post-Carve Out Trigger Notice Cap (the "Post-Carve Out Trigger Notice Reserve" and, together with the Pre-Carve Out Trigger Notice Reserve, the "Carve Out Reserves") prior to any and all other claims.  Notwithstanding anything in the DIP Facility Documents to the contrary, including with respect to the existence of a default or Event of Default, the failure of the Debtors to satisfy any or all of the conditions precedent for Final DIP Loans under the DIP Facility, any termination of the DIP Commitments following an Event of Default, or the occurrence of the Maturity Date, the DIP Lender shall fund such borrowing in accordance with the DIP Facility.

(d)    Application of Carve Out Reserves.  All funds in the Pre-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clauses (i) through (iii) of the definition of Carve Out set forth above (the "Pre-Carve Out Amounts"), but not, for the avoidance of doubt, the Post-Carve Out Trigger Notice Cap, until paid in full, and then, to the extent the Pre-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lender, unless the DIP Obligations have been indefeasibly paid in full, in cash, and the DIP Commitment has been terminated, in which case any such excess shall be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the Petition Date. All funds in the Post-Carve Out Trigger Notice Reserve shall be used first to pay the obligations set forth in clause (iv) of the definition of Carve Out set forth above (the "Post-Carve Out Amounts"), and then, to the extent the Post-Carve Out Trigger Notice Reserve has not been reduced to zero, to pay the DIP Lender, unless the DIP Obligations have been indefeasibly paid in full, in cash, and the DIP Commitment has been terminated, in which case any such excess shall

be paid to the Prepetition Secured Parties in accordance with their rights and priorities as of the

Petition Date.  Notwithstanding anything to the contrary in the DIP Facility Documents, or this

Final DIP Order, if either of the Carve Out Reserves is not funded in full in the amounts set forth

in this Section 5.10(d), then, any excess funds in one of the Carve Out Reserves following the

payment of the Pre-Carve Out Amounts and Post-Carve Out Amounts, respectively, shall be used

to fund the other Carve Out Reserve, up to the applicable amount set forth in this Section 5.10(d),

prior to making any payments to the DIP Lender or the Prepetition Secured Parties, as applicable.

Notwithstanding anything to the contrary in the DIP Facility Documents or this Final DIP Order,

following delivery of a Carve Out Trigger Notice, the DIP Lender and the Prepetition Agent shall

not sweep or foreclose on cash (including cash received as a result of the sale or other disposition

of any assets) of the Debtors until the Carve Out Reserves have been fully funded, but shall have

a security interest in any residual interest in the Carve Out Reserves, with any excess paid to the

DIP Lender for application in accordance with the DIP Facility Documents.  Further,

notwithstanding anything to the contrary in this Final DIP Order, (i) except as set forth in (g)

below, disbursements by the Debtors from the Carve Out Reserves shall not constitute "Loans"

(as defined in the DIP Facility Documents) or increase or reduce the DIP Obligations, but shall be

deemed subordination of the DIP Obligations and the Prepetition Obligations, (ii) the failure of

the Carve Out Reserves to satisfy in full the Allowed Professional Fees shall not affect the priority

of the Carve Out, and (iii) in no way shall the Initial Budget, Approved Budget, Carve Out,

Post-Carve Out Trigger Notice Cap, Carve Out Reserves, or any of the foregoing be construed as

a cap or limitation on the amount of the Allowed Professional Fees due and payable by the Debtors.

For the avoidance of doubt and notwithstanding anything to the contrary in this Final DIP Order,

the DIP Facility Documents, or in the Prepetition Loan Agreement, the Carve Out shall be senior

to all liens and claims securing the DIP Facility, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, and any and all other forms of adequate protection, liens, or claims securing the DIP Obligations or the Prepetition Obligations.

(e)     Payment of Allowed Professional Fees Prior to the Termination Declaration Date.  Any payment or reimbursement made prior to the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall reduce the Carve Out and, to the extent paid from the Carve Out Reserve, shall permanently reduce the Carve Out Reserve dollar-for-dollar.

(f)     No Direct Obligation to Pay Allowed Professional Fees.  Neither the DIP Lender nor the Prepetition Secured Parties shall be responsible for the payment or reimbursement of any fees or disbursements of any Professional Person incurred in connection with these Chapter 11 Cases or any Successor Cases.  Nothing in this Final DIP Order or otherwise shall be construed to obligate the DIP Lender or the Prepetition Secured Parties, in any way, to pay compensation to, or to reimburse expenses of, any Professional Person or to guarantee that the Debtors have sufficient funds to pay such compensation or reimbursement.

(g)     Payment of Carve Out On or After the Termination Declaration Date.  Any payment or reimbursement made on or after the occurrence of the Termination Declaration Date in respect of any Allowed Professional Fees shall permanently reduce the Carve Out on a dollar-for-dollar basis.  Any funding of the Carve Out shall be added to, and made a part of, the DIP Obligations secured by the DIP Collateral and shall be otherwise entitled to the protections granted under this Final DIP Order, the DIP Facility Documents, the Bankruptcy Code, or applicable law.

