# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

```
-------------------------------------------------------x
                                                       :
In re                                                  :  Chapter 11
                                                       :
TOWN SPORTS INTERNATIONAL, LLC,:
  et al.,[1]                                           :  Case No. 20-12168 (CSS)
                                                       :
                                                       :  (Jointly Administered)
        Debtors.                                       :
                                                       :  Objection Deadline: October 23, 2020 at 4:00 p.m. (ET)
                                                       :  Hearing Date: November 3, 2020 at 12:00 p.m. (ET)
                                                       :  Related to Docket Nos. 208, 278
                                                       :
-------------------------------------------------------x
```

### LIMITED OBJECTION OF COUNTRY VIEW COMMONS, LLC, FEDERAL REALTY INVESTMENT TRUST, STORE MASTER FUNDING XI, LLC, AND THE MACERICH COMPANY, TO SALE AND DEBTORS' NOTICE TO CONTRACT COUNTERPARTIES TO POTENTIALLY ASSUMED EXECUTORY CONTRACTS AND UNEXPIRED LEASES

Country View Commons, LLC, Federal Realty Investment Trust, Store Master Funding XI, LLC, and The Macerich Company (collectively, the "Landlords") hereby file this limited objection (the "Objection") to sale and to Debtors' *Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [D.I. 278] (the "Cure Notice"), and in support of this Objection, respectfully represent as follows:

## I.    BACKGROUND FACTS

1. On September 14, 2020 (the "Petition Date"), Town Sports International, LLC (the "Debtors") filed their voluntary petitions for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). The Debtors continue to operate their businesses

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. A complete list of all the Debtors in these jointly administered cases, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports.

and manage their properties as debtors in possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.[2]

2. The Debtors lease retail space (the "Premises") from the Landlords pursuant to unexpired leases of nonresidential real property (individually, a "Lease," and collectively, the "Leases") at the commercial and shopping center locations (the "Centers") set forth in detail in paragraph 20 below.

3. The Leases are leases "of real property in a shopping center" as that term is used in Section 365(b)(3). *See In re Joshua Slocum, Ltd.*, 922 F.2d 1081, 1086-87 (3d Cir. 1990).

4. The Debtors filed a Motion on October 2, 2020 seeking *inter alia*, approval of various bidding procedures (the "Bidding Procedures") [D.I. 160] to govern the sale of certain of Debtors' Assets (the "Sales") to Tacit Capital LLC ("Tacit"), the Stalking Horse Bidders (the "Stalking Horse Bidder") or another Successful Bidder, following the Auction. As more fully set forth in the Motion, the Auction and Sale includes the assumption and assignment of certain of the Debtors' non-residential real property leases, including some or all of the Leases.

5. On October 9, 2020, the Court entered an order approving the procedures to govern the Sale in accordance with the Motion [D.I. 208] (the "Bidding Procedures Order").

6. The Bidding Procedures Order approved the form of Cure Notice, which was filed and served by the Debtors on October 16, 2020. The Cure Notices identify, *inter alia*, certain unexpired leases that may be assumed and assigned in connection with the Sales to a Successful Bidder following the Auction, along with the amount that must be paid to cure any

---

[2] Unless otherwise specified, all statutory references to "Section" are to 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code").

defaults existing under such unexpired leases as of the Petition Date, based upon the Debtors' books and records.

7. The Bidding Procedures Order established October 26, 2020 as the deadline for submission of bids and scheduled an auction for October 28, 2020. Because October 23, 2020 was established as the deadline for filing cure objections, as of the filing of this Objection, Landlords do not know who will ultimately be selected as the Successful Bidder. Landlords file this Objection in order to preserve all rights with respect to any assumption and assignment of their Leases to a Successful Bidder.

**I.    ARGUMENT**

**General Objections to Assumption and Assignment of Leases**

8. While Landlords do not generally object to a sale of the Debtors' assets to maximize the value of the estate for the benefit of all creditors, including Landlords, Landlords do object to any proposed assumption and assignment of the Leases unless Debtors and/or the Successful Bidder comply with all of the requirements of Sections 365 of the Bankruptcy Code. Absent the ability, or willingness, of the Debtors and proposed assignee to satisfy said requirements, any proposed assumption and assignment must be denied. In addition, the amounts set forth in the Cure Notice for the Leases do not accurately reflect the total amount owing under the Leases, and do not provide for the payment of certain accruing charges under the Leases.

