## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] | Case No. 20-12168 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. 271** |

## DEBTORS' OBJECTION TO MOTION OF JAMES KOLE
## FOR RELIEF FROM AUTOMATIC STAY UNDER SECTION 362 OF THE
## BANKRUPTCY CODE

Town Sports International, LLC and its above-captioned affiliated debtors and debtors in possession (collectively, the "**Debtors**") hereby file this objection (the "**Objection**") to the *Motion of James Kole (Claim Number: 0000020036) for Relief from Automatic Stay Under Section 362 of the Bankruptcy Code* [D.I. 271] (the "**Motion**") filed by James Kole (the "**Movant**"). In support of this Objection, the Debtors respectfully represent and set forth as follows:

### PRELIMINARY STATEMENT[2]

1. The automatic stay is one of the most fundamental protections afforded to a debtor under the Bankruptcy Code. The stay provides a debtor with a "breathing spell" during which the debtor may concentrate on its chapter 11 cases, preserve the integrity of its assets, and operate in a manner that maximizes value for creditors and affords them with equitable treatment.

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. A complete list of all of the Debtors in these jointly administered cases, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports.

[2] Capitalized terms not defined in the Preliminary Statement shall have the meanings set forth below.

Granting the Motion at this critical stage of the Debtors' chapter 11 efforts would frustrate this fundamental protection.

2.      The Debtors are currently in the process of selling substantially all of their assets pursuant to a Court-approved sale process and, simultaneously, prosecuting a chapter 11 plan.  Given that these Chapter 11 Cases are at a critical stage, the Debtors should be not be distracted by ancillary litigation but should be permitted to concentrate on maximizing the value of their assets and bringing these cases to a prompt resolution.

3.      Moreover, if the Motion were granted, the Debtors may be forced to incur significant defense costs or else suffer a default judgment.  The Debtors' general liability insurance policy has a $500,000 self-insured retention (the "**SIR**"), so these costs may be borne by the Debtors, to the direct detriment of the Debtors' estates, creditors, and other stakeholders.  And given that the Debtors are already operating under a tight budget and significant financial constraints, these are costs that the Debtors can ill afford.  Accordingly, at this stage of the Chapter 11 Cases, denial of the Motion is in the best interest of Debtors' estates and creditors.

4.      In contrast to the significant harm to the Debtors if the Court grants the Motion, there would little, if any, prejudice to the Movant if the Court denies the Motion.  The State Court's *Order of Disposition on Account of Bankruptcy Proceeding* (the "**Order of Disposition**") is in fact explicit that the Movant can "restore" his claim in the State Litigation after the bankruptcy, as long as the claim is not resolved in the bankruptcy and the Movant still wishes to pursue it.

5.      Accordingly, there is no cause to lift the stay under the circumstances of these Chapter 11 Cases.  The harm to the Debtors and their estates from lifting the stay far

outweighs any harm to the Movant from maintaining the stay. Therefore, for all of these reasons, and as set forth in more detail below, the Court should deny the Motion.

## BACKGROUND

6.       On September 14, 2020 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "**Chapter 11 Cases**") with this Court. The Debtors continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. On September 24, 2020, the Office of the United States Trustee for the District of Delaware appointed an official committee of unsecured creditors (the "**Committee**").

7.       The Debtors commenced these Chapter 11 Cases to implement a value-maximizing sale of their core operating assets, which will, among other benefits, preserve jobs for employees, tenants for landlords, and a go forward trade partner for vendors. Currently, the Debtors, with the assistance of their restructuring professionals, are continuing to pursue plan and sale processes on parallel paths and have been coordinating with their prepetition secured lenders and the Committee.

8.       On October 9, 2020, the Court entered an order [D.I. 208] (the "**Bidding Procedures Order**") approving, among other things, bidding procedures to govern the sale (the "**Sale**") of substantially all of the Debtors' assets. The Sale Hearing (as defined in the Bidding Procedures Order) is scheduled on November 3, 2020 at 12:00 p.m. (ET). Additionally, on October 20, 2020, the Debtors filed their proposed joint chapter 11 plan [D.I. 291] (the "**Plan**") and related disclosure statement [D.I. 292] (the "**Disclosure Statement**"). A hearing to consider approval of the Disclosure Statement on an interim basis is also scheduled for November 3, 2020.

