**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

------------------------------------------------------------x
                         :

In re:                       :  Chapter 11

TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] :  Case No. 20-12168 (CSS)

      Debtors.        :  (Jointly Administered)
                        :

------------------------------------------------------------x **Re: Docket Nos. 160 & 208**

**ORDER (I) AUTHORIZING THE SALE OF SUBSTANTIALLY ALL OF THE
DEBTORS' ASSETS FREE AND CLEAR OF LIENS, CLAIMS, ENCUMBRANCES,
AND INTERESTS, (II) AUTHORIZING THE DEBTORS TO ENTER INTO THE ASSET
PURCHASE AGREEMENT, (III) AUTHORIZING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED
LEASES, AND (IV) GRANTING RELATED RELIEF**

Upon the Sale Motion (as defined below) of the above-captioned debtors and debtors in

possession (collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11

Cases") for entry of an order (this "Sale Order"):[2] (a) authorizing and approving the sale free and

clear of liens, claims, encumbrances, and other interests (the "Sale") of all or substantially all of

the Debtors' assets (the "Acquired Assets"), (b) authorizing the Debtors to enter into that certain

Asset Purchase Agreement, dated October 26, 2020 (the "Asset Purchase Agreement"), a true and

correct copy of which is attached to this Sale Order as **Exhibit 1**, by and among Town Sports

---

[1]     The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. A complete list of all the Debtors in these jointly administered cases, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports.

[2]     Capitalized terms used but not otherwise defined in this Sale Order shall have the meaning ascribed to them in the *Debtors' Motion for Entry of an Order (I) Approving Bidding Procedures in Connection with the Sale of Substantially All of the Debtors' Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling an Auction and Sale Hearing, (IV) Approving Procedures for the Assumption and Assignment of Contracts, (V) Approving the Sale of the Debtors' Assets Free and Clear, and (VI) Granting Related Relief* [D.I. 160] (the "Sale Motion") or the Asset Purchase Agreement (as defined below), as applicable.

International, LLC (the "Company"), and the direct and indirect Subsidiaries of the Company identified on Schedule A to the Asset Purchase Agreement (collectively, the "Sellers"), and New TSI Holdings, Inc. (the "Buyers"), (c) authorizing the assumption and assignment of the Designated Contracts (as defined below) to the Buyers, and (d) granting related relief; and this Court having entered an order on October 9, 2020 [D.I. 208] (the "Bid Procedures Order") approving, among other things, the proposed form of notice of the Sale Hearing; and the Debtors having determined, after an extensive marketing process, that the Buyers have submitted the highest or otherwise best bid for the Acquired Assets; and the Debtors having submitted the Declaration and Supplemental Declaration of Christopher A. Wilson (collectively, the "Wilson Declaration") of Houlihan Lokey Capital, Inc., the Debtors' investment banker, in support of the Sale and the proffer of Mr. Wilson's testimony on the record of the hearing held on November 3, 2020 (the "Wilson Proffer" and, together with the Wilson Declaration, the "Wilson Testimony"); and the Debtors having filed the *Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [D.I. 278] (the "Assumption Notice"), the *Supplemental Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [D.I. 290], and the *Notice of Cancellation of Auction* [D.I. 347]; and upon adequate and sufficient notice of the Sale Motion, the Asset Purchase Agreement, and all other related transactions contemplated thereunder and in this Sale Order; and all interested parties having been afforded an opportunity to be heard with respect to the Sale Motion and all relief related thereto; and the Court having reviewed and considered the Sale Motion and any objections or responses thereto; and upon the Wilson Testimony and the full record of these Chapter 11 Cases in support of the relief requested by the Debtors in the Sale Motion; and this Court having found that (i) this Court has jurisdiction over the Debtors, their estates, and property of their estates, and

to consider the Motion and the relief requested therein under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012, (ii) this Court may enter a final order consistent with Article III of the United States Constitution, (iii) this is a core proceeding under 28 U.S.C § 157(b)(2)(A), (iv) venue of the Sale Motion in this District is proper under 28 U.S.C. §§ 1408 and 1409; and it further appearing that the legal and factual bases set forth in the Sale Motion and at the Sale Hearing establish just cause for the relief granted herein; and it appearing that the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and all other parties in interest; and upon the full record of these Chapter 11 Cases and all other pleadings and proceedings, including the Sale Motion, and after due deliberation thereon, and good and sufficient cause appearing therefor,

<b>THE COURT HEREBY FINDS THAT:[3]</b>

**I.     Jurisdiction, Final Order, and Statutory Predicates.**

A.     This Court has jurisdiction to hear and determine the Sale Motion pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(a) and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  Venue is proper in this District and in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

B.     The statutory predicates for the relief requested in the Sale Motion are sections 105(a), 363, and 365 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014, and Local Rule 6004-1.

---

[3]     All findings of fact and conclusions of law announced by the Court at the Sale Hearing in relation to the Sale Motion are hereby incorporated herein to the extent not inconsistent herewith.

C.    This Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a). Notwithstanding the provisions of Bankruptcy Rules 6004(h) and 6006(d), and to any extent necessary under Bankruptcy Rule 9014 and rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, the Court expressly finds that there is no just reason for delay in the implementation of this Sale Order, waives any stay, and expressly directs entry of judgment as set forth herein.

## II.    Notice of the Sale Motion and Cure Amounts.

D.    Notice of the Sale Hearing, the Sale, the Sale Motion, and the assumption, assignment and cure of the Designated Contracts, including that certain *Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [D.I. 278], was timely, proper, and reasonably calculated to provide interested parties with timely and proper notice, and no other or further notice of the Sale Hearing, the Sale, the Sale Motion, or assumption, assignment and cure of the Designated Contracts is, or shall be, required.  The requirements of Bankruptcy Rule 6004(a) and all applicable Local Rules are satisfied by such notice.

E.    A reasonable opportunity to object and be heard with respect to the Sale Hearing, the Sale, the Sale Motion, and the assumption, assignment and cure of the Designated Contracts, including that certain *Notice to Contract Counterparties to Potentially Assumed Executory Contracts and Unexpired Leases* [D.I. 278], and the relief requested in each of the foregoing, has been afforded to all interested persons and entities, including the Notice Parties.

