# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, et al., | Case No. 20-12168 (CSS) |
| | Jointly Administered |
| Debtors. | |

## DECLARATION OF KYLE CLEETON

I, Kyle Cleeton, hereby declare:

1. Peak Credit LLC ("Peak") is a multi-member LLC, of which Lepercq de Neuflize & Co. ("Lepercq") is the managing member. I am the Co-Chief Investment Officer of Lepercq, which oversees, through its wholly-owned investment advisory businesses, in excess of $600 million in discretionary capital, and am submitting this declaration in opposition to the ad hoc term lender group's motion for an un-bonded injunction prohibiting the closing of the Debtors' section 363 sale to New TSI Holdings, Inc. ("Buyer").

2. For background, Buyer's parent is New TSI Ultimate Holdings, Inc., a corporation organized under Delaware law that is authorized to issue 1 million shares of common stock. In contemplation of closing, and in accordance with the Sale Order, New Town Sports Holdings, LLC (the "Sponsor" identified in Paragraph X of the Sale Order), of which Peak is the sole member, subscribed to 800,000 shares in New TSI Ultimate Holdings, Inc.; and 200,000 shares are authorized but being held in reserve for the prepetition lenders, in accordance with the Sale Order (see Paragraph X). Peak holds a convertible promissory note issued by Fitness Recovery Holdings, LLC ("FRH"), the DIP lender. As consideration for its funding to the Debtors and its commitment to support the business post-closing as hereinafter described, the membership interests in the Sponsor were issued directly to Peak instead of FRH.

3. I am Buyer's sole director and have corporate authority to act on its behalf. I am familiar with the representation and warranty in the Asset Purchase Agreement as to Buyer's financial ability to perform [D.I. 639-1, Section 4.6] and am prepared to cause Buyer to close and the cash purchase price consideration to be wired to the Debtors on Monday immediately following the hearing, absent the Court granting the motion.

4. Permitting the Debtors and Buyer to close on the sale will permit the Buyer to acquire the business with a substantially de-levered balance sheet relative to that of the Debtors, Buyer's only non-operating liability being the DIP loan (see Sale Order, Paragraph 31) which is being converted to long-term, secured debt pursuant to a Credit Agreement to be executed in conjunction with closing.

5. Upon closing, Peak fully expects additional capital will be needed to support Buyer's business operations. Peak welcomes investment proposals from third party investors, including the prepetition lenders; and I am confident that the Buyer can raise outside investment capital provided it is reasonably leveraged, as would be the case if, as contemplated by the Sale Order, Buyer's only long-term debt is the above-described, converted DIP loan. Nevertheless, out of an abundance of caution, Peak is hereby committing to provide at least $5 million to the Buyer to support the business post-closing, provided that upon closing its only long-term debt is the converted DIP loan. Peak would of course provide additional financial support for so long as it made economic sense for it to do so.

6. However, were Buyer to have a highly levered balance sheet post-closing, as would be the case were Peak to accede to the ad hoc group's demands and cause Buyer to issue second lien debt to the prepetition lenders, on terms even roughly consistent with those in the unenforceable ("This Term Sheet is not intended to be a binding agreement of the parties"), unsigned term sheet

with Tacit Capital, LLC [D.I. 48-1, discussion of "Prepetition Loan Assignment"], even though neither the issuance of debt to the prepetition lenders nor the assumption of any portion of their loans is contemplated by the Sale Order, I believe it likely the Buyer will have considerable difficulty raising capital, and it would be doubtful that the Buyer would survive for long without the need for a new restructuring.

7. Stated differently, Buyer is not in a position to issue second lien debt to the prepetition lenders because both raising capital and operating in an extremely stressed environment hinges upon its having a lean balance sheet.

8. I anticipate continuing to engage the prepetition lenders in further, good faith negotiations post-closing, as to an appropriate equity split (as contemplated by Paragraph X). And in the event that agreement is not reached, I fully expect the prepetition lenders to direct their agent to bring suit. However, the existence of a dispute between Peak and the ad hoc group should not be permitted to hold up closing.

9. I personally spoke with Seth Van Aalten and Justin Alberto of Cole Schotz P.C., counsel for the creditors' committee, on Friday afternoon, and understand the committee supports our closing on this transaction.

I hereby declare under penalty of perjury that the foregoing is true and correct. Executed on November 29, 2020.

/s/ Kyle Cleeton