5.11.  _Reservation of Third-Party Challenge Rights_.  The stipulations, releases, agreements, and admissions contained in this Final DIP Order, including, without limitation, paragraph E hereof, and the releases contained in clause (viii) thereof (collectively, the "Debtors' Stipulations"), shall be binding on the Debtors in all circumstances.  The Debtors' Stipulations shall be binding on all entities (as defined in the Bankruptcy Code), including, without limitation, each and every creditor and party in interest, including, without limitation, the Committee, unless, and solely to the extent that any such creditor or party in interest, including the Committee, timely requests and thereafter obtains standing and requisite authority and has timely commenced an adversary proceeding or other appropriate contested matter (subject to the limitations contained herein, including, _inter alia_, in this Section 5.11) by no later than (i) November 23, 2020 and (ii) any such later date as has been agreed to, in writing, without further order of the Court by the DIP Lender or Prepetition Lenders, as applicable (such time period established by the foregoing clauses (i) and (ii), the "Challenge Period"), against any Prepetition Lender in connection with matters related to, without limitation, the Debtors' Stipulations, the Prepetition Loan Agreement, the Prepetition Obligations, the Prepetition Liens, and the Prepetition Collateral, including by, without limitation, (A) objecting to or challenging the amount, validity, perfection, enforceability, priority, or extent of the Prepetition Obligations or Prepetition Liens, or (B) otherwise asserting or prosecuting any action for preferences, fraudulent transfers, or conveyances, other avoidance power claims or any other claims, counterclaims, or causes of action, objections, contests, or defenses with respect to the Prepetition Obligations, Prepetition Liens, or the acts or omissions of any Prepetition Lender (a "Challenge Proceeding"); _provided, however_, that a motion seeking standing and authority to commence a Challenge Proceeding (a "Standing Motion") that is filed before the expiration of the Challenge Period shall toll the Challenge Period only as to the party

that timely filed a Standing Motion, and solely with respect to the Challenge Proceeding identified in the Standing Motion, until such motion is resolved or adjudicated by the Court.  If no such Standing Motion is timely filed, then: (i) the Debtors' stipulations, admissions, agreements, and releases contained in this Final DIP Order, including, without limitation, those contained in paragraph E of this Final DIP Order, and the releases contained in clause (x) thereof, shall be binding on all parties in interest, (ii) any and all Challenge Proceedings by any party (including, without limitation, the Committee, any chapter 11 trustee, or any examiner and/or other estate representative appointed or elected in these Chapter 11 Cases, and any chapter 7 trustee and/or examiner or other estate representative appointed or elected in any Successor Case) shall be deemed to be forever waived, released, and barred; (iii) to the extent not theretofore repaid, the Prepetition Obligations shall constitute allowed claims, not subject to counterclaim, setoff, subordination, recharacterization, reduction, defense, or avoidance, for all purposes in these Chapter 11 Cases and any subsequent chapter 7 case; (iv) the Prepetition Liens on the Prepetition Collateral shall be deemed to have been, as of the Petition Date, and to be, legal, valid, binding, perfected, and of the priority specified in paragraph E hereof, not subject to defense, counterclaim, recharacterization, subordination, or avoidance; and (v) the obligations under the Prepetition Loan Agreement and the Prepetition Liens on the Prepetition Collateral shall not be subject to any other or further challenge by the Debtors, the Committee or any other party in interest, each of whom shall be enjoined from seeking to exercise the rights of the Debtors' estates, including, without limitation, any successor thereto (including, without limitation, any estate representative or a chapter 7 or chapter 11 trustee appointed or elected for any of the Debtors with respect thereto). If any Challenge Proceeding is timely commenced, the stipulations, releases, agreements, and admissions contained in paragraph E of this Final DIP Order, and the releases contained in clause

43

(x) thereof, shall nonetheless remain binding and preclusive (as provided in this paragraph) on the Debtors, the Committee, and any other person or entity, except as to any such findings and admissions that were expressly and successfully challenged in such Challenge Proceeding as set forth in a final, non-appealable order of a court of competent jurisdiction; *provided* that during the Challenge Period, up to $50,000 of the proceeds of the Cash Collateral shall be made available to the Committee prior to the expiration of the Challenge Period for investigation costs in respect of the Debtors' stipulations, release, agreements, and admissions including, without limitation, those set forth in paragraph E of this Final DIP Order. Nothing in this Final DIP Order vests or confers on any entity (as defined in the Bankruptcy Code), including the Committee, standing or authority to pursue any cause of action belonging to the Debtors or their estates, including, without limitation, claims and defenses with respect to the Prepetition Loan Agreement or the Prepetition Liens on the Prepetition Collateral. Notwithstanding any of the foregoing, if a chapter 11 trustee is appointed or these Chapter 11 Cases are converted to chapter 7 prior to the expiration of the Challenge Period, (1) the chapter 11 trustee or chapter 7 trustee, as applicable, shall have until the later of the end of the Challenge Period and twenty (20) days after the appointment of the chapter 11 trustee or the entry of an order of conversion of one or more of these Chapter 11 Cases to chapter 7, as applicable, to commence a Challenge Proceeding, subject to any further extension by order of the Court for cause, and (2) if the Committee has asserted a Challenge Proceeding prior to expiration of the Challenge Period, the chapter 11 trustee or chapter 7 trustee will stand in the shoes of the Committee in such Challenge Proceeding.