**Any Assumption and Assignment Must Comply with the Terms of the Leases.**

9. Through the BAPCPA amendments, "Section 365(f)(1) was amended to make sure that all of the provisions of Section 365(b) are adhered to and that 365(f) of the Code does not override Section 365(b)." Floor Statement of Senator Orrin Hatch, 151 Cong. Rec. S.

2459, 2461-62 (daily ed. March 10, 2005). In explaining the change to Section 365(f)(1), Senator Hatch stated:

> The bill helps clarify that an owner should be able to retain control over the mix of retail uses in a shopping center. When an owner enters into a use clause with a retail tenant forbidding assignments of the lease for a use different than that specified in the lease, that clause should be honored. Congress has so intended already, but bankruptcy judges have sometimes ignored the law.

151 Cong. Rec. S. 2459, 2461 (daily ed. March 10, 2005).

10. The changes embodied in the BAPCPA specifically preserve a landlord's right to enforce use and other lease provisions. Again, Senator Hatch's remarks in the Congressional Record clarify the intent behind Section 365(b) and 365(f):

> A shopping center operator . . . must be given broad leeway to determine the mix of retail tenants it leases to. Congress decided that use or similar restrictions in a retail lease, which the retailer cannot evade under nonbankruptcy law, should not be evaded in bankruptcy. It is my understanding that some bankruptcy judges have not followed this mandate. Under another provisions of the Code, Section 365(f), a number of bankruptcy judges have misconstrued the Code and allowed the assignment of a lease even though terms of the lease are not being followed. (emphasis added).

151 Cong. Rec. S. 2459, 2461-62 (daily ed. March 10, 2005).

11. BAPCPA clarified Section 365 to reflect the Congressional intent that a Debtor cannot use Section 365(f)(1) to void lease provisions, and to overrule those prior court decisions that did not strictly enforce lease terms. The predicate to the limited ability to assign a lease over a landlord's objection under Section 365(f) is that such assignment must be subject to the protections of Section 365(b)(1) and (3).

12. Section 365(f)(1) does not modify or override Section 365(b). <u>Trak Auto Corp. v. West Town Ctr. LLC (In re Trak Auto Corp.)</u>, 367 F.3d 237, 243-44 (4th Cir. 2004) (bankruptcy courts could not use the general anti-assignment provision of Section 365(f)(1) to trump the specific protections granted to landlords in Section 365(b)(3)(C)). Any assignment

- 4 -

must remain subject to all provisions of the Leases, including those provisions concerning use, radius, exclusivity, tenant mix and balance.

## **Adequate Assurance of Future Performance**

13.     Pursuant to Section 365(f)(2)(B) of the Bankruptcy Code Debtors may only assume and assign the Landlords' Leases if "adequate assurance of future performance by the assignee of such . . . lease is provided, . . . ." As set forth in Section 365(b)(3), adequate assurance of future performance in the shopping center context includes, inter alia, adequate assurance:

> (A)     of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;
>
> * * *
>
> (C)     that assumption and assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as radius, location, use or exclusivity provision, and will not breach any such provision contained in any other lease, . . . relating to the shopping center; . . . .

14.     The burden of proof on adequate assurance issues is with the Debtors. See In re Lafayette Radio Elecs. Corp., 12 B.R. 302, 312 (Bankr. E.D.N.Y. 1991).

15.     To date, Landlords have received certain adequate assurance information relating to the Stalking Horse Bidder, which Landlords continue to review and engage in discussions with the Stalking Horse Bidder regarding additional information. As the Bid Deadline has not yet passed, no information is available for any other bidders. Landlords demand strict proof of any Successful Bidder's ability to provide adequate assurance of future performance at the Sale Hearing.