## THE MOTION

9.      By the Motion, the Movant seeks relief from the automatic stay to permit him to litigate a personal injury action against Debtor TSI Hoboken, LLC in the case styled *Kole vs. TSI Hoboken, LLC d/b/a New York Sports Club,* BER-L-8112-19 (the "**State Litigation**"), pending in the state court of New Jersey (the "**State Court**").  The Movant asserts that he is seeking relief from the automatic stay in order to preserve his rights to proceed with the State Litigation case. Motion ¶ 9.  Additionally, Movant asserts that he has already filed a proof of claim in these Chapter 11 Cases.  Motion ¶8, Exhibit D.

10.     Through the Order of Disposition, the State Court ordered that, because of the Debtors' Chapter 11 Cases, the Movant's claim would be dismissed without prejudice and subject to restoration.  Motion Exhibit C.  The Movant's claim would be restored upon (i) relief from the automatic stay, or (ii) after the conclusion of the Chapter 11 Cases.  Motion Exhibit C. In other words, if the Court does not grant Movant relief from the automatic stay, he will still be able to pursue his claim in State Court.  Motion Exhibit C.

## ARGUMENT

**A.      The Automatic Stay Is a Fundamental Protection That Prevents Piecemeal Litigation of Claims in Other Courts.**

11.     The automatic stay of section 362 of the Bankruptcy Code is "one of the most fundamental protections granted the debtor under the Bankruptcy Code." *Izzarelli v. Rexene Prods. Co. (In re Rexene Prods. Co.)*, 141 B.R. 574, 576 (Bankr. D. Del. 1992) (citing *Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986)).  The purpose of the automatic stay is threefold: "to prevent certain creditors from gaining a preference for their claims against the debtor; to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it; and, in general, to avoid interference with the orderly liquidation or

rehabilitation of the debtor." *Borman v. Raymark Ind., Inc.*, 946 F.2d 1031, 1036 (3d Cir. 1991) (quoting *St. Croix Condo. Owners v. St. Croix Hotel*, 682 F.2d 446, 448 (3d Cir. 1982)), *quoted in Rexene Prods.*, 141 B.R. at 576.

12.    The automatic stay is designed to give a debtor a "breathing spell" free from lawsuits and other collection type activities while the debtor attempts to reorganize its affairs. *See Maritime Elec. Co. v. United Jersey Bank*, 959 F.2d 1194, 1204 (3d Cir. 1991); H.R. Rep. No. 595, 95th Cong. 1st Sess. 340 (1977).  Implementation and maintenance of the automatic stay is fundamental to the effective administration of pending bankruptcy cases as it provides a debtor protection from "a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts." *In re Frigitemp Corp.*, 8 B.R. 284, 289 (S.D.N.Y. 1981) (internal citations omitted).

13.    Section 362(d)(1) of the Bankruptcy Code permits a court to grant relief from the automatic stay "for cause." 11 U.S.C. § 362.  "The term 'cause' as used in section 362(d) has no obvious definition and is determined on a case-by-case basis." *See In re Integrated Health Servs., Inc.*, 2000 WL 33712483, *1 (Bankr. D. Del. Aug. 11, 2000); *In re Lincoln*, 264 B.R 370, 372 (Bankr. E.D. Pa. 2001) ("Each request for relief for 'cause' under [section] 362(d)(1) must be considered on its own facts.").  In determining whether "cause" exists, courts in this district consider the following three "*Rexene* Factors":

(1)    the prejudice that would be suffered by the debtors should the stay be lifted;

(2)    the balance of the hardships facing the parties if the stay is lifted; and

(3)    the probable success on the merits if the stay is lifted.

*In re Pursuit Athletic Footwear, Inc.*, 193 B.R. 713, 718 (Bankr. D. Del. 1996) (citing *Rexene Prods.*, 141 B.R. at 576).  "To establish cause, the party seeking relief from the stay must show that 'the balance of hardships from not obtaining relief tips *significantly* in [its] favor.'" *Atl.*

*Marine Inc. v. Am. Classic Voyages, Co. (In re Am. Classic Voyages, Co.)*, 298 B.R. 222, 225 (D. Del. 2003) (alteration in original) (quoting *In re FRG*, 115 B.R. 72, 74 (E.D. Pa. 1990)); *see also In re DBSI, Inc.*, 407 B.R. 159, 166 (Bankr. D. Del. 2009) (listing as the second prong "whether the hardship to the non-bankrupt party by maintenance of the stay considerably outweighs the hardship to the debtor" (internal citations omitted)).