## III.    Sale in Best Interests of the Debtors' Estates.

F.    Good and sufficient reasons for approval of the Asset Purchase Agreement and the transactions to be consummated in connection therewith have been articulated, and the relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors and

other parties in interest.  The Debtors have demonstrated both (a) good, sufficient and sound business purposes and justifications and (b) compelling circumstances for the Sale other than in the ordinary course of business, pursuant to Bankruptcy Code section 363(b), outside of a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Buyers is necessary and appropriate to maximize the value of the Debtors' estates.

G.      The Sale must be approved and consummated promptly in order to preserve the viability of the Debtors' businesses as a going concern and to maximize the value of the Debtors' estates.  Time is of the essence in consummating the Sale.  Given all of the circumstances of these chapter 11 cases and the adequacy and fair value of the Purchase Price, the proposed Sale constitutes a reasonable and sound exercise of the Debtors' business judgment and should be approved.

H.      The consummation of the Sale and the assumption and assignment of the Designated Contracts are legal, valid, and properly authorized under all applicable provisions of the Bankruptcy Code, including, without limitation, sections 105(a), 363(b), 363(f), 363(m), and 365 of the Bankruptcy Code, and all of the applicable requirements of such sections have been complied with in respect of the transaction.

## IV.     Good Faith of the Buyers and Sellers.

I.      The Asset Purchase Agreement was negotiated, proposed, and entered into by the Sellers and the Buyers, including their respective boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals, and representatives, without collusion, in good faith, and from arm's-length bargaining positions.

J.      Neither the Sellers nor the Buyers, nor their respective boards of directors or equivalent governing bodies, officers, directors, employees, agents, professionals, and

representatives, have engaged in any conduct that would cause or permit the Asset Purchase Agreement or the Sale to be avoided, consummation of the Sale to be avoided, or costs or damages to be imposed under section 363(n) of the Bankruptcy Code.  All payments to be made by the Buyers and other agreements or arrangements entered into by the Buyers in connection with the Sale have been disclosed.  The Buyers are purchasing the Acquired Assets in good faith and are, collectively, a good-faith buyer within the meaning of section 363(m) of the Bankruptcy Code. The Buyers are not "insiders" of any Debtor (as defined under section 101(31) of the Bankruptcy Code).  The Buyers are therefore entitled to all of the protections afforded under section 363(m) of the Bankruptcy Code.

K.    As demonstrated by (i) any testimony and other evidence proffered or adduced at the Sale Hearing and (ii) the representations of counsel made on the record at the Sale Hearing, substantial marketing efforts and a competitive sale process were conducted in accordance with the Bid Procedures Order and, among other things: (a) the Sellers and the Buyers complied with the provisions in the Bid Procedures Order; (b) the Buyers agreed to subject their bid to the competitive bid procedures set forth in the Bid Procedures Order; and (c) the Buyers in no way induced or caused the chapter 11 filing by the Debtors.

**V.    Highest or Otherwise Best Offer.**

L.    The Debtors' marketing and sale process, including the Debtors' prepetition marketing process, with respect to the Acquired Assets in accordance with the Bid Procedures Order afforded a full, fair, and reasonable opportunity for any person or entity to make a higher or otherwise better offer to purchase the Acquired Assets.  Pursuant to the Bid Procedures Order, the deadline for Qualified Bidders to submit bids for the Acquired Assets was October 26, 2020 at 5:00 p.m. (prevailing Eastern Time) (the "Bid Deadline").  The Debtors received no Qualified Bids

by the Bid Deadline. The Bidding Procedures provide that if no Qualified Bids (other than the Qualified Bid submitted by the Buyers) were received by the Bid Deadline, the Auction would not be conducted and the Buyer's Qualified Bid would be the Successful Bid for the Acquired Assets.

M.     The Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets and will provide a better value for the Debtors' estates than would be provided by any other available alternative. The Debtors' determination that the Asset Purchase Agreement constitutes the highest or otherwise best offer for the Acquired Assets is a valid and sound exercise of their fiduciary duties and constitutes a valid and sound exercise of the Debtors' business judgment and complies in all respects with the Bid Procedures Order. Approval of the Sale Motion and the Asset Purchase Agreement, and consummation of the transactions contemplated thereby, are in the best interests of the Debtors' chapter 11 estates, the Debtors' creditors, and other parties in interest.

**VI.     No Merger; No Successor Liability.**

N.     The Buyers are not a mere continuation of the Debtors or their estates and there is no continuity of enterprise between the Buyers and the Debtors. The Buyers are not holding themselves out to the public as a continuation of the Debtors, including, but not limited to, as to any warranty or similar obligations. The Buyers are not, and shall not be considered, successors to the Debtors or their estates by reason of any theory of law or equity, including, but not limited to, under any federal, state or local statute or common law, or revenue, pension, ERISA, tax, labor, employment, environmental, escheat or unclaimed property laws, or other law, rule or regulation (including, without limitation, filing requirements under any such laws, rules, or regulations), or under any products liability law or doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine or common law, or under any product warranty liability law or

doctrine with respect to the Debtors' liability under such law, rule or regulation or doctrine, and Buyers and their affiliates shall have no liability or obligation under the Workers Adjustment and Retraining Act (the "WARN Act"), 929 U.S.C. §§ 210 et seq. or the Comprehensive Environmental Response Compensation and Liability Act and shall not be deemed to be a "successor employer" for purposes of the Internal Revenue Code of 1986, Title VII of the Civil Rights Act of 1964, as amended, the Age Discrimination in Employment Act, the Americans with Disability Act, the Family Medical Leave Act, the National Labor Relations Act, the Labor Management Relations Act, the Older Workers Benefit Protection Act, the Equal Pay Act, the Civil Rights Act of 1866 (42 U.S.C. 1981), the Employee Retirement Income Security Act, the Multiemployer Pension Protection Act, the Pension Protection Act, and/or the Fair Labor Standards Act; the Buyers are not a continuation or substantial continuation of any of the Debtors or their respective estates, business or operations or any enterprise of the Debtors; the Buyers do not have a common identity of incorporators, directors or equity holders with the Debtors; and the Sale does not amount to a consolidation, merger, or *de facto* merger of the Buyers and the Debtors or their estates.