      5.12.  <u>No Modification or Stay of this Final DIP Order</u>. The DIP Lender has acted in good faith in connection with the DIP Facility and with this Final DIP Order, and their reliance

on this Final DIP Order is in good faith, and the DIP Lender is entitled to the protections of section 364(e) of the Bankruptcy Code.

5.13.    <u>Power to Waive Rights; Duties to Third Parties</u>.

(a)    Subject to the terms of the Supplemental DIP Term Sheet, the DIP Lender shall have the right (no obligation to do so shall be implied and any such waiver shall be in the DIP Lender's sole and absolute discretion) to waive any of the terms, rights, and remedies provided or acknowledged in this Final DIP Order that are in favor of the DIP Lender (the "<u>DIP Lender Rights</u>"), and shall have no obligation or duty to any other party with respect to the exercise or enforcement, or delay or failure to exercise or enforce, any DIP Lender Rights; *provided* that the DIP Lender shall obtain the prior written consent of the Prepetition Lenders, as applicable, for any waiver that affects any rights of the Prepetition Lenders, as applicable, hereunder or any treatment of the Prepetition Obligations.  Any waiver by the DIP Lender of any DIP Lender Rights shall be construed narrowly and not be nor shall it constitute a continuing waiver unless otherwise expressly provided therein.  Any delay in or failure to exercise or enforce any DIP Lender Right shall neither constitute a waiver of such DIP Lender Right, subject the DIP Lender to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the DIP Lender.

(b)    Each of the Prepetition Lenders shall have the right (no obligation to do so shall be implied and any such waiver shall be in the Prepetition Lenders' absolute discretion) to waive any of the terms, rights, and remedies provided or acknowledged in this Final DIP Order that are in favor of the Prepetition Lenders, respectively (as applicable, the "<u>Prepetition Lender Rights</u>"), and shall have no obligation or duty to any other party with respect

to the exercise or enforcement, or delay or failure to exercise or enforce, any Prepetition Lender Rights; *provided* that the Prepetition Lenders, as applicable, shall obtain the prior written consent of the DIP Lender for any waiver that affects any rights of the DIP Lender hereunder or any treatment of the DIP Obligations. Any waiver by either the Prepetition Lenders of any Prepetition Lender Rights shall be construed narrowly and not be, nor shall it constitute, a continuing waiver unless otherwise expressly provided therein. Any delay in or failure to exercise or enforce any Prepetition Lender Right shall neither constitute a waiver of such Prepetition Lender Right, subject the Prepetition Lenders to any liability to any other party, nor cause or enable any party other than the Debtors to rely upon or in any way seek to assert as a defense to any obligation owed by the Debtors to the Prepetition Lenders.

5.14. <u>DIP and Other Expenses; Procedures for Payment of DIP Lender's and Prepetition Lenders' Professional Fees and Expenses</u>. Any time following the closing of the DIP Facility (at which time all then accrued fees and costs shall be reimbursed not subject to the provisions of this paragraph 5.14) that professionals for the DIP Lender or the Prepetition Secured Parties seek payment of postpetition fees and expenses from the Debtors, each professional shall provide copies of its invoices (which shall not be required to be maintained in any particular format, but shall include a general, brief description of the nature of the matters for which services were performed, and which may be redacted or modified to the extent necessary to delete any information subject to the attorney-client privilege, any information constituting attorney work product, or any other confidential information, and the provision of such invoices shall not constitute any waiver of the attorney-client privilege or of any benefits of the attorney work product doctrine) to the Debtors, the U.S. Trustee, and counsel for the Committee. If no written objection is received by the applicable professional by 12:00 p.m., prevailing Eastern Time, on the