16. Further, since the Debtors' stores are located in shopping centers, Debtors and the Successful Bidders must meet the heightened requirements of adequate assurance that the Bankruptcy Code contemplates in the case of such assignments. The Bankruptcy Code requires more than the basic adequate assurance of future performance of the leases under Section 365(b)(1)(C). In re Sun TV and Appliances, Inc., 234 B.R. 356, 359 (Bankr. D. Del. 1999). In order to assume and assign shopping center leases, Debtors must satisfy the heightened requirements set forth in 11 U.S.C. § 365(b)(3)(A) – (D). See Joshua Slocum, 922 F.2d at 1086; see also L.R.S.C. Co. v. Rickel Home Centers, Inc. (In re Rickel Home Centers, Inc.), 209 F. 3d 291, 299 (3d Cir. 2000). The heightened adequate assurance requirements include the following:

- The source of rent and assurance that the financial condition and operating performance of the proposed assignee and its guarantors, if any, must be similar to the financial condition and operating performance of the debtor and its guarantor(s), if any, as of the time the debtor became the lessee. See 11 U.S.C. § 365(b)(3)(A);

- That any percentage rent due under the lease will not decline substantially. See 11 U.S.C. § 365(b)(3)(B);

- That assumption and assignment of the lease is subject to all provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach of any such provision in any other lease, financing agreement, or master agreement relating to such shopping center. See 11 U.S.C. § 365(b)(3)(C); and

- That assumption and assignment of the lease will not disrupt the tenant mix or balance in the shopping center. See 11 U.S.C. § 365(b)(3)(D).

**Additional Security**

17. If a Successful Bidder does not possess sufficient operating experience or capitalization to satisfy Landlords' requirements, which may well be the case if the assignee is a "Newco", the assignee must also provide some type of credit enhancement as part of its adequate assurance of future performance demonstration, such as: (i) a guaranty of future performance

from a financially capable parent or other entity; (ii) a letter of credit; or (iii) a cash security deposit, as required by Section 365(l) of the Bankruptcy Code.

18.     Accordingly, pursuant to Section 365(l) of the Bankruptcy Code, Landlords demand that any proposed assignee post either a letter of credit or, in Landlords' sole discretion, a security deposit, equal to three (3) months rent and additional rental charges under each Lease.

## **Cure Amounts**

19.     The amounts set forth in the Cure Notices do not reflect all outstanding balances due and owing to Landlords under the Leases, and the proposed cure amounts do not account for accrued but unbilled charges which may come due in the future. The cure amount set forth by the Debtor must be modified to reflect the additional charges owing, as well as recognize the liability for accruing charges due under the Lease, as set forth herein

20.     Set forth below are Landlords' monetary cure claims for amounts due, exclusive of any sums which have become due or been paid after October 15, 2020, as more fully set forth on Exhibits 1 – 3 attached hereto and incorporated into this Objection by reference. The cure amounts are the Landlords' base cure claim amounts subject to additional qualifications and modifications (such as reimbursement of attorney's fees) as more fully set forth below.

| LANDLORD | SHOPPING CENTER | LOCATION | DEBTORS' CURE | LANDLORDS' CURE[3] | EXHIBIT |
|---|---|---|---|---|---|
| Country View Commons, LLC | Brown's Road | Smithtown, NY | $526,245 | $531,245.00 | 1 |
| Federal Realty Investment Trust | 210 14th Street | Hoboken, NJ | $0 | @ | N/A |
| Store Master Funding | 1141 SW Pine Island Road | Cape Coral, FL | $96,216.66 | $130,663.65 | 2 |
| The Macerich Company | Shops at Atlas Park | Glendale, NY | $0 | $726,707.07 | 3 |

21. In addition to the current outstanding rent and other monthly charges due under the Leases, in determining what must be paid as cure pursuant to Section 365(b), the charges referenced below must also be taken into consideration and paid, either as cure on the effective date of any assumption or assumption and assignment, or when properly billed under the Leases.

      i. <u>Attorneys' Fees, Costs and Interest</u>

22. The Leases contain provisions for recovery of attorneys' fees, costs, and interest in the event the Landlords are required to take legal action to protect their interests. The Debtors are obligated to cure all defaults under the Leases, and compensate the Landlords for their actual pecuniary losses as a result of defaults under the Leases. See 11 U.S.C. § 365(b)(1)(A) and (B). The principle is well-recognized. <u>In re LCO Enterprises</u>, 12 F.3d 938, 941 (9th Cir. 1993); <u>Elkton Associates v. Shelco Inc. (Matter of Shelco)</u>, 107 B.R. 483, 487 (Bankr. D. Del. 1989) (debtors allowed to assume lease provided it cured all pre-petition defaults).