**B.    There Is No "Cause" To Modify the Stay.**

14.    A review of the *Rexene* Factors demonstrates that lifting the automatic stay is not warranted.  The slight delay in prosecuting the Movant's State Litigation is not in itself a sufficient basis to lift the automatic stay.  *See, e.g., In re Madison Hotel Assocs.*, 18 B.R. 218, 219 (Bankr. W.D. Wis. 1982) ("Relief from the automatic stay for 'cause' is not, nor was it intended by the drafters of the Bankruptcy Code, to encompass mere delay in the assertion of rights.").

15.    On the other hand, the Debtors would suffer significant prejudice if the Court were to allow the State Litigation to proceed at this critical juncture of the Chapter 11 Cases. The Debtors are currently operating their business, negotiating with stakeholders, and responding to the demands of these Chapter 11 Cases, while simultaneously conducting a sale process and a plan process.  Because of the SIR, the burden of the defending the State Litigation, if it were allowed to proceed, may fall on the Debtors, who can ill afford that distraction at this stage of the Chapter 11 Cases.

16.    Lifting the stay may force the Debtors to defend the State Litigation or else suffer default judgment, depleting the Debtors' limited resources and undermining one of the key objectives of the stay.  *See Rexene*, 141 B.R. at 576; *Borman*, 946 F.2d at 1036 ("The automatic stay was designed . . . to forestall the depletion of the debtor's assets due to legal costs in defending proceedings against it . . . .").  As a result, the lifting of the stay to allow the State Litigation to

27215098.3

6

proceed could directly affect the Debtors' assets and prejudice the Debtors and their other creditors. *See In re Continental Airlines*, 177 B.R. 475, 481 (D. Del. 1993) (upholding bankruptcy court's finding that the automatic stay applied and further enjoining prosecution of litigation based, in part, on the direct impact on the debtor's assets caused by the debtor having to bear indemnification obligations and advancement of defense costs in the absence of insurance); *Majestic Star Casino v. City of Gary* (*In re Majestic Star Casino, LLC*), 2010 WL 2540457, \*2 (Bankr. D. Del. Apr. 28, 2010) ("In addition, the Debtors will have to advance defense costs thereby, at the very least, temporarily diverting much needed funds—and funds which they do not have to expend absent their lenders' acquiescence." (citing *Continental*, 177 B.R. at 481)).  The Debtors' budget is already tightly constrained.  Any additional expenses will therefore hinder the success of the Debtor's chapter 11 efforts.

17.    Additionally, allowing the Movant to recover on his claim ahead of other creditors is contrary to the priority scheme set forth in the Bankruptcy Code and the principle of bankruptcy law that all of the Debtors' interests in property are to be distributed equitably.  Such a result would encourage others to seek similar relief (and to do so as quickly as possible) and would undermine the Debtors' chapter 11 efforts and hamper their ability to conduct a focused and structured claims reconciliation process.  *See In re SN Liquidation, Inc.,* 388 B.R. 579, 584 (Bankr. D. Del. 2008); *DBSI,* 407 B.R. at 167 (denying stay relief where it may encourage "a race to the courthouse by parties seeking similar orders, which will cause undue hardship and expense to the estate"); *In re Bally Total Fitness of Greater N.Y., Inc.*, 402 B.R. 616, 623 (Bankr. S.D.N.Y. 2009) (denying a motion for relief from the automatic stay where "granting relief could open the floodgates to a multitude of similar motions causing further interference with the bankruptcy case").

18.     Now is simply not the time to grant relief from the automatic stay to permit creditors to liquidate their claims on an ad hoc basis, which would result in unnecessary expense to the Debtors' estates and interference with the Debtors' administration of these Chapter 11 Cases, including the prosecution of the Plan (solicitation of which has not even been approved) and the sale of the Debtors' assets (the marketing of which has not even concluded).