## VII.    Validity of Transfer.

O.    The Asset Purchase Agreement was not entered into for the purpose of hindering, delaying, or defrauding creditors under the Bankruptcy Code or under the laws of the United States, any state, territory, possession, or the District of Columbia.  Neither the Debtors nor the Buyers are entering into the transactions contemplated by the Asset Purchase Agreement fraudulently, including under applicable federal and state fraudulent conveyance and fraudulent transfer laws.

P.     The Debtors are the sole and lawful owners of the Acquired Assets.  The Acquired Assets constitute property of the Debtors' estates and title to the Acquired Assets is vested in the Debtors' estates within the meaning of section 541(a) of the Bankruptcy Code.  Subject to section 363(f) of the Bankruptcy Code, the transfer of each of the Acquired Assets to the Buyers will be, as of the Closing Date, a legal, valid, and effective transfer of the Acquired Assets, which transfer vests or will vest the Buyers with all right, title, and interest of the Debtors to the Acquired Assets free and clear of (a) all liens (including any liens as that term is defined in section 101(37) of the Bankruptcy Code) and encumbrances relating to, accruing, or arising at any time prior to the Closing Date (collectively, the "Liens") and (b) all debts arising under, relating to, or in connection with any act of the Debtors or claims (as that term is defined in section 101(5) of the Bankruptcy Code), liabilities, obligations, demands, guaranties, options in favor of third parties, rights, contractual commitments, restrictions, interests, mortgages, hypothecations, charges, indentures, loan agreements, instruments, collective bargaining agreements, leases, licenses, deeds of trust, security interests, conditional sale or other title retention agreements, pledges, judgments, claims for reimbursement, contribution, indemnity, exoneration, infringement, products liability, alter-ego, and matters of any kind and nature, whether arising prior to or subsequent to the commencement of these cases, and whether imposed by agreement, understanding, law, equity, or otherwise, known or unknown, contingent or matured, liquidated or unliquidated, and all rights and remedies with respect thereto (i) that purport to give to any party a right of setoff or recoupment against, or a right or option to effect any forfeiture, modification, profit sharing interest, right of first refusal, purchase or repurchase right or option, or termination of, any of the Debtors' or the Buyers' interests in the Acquired Assets, or any similar rights, or (ii) in respect of taxes, restrictions, rights of first refusal, charges of interests of any kind or nature, if any, including,

without limitation, any restriction of use, voting, transfer, receipt of income or other exercise of any attributes of ownership (collectively, as defined in this clause (b), "Claims"), relating to, accruing or arising at any time prior to entry of this Sale Order, including, for the avoidance of doubt, amounts necessary under sections 365(b)(1)(A) and (B) and 365(f)(2)(A) of the Bankruptcy Code to cure all defaults and pay all actual pecuniary losses under the Designated Contracts (the "Cure Amounts") or any other obligations arising under the Designated Contracts to the extent set forth in the Asset Purchase Agreement.

## VIII.    Consideration.

Q.    The consideration provided by Buyers pursuant to the Asset Purchase Agreement and this Sale Order (a) was negotiated at arm's-length, (b) is fair and reasonable, (c) is the highest or otherwise best offer for the Acquired Assets, and (d) constitutes reasonably equivalent value and fair consideration (as those terms are defined in each of the Uniform Voidable Transactions Act (formerly the Uniform Fraudulent Transfer Act), Uniform Fraudulent Conveyance Act, and section 548 of the Bankruptcy Code) under the laws of the United States, any state, territory, possession, or the District of Columbia.  No other person or entity or group of entities has offered to purchase the Acquired Assets for greater economic value to the Debtors' estates than Buyers. Approval of the Sale Motion, the Asset Purchase Agreement, the Sale and the consummation of the transactions contemplated thereby is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.

## IX.    Section 363(f) Is Satisfied.

R.    The conditions of section 363(f) of the Bankruptcy Code have been satisfied in full; therefore, the Debtors may sell the Acquired Assets free and clear of any interest in the property.

S.      The Buyers would not have entered into the Asset Purchase Agreement and would not consummate the transactions contemplated thereby if the sale of the Assets to the Buyers were not free and clear of all Liens and Claims, or if the Buyers would, or in the future could, be liable for any of such Liens and Claims.

T.      The Debtors may sell the Acquired Assets free and clear of all Liens and Claims against the Debtors, their estates, or any of the Acquired Assets because, in each case, one or more of the standards set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied.  Those holders of Liens or Claims against the Debtors, their estates, or any of the Acquired Assets who did not object, who withdrew their objections, or whose objections were overruled, to the Sale or the Sale Motion are deemed to have consented pursuant to section 363(f)(2) of the Bankruptcy Code.  All other holders of Liens or Claims are adequately protected by having their Liens or Claims, if any, in each instance against the Debtors, their estates, or any of the Acquired Assets, attach to the net cash proceeds of the Sale ultimately attributable to the Acquired Assets in which such creditor alleges a Lien or Claims, in the same order of priority, with the same validity, force, and effect that such Liens or Claims had prior to the Sale, subject to any claims and defenses the Debtors and their estates may possess with respect thereto.

U.      The sale, conveyance, assignment and transfer of any personally identifiable information pursuant to the terms of the Asset Purchase Agreement and this Sale Order complies with the terms of the Debtors' policy regarding the transfer of such personally identifiable information as of the Petition Date and, as a result, consummation of the Sale is permitted pursuant to Section 363(b)(1)(A) of the Bankruptcy Code.  Accordingly, appointment of a consumer privacy ombudsman in accordance with sections 363(b)(1) or 332 of the Bankruptcy Code is not required with respect to the Sale.