date that is ten (10) days after delivery of such invoice to the Debtors, the U.S. Trustee, and the Committee, such fees and expenses shall be deemed allowed in full, and with respect to a DIP Lender, DIP Lender professional, Prepetition Secured Party, or Prepetition Secured Party professional paid promptly by the Debtors.  If an objection to a professional's invoice is timely received by such professional, such fees and expenses shall be deemed allowed in the undisputed amount of the invoice, and this Court shall have jurisdiction to determine the disputed portion of such invoice if the parties are unable to resolve the dispute consensually.  Pending such resolution, the undisputed portion of any such invoice will be deemed allowed and paid promptly by the Debtors.  The Debtors are authorized and hereby directed to immediately pay, under entry of this Final DIP Order, all reasonable and documented fees, costs and expenses, including fees and expenses of counsel, of the DIP Lender and the Prepetition Secured Parties incurred on or prior to (including prior to the Petition Date) the date of entry of this Final DIP Order without the need for any professional engaged by the DIP Lender or Prepetition Secured Parties to first deliver a copy of its invoice as provided for herein.  The DIP Lender professionals and the Prepetition Secured Party professionals shall not be required to comply with the U.S. Trustee fee guidelines or file applications or motions with, or obtain approval of, the Court for the payment of any of their fees or out-of-pocket expenses (other than with respect to disputed amounts).  Payments of any amounts set forth in this paragraph are not subject to recharacterization, avoidance, subordination, or disgorgement.

        5.15.   No Unauthorized Disposition of Collateral.   The Debtors shall not sell, transfer, encumber, reject contracts or leases, otherwise dispose of, or enter into any contract or lease post-Petition Date for, any portion of the DIP Collateral (including equipment and Cash Collateral), subject to the consent of the DIP Lender, other than in ordinary course of the

Debtors' business or pursuant to the terms of this Final DIP Order or as permitted by the DIP Facility Documents or further order of the Court.

5.16.    No Waiver.    The failure or delay of the DIP Lender or the Prepetition Lenders, as applicable, to seek relief or otherwise exercise their rights and remedies under the DIP Facility Documents, the DIP Facility, the Prepetition Loan Documents, the Prepetition Obligations, or the Final DIP Order, as applicable, shall not constitute a waiver of any of the DIP Lender's or Prepetition Lenders' rights hereunder, thereunder, or otherwise.  Notwithstanding anything herein, the entry of this Final DIP Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair the rights of the DIP Lender or the Prepetition Lenders under the Bankruptcy Code or under non-bankruptcy law, including, without limitation, the rights of the DIP Lender and the Prepetition Lenders to: (a) request conversion of these Chapter 11 Cases to cases under chapter 7, dismissal of the Chapter 11 Cases, or the appointment of a trustee in these Chapter 11 Cases; (b) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a plan; or (c) exercise any of the rights, claims, or privileges (whether legal, equitable, or otherwise) of the DIP Lender or the Prepetition Lenders.

5.17.    Maintenance of Collateral.    Unless the DIP Lender and Prepetition Lenders otherwise consent in writing, until (i) the indefeasible payment in full or otherwise acceptable satisfaction of all DIP Obligations and (ii) the termination of the DIP Lender's obligations to extend credit under the DIP Facility, the Debtors shall comply with the covenants contained in the Supplemental DIP Term Sheet regarding the maintenance and insurance acceptable to the DIP Lender of the DIP Collateral.  Upon entry of this Final DIP Order and to the fullest extent provided by applicable law, each of the DIP Lender and Prepetition Lenders shall be, and shall be

deemed to be, without any further action or notice, named as additional insureds and loss payees on each insurance policy maintained by the Debtors that in any way relates to the DIP Collateral.

5.18.    Reservation of Rights.    The terms, conditions, and provisions of this Final DIP Order are in addition to and without prejudice to the rights of DIP Lender and Prepetition Lenders, as applicable, to pursue any and all rights and remedies under the Bankruptcy Code, the DIP Facility Documents, the Prepetition Loan Documents, or any other applicable agreement or law, including, without limitation, rights to seek adequate protection and/or additional or different adequate protection, to seek relief from the automatic stay, to seek an injunction, to oppose any request for use of Cash Collateral or granting of any interest in the DIP Collateral or the Prepetition Collateral, as applicable, or priority in favor of any other party, to object to any sale of assets, and to object to applications for allowance and/or payment of compensation of professionals or other parties seeking compensation or reimbursement from the Debtors' estates.

5.19.    Binding Effect.

(a)    All of the provisions of this Final DIP Order and the DIP Facility Documents, the DIP Obligations, all DIP Liens, Adequate Protection Liens, and DIP Superpriority Claims, and the Adequate Protection Superpriority Claim, and all other claims granted hereunder in favor of DIP Lender and the Prepetition Secured Parties, and any and all rights, remedies, privileges, immunities and benefits in favor of the DIP Lender, and Prepetition Secured Parties, respectively, set forth herein, including, without limitation, the parties' acknowledgements, stipulations, and agreements in paragraph E of this Final DIP Order, all expressly subject to the rights of the Committee under Section 5.11 hereof (without each of which the DIP Lender would not have entered into or provided funds under the DIP Facility Documents and the Prepetition