---

[3] Landlords' Cure does not include charges arising after filing this Objection, or charges not directly billed to Landlords as of the filing of this Objection. Landlords' Cure also does not include charges that are billed directly to Debtors, including in some cases, real estate taxes. To the extent Landlords are later billed for any amount due to Debtors' failure to pay, or to the extent that there are other charges that come due under the Lease after the date of this Objection, Landlords retain and reserve the right to payment of these amounts when billed in the ordinary course under the Lease (and to amend this Objection to the extent necessary for any amounts that come due under the Leases through the date of any cure payment).

23. The Debtors (or their assignee) takes the Leases *cum onere*—subject to existing burdens. The Debtors cannot assume the favorable portions, and reject the unfavorable provisions, of their leases. In re Wash. Capital Aviation & Leasing, 156 B.R. 167, 172 (Bankr. E.D. Va. 1993). If forced to continue in the performance of the Leases, the Landlords are entitled to the full benefit of the bargain under the Leases with the Debtors. See Matter of Superior Toy and Mfg. Co., Inc., 78 F.3d 1169 (7th Cir. 1996). The "full benefit of the bargain" principle has been held to require payment of interest. "The cure of a default under an unexpired lease pursuant to 11 U.S.C. § 365 is more akin to a condition precedent to the assumption of a contract obligation than it is to a claim in bankruptcy. One of the purposes of Section 365 is to permit the debtors to continue in a beneficial contract; provided, however, that the other party to the contract is made whole at the time of the debtor's assumption of the contract." In re Entm't, Inc., 223 B.R. 141, 151 (Bankr. N.D. Ill. 1998) (citation omitted; bankruptcy court allowed interest at 18%). Interest on pre-petition lease charges continues to run from the filing of the Debtors' petitions and must be paid as a condition of the assumption of the Leases. See In re Skylark Travel, Inc., 120 B.R. 352, 355 (Bankr. S.D.N.Y. 1990). Interest calculations are, therefore, not cut short by the automatic stay, and payment of such interest is required to fully compensate Landlords for the Debtors' defaults under the Leases, and thus to properly assume the Leases. Finally, post-petition interest is allowable where such interest is provided for under the terms of the Leases. Cukierman v. Uecker (In re Cukierman), 265 F.3d 846, 853 (9th Cir. 2001).

24. Attorneys' fees and costs incurred in enforcement of the covenants, obligations, and conditions of a lease are also proper components of a cure claim, and the Debtors (or successor) must satisfy these lease charges as part of the assumption or assumption and assignment of the Leases. Entm't, Inc., 223 B.R. at 152 (citation omitted). There is no

logical distinction for purposes of Section 365 between attorneys' fees incurred in connection with pre-petition defaults and fees incurred with post-petition defaults. Id. at 154. The fact that a landlord uses bankruptcy procedures to enforce a lease should not preclude recovery of attorneys' fees and costs for such enforcement activity (particularly where the Bankruptcy Court is the exclusive forum where the landlord can obtain any relief, being foreclosed from state court relief by the automatic stay). Id., see also In re Crown Books Corp., 269 B.R. 12 (Bankr. D. Del. 2001) (Landlords' fees and costs are recoverable as a component of cure under 11 U.S.C. § 365(b)(1)); Urban Retail Props. v. Loews Cineplex Entm't Corp., et al., 2002 WL 5355479 (S.D.N.Y. Apr. 9, 2002) (where lease "provides for recovery of attorneys' fees and interest, their receipt deserves the same priority under Section 365(d)(3) as any of the debtors' other obligations that arise postpetition . . . ."); Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Incorporated), 167 F.3d 843, 850 (4th Cir. 1999). The Supreme Court has upheld the enforceability of such attorneys' fees clauses, ruling that pre-petition attorneys' fee clauses were enforceable with respect to issues peculiar to bankruptcy law. Travelers Casualty & Surety Co. of America v. Pacific Gas & Electric, 127 S. Ct. 1199, 1206 (2007).