19.     There are already significant, and conflicting, demands on management's time, which include: (a) working with counsel and advisors to prepare, prosecute, and respond to pleadings in connection with these Chapter 11 Cases; (b) communicating and negotiating with certain parties in interest regarding the Debtors' operations; (c) complying with certain disclosure requirements as required in these Chapter 11 Cases; (d) working with counsel and advisors to assess and process the universe of claims; and (e) most importantly, assisting counsel and advisors with the negotiations and preparation of the various documents currently taking place in connection with moving these Chapter 11 Cases to the closing of a Sale and confirmation of a plan and.  The automatic stay is meant to allow the Debtors to concentrate on these critical chapter 11 tasks with the distraction of ancillary litigation.  *See In re W.R. Grace,* 2007 WL 1129170 at *2 n.7 (Bankr. D. Del. Apr. 13, 2007).

**C.     The Balance of Harms Weighs Against Granting the Motion.**

20.     The most important factor to consider when addressing whether cause exists to lift the automatic stay is the effect on the administration of the Chapter 11 Cases.  *See In re W.R. Grace*, 2007 WL 1129170 at *2 n.7 ("Even slight interference [to the administration of the case] . . . may be enough to preclude relief in the absence of a commensurate benefit."); *see also DBSI,* 407 B.R. at 166 ("Courts also place emphasis on whether lifting the automatic stay will impede[] the orderly administration of the debtor's estate."); *In re Penn-Dixie Indus., Inc.*, 6 B.R. 832, 836

(Bankr. S.D.N.Y. 1980) ("Interference by creditors in the administration of the estate, no matter how small, through the continuance of a preliminary skirmish in a suit outside the Bankruptcy Court is prohibited."). As a result, cause exists only if the harm that the Movant would suffer from maintaining the stay "considerably outweighs" the harm that the Debtors would suffer from lifting of stay. *See, e.g.*, *DBSI*, 407 B.R. at 166.

21.     As described above, the harm that the Debtors would suffer if the stay were lifted would be substantial. By contrast, the Movant would suffer little hardship if the stay were maintained because the Order of Disposition dismisses the State Litigation without prejudice. Motion at Exhibit C. Indeed, the Order of Disposition explicitly states that the Movant may "restore" his claim in the State Litigation after the bankruptcy, as long as the claim is not resolved in the bankruptcy and the Movant still wishes to pursue it. Motion at Exhibit C. Accordingly, the automatic stay may delay the prosecution of the State Litigation, but such delay does not establish the harm necessary for relief from stay. If it did, every creditor would be entitled to relief from stay. *Cf. In re Condisco*, 271 B.R. 273, 277 (Bankr. N.D. Ill. 2002) ("The automatic stay almost always delays litigants. That is, after all, its purpose and the reason they call it a 'stay.'").

22.     Accordingly, based on the foregoing, there is no cause for lifting the automatic stay here, and the Motion should be denied.

## RESERVATION OF RIGHTS

23.     Nothing included in or omitted from this Objection shall be deemed an admission by the Debtors or their estates with respect to the subject matter of the Motion and this Objection, including, without limitation, with respect to the Debtors' insurance policies and coverage thereunder, the Movant's claims, and the State Litigation, or shall waive, impair, prejudice, or otherwise affect any rights, claims, defenses, arguments, or remedies of the Debtors

27215098.3

or their estates (or any successors thereto) with respect to such matters, including, without limitation, in any proceedings before the Court or the State Court.

[*Remainder of Page Intentionally Left Blank*]

27215098.3

WHEREFORE, the Debtors respectfully request that the Court deny the Motion and grant the Debtors such other and further relief as may be just and proper.

Dated: Wilmington, Delaware
       October 27, 2020

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Travis G. Buchanan*
Robert S. Brady (No. 2847)
Sean T. Greecher (No. 4484)
Travis G. Buchanan (No. 5595)
Allison S. Mielke (No. 5934)
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Email: rbrady@ycst.com
       sgreecher@ycst.com
       amielke@ycst.com
and

KIRKLAND & ELLIS LLP
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Email: nicole.greenblatt@kirkland.com
       derek.hunter@kirkland.com

KIRKLAND & ELLIS LLP
Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, CA 94104
Telephone:  (415) 439-1400
Email: mark.mckane@kirkland.com

KIRKLAND & ELLIS LLP
Joshua M. Altman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Email:  josh.altman@kirkland.com

*Proposed Counsel to the Debtors*
*and Debtors in Possession*

27215098.3