**X.**     **Cure Amounts and Adequate Assurance of Future Performance.**

V.     The assumption and assignment of the executory contracts and unexpired leases listed in the Asset Purchase Agreement (the "Designated Contracts"), pursuant to the terms of this Sale Order, is integral to the Asset Purchase Agreement and is in the best interests of the Debtors and their estates, their creditors, and all other parties in interest, and represents the reasonable exercise of sound and prudent business judgment by the Debtors.  Subject to the terms and conditions of the Asset Purchase Agreement, the Buyers shall: (a) to the extent necessary, cure or provide adequate assurance of cure, of any default existing prior to the date hereof with respect to the Designated Contracts, within the meaning of sections 365(b)(1)(A) and 365(f)(2)(A) of the Bankruptcy Code, and (b) to the extent necessary, provide compensation or adequate assurance of compensation to any party for any actual pecuniary loss to such party resulting from a default prior to the date hereof with respect to the Designated Contracts, within the meaning of sections 365(b)(1)(B) and 365(f)(2)(A) of the Bankruptcy Code.  The Buyers' obligations under the Asset Purchase Agreement to pay the Cure Amounts and to perform the obligations under the Designated Contracts shall constitute adequate assurance of future performance within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

W.     Except as provided in this Sale Order and subject to resolution of the Adjourned Objections (as defined herein) listed on **Exhibit 2** annexed hereto, the amounts set forth on **Exhibit 3** annexed hereto are the sole Cure Amounts and all objections, other than the Adjourned Objections, to such Cure Amounts or the assumption and assignment of any of the Designated Contracts are hereby overruled.  To the extent that any counterparty failed or fails to timely object to the proposed Cure Amounts or the assumption and assignment of the Designated Contracts, such counterparty is deemed to have consented to such Cure Amounts and the assumption and

assignment of its respective Designated Contract(s) to Buyers in accordance with the Asset Purchase Agreement; *provided*, *however*, that amounts that become due pursuant to the unexpired leases and executory contracts assumed by the Debtors and assigned to the Buyers or their designees after the Closing Date shall be paid by Buyers in the ordinary course of business, subject to the rights of all parties to dispute any amount as being due and owing (the "Contract Liabilities").

## XI.    Secured Claims and Credit Bid

X.      NewCo is a Delaware corporation that was formed on behalf of the Prepetition Lenders (each as defined in the Asset Purchase Agreement) and New Town Sports Holdings, LLC ("Sponsor"), and upon the Closing Date will be owned by the Prepetition Lenders and Sponsor, in accordance with the terms of the Asset Purchase Agreement.  Pursuant to the terms of the Asset Purchase Agreement and that certain *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors to Use Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [D.I. 277] (the "DIP Order"), the Prepetition Lenders are secured creditors of the Debtors, holding allowed Claims in the amount of the Prepetition Obligations (as defined in the DIP Order) secured by valid, binding, perfected, and enforceable first-priority security interests in and liens against each of the Debtors, their estates and the property of their estates of which $80,000,000.00 of such Prepetition Obligations will be credit bid in connection with the Sale (such Prepetition Obligations, the "Credit Bid Claim" and, the amount of such Credit Bid Claim, the "Credit Bid Consideration").  The Prepetition Agent (as defined in the DIP Order), on behalf of the Prepetition Lenders, has the right under section 363(k) of the Bankruptcy Code and is authorized by this Court pursuant to the

Bid Procedures Order and this Sale Order, to credit bid the Credit Bid Consideration.  Pursuant to the Asset Purchase Agreement, the Buyers agreed to provide, as consideration for the Acquired Assets, the Purchase Price, which includes, among other things, the Credit Bid Consideration.

## XII.    Compelling Circumstances for an Immediate Sale.

Y.    Good and sufficient reasons for approval of the Asset Purchase Agreement and the Sale have been articulated.  The relief requested in the Sale Motion is in the best interests of the Debtors, their estates, their creditors, and other parties in interest.  The Debtors have demonstrated both (a) good, sufficient, and sound business purposes and justifications for approving the Asset Purchase Agreement and (b) compelling circumstances for consummating the Sale outside the ordinary course of business, pursuant to section 363(b) of the Bankruptcy Code before, and outside of, a plan of reorganization, in that, among other things, the immediate consummation of the Sale to the Buyers is necessary and appropriate to maximize the value of the Debtors' estates and the Sale will permit the Debtors to maximize distributions to creditors.  The transactions contemplated by the Asset Purchase Agreement and this Sale Order neither impermissibly restructure the rights of the Debtors' creditors nor impermissibly dictate the terms of a chapter 11 plan for the Debtors, and, therefore, do not constitute a *sub rosa* plan.

### THE COURT HEREBY ORDERS THAT:

## I.    General Provisions.

1.    The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to these Chapter 11 Cases pursuant to Bankruptcy Rule 9014.  To the extent that any findings of fact constitute conclusions of law, they are adopted as such.  To the extent any conclusions of law constitute findings of fact, they are adopted as such.

2.      The relief requested in the Sale Motion, and the transactions contemplated thereby and by the Asset Purchase Agreement, are APPROVED as set forth in this Sale Order and on the record of the Sale Hearing, which is incorporated herein as if set forth fully in this Sale Order, and the Sale contemplated by the Asset Purchase Agreement is APPROVED.

3.      With the exception of objections to Cure Amounts or adequate assurance of future performance as set forth on the notice of agenda, announced to the Court at the Sale Hearing or by stipulation filed with the Court (the "Adjourned Objections"), all objections to the Sale Motion or the relief requested therein that have not been withdrawn, waived, or settled as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice.  Those parties who did not object or withdrew their objections to the Sale Motion are deemed to have consented to the Sale under to section 363(f)(2) of the Bankruptcy Code.

## II.      Approval of the Asset Purchase Agreement.

4.      The Asset Purchase Agreement and all other ancillary documents, and all of the terms and conditions thereof, including the Credit Bid Claim, are hereby APPROVED.

5.      Pursuant to sections 363(b) and 363(f) of the Bankruptcy Code, the Debtors are authorized and empowered to take any and all actions necessary or appropriate to (a) consummate the Sale pursuant to and in accordance with the terms and conditions of the Asset Purchase Agreement, (b) close the Sale as contemplated in the Asset Purchase Agreement and this Sale Order, and (c) execute and deliver, perform under, consummate, implement, and fully close the Asset Purchase Agreement, including the assumption and assignment to the Buyers of the Designated Contracts, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the Asset Purchase Agreement and the Sale.

Buyers shall not be required to seek or obtain relief from the automatic stay under section 362 of the Bankruptcy Code to enforce any of its remedies under the Asset Purchase Agreement or any other Sale-related document. The automatic stay imposed by section 362 of the Bankruptcy Code is modified solely to the extent necessary to implement the preceding sentence and the other provisions of this Sale Order; provided, however, that this Court shall retain exclusive jurisdiction over any and all disputes with respect thereto. The portion of the Prepetition Obligations (as defined in the DIP Order) in excess of the Credit Bid Claim shall remain outstanding against the applicable Debtors and any of their assets not purchased by the Buyers, and the Prepetition Agent and the Prepetition Lenders shall continue to be protected by and entitled to the benefit of the terms and provisions of the Prepetition Loan Documents and other orders entered by this Court in respect thereof.