Lenders would not have consented to the priming of the Prepetition Liens as set forth herein and use of Cash Collateral provided for hereunder) provided or acknowledged in this Final DIP Order, and any actions taken pursuant thereto, shall be effective and enforceable *nunc pro tunc* to the Petition Date immediately upon entry of this Final DIP Order and not subject to any stay of execution or effectiveness (all of which are hereby waived), notwithstanding Bankruptcy Rules 4001(a)(3), 6004(h), 6006(d), 7062, and 9024, or any other Bankruptcy Rule, or Rule 62(a) of the Federal Rules of Civil Procedure, shall continue in full force and effect, and shall survive entry of any other order or action, including, without limitation, any order which may be entered confirming any chapter 11 plan providing for the refinancing, repayment, or replacement of the DIP Obligations, converting one or more of these Chapter 11 Cases to any other chapter under the Bankruptcy Code, dismissing one or more of these Chapter 11 Cases, approving any sale of any or all of the DIP Collateral or the Prepetition Collateral, or vacating, terminating, reconsidering, revoking, or otherwise modifying this Final DIP Order or any provision hereof.

(b)     No order dismissing one or more of these Chapter 11 Cases under section 1112 of the Bankruptcy Code or otherwise may impair the DIP Superpriority Claims, the Adequate Protection Superpriority Claim, and, subject to Section 5.11 hereof, the DIP Lender's and the Prepetition Secured Parties' respective liens on and security interests in the DIP Collateral and the Prepetition Collateral, respectively, and all other claims, liens, adequate protections, and other rights granted pursuant to the terms of this Final DIP Order, which shall continue in full force and effect notwithstanding such dismissal until the DIP Obligations and Prepetition Obligations are indefeasibly paid and satisfied in full.  Notwithstanding any such dismissal, this Court shall retain jurisdiction for the purposes of enforcing all such claims, liens, protections, and rights referenced in this paragraph and otherwise in this Final DIP Order.

(c)     The DIP Lender is entitled to the benefits under section 364(e) of the Bankruptcy Code to the fullest extent permitted by law, including in the event this Court modifies, reverses, vacates, or stays any of the provisions of this Final DIP Order or any of the DIP Facility Documents, such modifications, reversals, vacatur, or stays shall not affect, prior to the effective date of such modification, reversal, vacatur, or stay, notice of which shall be promptly provided to the DIP Lender and Prepetition Lenders, the (i) validity, priority, or enforceability of any DIP Obligations, (ii) validity, priority, or enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, and the Adequate Protection Superpriority Claims, or (iii) rights or priorities of the DIP Lender or the Prepetition Lenders pursuant to this Final DIP Order with respect to the DIP Collateral or any portion of the DIP Obligations.  All such liens, security interests, claims and other benefits shall be governed in all respects by the original provisions of this Final DIP Order, and the DIP Lender and the Prepetition Lenders shall be entitled to all the rights, remedies, privileges and benefits granted hereto, including the liens and priorities granted herein.

(d)     This Final DIP Order shall be binding upon the Debtors, each borrower, guarantor, or other obligor under the Prepetition Loan Documents, all parties in interest in these Chapter 11 Cases, and their respective successors and assigns, including, without limitation, (i) any trustee or other fiduciary appointed in these Chapter 11 Cases or any subsequently converted bankruptcy cases of any Debtor and (ii) any liquidator, receiver, administrator, or similar such person or entity appointed in any jurisdiction or under any applicable law.  This Final DIP Order shall inure to the benefit of the Debtors, DIP Lender, Prepetition Lenders, and each of their respective successors and assigns.

5.20.    <u>Discharge</u>.  The DIP Obligations and the obligations of the Debtors with respect to adequate protection hereunder, including granting the Adequate Protection Liens and the Adequate Protection Superpriority Claims, shall not be discharged by the entry of an order confirming any plan of reorganization in any of these Chapter 11 Cases, notwithstanding the provisions of section 1141(d) of the Bankruptcy Code, unless such obligations have been indefeasibly paid in full in cash or credit bid in their full amount in any sale of the DIP Collateral or Prepetition Collateral, on or before the effective date of such confirmed plan of reorganization, or each of the DIP Lender or the Prepetition Lenders, as applicable, has otherwise agreed in writing.

5.21.    <u>No Priming of Prepetition Obligations or DIP Obligations</u>. Notwithstanding anything to the contrary in this Final DIP Order, from and after the entry of this Final DIP Order, absent the express written consent of the Prepetition Lenders and the DIP Lender, no Debtor shall seek authorization from this Court to obtain or incur any indebtedness or enter into an alternative financing facility from a party other than the DIP Lender (a "<u>Competing DIP Facility</u>") seeking to impose liens on any DIP Collateral ranking on a *pari passu* or priming basis with respect to the DIP Liens held by the DIP Lender; *provided, however*, that nothing in this Final DIP Order shall preclude the Debtors from seeking authorization to incur any indebtedness or enter into any Competing DIP Facility that provides for indefeasible payment in full of the DIP Obligations at the initial closing of such Competing DIP Facility, subject to the consent of the Prepetition Lenders, as applicable.