25. Accordingly, Landlords further request that they be reimbursed for all of their actual pecuniary losses including, but not limited to, attorney's fees and costs expended with regard to Debtors' bankruptcy proceedings. To date, the Landlords estimate their attorney's fees and costs to be approximately $5,000 per Lease, as more fully set forth in Exhibits 1-3 attached hereto.

      ii.      Year-End Adjustments and Reconciliations and Indemnification

26. In addition to rent and related monthly charges, attorneys' fees, costs and interest, some charges for which the Debtors bear responsibility under the Lease have not yet been reconciled and/or adjusted from pre-petition (or even post-petition) periods. By way of

example, the Debtors occupy retail space at the Centers pursuant to a triple-net lease, where they typically pay rent and related lease charges in advance for each month.  The Debtors pay fixed minimum rent, along with a pro-rata share of expenses such as real property taxes, insurance, common area maintenance ("CAM") fees, annual percentage rent, and the like.  Certain charges, such as CAM and property taxes are estimated prospectively, billed to and paid by the tenant during the year, and then reconciled after year-end.  The reconciliation compares the amounts estimated and paid against actual charges incurred at the Center.  To the extent the estimated payments exceed actual charges, the result is a credit to the tenant.  To the extent the estimated payments do not cover actual charges incurred under the Lease, the result is an additional amount (or debit) for which the tenant is liable.  In some instances, year-end reconciliations and adjustments for previous years for the Premises may not yet be complete (i.e., year-end reconciliations and adjustments that accrued through 2019 may not yet have been billed, and such charges that are accruing for 2020 will not be billed until 2021). In other instances, certain charges may be paid in arrears, and cannot be calculated (in some cases) until a year or more after year-end.  Since Section 365(b) only requires debtors to cure defaults under their leases, and since there can be no default for failure to pay an amount that has not as yet been billed, these accrued, but unbilled, charges are not yet due under the Lease, and they do not create a current default that gives rise to a requirement of cure by the Debtors at this time.  The obligation to pay the year-end adjustments is, however, certainly a part of the obligation to provide adequate assurance of future performance.  Any attempt to assign the Leases "free and clear" of these obligations, therefore, must be denied.

27.    Debtors remain responsible for all accrued or accruing charges under the Lease, and must pay such charges when they come due under the Leases.  The Debtors (or any successful bidder) assumes and assigns the Leases subject to their terms, and must assume and

assign all obligations owing under the Leases, including obligations that have accrued but may not yet have been billed under the Leases.  Any final assumption or sale order should clearly state that the Debtors (or any successful bidder) will assume these lease obligations and pay them when due, regardless of whether they relate to the period prior to, or after, the closing of the Sales.  In addition, any provision in a sale order that purports to release the Debtors (or any successful bidder) of further liability based upon a payment of cure amounts, must specify that such release does not apply to obligations to pay accrued or accruing, but unbilled, charges that come due under the Leases.

28. In addition, the Leases require the Debtors (or any successful bidder) to indemnify and hold the Landlord harmless with respect to any existing claims which may not become known until after the assumption and assignment of the Lease, examples of which may include such claims as personal injuries at the Premises and damage to the Premises or Center by the Debtors, the successful bidder or their agents.  Any assumption or assumption and assignment of the Leases must be subject to the terms of the Leases, including the continuation of all indemnification obligations, regardless of when they arose.[4]  In the alternative, the Debtors must provide (by insurance or otherwise) that they can satisfy the indemnification obligations under the Leases for any claims that relate to the period prior to assumption or assumption and assignment of the Leases.  Nothing in any sale order should preclude the Landlord from pursuing the Debtors, their insurance, or any other party that may be liable under the Lease, and the Landlord requests that any order specifically preserve their right to pursue such rights irrespective of any resolution of cure amounts herein.[5]

---

[4] Any ability to assume and assign the Lease is subject to the protections provided by Section 365(b) and (f). Therefore, any assumption must be in accordance with all provisions of the Lease.