6.     The terms and provisions of the Asset Purchase Agreement and this Sale Order shall be binding in all respects upon the Debtors, their estates, all creditors of and holders of equity interests in any Debtor, any holders of Liens, Claims, or other interests (whether known or unknown) in, against, or on all or any portion of the Acquired Assets, all counterparties to any executory contract or unexpired lease of the Debtors, the Buyers and all successors and assigns of the Buyers, and any trustees, if any, subsequently appointed in any of the Debtors' Chapter 11 Cases or upon a conversion to chapter 7 under the Bankruptcy Code of any of the Debtors' cases. This Sale Order and the Asset Purchase Agreement shall inure to the benefit of the Debtors, their estates and creditors, the Buyers, and the respective successors and assigns of each of the foregoing.

### III.     Transfer of the Acquired Assets.

7.      Pursuant to sections 105(a), 363(b), 363(f), 365(b), and 365(f) of the Bankruptcy Code, the Debtors are authorized to transfer the Acquired Assets to the Buyers in accordance with the terms of the Asset Purchase Agreement, and such transfer shall constitute a legal, valid, binding, and effective transfer of such Acquired Assets.  Such transfer shall vest the Buyers with title to the Acquired Assets and, shall be free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever (other than Contract Liabilities), with all such Liens, Claims, or other interests to attach to the net cash proceeds ultimately attributable to the property against or in which such Liens, Claims, or other interests are asserted, subject to the terms thereof, with the same validity, force, and effect, and in the same order of priority, which such Liens, Claims, or other interests had prior to the Sale, subject to any rights, claims, and defenses the Debtors or their estates, as applicable, may possess with respect thereto.

8.      The Debtors are hereby authorized to take any and all actions necessary to consummate the Asset Purchase Agreement, including any actions that otherwise would require further approval by shareholders, members, or their boards of directors, as the case may be, without the need to obtain such approvals.

9.      The transfer of the Acquired Assets to the Buyers under the Asset Purchase Agreement does not require any consents other than as specifically provided for in the Asset Purchase Agreement.  Each and every federal, state, and local governmental agency or department are authorized to accept any and all documents and instruments necessary or appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.  A certified copy of this Sale Order may be filed with the appropriate clerk or recorded with the recorder of any state,

county, or local authority to act to cancel any of the Liens, Claims, and other encumbrances of record.

10.     If any person or entity that has filed statements or other documents or agreements evidencing Claims or Liens on, or interests in, all or any portion of the Acquired Assets shall not have delivered to the Debtors, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfaction, releases of liens and easements, and any other documents necessary for the purpose of documenting the release of all Claims, Liens, or interests which the person or entity has or may assert with respect to all or any portion of the Acquired Assets, the Debtors are hereby authorized, and the Buyers are hereby authorized, on behalf of the Debtors and the Debtors' creditors, to execute and file such statements, instruments, releases and other documents on behalf of such person or entity with respect to the Acquired Assets.  The Debtors and the Buyers are each authorized to file a copy of this Sale Order, which, upon filing, shall be conclusive evidence of the release and termination of such Claim, Lien, or interest.

11.     This Sale Order is and shall be binding upon and govern the acts of all persons and entities, including, without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons and entities who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any lease; and each of the foregoing persons and entities is hereby authorized to accept for filing any and all of the documents and instruments necessary and appropriate to consummate the transactions contemplated by the Asset Purchase Agreement.

12.     All persons and entities that are presently, or on the Closing Date may be, in possession of some or all of the Acquired Assets to be sold, transferred or conveyed to the Buyers under the Asset Purchase Agreement are hereby directed to surrender possession of the Acquired Assets to the Buyers on the Closing Date.  Subject to the terms, conditions, and provisions of this Sale Order, all persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyers in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

13.     Unless otherwise expressly included in the definition of "Assumed Liabilities" in the Asset Purchase Agreement, Buyers shall not be responsible for any liens or encumbrances, including, without limitation, in respect of the following: (a) any labor or employment agreements; (b) any mortgages, deeds of trust, and security interests; (c) any pension, welfare, compensation, or other employee benefit plans, agreements, practices, and programs, including, without limitation, any pension plan of the Debtors; (d) any other employee, worker's compensation, occupational disease, or unemployment or temporary disability related claim, including, without limitation, claims that might otherwise arise under or pursuant to (i) the Employee Retirement Income Security Act, as amended, (ii) the Fair Labor Standards Act, (iii) Title VII of the Civil Rights Act of 1964, (iv) the Federal Rehabilitation Act of 1973, (v) the National Labor Relations Act, (vi) the WARN Act, (vii) the Age Discrimination in Employment Act, as amended, (viii) the Americans with Disabilities Act, (ix) the Family Medical Leave Act, (x) the Labor Management Relations Act, (xi) the Multiemployer Pension Protection Act, (xii) the Pension Protection Act, (xiii) the Consolidated Omnibus Budget Reconciliation Act of 1985, (xiv) the Comprehensive Environmental Response Compensation and Liability Act, (xv) state discrimination laws,

(xvi) state unemployment compensation laws or any other similar state laws, or (xvii) any other state or federal benefits or claims relating to any employment with the Debtors or any of its respective predecessors; (e) any bulk sales or similar law; (f) any tax statutes or ordinances, including, without limitation, the Internal Revenue Code of 1986, as amended, or any state or local tax laws; (g) any escheat or unclaimed property laws; (h) to the extent not included in the foregoing, any of the Excluded Liabilities under the Asset Purchase Agreement;  and (i) any theories of successor or transferee liability.

## IV.    Assumption and Assignment of Designated Contracts.

14.    The Debtors are hereby authorized and directed in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to (a) assume and assign to the Buyers, in accordance with the terms of the Asset Purchase Agreement, the Designated Contracts free and clear of all Liens, Claims, and other interests of any kind or nature whatsoever (other than Contract Liabilities), and (b) execute and deliver to the Buyers such documents or other instruments as the Buyers deem necessary to assign and transfer the Designated Contracts to the Buyers in accordance with the Asset Purchase Agreement.