5.22.  <u>Section 506(c) Waiver</u>.  No costs or expenses of administration which have been or may be incurred in these Chapter 11 Cases at any time (including, without limitation, any costs and expenses incurred in connection with the preservation, protection, or enhancement of

value by the DIP Lender upon the DIP Collateral, or by the Prepetition Secured Parties upon the Prepetition Collateral, as applicable) shall be charged against the DIP Lender, or Prepetition Secured Parties, or any of the DIP Obligations or Prepetition Obligations or the DIP Collateral or the Prepetition Collateral pursuant to sections 105 or 506(c) of the Bankruptcy Code or otherwise without the prior express written consent of the affected DIP Lender and/or affected Prepetition Lenders, in their sole discretion, and no such consent shall be implied, directly or indirectly, from any other action, inaction, or acquiescence by any such agents or creditors (including, without limitation, consent to the Carve Out or the approval of any budget hereunder). The Debtors shall not file any motion or other pleading seeking to surcharge DIP Collateral prior to the entry of the Final DIP Order.

5.23.    <u>Section 552(b) Waiver</u>. As a condition to obtaining financing under the DIP Facility and using Cash Collateral as provided in this Final DIP Order, the Prepetition Lenders are and shall each be entitled to all of the rights and benefits of section 552(b) of the Bankruptcy Code and the "equities of the case" exception under section 552(b) shall not apply to the DIP Lender, the DIP Obligations, and the Prepetition Lenders, or the Prepetition Obligations. The Debtors shall not file any motion or other pleading seeking to limit the DIP Liens on the DIP Collateral.

5.24.    <u>No Marshaling/Application of Proceeds</u>.

(a)    In no event shall the DIP Lender, or the Prepetition Lenders be subject to the equitable doctrine of "marshaling" or any similar doctrine with respect to the DIP Collateral or the Prepetition Collateral, as applicable, and all proceeds shall be received and

applied in accordance with the DIP Facility Documents and the Prepetition Loan Documents, as applicable.

(b)     Notwithstanding anything to the contrary in this Final DIP Order, the DIP Obligations shall be satisfied from the proceeds of DIP Collateral.

5.25.   <u>Limits on Lender Liability</u>.

(a)     Subject to Section 5.11 hereof, in determining to make any loan under the Supplemental DIP Term Sheet, authorizing the use of Cash Collateral or in exercising any rights or remedies as and when permitted pursuant to this Final DIP Order or the DIP Facility Documents, the DIP Lender and the Prepetition Lenders shall not be deemed to (i) be in control of the operations of the Debtors or to be acting as a "controlling person," "responsible person," or "owner or operator" with respect to the operation or management of the Debtors, so long as the such party's actions do not constitute, within the meaning of 42 U.S.C. § 9601(20)(F), actual participation in the management or operational affairs of a facility owned or operated by a Debtor, or otherwise cause liability to arise to the federal or state government or the status of responsible person or managing agent to exist under applicable law (as such terms, or any similar terms, are used in the Internal Revenue Code, WARN Act, the United States Comprehensive Environmental Response, Compensation and Liability Act, 42 U.S.C. §§ 9601 et seq., as amended, or any similar federal or state statute) or (ii) owe any fiduciary duty to any of the Debtors.  Furthermore, nothing in this Final DIP Order shall in any way be construed or interpreted to impose or allow the imposition upon any of the DIP Lender or the Prepetition Lenders of any liability for any claims

arising from the prepetition or postpetition activities of any of the Debtors and their respective affiliates (as defined in section 101(2) of the Bankruptcy Code).

(b)     Nothing in this Final DIP Order or the DIP Facility Documents shall permit the Debtors to violate 28 U.S.C. § 959(b).

(c)     As to the United States, its agencies, departments, or agents, nothing in this Final DIP Order or the DIP Facility Documents shall discharge, release or otherwise preclude any valid right of setoff or recoupment that any such entity may have.

5.26.   Release.   Subject to Section 5.11 of this Final DIP Order, each of the Debtors, their estates, the Borrower, Holdings II and the Credit Parties, on their own behalf and on behalf of each of their past, present and future predecessors, successors, heirs, subsidiaries, and assigns, hereby forever, unconditionally, permanently, and irrevocably release, discharge, and acquit the Released Parties of and from any and all claims, controversies, disputes, liabilities, obligations, demands, damages, expenses (including, without limitation, attorneys' fees), debts, liens, actions, and causes of action of any and every nature whatsoever, whether arising in law or otherwise, and whether known or unknown, matured or contingent, arising under, in connection with, or relating to (i) the DIP Facility or the DIP Facility Documents or (ii) the Prepetition Loan Documents, as applicable, including, without limitation, (a) any "lender liability" or equitable subordination claims or defenses, (b) any and all "claims" (as defined in the Bankruptcy Code) and causes of action arising under the Bankruptcy Code, and (c) any and all offsets, defenses, claims, counterclaims, set off rights, objections, challenges, causes of action, and/or choses in action of any kind or nature whatsoever, whether arising at law or in equity, including any recharacterization, recoupment, subordination, avoidance, or other claim or cause of action arising under or pursuant to section 105 or chapter 5 of the Bankruptcy Code or under any other similar