[5] If Debtors are covered under an "occurrence basis" insurance policy, rather than a "claims made" policy, this objection may be satisfied by proof of such insurance by the Debtors for Landlords' locations.

29. Landlords, therefore, request that in the event an assumption or assumption and assignment of the Leases is approved by the Court, language must be inserted into the Sale Order to provide that the proposed assignee shall be responsible for all unpaid year-end adjustments, whether accruing prior to or after the effective date of assumption of the Leases, when such charges become due in accordance with the terms of the Lease. In default thereof, a suitable escrow for the Leases equal to 150% of the average year-end adjustments for the prior three (3) years must be established to assure that any amounts due will be available to Landlords when the year-end adjustments are actually billed and due pursuant to the terms of the respective Leases.

        iii.    <u>The Cure Amounts Serve Only As Estimates</u>

30. Landlord can only provide the information presently available regarding amounts owing by the Debtors, while reserving the right to amend the Objection as necessary to include any additional or unknown charges that arise, including but not limited to subsequent rent defaults, attorney fees, costs, interest, and year-end adjustments and reconciliations. There is no basis to impose upon the Landlord the equivalent of an administrative bar date, limiting their recourse to recover charges to which it is entitled under the Lease.

        iv.    <u>The Debtors Must Pay Undisputed Cure Amounts Immediately</u>

31. Section 365(b)(1)(A) requires that the Debtors promptly cure outstanding balances due under the Lease upon assumption or assumption and assignment. To the extent there is a dispute over the total cure obligation for the Lease, all undisputed cure amounts should be paid immediately. Debtors should escrow disputed amounts, and the Court should set a status conference within thirty (30) days of the assumption or assumption and assignment of the Lease to deal with any disputes that remain unresolved after such period.

**Assumption and Amendment Agreement**

32. Landlords also request that, as a condition to any order approving assumption and assignment of any of Landlords' Leases, the assignee shall be required to enter into a short form Assumption and Amendment Agreement whereby the assignee shall become directly obligated to Landlords and the provisions of the Leases regarding notice addresses will be modified.

**Objections to Sale Order**

33. Landlords reserve the right to raise other and further objections to any proposed Sale Order(s) or transaction documents once any final proposed Sale Orders and/or Asset Purchase Agreements are filed of record.

**Joinder in Other Objections**

34. Landlords hereby join in the objections filed by the Debtors' other landlords and creditors to the extent that such objections are not inconsistent with the provisions hereof.

WHEREFORE, Landlords respectfully requests that the Court enter an order consistent with the foregoing objections; and for such other and further relief as may be just and proper under all of the circumstances.

Dated: October 23, 2020
Wilmington, Delaware

Respectfully submitted,

*/s/ Laurel D. Roglen*
Leslie C. Heilman, Esquire (No. 4716)
Laurel D. Roglen, Esquire (No. 5759)
BALLARD SPAHR LLP
919 N. Market Street, 11th Floor
Wilmington, DE 19801
Telephone: (302) 252-4465
Facsimile: (302) 252-4466
E-mail:  heilmanl@ballardspahr.com
         roglenl@ballardspahr.com

and

Dustin P. Branch, Esquire
BALLARD SPAHR LLP
2029 Century Park East, Suite 800
Los Angeles, CA 90067-3012
Telephone: (424) 204-4354
Facsimile: (424) 204-4350
E-mail:  branchd@ballardspahr.com

and

Craig Solomon Ganz, Esquire
BALLARD SPAHR LLP
1 E. Washington Street, Suite 2300
Phoenix, AZ 85004
Telephone: (602) 798-5427
Facsimile: (602) 798-5595
E-mail:  ganzc@ballardspahr.com

*Counsel to Country View Commons, LLC, Federal Realty Investment Trust, Store Master Funding XI, LLC, and The Macerich Company*