15.    With respect to the Designated Contracts: (a) the Debtors may assume each of the Designated Contracts in accordance with section 365 of the Bankruptcy Code; (b) the Debtors may assign each Designated Contract in accordance with sections 363 and 365 of the Bankruptcy Code, and any provisions in any Designated Contract that prohibit or condition the assignment of such Designated Contract or allow the party to such Designated Contract to terminate, recapture, impose any penalty, condition renewal or extension, or modify any term or condition upon the assignment of such Designated Contract, constitute unenforceable anti-assignment provisions which are void and of no force and effect solely with respect to this Sale; and (c) all other requirements and

conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtors and assignment to the Buyers of each Designated Contract have been satisfied or will be satisfied upon adjudication or resolution of the Adjourned Objections.  The Designated Contracts shall be transferred and assigned to, and following the Closing of the Sale remain in full force and effect for the benefit of, the Buyers, notwithstanding any provision in any such Designated Contract (including those of the type described in sections 365(c) and 365(f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer and, pursuant to section 365(k) of the Bankruptcy Code, and upon the Closing and payment of the applicable Cure Amounts, the Debtors shall be relieved from any further liability with respect to the Designated Contracts after such assumption and assignment to the Buyers; *provided, however*, that any counterparty to Designated Contract that is a lease of non-residential real property (a "Lease Counterparty") may seek to recover from the Debtors indemnification obligations, if any, arising from third-party claims asserted with respect to or arising from the Debtors' use and occupancy of the leased premises prior to the Closing Date for which the Debtors have a duty to indemnify such Lease Counterparty pursuant to any Lease, solely with respect to available insurance coverage.

16.     All defaults or other obligations of the Debtors under the Designated Contracts arising or accruing prior to the Closing of the Sale or required to be paid pursuant to section 365 of the Bankruptcy Code in connection with the assumption and assignment of the Designated Contracts, shall be cured by the Buyers by payment of the Cure Amounts on or as soon as practicable following the Closing Date.  To the extent that any counterparty to a Designated Contract did not object to its Cure Amount by the Cure Objection Deadline, such counterparty is deemed to have consented to such Cure Amount and the assumption and assignment of its respective Designated Contract(s) to Buyers in accordance with the Asset Purchase Agreement.

17.     Except as provided in the Asset Purchase Agreement and this Sale Order, the Debtors and their estates shall have no further liabilities or obligations with respect to any Designated Contracts, including any defaults relating to the Designated Contracts arising, accruing, or relating to a period on or after the effective date of assignment, and all holders of such Liens, Claims, encumbrances, and interests are forever barred and estopped from asserting such Claims against the Debtors, their successors or assigns, their property or their assets or estates.

18.     Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyers shall be fully and irrevocably vested in all right, title and interest of each Designated Contract.  To the extent provided in the Asset Purchase Agreement, the Debtors shall cooperate with, and take all actions reasonably requested by, the Buyers to effectuate the foregoing.

19.     Each Designated Contract counterparty which has not filed an Adjourned Objection is deemed to have consented to assumption and assignment, and the Buyers shall be deemed to have demonstrated adequate assurance of future performance with respect to such Designated Contract pursuant to sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

20.     Upon the Debtors' assignment of the Designated Contracts to the Buyers under the provisions of this Sale Order, any additional orders of this Court, and the payment of any Cure Amounts pursuant to the terms hereof, the Asset Purchase Agreement or further order of this Court, no default shall exist under any Designated Contract, and no counterparty to any Designated Contract shall be permitted (a) to declare a default by the Buyers under such Designated Contract or (b) to otherwise take action against the Buyers as a result of any Debtors' financial condition, bankruptcy, or failure to perform any of its obligations under the relevant Designated Contract. Each non-Debtor party to an Designated Contract hereby is also forever barred, estopped, and

permanently enjoined from (i) asserting against the Debtors or the Buyers, or the property of any of them, any default or Claim arising out of any indemnity obligation or warranties for acts or occurrences arising prior to or existing as of the closing of the Sale, or, against the Buyers, any counterclaim, defense, setoff, or any other Claim asserted or assertable against the Debtors, expect as otherwise provided in this Sale Order, and (ii) imposing or charging against the Buyers or their affiliates any rent accelerations, assignment fees, increases, or any other fees as a result of the Debtors' assumption and assignments to the Buyers of the Designated Contracts.  For the avoidance of doubt and notwithstanding anything to the contrary contained herein or in the Asset Purchase Agreement, the Buyers shall be liable for all obligations and liabilities under the Designated Contracts that are leases of non-residential real property, as may be modified by agreement of the Buyer and the counterparty to such Designated Contract, to the extent such obligations or liabilities arise or are (as required by the applicable lease) billed after the Closing Date, including, but not limited to any and all liabilities or obligations arising under the leases with respect to any accruing and not yet due adjustments or reconciliations (including, without limitation, for royalties, percentage rent, utilities, taxes, common area or other maintenance charges, promotional funds, insurance, fees, or other charges) when billed in the ordinary course, regardless of whether such obligations or liabilities are attributable to the period prior to the Closing Date unless otherwise agreed to in writing by the Buyer and the counterparty to such Designated Contract,  in each case subject to the terms and conditions of the lease, as may be modified by agreement of the Buyer and the counterparty to such Designated Contract.

21.    Upon the Closing Date and payment of the applicable Cure Amounts, the Buyers shall be deemed to be substituted for the Debtors as a party to the applicable Designated Contracts

and the Debtors shall be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Designated Contracts.

22.     All non-Debtor counterparties to the Designated Contracts shall cooperate and expeditiously execute and deliver, upon the reasonable requests of the Buyers, any instruments, applications, consents, or other documents that may be required or requested by any public authority or other party or entity to effectuate the applicable transfers in connection with the sale of the Acquired Assets.

23.     All objections to the assumption and assignment of the Designated Contracts (other than the Adjourned Objections) that have not been withdrawn, waived, settled, or adjourned, as announced to the Court at the Sale Hearing or by stipulation filed with the Court, and all reservations of rights included in such objections or otherwise, are hereby denied and overruled on the merits with prejudice.  Any Adjourned Objections shall be heard by the Court at a hearing to be set by further order of the Court, unless otherwise resolved by the Buyers, the Debtors and such objecting parties.  Notwithstanding anything else herein, such Designated Contracts shall not be deemed assumed by the Debtors and assigned to the Buyers until the Adjourned Objections are resolved by settlement or further order of the Court.