provisions of applicable state, federal, or foreign law, including, without limitation, any right to assert any disgorgement or recovery, in each case, with respect to the extent, amount, validity, enforceability, priority, security, and perfection of any of the DIP Obligations, the DIP Facility Documents, the DIP Liens, the Prepetition Obligations, the Prepetition Loan Documents, or the Prepetition Liens and further waive and release any defense, right of counterclaim, right of setoff, or deduction to the payment of the DIP Obligations or the Prepetition Obligations that the Debtors now have or may claim to have against the Released Parties, arising under, in connection with, based upon, or released to any and all acts, omissions, conduct undertaken, or events occurring prior to entry of the First Interim DIP Order.

5.27. <u>Landlords</u>. Notwithstanding anything to the contrary in this Final DIP Order, the DIP Lender or the Prepetition Lenders may only enter upon a leased premises after a DIP Termination Event in accordance with (i) a separate written agreement by and between the DIP Lender or the Prepetition Lenders, as applicable, and any applicable landlord, (ii) pre-existing rights under any applicable lease agreement and non-bankruptcy law, or (iii) entry of an order of this Court obtained by motion of the DIP Lender or the Prepetition Lenders, as applicable, on such notice to the applicable landlord, as shall be required by this Court.

5.28. <u>Rejected Stub Rent Reserve</u>. Notwithstanding anything to the contrary in this Final DIP Order, at the time of the Sale to the Stalking Horse Bidder or any other Successful Bidder, the Debtors shall fund a reserve with cash on hand in an amount (the "<u>Rejected Stub Rent Amount</u>") equal to the unpaid rent with respect to the portion of the month of September 2020 on and after the Petition Date that relates to unexpired leases of non-residential real property not assumed by the Stalking Horse Bidder[6] or any other Successful Bidder (such leases,

---

[6] Terms used in this section 5.28 but not otherwise defined in this Final DIP Order shall have the meaning

the "Non-Assumed Leases"), which Rejected Stub Rent Amount shall be replenished by the Stalking Horse Bidder or any other Successful Bidder to the Debtors at the time of closing of the Sale in an amount equal to the Rejected Stub Rent Amount.  The Debtors will deposit the Rejected Stub Rent Amount in a segregated account and make commercially reasonable efforts to reconcile the Rejected Stub Rent Amount with the landlords of the Non-Assumed Leases promptly after the closing of the Sale.  Following the reconciliation of stub rent claims for landlords of the Non-Assumed Leases, any excess Rejected Stub Rent Amount shall be returned to the Stalking Horse Bidder or any other Successful Bidder, as applicable.

5.29.    DAXKO ACH Processing Agreements.  Notwithstanding anything to the contrary contained herein, nothing in this Final DIP Order or the DIP Facility Documents shall (i) alter, modify, prejudice, impair or otherwise limit DAXKO LLC's, Motionsoft, Inc.'s, or their affiliates' (collectively, "DAXKO") rights, claims, interests, and defenses (a) of setoff and/or recoupment under, relating to or arising from applicable law or any agreements with any of the Debtors, or (b) with respect to any proposed assignment of the Debtors' agreements with DAXKO or any licenses the Debtors may have to use DAXKO's intellectual property, including without limitation, any software licenses (collectively the "DAXKO Agreements and Licenses"), nor (ii) be deemed to have approved or effectuated the assumption and/or assignment of the DAXKO Agreements and Licenses, or any rights thereunder.

5.30.    Survival.  The provisions of this Final DIP Order, the validity, priority, and enforceability of the DIP Liens, the DIP Superpriority Claims, the Adequate Protection Liens, the Adequate Protection Superpriority Claims, and any actions taken pursuant hereto shall survive,

---

ascribed to them in the *Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling an Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Contracts, (V) Approving the Sale of the Debtors' Assets Free and Clear, and (IV) Granting Related Relief* [Docket No. 208] (the "Bid Procedures Order").