**V.     Prohibition of Actions Against the Buyers.**

24.     Except as otherwise expressly provided for in this Sale Order or the Asset Purchase Agreement, the Buyers shall not have any liability or other obligation of the Debtors arising under or related to any of the Acquired Assets, any contracts assumed and assigned to the Buyers, including the Designated Contracts, or the operation of the Debtors' businesses prior to closing of the transactions contemplated by the Asset Purchase Agreement.  Without limiting the generality of the foregoing, and except as otherwise specifically provided herein or in the Asset Purchase

Agreement, the Buyers shall not be liable for any Claims or Liens against the Debtors or any of their predecessors or affiliates, and the Buyers shall have no successor or vicarious liabilities of any kind or character, including, but not limited to, under any theory of antitrust, environmental, successor, or transferee liability, labor law, *de facto* merger, mere continuation, or substantial continuity, whether known or unknown, now existing or hereafter arising, whether fixed or contingent, whether asserted or unasserted, whether legal or equitable, whether liquidated or unliquidated, including, but not limited to, liabilities on account of warranties, intercompany loans, and receivables among the Debtors, and any taxes arising, accruing, or payable under, out of, in connection with, or in any way relating to the operation of any of the Acquired Assets prior to the closing of the Sale.  The Buyers has given substantial consideration under the Asset Purchase Agreement for the benefit of the holders of any Liens or Claims.  The Buyers are purchasing the Acquired Assets free and clear of all liens, claims, and encumbrances under section 363(f) of the Bankruptcy Code and shall have no successor liability in connection with Acquired Assets or their purchase of the Acquired Assets through this Sale Order.  For the avoidance of doubt, the Buyers shall have no successor liability with respect to any claims or causes of action that any party may have against the Debtors or Litigation currently pending or stayed against the Debtors.

25.    Except as otherwise permitted by the Asset Purchase Agreement or this Sale Order, all persons and entities, including, but not limited to, all debt security holders, equity security holders, governmental, tax and regulatory authorities, lenders, trade creditors, litigation claimants, and other creditors, holding Liens, Claims, or other interests of any kind or nature whatsoever against or in all or any portion of the Assets (whether legal or equitable, secured or unsecured, matured or unmatured, contingent or non-contingent, liquidated or unliquidated, senior or subordinate), arising under or out of, in connection with, or in any way relating to the Debtors, the

Acquired Assets, the operation of the Debtors' business prior to the Closing of the Sale, or the transfer of the Acquired Assets to the Buyers, hereby are forever barred, estopped and permanently enjoined from asserting against the Buyers, any of the Buyers' affiliates, successors, or assigns, their property or the Acquired Assets, such persons' or entities' Liens, Claims, or interests in and to the Acquired Assets, including, without limitation, the following actions: (a) commencing or continuing in any manner any action or other proceeding against the Buyers, their affiliates, their successors, assets or properties; (b) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree, or order against the Buyers, their affiliates, their successors, assets, or properties; (c) creating, perfecting, or enforcing any Lien or other Claim against the Buyers, their affiliates, their successors, assets, or properties; (d) asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Buyers, their affiliates or their successors; (e) commencing or continuing any action, in any manner or place, that does not comply or is inconsistent with the provisions of this Sale Order or other orders of the Court, or the agreements or actions contemplated or taken in respect thereof; or (f) revoking, terminating or failing or refusing to transfer or renew any license, permit or authorization to operate any of the Acquired Assets or conduct any of the businesses operated with the Acquired Assets.

26.    To the greatest extent available under applicable law, Buyers shall be authorized, as of the Closing Date, to operate under any license, permit, registration, and governmental authorization or approval of the Debtors with respect to the Acquired Assets to the extent transferred in the Asset Purchase Agreement, and all such licenses, permits, registrations, and governmental authorizations and approvals are deemed to have been transferred to Buyers as of the Closing Date.

27.     No governmental unit (as defined in Bankruptcy Code section 101(27)) or any representative thereof may deny, revoke, suspend or refuse to renew any permit, license or similar grant relating to the operation of the Acquired Assets on account of the filing or pendency of the Chapter 11 Cases or the consummation of the Sale to the extent that any such action by a governmental unit or any representative thereof would violate Bankruptcy Code section 525.

28.     None of the Buyers or their affiliates, successors, assigns, equity holders, employees or professionals shall have or incur any liability to, or be subject to any action by any of the Debtors or any of their estates, predecessors, successors or assigns, arising out of the negotiation, investigation, preparation, execution, delivery of the Asset Purchase Agreement and the entry into and consummation of the sale of the Acquired Assets, except as expressly provided in the Asset Purchase Agreement and this Sale Order.

29.     No bulk sales law or similar law of any state or other jurisdiction shall apply in any way to the transactions with the Debtors that are approved by this Sale Order, including, without limitation, the Asset Purchase Agreement and the Sale.

30.     All persons and entities are hereby forever prohibited and enjoined from taking any action that would adversely affect or interfere with the ability of the Debtors to sell and transfer the Acquired Assets to the Buyers in accordance with the terms of the Asset Purchase Agreement and this Sale Order.

**VI.    Other Provisions.**

31.     Pursuant to section 2.5(c) of the Asset Purchase Agreement, in full and final satisfaction of the DIP Obligations (as defined in the DIP Order), on the Closing Date the Buyers shall assume all DIP Obligations outstanding as of the Closing Date and thereupon such DIP Obligations shall become Assumed Liabilities under the Asset Purchase Agreement.

32.     For the avoidance of doubt, any Prepetition Obligations (as defined in the DIP Order) not included in the Credit Bid Consideration shall remain outstanding against the relevant Debtors until such Prepetition Obligations are indefeasibly repaid in full in cash or other otherwise satisfied in a manner acceptable to the Prepetition Lenders.

33.     For the avoidance of doubt, nothing in this Sale Order shall be deemed to alter or modify the parties' obligations under section 5.28 of the DIP Order.

34.     Absent the express written consent of the Buyers, the Debtors shall not settle or otherwise resolve any Litigation with any third party or any Governmental Authority other than any settlement pursuant to which (A) any Liability thereunder will be an Excluded Liability, (B) no payment from the Buyers is sought or required, and (C) no restrictions are placed on or affecting the Business from and after the Closing Date.