and shall not be modified, impaired or discharged by, entry of any order that may be entered (a) confirming any plan of reorganization in any of these Chapter 11 Cases, (b) converting any or all of these Chapter 11 Cases to a case under chapter 7 of the Bankruptcy Code, (c) dismissing any or all of these Chapter 11 Cases, (d) terminating the joint administration of these Chapter 11 Cases or any other act or omission, (e) approving the sale of any DIP Collateral pursuant to section 363(b) of the Bankruptcy Code (except to the extent permitted by the DIP Facility Documents), or (f) pursuant to which the Court abstains from hearing any of these Chapter 11 Cases.  The terms and provisions of this Final DIP Order, including the claims, liens, security interests, and other protections (as applicable) granted to the DIP Lender and the Prepetition Lenders pursuant to this Final DIP Order, notwithstanding the entry of any such order, shall continue in any of these Chapter 11 Cases, following dismissal of any of these Chapter 11 Cases or any Successor Cases, and shall maintain their priority as provided by this Final DIP Order until (i) in respect of the DIP Facility, all of the DIP Obligations, pursuant to the DIP Facility Documents and this Final DIP Order, have been indefeasibly paid in full in cash (such payment being without prejudice to any terms of provisions contained in the DIP Facility which survive such discharge by their terms) and all commitments to extend credit under the DIP Facility are terminated, and (ii) in respect of the Prepetition Obligations, all of the adequate protection obligations owed to the Prepetition Lenders provided for in this Final DIP Order and under the Prepetition Loan Documents have been indefeasibly paid in full in cash.

5.31.  <u>Proofs of Claim</u>.  None of the Prepetition Secured Parties nor the DIP Lender shall be required to file proofs of claim in any of these Chapter 11 Cases or subsequent cases of any of the Debtors under any chapter of the Bankruptcy Code, and the Debtors' Stipulations in this Final DIP Order shall be deemed to constitute a timely filed proof of claim

against the applicable Debtor.  Notwithstanding the foregoing, any Prepetition Secured Party is hereby authorized and entitled, in its discretion, but not required, to file (and amend and/or supplement, as applicable) proofs of claim or a master proof of claim for any claims of any Prepetition Lender arising from the Prepetition Loan Documents or in respect of the Prepetition Obligations; *provided*, however, that nothing in this Final DIP Order shall waive the right of any Prepetition Secured Party to file its own proof of claim against any of the Debtors.

5.32.    No Third-Party Rights.  Except as specifically provided for herein, this Final DIP Order does not create any rights for the benefit of any third party, creditor, equity holders, or any direct, indirect, or incidental beneficiary.

5.33.    No Avoidance.  Subject to Section 5.11 hereof, no obligations incurred or payments or other transfers made by or on behalf of the Debtors on account of the DIP Facility shall be avoidable or recoverable from the DIP Lender under any section of the Bankruptcy Code, or any other federal, state, or other applicable law.

5.34.    Reliance on Final DIP Order.    All postpetition advances under the DIP Facility Documents are made in reliance on this Final DIP Order.

5.35.    Payments Free and Clear.  Any and all payments or proceeds remitted to the DIP Lender or, subject to Section 5.11 hereof, the Prepetition Lenders, pursuant to the provisions of this Final DIP Order, any subsequent order of this Court or the DIP Facility Documents, shall, subject to the terms of this Section 5.34, be irrevocable, received free and clear of any claims, charge, assessment, or other liability, including, without limitation, any such claim or charge arising out of or based on, directly or indirectly, section 506(c) of the Bankruptcy Code or section 552(b) of the Bankruptcy Code, whether asserted or assessed by, through or on behalf of the

Debtors, and, in the case of payments made or proceeds remitted after the delivery of a Carve Out Trigger Notice.

5.36. <u>Limited Effect</u>.  In the event of a conflict between the terms and provisions of any of the DIP Facility Documents and this Final DIP Order, the terms and provisions of this Final DIP Order shall govern.

5.37. <u>Headings</u>.  Section headings used herein are for convenience only and are not to affect the construction of or to be taken into consideration in interpreting this Final DIP Order.

5.38. <u>Bankruptcy Rules</u>.  The requirements of Bankruptcy Rules 4001, 6003, and 6004, in each case to the extent applicable, are satisfied by the contents of the DIP Motion.

5.39. <u>General Authorization</u>.  The Debtors, the DIP Lender, and the Prepetition Lenders are authorized to take any and all actions necessary to effectuate the relief granted in this Final DIP Order.

5.40. <u>Retention of Jurisdiction</u>.  This Court shall retain jurisdiction and power with respect to all matters arising from or related to the implementation or interpretation of this Final DIP Order, the Supplemental DIP Term Sheet, and the other DIP Facility Documents.

5.41. <u>No Liens on Leasehold Interests</u>.  Except as specifically permitted pursuant to any written prepetition or postpetition agreement between the Prepetition Lenders and any of the Debtors' landlords, no DIP Obligations, DIP Liens, Adequate Protection Liens and Adequate Protection Superpriority Claims shall attach to or be secured by the Debtors' leases and leasehold interests.  Notwithstanding the foregoing, such liens and claims may attach to the proceeds of the leases.

**Dated: October 16th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**