35.     The consideration provided by the Buyers to the Debtors pursuant to the Asset Purchase Agreement constitutes reasonably equivalent value and fair consideration for the Assets under the Bankruptcy Code, Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, and other applicable law within the meaning of 11 U.S.C. § 544(b), under the laws of the United States, any state, territory, possession, or the District of Columbia.

36.     For the avoidance of doubt, pursuant to this Sale Order, the Debtors are only selling assets owned by the Debtors, and not any assets owned by their non-Debtor affiliates.

37.     Except for the Assumed Liabilities and the Contract Liabilities, the Buyers shall not have any liability whatsoever for any obligation of the Debtors arising under or related to (i) any of the Acquired Assets, (ii) any contracts assumed and assigned to the Buyers, including the Designated Contracts, or (iii) the operation of the Debtors' businesses prior to closing of the transactions contemplated by the Asset Purchase Agreement.  Without limiting the generality of

the foregoing, and except for the Assumed Liabilities and the Contract Liabilities, the Buyers shall not be liable for any Claims against the Debtors or any of their predecessors or affiliates.  By virtue of the Sale, to the extent allowed by applicable law and except as otherwise set forth in this Sale Order, the Buyers and their affiliates, designees, successors and assigns shall not be deemed or considered to, (a) be a successor (or other such similarly situated party), or otherwise be deemed a successor, to the Debtors, including a "successor employer" for the purposes of the Internal Revenue Code of 1986, the Employee Retirement Income Security Act of 1974, or other applicable laws; (b) have any responsibility or liability for any obligations of Debtors, or any affiliate of Debtors, based on any theory of successor or similar theories of liability; (c) have, *de facto* or otherwise, merged with or into any of the Debtors; (d) be an alter ego or a mere continuation or substantial continuation of any of the Debtors (and there is no continuity of enterprise between any Buyer and any Debtor), including within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor, employment, environmental, or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to Debtors' liability under such law, rule or regulation or doctrine; or (e) be holding itself out to the public as a continuation of any of Debtors or their respective estates.

38.     The transactions contemplated by the Asset Purchase Agreement are undertaken by the Buyers without collusion and in good faith, as that term is defined in section 363(m) of the Bankruptcy Code, and, accordingly, the reversal or modification on appeal of the authorization provided in this Sale Order to consummate the Sale shall not affect the validity of the Sale or the assumption and assignment of the Designated Contracts, unless such authorization and such Sale are duly stayed pending such appeal.  The Buyers are, collectively, a good faith buyer within the

meaning of section 363(m) of the Bankruptcy Code and, as such, are entitled to the full protections of section 363(m) of the Bankruptcy Code.

39.    Notwithstanding the provisions of Bankruptcy Rule 6004(h) and Bankruptcy Rule 6006(d), and pursuant to Bankruptcy Rules 7062(g) and 9014, this Sale Order shall not be stayed, shall be effective immediately upon entry, and the Debtors and the Buyers are authorized to close the Sale immediately upon entry of this Sale Order.  Time is of the essence in closing the transactions referenced herein, and the Debtors and Buyers intend to close the Sale as soon as practicable.

40.    Nothing contained in any chapter 11 plan confirmed in the Debtors' cases or any order confirming any such plan or in any other order in these chapter 11 cases (including any order entered after any conversion of any of these cases to a case under chapter 7 of the Bankruptcy Code) or any related proceeding subsequent to entry of this Sale Order shall alter, conflict with, or derogate from, the provisions of the Asset Purchase Agreement or this Sale Order.

41.    The terms and provisions of this Sale Order and the terms and provisions of the Asset Purchase Agreement and any actions taken pursuant hereto or thereto as of the date of the entry of the Sale Order shall survive the entry of any order that may be entered, including, without limitation, converting the Debtors' cases from chapter 11 to chapter 7 or dismissing the Debtors' cases, and the terms and provisions of the Asset Purchase Agreement, as well as the rights and interests granted pursuant to this Sale Order and the Asset Purchase Agreement shall continue in these or any superseding cases and shall be binding upon the Debtors and all other parties and their respective successors and permitted assigns, including any trustee, examiner, party, entity, or other fiduciary hereafter appointed as a legal representative of the Debtors under chapter 7 or chapter 11 of the Bankruptcy Code.

42.     From time to time, as and when requested by any party, each party shall execute and deliver, or cause to be executed and delivered, all such documents and instruments and shall take, or cause to be taken, all such further or other actions as such other party may reasonably deem necessary or desirable to consummate the transactions contemplated by the Asset Purchase Agreement, including such actions as may be necessary to vest, perfect, or confirm, of record or otherwise, in Buyers its right, title, and interest in and to the Purchased Assets.

43.     The failure to specifically include any particular provision of the Asset Purchase Agreement in this Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Asset Purchase Agreement be authorized and approved in its entirety; *provided* that this Sale Order shall govern if there is any inconsistency between the Asset Purchase Agreement (including all ancillary documents executed in connection therewith) and this Sale Order.

44.     The Asset Purchase Agreement and any related agreements, schedules, exhibits, documents, or other instruments may be modified, amended, or supplemented by the parties thereto and in accordance with the terms thereof, without further order of the Court.

45.     This Court shall retain jurisdiction to, among other things, interpret, implement, and enforce the terms and provisions of this Sale Order and the Asset Purchase Agreement, all amendments thereto and any waivers and consents thereunder and each of the agreements executed in connection therewith to which any Debtor is a party or which has been assigned by the Debtors to the Buyers, and to adjudicate, if necessary, any and all disputes concerning or relating in any way to the Sale, including, but not limited to, retaining jurisdiction to: (a) compel delivery of the Acquired Assets to the Buyers; (b) interpret, implement, and enforce the provisions of this Sale Order; (c) protect the Buyers against any Liens, Claims, or other interest in or against the Sellers

or the Acquired Assets of any kind or nature whatsoever, attaching to the proceeds of the Sale; and (d) enter any orders under sections 363 and 365 of the Bankruptcy Code with respect to the Designated Contracts.

**Dated: November 4th, 2020**
**Wilmington, Delaware**

**CHRISTOPHER S. SONTCHI**
**UNITED STATES BANKRUPTCY JUDGE**