## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] | Case No. 20-12168 (CSS) |
| Debtors. | (Jointly Administered) |

### NOTICE OF FILING OF ADDITIONAL EXHIBIT TO PLAN SUPPLEMENT

**PLEASE TAKE NOTICE THAT** on November 3, 2020, the United States Bankruptcy Court for the District of Delaware (the "**Court**") entered an order [Docket No. 561] (the "**Interim Disclosure Statement Order**"): (a) authorizing Town Sports International, LLC, and its affiliated debtors and debtors in possession (collectively, the "**Debtors**"), to solicit acceptances for the *Joint Chapter 11 Plan of Town Sports International, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (as modified, amended, or supplemented from time to time, the "**Plan**");[2] (b) approving the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Town Sports International, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* (the "**Disclosure Statement**") as containing "adequate information" pursuant to section 1125 of the Bankruptcy Code on an interim basis; (c) approving the solicitation materials and documents to be included in the solicitation packages; and (d) approving procedures for soliciting, receiving, and tabulating votes on the Plan and for filing objections to the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** as contemplated by the Plan and the Interim Disclosure Statement Order approving the Disclosure Statement, the Debtors filed the Plan Supplement with the Court on November 25, 2020.

**PLEASE TAKE FURTHER NOTICE THAT** attached hereto as Exhibit A the Non-Released Claims Trust Agreement and Declaration of Trust, which is incorporated as an exhibit to the Plan Supplement. Notwithstanding the foregoing, the Debtors have the right to amend the documents contained in, and exhibits to, the Plan Supplement through the Effective Date.

**PLEASE TAKE FURTHER NOTICE THAT** the hearing at which the Court will consider Confirmation of the Plan will commence on **December 14, 2020.**

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. Due to the large number of debtors in these cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://dm.epiq11.com/TownSports, or by contacting the undersigned counsel for the Debtors.

[2] Capitalized terms not otherwise defined herein have the same meanings as set forth in the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** if you would like to obtain a copy of the Disclosure Statement, the Plan, the Plan Supplement, or related documents, you should contact Epiq Corporate Restructuring, LLC, the notice and claims agent retained by the Debtors in these Chapter 11 cases (the "**Notice and Claims Agent**") by (a) visiting the Debtors' restructuring website at https://dm.epiq11.com/TownSports, (b) writing to: Epiq Corporate Restructuring, LLC, Re: Town Sports International, LLC, et al., 10300 SW Allen Blvd., Beaverton, OR 97005, (c) emailing TownSports@epiqglobal.com, or (d) calling the Debtors' Notice and Claims Agent at (888) 490-0677 (Domestic) or +1 (503) 520-4484 (International).  You may also obtain copies of any pleadings filed in the Chapter 11 Cases for a fee via PACER at: https://ecf.deb.uscourts.gov/.

Dated: Wilmington, Delaware
December 2, 2020

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Travis G. Buchanan*
Robert S. Brady (No. 2847)
Sean T. Greecher (No. 4484)
Travis G. Buchanan (No. 5595)
Allison S. Mielke (No. 5934)
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Email: rbrady@ycst.com
        sgreecher@ycst.com
        tbuchanan@ycst.com
        amielke@ycst.com

and

KIRKLAND & ELLIS LLP
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Email: nicole.greenblatt@kirkland.com
        derek.hunter@kirkland.com

KIRKLAND & ELLIS LLP
Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, CA 94104
Telephone:  (415) 439-1400
Email:  mark.mckane@kirkland.com

KIRKLAND & ELLIS LLP
Joshua M. Altman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Email:  josh.altman@kirkland.com

*Counsel to the Debtors*
*and Debtors in Possession*

# **EXHIBIT A**

**Non-Released Claims Trust Agreement**

## NON-RELEASED CLAIMS TRUST AGREEMENT AND DECLARATION OF TRUST

This liquidating trust agreement and declaration of trust (the "Agreement"), dated as of December __, 2020, is made by and among Town Sports International, LLC and its affiliated chapter 11 debtors and debtors in possession (collectively, the "Debtors"), and META Advisors LLC (the "Trustee," and together with the Debtors, each, a "Party" and collectively, the "Parties").

## RECITALS

A    On September 14, 2020, the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court"), and their chapter 11 cases are being jointly administered as *In re Town Sports International, LLC, et al.*, Case No. 20-12168 (CSS) (Bankr. D. Del.) (the "Chapter 11 Cases").

B    On September 24, 2020, the United States Trustee for Region 3 (the "U.S. Trustee") appointed the Official Committee of Unsecured Creditors (the "Creditors' Committee") consisting of (i) 575 Lex Property Owner, LLC; (ii) Philips International Holding Corporation; (iii) BDG 99QB, LLC; (iv) Mykola Kolomiichuk; and (v) Nancy Radford.

C    The Debtors filed the *Joint Chapter 11 Plan of Town Sports International, LLC and its Debtor Affiliates* on October 20, 2020 (as confirmed, the "Plan") (Docket No. 291).[1]  The Plan was amended on November 3, 2020 (Docket No. 586) to provide for, among other things, the establishment of the Non-Released Claims Trust (the "Trust") effective on the Effective Date of the Plan.

---

[1] All capitalized terms used in this Agreement but not otherwise defined herein shall have the same meanings set forth in the Plan.

D       On December __, 2020, the Bankruptcy Court entered an order ("Confirmation Order") (Docket No. ___) confirming the Plan, which became effective on December __, 2020 (the "Effective Date").

E       The Confirmation Order provides for the appointment of the Trustee as the Non-Released Claims Trustee of the Trust, and the Plan and this Agreement provide for the appointment as necessary of any successor Non-Released Claims Trustee of the Trust.

F       The Trust is established for the benefit of the Holders of Allowed General Unsecured Claims entitled to distributions under the Plan (collectively, "Beneficiaries").

G       The Trust is established for the purpose of collecting, holding, administering, distributing, and liquidating the Trust Assets (defined below) for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan and with no objective to continue or engage in the conduct of a trade or business, except to the extent necessary to, and consistent with, the Plan and liquidating purpose of the Trust.

H       Pursuant to the Plan, the Debtors, Trust, Trustee, and Beneficiaries are required to treat, for all federal income tax purposes, the transfer of the Trust Assets to the Trust as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for the beneficial interest herein, and to treat the Beneficiaries as the grantors and owners of the Trust for federal income tax purposes.

I       Pursuant to the Plan, the Trust is intended for federal income tax purposes (i) to be treated as a grantor trust within the meaning of sections 671-677 of the Internal Revenue Code of

1986, as amended ("IRC"), and also (ii) to qualify as a liquidating trust within the meaning of Treasury Regulation section 301.7701-4(d).

J       In accordance with the Plan, the Trust is further intended to be exempt from the requirements of (i) pursuant to section 1145 of the Bankruptcy Code, the Securities Exchange Act of 1933, as amended, and any applicable state and local laws requiring registration of securities, and (ii) the Investment Company Act of 1940, as amended, pursuant to sections 7(a) and 7(b) of that Act and section 1145 of the Bankruptcy Code.

NOW, THEREFORE, in accordance with the Plan and the Confirmation Order, and in consideration of the promises, and the mutual covenants and agreements of the Parties contained in the Plan and herein, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged and affirmed, the Parties agree and declare as follows:

## DECLARATION OF TRUST

The Debtors and the Trustee enter into this Agreement to effectuate the distribution of the Trust Assets to the Beneficiaries pursuant to the Plan and the Confirmation Order;

Pursuant to Article VIII of the Plan, paragraph __ of the Confirmation Order, and section 2.4 of this Agreement, all right, title, and interest in, under, and to the Non-Released Claims Trust Assets shall be absolutely and irrevocably transferred to the Trust and to its successors in trust and its successors and assigns;

TO HAVE AND TO HOLD unto the Trustee and its successors in trust; and

IT IS HEREBY FURTHER COVENANTED AND DECLARED, that the Non-Released Claims Trust Assets and all other property held from time to time by the Trust under this Agreement and any proceeds thereof and earnings thereon (collectively, "Trust Assets") are to be

held by the Trust and applied on behalf of the Trust by the Trustee on the terms and conditions set

forth herein, solely for the benefit of the Beneficiaries and for no other party.

## ARTICLE I

## RECITALS, PLAN DEFINITIONS, OTHER
## DEFINITIONS, INTERPRETATION, AND CONSTRUCTION

1.1    <u>Recitals</u>.  The Recitals are incorporated into and made terms of this Agreement.

1.2    <u>Definitions</u>.  For purposes of this Agreement:

1.2.1    "<u>Disputed GUC</u>" means any General Unsecured Claim that is a Disputed

Claim within the meaning of the Plan.

1.2.2    "<u>Distribution</u>" means one or more payments or distributions under the

Plan of Cash to the Beneficiaries as provided for in the Plan or this Agreement.

1.3    <u>Interpretation; Headings.</u>  All references herein to specific provisions of the Plan or

Confirmation Order are without exclusion or limitation of other applicable provisions of the Plan

or Confirmation Order.  Words denoting the singular number shall include the plural number and

vice versa, and words denoting one gender shall include the other gender.  The headings in this

Agreement are for convenience of reference only and shall not limit or otherwise affect the

provisions of this Agreement.

1.4    <u>Construction of Agreement</u>. This Agreement shall not be construed to impair or

limit in any way the rights of any Person under the Plan.

1.5    <u>Conflict Among Plan Documents</u>.  In the event of any inconsistency between the

Plan and the Confirmation Order, as applicable, on the one hand, and this Agreement, on the other

hand, the Plan or the Confirmation Order, as applicable, shall control and take precedence.

## ARTICLE II

## ESTABLISHMENT OF TRUST

2.1     <u>Effectiveness of Agreement; Name of Trust</u>.   Pursuant to the Plan and the Confirmation Order and in accordance with the applicable provisions of the Bankruptcy Code, the Post-Effective Date Debtors and the Trustee hereby establish, as of the Effective Date, the Trust on behalf of and for the Beneficiaries.  The Trust shall be officially known as the "Town Sports International Liquidating Trust," in which name the Trustee may conduct the affairs of the Trust.  The office of the Trust shall be in care of the Trustee at its trust office or at any other address that the Trustee may designate by written notice to the Beneficiaries.

2.2     <u>Appointment of the Trustee; Acceptance by Trustee</u>.   Pursuant to the Confirmation Order, the Trustee is hereby appointed by the Creditors' Committee as trustee of the Trust, effective as of the Effective Date, and shall have all the rights, powers, and duties set forth herein and pursuant to applicable law for accomplishing the purposes of the Trust. The Trustee is, and any successor trustee serving from time to time hereunder shall be, a "United States person" as such term is defined in section 7701(a)(30) of the IRC.  The Trustee is hereby authorized to file with any governmental authority any documents necessary to establish the Trust.  The Trustee accepts its appointment as Non-Released Claims Trustee of the Trust.

2.3     <u>Purpose of Trust</u>.   The Debtors and the Trustee, pursuant to the Plan and in accordance with Bankruptcy Code, hereby create the Trust for the primary purpose of collecting, holding, administering, distributing and liquidating the Trust Assets for the benefit of the Beneficiaries in accordance with the terms and conditions of this Agreement and the Plan, and

with no objective to continue or engage in the conduct of a trade or business, except to the extent reasonably necessary to, and consistent with, the liquidating purpose of the Trust.

2.4    Transfer of Trust Assets.

2.4.1    Conveyance of Litigation Trust Assets.  Pursuant to the Plan, the Debtors hereby grant, release, assign, transfer, convey and deliver, and shall be deemed to have granted, released, assigned, transferred, conveyed and delivered, on behalf of the Beneficiaries, the Trust Assets to the Trust as of the Effective Date in trust for the benefit of the Beneficiaries to be administered and applied as specified in this Agreement and the Plan.  Until a final decree is entered in each of the Debtors' Chapter 11 Cases, the Post-Effective Date Debtor shall, from time to time, as and when reasonably requested by, and upon reasonable advance written notice of, the Trustee, at the cost and expense of the Trust (i) execute and deliver or cause to be executed and delivered all such documents (in recordable form where necessary or appropriate) and (ii) take or cause to be taken such further action as the Trustee may reasonably deem necessary or appropriate, to vest or perfect in the Trust or confirm to the Trustee title to and possession of the Trust Assets.  The Trustee shall have no duty to arrange for any of the transfers contemplated under this Agreement or by the Plan or to ensure their compliance with the terms of the Plan and the Confirmation Order, and shall be conclusively entitled to rely on the legality and validity of such transfers.

2.4.2    Title to Trust Assets.  Pursuant to the Plan, all of the Debtors' right, title and interest in and to the Trust Assets, including all such assets held or controlled by third parties, are automatically vested in the Trust on the Effective Date, free and clear of all liens, claims, encumbrances and other interests, except as specifically provided in the Plan, and such transfer is on behalf of the Beneficiaries to establish the Trust.  The Trust shall be authorized to obtain

possession or control of, liquidate, and collect all of the Trust Assets in the possession or control

of the Debtors, pursue all of the Non-Released Claims Trust Causes of Action, and pursue, assert

and/or and exercise all rights of setoffs and recoupment and defenses of the Debtors or their

Estates to any counterclaims that may be asserted by any and all defendants as to any Non-

Released Claims Trust Causes of Action and/or Holders of General Unsecured Claims.  On the

Effective Date, the Trust shall stand in the shoes of the Debtors for all purposes with respect to

the Trust Assets and administration of General Unsecured Claims.  To the extent any law or

regulation prohibits the transfer of ownership of any of the Trust Assets from the Debtors to the

Trust and such law is not superseded by the Bankruptcy Code, the Trust's interest shall be a lien

upon and security interest in such Trust Assets, in trust, nevertheless, for the sole use and purposes

set forth in section 2.3, and this Agreement shall be deemed a security agreement granting such

interest thereon without need to file financing statements or mortgages.  By executing this

Agreement, the Trustee on behalf of the Trust hereby accepts all of such property as Trust Assets,

to be held in trust for the Beneficiaries, subject to the terms of this Agreement and the Plan.

2.5    <u>Capacity of Trust</u>.  Notwithstanding any state or federal law to the contrary or

anything herein, the Trust shall itself have the capacity, in its own right and name, to act or refrain

from acting, including the capacity to sue and be sued and to enter into contracts.  The Trust may

alone be the named movant, respondent, party plaintiff or defendant, or the like in all adversary

proceedings, contested matters, and other state or federal proceedings brought by or against it,

and may settle and compromise all such matters in its own name.

2.6    <u>Cooperation of Plan Administrator and Post-Effective Date Debtor</u>.  The Plan

Administrator, the Post-Effective Date Debtor and their professionals shall use commercially

reasonable efforts to cooperate with the Trust and Trustee and their professionals in effecting the

transition from the Debtors to the Trust of administration of the Trust Assets. Such cooperation shall include, but not be limited to reasonably attempting to identify and facilitate access to (i) any evidence and information the Trustee reasonably requests (including but not limited to reasonable access to the Debtors' books and records) in connection with the Trust's investigation, prosecution or other pursuit of the Non-Released Claims Trust Causes of Action and objections to Disputed GUCs and (ii) former employees or Professionals of the Debtors with knowledge regarding the Non-Released Claims Trust Causes of Action or Disputed GUCs. The Plan Administrator, the Debtors and Post-Effective Date Debtor shall preserve or, consistent with the prior sentence, turn over to the Trust copies of all physical or electronically stored documents and communications in their possession or control that relate to the Non-Released Claims Trust Causes of Action. Within thirty (30) days after the Effective Date, the Trustee may request an updated Claims Register from the Post-Effective Date Debtor, which shall be provided by the Notice and Claims Agent at the cost and expense of the Trust.

2.7    <u>Duties of the Debtors, the Plan Administrator, and the Post-Effective Date Debtor</u>. The Debtors, the Plan Administrator, and the Post-Effective Date Debtor shall have no responsibility or obligation with respect to the Trust or the Non-Released Claims Trust Causes of Actions after the Effective Date, other than to comply with sections 2.4 and 2.6 of this Agreement.

2.8    <u>No Retention of Excess Cash</u>. Notwithstanding anything in this Agreement to the contrary, under no circumstances shall the Trust or Trustee retain cash or cash equivalents in excess of a reasonable amount to meet claims, expenses, and contingent liabilities or to maintain the value of the Trust Assets during liquidation other than reserves established pursuant to sections 3.2.20 and/or 4.1.2 of this Agreement, and shall distribute all amounts not required to be

retained for such purposes to the Beneficiaries as promptly as reasonably practicable in accordance with the Plan and this Agreement.

## ARTICLE III

## ADMINISTRATION OF TRUST

3.1    <u>Rights, Powers, and Privileges of Trustee Generally</u>.  Except as otherwise provided in this Agreement, the Plan, or the Confirmation Order, as of the date that the Trust Assets are transferred to the Trust, the Trustee on behalf of the Trust may control and exercise authority over the Trust Assets, over the acquisition, management and disposition thereof, and over the management and conduct of the affairs of the Trust.  In administering the Trust Assets, the Trustee shall endeavor not to unduly prolong the Trust's duration, with due regard that undue haste in the administration of the Trust Assets may fail to maximize value for the benefit of the Beneficiaries and otherwise be imprudent and not in the best interests of the Beneficiaries.

3.1.1    <u>Power to Contract</u>.  In furtherance of the purpose of the Trust, and except as otherwise specifically restricted in the Plan, Confirmation Order, or this Agreement, the Trustee shall have the right and power on behalf of the Trust, and also may cause the Trust, to enter into any covenants or agreements binding the Trust, and to execute, acknowledge and deliver any and all instruments that are necessary or deemed by the Trustee to be consistent with and advisable in furthering the purpose of the Trust.

3.1.2    <u>Ultimate Right to Act Based on Advice of Counsel or Other Professionals</u>. Nothing in this Agreement shall be deemed to prevent the Trustee from taking or refraining to take any action on behalf of the Trust that, based upon the advice of counsel or other professionals, the Trustee determines it is obligated to take or to refrain from taking in the performance of any

duty that the Trustee may owe the Beneficiaries or any other Person under the Plan, Confirmation Order, or this Agreement.

      3.2    <u>Powers of Trustee</u>.  Without limiting the generality of the above section 3.1, in addition to the powers granted in the Plan, the Trustee shall have the power to take the following actions on behalf of the Trust and any powers reasonably incidental thereto that the Trustee, in its reasonable discretion, deems necessary or appropriate to fulfill the purpose of the Trust, unless otherwise specifically limited or restricted by the Plan or this Agreement:

      3.2.1    hold legal title to the Trust Assets and to any and all rights of the Debtors and the Beneficiaries in or arising from the Trust Assets;

      3.2.2    receive, manage, invest, supervise, protect, and where appropriate, cause the Trust to abandon the Trust Assets, including causing the Trust to invest any moneys held as Trust Assets in accordance with the terms of section 3.7 hereof;

      3.2.3    open and maintain bank accounts on behalf of or in the name of the Trust;

      3.2.4    cause the Trust to enter into any agreement or execute any document or instrument required by or consistent with the Plan, the Confirmation Order or this Agreement, and to perform all obligations thereunder;

      3.2.5    collect and liquidate all Trust Assets, including the sale of any Trust Assets;

      3.2.6    protect and enforce the rights to the Trust Assets (including any Non-Released Claims Trust Causes of Action) vested in the Trust and Trustee by this Agreement by any method deemed appropriate, including, without limitation, by judicial proceedings or otherwise;

3.2.7    investigate any Trust Assets, including potential Non-Released Claims Trust Causes of Action, and any objections to General Unsecured Claims, and cause the Trust to seek the examination of any Person pursuant to Federal Rule of Bankruptcy Procedure 2004 in relation to the Non-Released Claims Trust Causes of Action;

3.2.8    cause the Trust to employ and pay professionals, disbursing agents, and other agents and third parties pursuant to this Agreement;

3.2.9    cause the Trust to pay all of its lawful expenses, debts, charges, taxes and other liabilities, and make all other payments relating to the Trust Assets;

3.2.10    cause the Trust to pursue, commence, prosecute, compromise, settle, dismiss, release, waive, withdraw, abandon, or resolve all Non-Released Claims Trust Causes of Action;

3.2.11    calculate and make all Distributions on behalf of the Trust to the Beneficiaries provided for in, or contemplated by, the Plan and this Agreement;

3.2.12    establish, adjust, and maintain reserves for Disputed GUCs required to be administered by the Trust;

3.2.13    cause the Trust to withhold from the amount distributable to any Person the maximum amount needed to pay any tax or other charge that the Trustee has determined, based upon the advice of its agents and/or professionals, may be required to be withheld from such Distribution under the income tax or other laws of the United States or of any state or political subdivision thereof;

3.2.14    in reliance upon the Debtors' schedules and the official Claims Register maintained in the Chapter 11 Cases, review, and where appropriate, cause the Trust to allow or

object to General Unsecured Claims, and, supervise and administer the Trust's commencement, prosecution, settlement, compromise, withdrawal or resolution of all objections to Disputed GUCs required to be administered by the Trust;

3.2.15  in reliance upon the Debtors' schedules and the official Claims Register maintained in the Chapter 11 Cases, maintain a register evidencing the beneficial interest herein held by each Beneficiary and, in accordance with section 3.8 of this Agreement, such register may be the official Claims register maintained in the Chapter 11 Cases to the extent of any General Unsecured Claims reflected thereon;

3.2.16  cause the Trust to make all tax withholdings, file tax information returns, file and prosecute tax refund claims, make tax elections by and on behalf of the Trust, and file tax returns for the Trust as a grantor trust under IRC section 671 and Treasury Income Tax Regulation section 1.671-4 pursuant to and in accordance with the Plan and Article VII hereof, and pay taxes, if any, payable for and on behalf of the Trust; provided, however, that notwithstanding any other provision of this Agreement, neither the Trust nor the Trustee shall have any responsibility in any capacity whatsoever for the preparation, filing, signing or accuracy of the Debtors' or the Post-Effective Date Debtor' income tax returns that are due to be filed after the Effective Date or for any tax liability related thereto, which shall be the sole responsibility of the Post-Effective Date Debtor;

3.2.17  cause the Trust to abandon or donate to a charitable organization any Trust Assets that the Trustee determines to be too impractical to distribute to Beneficiaries or of inconsequential value to the Trust and Beneficiaries;

3.2.18  cause the Trust to send annually to Beneficiaries, in accordance with the tax laws, a separate statement stating a Beneficiary's interest in the Trust and its share of the Trust's

income, gain, loss, deduction or credit, and to instruct all such Beneficiaries to report such items on their federal tax returns;

   3.2.19 cause the Trust to seek a determination of tax liability or refund under section 505 of the Bankruptcy Code;

   3.2.20 cause the Trust to establish such reserves for taxes, assessments and other expenses of administration of the Trust as may be necessary and appropriate for the proper operation of matters incident to the Trust;

   3.2.21 cause the Trust to purchase and carry all insurance policies that the Trustee deems reasonably necessary or advisable and to pay all associated insurance premiums and costs;

   3.2.22 undertake all administrative functions of the Trust, including overseeing the winding down and termination of the Trust;

   3.2.23 exercise, implement, enforce, and discharge all of the terms, conditions, powers, duties, and other provisions of the Plan, the Confirmation Order, and this Agreement; and

   3.2.24 take all other actions consistent with the provisions of the Plan that the Trustee deems reasonably necessary or desirable to administer the Trust.

   3.3 <u>Exclusive Authority to Pursue the Non-Released Claims Trust Causes of Actions</u>. The Trust shall have the exclusive standing, right, power, and interest to pursue, settle, waive, release, abandon, or dismiss the Non-Released Claims Trust Causes of Action. The Trust shall be the sole representative of the Estates under section 1123(b)(3) of the Bankruptcy Code with respect to the Non-Released Claims Trust Causes of Action. The Trust shall be vested with and entitled to assert all setoffs and defenses of the Debtors or the Trust to any counterclaims that may

be asserted by any defendant with respect to any Non-Released Claims Trust Causes of Action. The Trust shall also be vested with and entitled to assert all of the Debtors' and the Estates' rights with respect to any such counterclaims, under section 558 of the Bankruptcy Code.

3.4    Abandonment.  If, in the Trustee's reasonable judgment, any Trust Assets cannot be sold in a commercially reasonable manner or the Trustee believes in good faith that such property has inconsequential value to the Trust or its Beneficiaries, the Trustee shall have the right to cause the Trust to abandon or otherwise dispose of such property, including by donation of such property to a charitable organization.

3.5    Responsibility for Administration of General Unsecured Claims.  From and after the Effective Date, the Trust shall become responsible for administering and paying Distributions to the Beneficiaries.  The Trust shall have the exclusive right to object to the allowance of any General Unsecured Claim on any ground, to file, withdraw or litigate to judgment objections to General Unsecured Claims, to settle or compromise any Disputed GUC without any further notice to or action, order or approval by the Bankruptcy Court, and to assert all defenses of the Debtors and their Estates.  The Trust shall also be entitled to assert all of the Debtors' and the Estates rights under, without limitation, section 558 of the Bankruptcy Code.  The Trust may also seek estimation of any General Unsecured Claims under and subject to section 502(c) of the Bankruptcy Code.

3.6    Agents and Professionals.  The Trustee may, but shall not be required to, consult with and retain attorneys, financial advisors, accountants, appraisers, and other professionals (including professionals previously retained by the Creditors' Committee) the Trustee believes have qualifications necessary to assist in the administration of the Trust, including consulting with, upon reasonable request, professionals previously retained by the Debtors.  For the

avoidance of doubt, and without limitation of applicable law, nothing in this Agreement shall limit the Trustee from engaging counsel or other professionals, including the Trustee itself or the Trustee's firm or their affiliates, to do work for the Trust.  The Trustee may pay the reasonable salaries, fees and expenses of such Persons solely out of the Trust Assets in the ordinary course of business.

3.7    <u>Safekeeping and Investment of Trust Assets</u>.  All moneys and other assets received by the Trustee shall, until distributed or paid over as provided herein and in the Plan, be held in trust for the benefit of the Beneficiaries, but need not be segregated in separate accounts from other Trust Assets, unless and to the extent required by law or the Plan.  Neither the Trust nor the Trustee shall have any liability for interest or producing income on any moneys received by them and held for Distribution or payment to the Beneficiaries, except as such interest shall actually be received by the Trust or Trustee, which shall be distributed as provided in the Plan.  Except as otherwise provided by the Plan, the powers of the Trustee to invest any moneys held by the Trust, other than those powers reasonably necessary to maintain the value of the assets and to further the Trust's liquidating purpose shall be limited to powers to invest in demand and time deposits, such as short-term certificates of deposit, in banks or other savings institutions, or other temporary liquid investments, such as treasury bills; <u>provided</u>, <u>however</u>, that the scope of permissible investments shall be limited to include only those investments that a liquidating trust, within the meaning of Treas. Reg. § 3.01.7701-4(d), may be permitted to hold pursuant to the Treasury Regulations, or any modification of the IRS guidelines, whether set forth in IRS rulings, IRS pronouncements, or otherwise.  For the avoidance of doubt, the provisions of section 11-2.3 of the Estates, Power, and Trusts Law of New York shall not apply to this Agreement.  Notwithstanding the foregoing, the Trustee shall not be prohibited from engaging in any trade or

business on its own account, provided that such activity does not interfere or conflict with the Trustee's administration of the Trust.

3.8    <u>Maintenance and Disposition of Trust and Records</u>.  The Trustee shall maintain accurate records of the administration of Trust Assets, including receipts and disbursements and other activity of the Trust.  The Trust may, but has no obligation to, engage a claims agent (including, but not limited to, the Notice and Claims Agent), at the cost and expense of the Trust, to continue to maintain and update the Claims Register maintained in the Chapter 11 Cases throughout the administration of the Trust.  In any case, to the extent of any General Unsecured Claims reflected thereon, the Claims Register may, at the cost and expense of the Trust, serve as the Trustee's register of beneficial interests held by Beneficiaries.  The books and records maintained by the Trustee and any records of the Debtors transferred to the Trust may be disposed of by the Trustee at the later of (i) such time as the Trustee determines that the continued possession or maintenance of such books and records is no longer necessary for the benefit of the Trust or its Beneficiaries and (ii) upon the termination and completion of the winding down of the Trust.

3.9    <u>Reporting Requirements</u>.  The Trustee shall provide the U.S. Trustee and the Bankruptcy Court the information and reports they may reasonably request concerning Trust administration.

3.10    <u>No Bond Required; Procurement of Insurance</u>. Notwithstanding any state or other applicable law to the contrary, the Trustee (including any successor Trustee) shall be exempt from giving any bond or other security in any jurisdiction and shall serve hereunder without bond.  The Trustee is hereby authorized, but not required to obtain all reasonable insurance coverage for itself, its agents, representatives, employees or independent contractors, including, without

limitation, coverage with respect to the liabilities, duties and obligations of the Trustee and its agents, representatives, employees or independent contractors under this Agreement.  The cost of any such insurance coverage shall be an expense of the Trust and paid out of Trust Assets.

## ARTICLE IV

## DISTRIBUTIONS

4.1     <u>Distribution and Reserve of Trust Assets</u>.  Following the transfer of Trust Assets to the Trust, the Trustee shall make continuing efforts on behalf of the Trust to collect, liquidate, and distribute all Trust Assets, subject to the reserves required under the Plan or this Agreement.

4.1.1   <u>Distributions</u>.   The Trustee shall cause the Trust to distribute, at least annually, the Trust's net Cash income and net Cash proceeds from the liquidation of the Trust Assets to the Beneficiaries, except the Trust may retain an amount of net income and other Trust Assets reasonably necessary to maintain the value of the Trust Assets or to meet expenses, claims and contingent liabilities of the Trust and Trustee, and retention of such amount may preclude Distributions to Beneficiaries.

4.1.2   <u>Reserves; Pooling of Reserved Funds</u>.   Before any Distribution can be made, the Trustee shall, in its reasonable discretion, establish, supplement, and maintain reserves in an amount sufficient to meet any and all expenses and liabilities of the Trust, including attorneys' fees and expenses and the fees and expenses of other professionals.  In accordance with section 3.2.12 of this Agreement, the Trust may also maintain as necessary a reserve for Disputed GUCs of Beneficiaries required to be administered by the Trust.  For the avoidance of doubt, the Trustee may withhold any Distribution pending the Trust's determination of whether to object to a General Unsecured Claim.  Any such withheld Distribution shall become part of the Trust's reserve for Disputed GUCs of Beneficiaries and shall be distributed to the appropriate Beneficiary

no later than the first Distribution Date after a decision is made not to object to the pertinent

General Unsecured Claim or the General Unsecured Claim becomes Allowed.   The Trustee need

not maintain the Trust's reserves in segregated bank accounts and may pool funds in the reserves

with each other and other funds of the Trust; provided, however, that the Trust shall treat all such

reserved funds as being held in a segregated manner in its books and records.

   4.1.3 <u>Distributions Net of Reserves and Costs</u>.  Distributions shall be made net of

reserves in accordance with the Plan and this Agreement, and also net of the actual and reasonable

costs of making the Distributions.

   4.1.4 <u>Right to Rely on Professionals</u>.   Without limitation of the generality of

section 6.6 of this Agreement, in determining the amount of any Distribution or reserves, the

Trustee may rely and shall be fully protected in relying on the advice and opinion of the Trust's

financial advisors, accountants, or other professionals.

  4.2 <u>Method and Timing of Distributions</u>.  Distributions to Beneficiaries will be made

from the Trust in accordance with the terms of the Plan (in particular, Article VIII) and this

Agreement.   The Trust may engage disbursing agents and other Persons to help make

Distributions.

  4.3 <u>Withholding from Distributions</u>.  The Trustee, in its discretion, may cause the Trust

to withhold from amounts distributable from the Trust to any Beneficiary any and all amounts as

may be sufficient to pay the maximum amount of any tax or other charge that has been or might

be assessed or imposed by any law, regulation, rule, ruling, directive, or other governmental

requirement on such Beneficiary or the Trust with respect to the amount to be distributed to such

Beneficiary.  The Trustee shall determine such maximum amount to be withheld by the Trust in

its sole, reasonable discretion and shall cause the Trust to distribute to the Beneficiary any excess amount withheld.

4.4     <u>Tax Identification Numbers</u>.  The Trustee may require any Beneficiary to furnish its taxpayer identification number as assigned by the Internal Revenue Service, including without limitation by providing an executed current Form W-9, Form W-8 or similar tax form, and may condition any Distribution to any Beneficiary upon receipt of such identification number and/or tax form.  If a Beneficiary does not provide the Trustee with its taxpayer identification number in the manner established by the Trustee within 90 days of the Trustee's initial request, then the Distribution to such Beneficiary shall be administered as an unclaimed Distribution in accordance with section 4.5 of this Agreement.

4.5     <u>Unclaimed and Undeliverable Distributions</u>.  If any Distribution to a Beneficiary is returned to the Trustee as undeliverable or is otherwise unclaimed, no further Distributions to such Beneficiary shall be made unless and until the Beneficiary claims the Distributions by timely notifying the Trustee in writing of any information necessary to make the Distribution to the Beneficiary in accordance with this Agreement, the Plan, and applicable law, including such Beneficiary's then-current address or taxpayer identification number.  If a Beneficiary timely provides the Trustee the necessary information within the 60-day reserve period, all missed Distributions shall be made to the Beneficiary as soon as is practicable, without interest. Undeliverable or unclaimed Distributions shall be administered in accordance with Article VI(D) of the Plan.

4.5.1   <u>No Responsibility to Attempt to Locate Beneficiaries</u>.  The Trustee may, in its sole discretion, attempt to determine a Beneficiary's current address or otherwise locate a Beneficiary, but nothing in this Agreement or the Plan shall require the Trustee to do so.

4.5.2    Disallowance of Claims; Cancellation of Corresponding Beneficial Interests.  All General Unsecured Claims in respect of undeliverable or unclaimed Distributions that have been deemed to have reverted back to the Trust for all purposes (including, but not limited to, for Distribution to Holders of other Allowed General Unsecured Claims) pursuant to Article VI(D) of the Plan shall be deemed disallowed and expunged without further action by the Trust or Trustee and without further order of the Bankruptcy Court, and the corresponding beneficial interests in the Trust of the Beneficiary holding such disallowed claims shall be deemed canceled.  The Holder of any such disallowed General Unsecured Claim shall no longer have any right, claim, or interest in or to any Distributions in respect of such General Unsecured Claim. The Holder of any such Disallowed General Unsecured Claim is forever barred, estopped, and enjoined from receiving any Distributions under the Plan or this Agreement and from asserting such Disallowed General Unsecured Claim against the Trust or Trustee.

4.5.3    Inapplicability of Unclaimed Property or Escheat Laws.    Unclaimed property held by the Trust shall not be subject to the unclaimed property or escheat laws of the United States, any state, or any local governmental unit.

4.6    Voided Checks; Request for Reissuance.    Distribution checks issued to Beneficiaries shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.  Notwithstanding that section, Distributions in respect of voided checks shall be treated as unclaimed Distributions under Article VI(D) of the Plan and administered under Article VI(D) of the Plan and section 4.5 of this Agreement.  Requests for reissuance of any check shall be made in writing directly to the Trustee by the Beneficiary that was originally issued such check. All such requests shall be made promptly and in time for the check to be reissued and cashed before the funds for the checks become unrestricted Trust Assets under section 4.5 of this

Agreement. The Beneficiary shall bear all the risk that, and shall indemnify and hold the Trust and Trustee harmless against any loss that may arise if, the Trustee does not reissue a check promptly after receiving a request for its reissuance and the date established by section 4.6 hereof passes without the check being reissued or cashed.

4.7    <u>Conflicting Claims</u>. If any conflicting claims or demands are made or asserted with respect to the beneficial interest of a Beneficiary under this Agreement, or if there is any disagreement between the assignees, transferees, heirs, representatives or legatees succeeding to all or a part of such an interest resulting in adverse claims or demands being made in connection with such interest, then, in any of such events, the Trustee shall be entitled, in its sole discretion, to refuse to comply with any such conflicting claims or demands.

4.7.1    The Trustee may elect to cause the Trust to make no payment or Distribution with respect to the beneficial interest subject to the conflicting claims or demand, or any part thereof, and to refer such conflicting claims or demands to the Bankruptcy Court, which shall have continuing jurisdiction over resolution of such conflicting claims or demands. Neither the Trust nor the Trustee shall be or become liable to any of such parties for their refusal to comply with any such conflicting claims or demands, nor shall the Trust or Trustee be liable for interest on any funds which may be so withheld.

4.7.2    The Trustee shall be entitled to refuse to act until either (i) the rights of the adverse claimants have been adjudicated by a Final Order of the Bankruptcy Court; or (ii) all differences have been resolved by a valid written agreement among all such parties to the satisfaction of the Trustee, which agreement shall include a complete release of the Trust and Trustee. Until the Trustee receives written notice that one of the conditions of the preceding sentence is met, the Trustee may deem and treat as the absolute owner under this Agreement of

the beneficial interest in the Trust the Beneficiary identified as the owner of that interest in the books and records maintained by the Trustee.  The Trustee may deem and treat such Beneficiary as the absolute owner for purposes of receiving Distributions and any payments on account thereof for federal and state income tax purposes, and for all other purposes whatsoever.

4.7.3    In acting or refraining from acting under and in accordance with this section 4.7 of the Agreement, the Trustee shall be fully protected and incur no liability to any purported claimant or any other Person pursuant to Article VI of this Agreement.

4.8    <u>Priority of Expenses of Trust</u>.  The Trust must pay all of its expenses before making Distributions.

## ARTICLE V
## BENEFICIARIES

5.1    <u>Interest Beneficial Only</u>.  The ownership of a beneficial interest in the Trust shall not entitle any Beneficiary to any title in or to the Trust Assets or to any right to call for a partition or division of such assets or to require an accounting.

5.2    <u>Ownership of Beneficial Interests Hereunder</u>.  Each Beneficiary shall own a beneficial interest herein which shall, subject to section 4.1 of this Agreement and the Plan, be entitled to a Distribution in the amounts, and at the times, set forth in the Plan.

5.3    <u>Evidence of Beneficial Interest</u>.  Ownership of a beneficial interest in the Trust Assets shall not be evidenced by any certificate, security, or receipt or in any other form or manner whatsoever, except as maintained on the books and records of the Trust by the Trustee.

5.4    <u>No Right to Accounting</u>.  Neither the Beneficiaries nor their successors, assigns, creditors, nor any other Person shall have any right to an accounting by the Trustee, and the

Trustee shall not be obligated to provide any accounting to any Person.  Nothing in this Agreement is intended to require the Trustee at any time or for any purpose to file any accounting or seek approval of any court with respect to the administration of the Trust or as a condition for making any advance, payment, or Distribution out of proceeds of Trust Assets.

5.5    No Standing.  Except as expressly provided in this Agreement, a Beneficiary shall not have standing to direct or to seek to direct the Trust or Trustee to do or not to do any act or to institute any action or proceeding at law or in equity against any Person upon or with respect to the Trust Assets.

5.6    Requirement of Undertaking.  The Trustee may request the Bankruptcy Court to require, in any suit for the enforcement of any right or remedy under this Agreement, or in any suit against the Trustee for any action taken or omitted by it as Trustee, the filing by any party litigant in such suit of an undertaking to pay the costs of such suit, including reasonable attorneys' fees, against any party litigant in such suit; provided, however, that the provisions of this section 5.6 shall not apply to any suit by the Trustee.

5.7    Limitation on Transferability.  It is understood and agreed that the beneficial interests herein shall be non-transferable and non-assignable during the term of this Agreement except by operation of law.  An assignment by operation of law shall not be effective until appropriate notification and proof thereof is submitted to the Trustee, and the Trustee may continue to cause the Trust to pay all amounts to or for the benefit of the assigning Beneficiaries until receipt of proper notification and proof of assignment by operation of law.  The Trustee may rely upon such proof without the requirement of any further investigation.

5.8    Exemption from Registration.  The rights of the Beneficiaries arising under this Agreement may be deemed "securities" under applicable law.  However, such rights have not

been defined as "securities" under the Plan because (i) the parties hereto intend that such rights shall not be securities and (ii) if the rights arising under this Agreement in favor of the Beneficiaries are deemed to be "securities," the exemption from registration under section 1145 of the Bankruptcy Code is intended to be applicable to such securities.  No party to this Agreement shall make a contrary or different contention.

5.9    Delivery of Distributions.  Subject to the terms of this Agreement, the Trustee shall cause the Trust to make Distributions to Beneficiaries in the manner provided in the Plan.

**ARTICLE VI**

**THIRD PARTY RIGHTS AND LIMITATION OF LIABILITY**

6.1    Parties Dealing With the Trustee.  In the absence of actual knowledge to the contrary, any Person dealing with the Trust or the Trustee shall be entitled to rely on the authority of the Trustee or any of the Trustee's agents to act in connection with the Trust Assets.  There is no obligation of any Person dealing with the Trustee to inquire into the validity or expediency or propriety of any transaction by the Trustee or any agent of the Trustee.

6.2    Limitation of Trustee's Liability.  In exercising the rights granted herein, the Trustee shall exercise the Trustee's best judgment, to the end that the affairs of the Trust shall be properly managed and the interests of all of the Beneficiaries safeguarded.  However, notwithstanding anything herein to the contrary, neither the Trustee nor its firms, companies, affiliates, partners, officers, directors, members, employees, professionals, advisors, attorneys, financial advisors, investment bankers, disbursing agents, or agents, and any of such Person's successors and assigns shall incur any responsibility or liability by reason of any error of law or fact or of any matter or thing done or suffered or omitted to be done under or in connection with this Agreement, whether sounding in tort, contract, or otherwise, except for fraud, gross

negligence, or willful misconduct that is found by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to be the direct and primary cause of loss, liability, damage, or expense suffered by the Trust.  In no event shall the Trustee be liable for indirect, punitive, special, incidental or consequential damage or loss (including but not limited to lost profits) whatsoever, even if the Trustee has been informed of the likelihood of such loss or damages and regardless of the form of action.  Without limiting the foregoing, the Trustee shall be entitled to the benefits of the limitation of liability and exculpation provisions set forth in the Plan and Confirmation Order, including, but not limited to Article IX(E) of the Plan.

6.3    No Liability for Acts of Other Persons.  None of the Persons identified in the immediately preceding section 6.2 of this Agreement shall be liable for the act or omission of any other Person identified in that section.

6.4    No Liability for Acts of Predecessors.  No successor Trustee shall be in any way responsible for the acts or omissions of any Trustee in office prior to the date on which such successor becomes the Trustee, unless a successor Trustee expressly assumes such responsibility.

6.5    No Liability for Good Faith Error of Judgment.  The Trustee shall not be liable for any error of judgment made in good faith, unless it shall be finally determined by a final judgment of a court of competent jurisdiction (not subject to further appeal or review) that the Trustee was grossly negligent in ascertaining the pertinent facts.

6.6    Reliance by Trustee on Documents and Advice of Counsel or Other Persons. Except as otherwise provided herein, the Trustee may rely and shall be protected in acting upon any resolution, certificate, statement, instrument, opinion, report, notice, request, consent, order or other paper or document believed by the Trustee to be genuine and to have been signed or presented by the proper party or parties.  The Trustee also may engage and consult with its legal

counsel and other agents and advisors, and shall not be liable for any action taken, omitted, or suffered by the Trustee in reliance upon the advice of such counsel, agents, or advisors.

6.7     No Liability For Acts Approved by Bankruptcy Court.  The Trustee shall have the right at any time to seek instructions from the Bankruptcy Court concerning the administration or disposition of the Trust Assets and the General Unsecured Claims required to be administered by the Trust.  The Trustee shall not be liable for any act or omission that has been approved by the Bankruptcy Court, and all such actions or omissions shall conclusively be deemed not to constitute fraud, gross negligence, or willful misconduct.

6.8     No Personal Obligation for Trust Liabilities.  Persons dealing with the Trustee shall have recourse only to the Trust Assets to satisfy any liability incurred by the Trustee to any such Person in carrying out the terms of this Agreement, and the Trustee shall have no personal, individual obligation to satisfy any such liability.

6.9     Indemnification.  The Trustee and its consultants, agents, attorneys, accountants, financial advisors, beneficiaries, estates, employees, officers, directors, principals, professionals and other representatives, each in their representative capacity as such, and any of such parties' successors and assigns (collectively, the "Indemnified Parties" and each, an "Indemnified Party") shall, to the fullest extent permitted by applicable law, be defended, held harmless, and indemnified by the Trust from time to time and receive reimbursement from and against any and all loss, liability, expense (including counsel fees), or damage of any kind, type or nature, whether sounding in tort, contract, or otherwise, that the Indemnified Parties may incur or sustain in connection with the exercise or performance of any of the Trust's or Trustee's powers and duties under this Agreement or in rendering services by the Indemnified Party to the Trust or Trustee (the "Indemnified Conduct"), including, without limitation, the costs of counsel or others in

investigating, preparing, defending, or settling any action or claim (whether or not litigation has been initiated against the Indemnified Party) or in enforcing this Agreement (including its indemnification provisions), except if such loss, liability, expense, or damage is finally determined by a final judgment (not subject to further appeal or review) of a court of competent jurisdiction to result directly and primarily from the fraud, gross negligence, or willful misconduct of the Indemnified Party asserting this provision.

6.9.1    Expense of Trust; Limitation on Source of Payment of Indemnification.  All indemnification liabilities of the Trust under this section 6.9 shall be expenses of the Trust.  The amounts necessary for such indemnification and reimbursement shall be paid by the Trust out of the available Trust Assets after reserving for all actual and anticipated expenses and liabilities of the Trust.  The Trustee shall not be personally liable for the payment of any Trust expense or claim or other liability of the Trust, and no Person shall look to the Trustee or other Indemnified Parties personally for the payment of any such expense or liability.

6.9.2    Procedure for Current Payment of Indemnified Expenses; Undertaking to Repay.  The Trust shall reasonably promptly pay an Indemnified Party all amounts subject to indemnification under this section 6.9 on submission of invoices for such amounts by the Indemnified Party.  The Trustee shall approve the indemnification of any Indemnified Party and thereafter shall approve any monthly bills of such Indemnified Party for indemnification.  All invoices for indemnification shall be subject to the approval of the Trustee.  By accepting any indemnification payment, the Indemnified Party undertakes to repay such amount promptly if it is determined that the Indemnified Party is not entitled to be indemnified under this Agreement. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section 6.9.

6.10   <u>No Implied Obligations</u>.  The Trustee shall not be liable except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Agreement against the Trustee.

6.11   <u>Confirmation of Survival of Provisions</u>.  Without limitation in any way of any provision of this Agreement, the provisions of this Article VI shall survive the death, dissolution, liquidation, resignation, replacement, or removal, as may be applicable, of the Trustee, or the termination of the Trust or this Agreement, and shall inure to the benefit of the Trustee's and the Indemnified Parties' heirs and assigns.

## ARTICLE VII

## TAX MATTERS

7.1   <u>Tax Treatment of Trust</u>.  Pursuant to and in accordance with the Plan, for all federal income tax purposes, the Debtors, the Beneficiaries, the Trustee and the Trust shall treat the Trust as a liquidating trust within the meaning of Treasury Income Tax Regulation Section 301.7701-4(d) and IRS Revenue Procedure 94-45, 1994-2 C.B. 124 and transfer of the Trust Assets to the Trust shall be treated as a transfer of the Trust Assets by the Debtors to the Beneficiaries in satisfaction of their Allowed General Unsecured Claims, followed by a transfer of the Trust Assets by the Beneficiaries to the Trust in exchange for their pro rata beneficial interests in the Trust.  The Beneficiaries shall be treated as the grantors and owners of the Trust for federal income tax purposes.

7.2   <u>Annual Reporting and Filing Requirements</u>.  Pursuant to and in accordance with the terms of the Plan and this Agreement, the Trustee shall file tax returns for the Trust as a grantor trust pursuant to Treasury Income Tax Regulation Section 1.671-4(a).

7.3     <u>Tax Treatment of Reserves for Disputed GUCs</u>.  The Trustee may, in the Trustee's sole discretion, determine the best way to report for tax purposes with respect to any reserve for Disputed GUCs, including (i) filing a tax election to treat any and all reserves for Disputed GUCs as a Disputed Ownership Fund ("<u>DOF</u>") within the meaning of Treasury Income Tax Regulation Section 1.468B-9 for federal income tax purposes rather than to tax such reserve as a part of the Trust; or (ii) electing to report as a separate trust or sub-trust or other entity.  If an election is made to report any reserve for disputed claims as a DOF, the Trust shall comply with all federal and state tax reporting and tax compliance requirements of the DOF, including but not limited to the filing of a separate federal tax return for the DOF and the payment of federal and/or state income tax due.

7.4     <u>Valuation of Trust Assets</u>.  After the Effective Date, but in no event later than the due date for timely filing of the Trust's first federal income tax return (taking into account applicable tax filing extensions), the Trustee shall (a) determine the fair market value of the Trust Assets as of the Effective Date, based on the Trustee's good faith determination; and (b) establish appropriate means to apprise the Beneficiaries of such valuation.  The valuation shall be used consistently by all parties (including, without limitation, the Debtors, the Trust, the Trustee, and the Beneficiaries) for all federal income tax purposes.

## ARTICLE VIII

## SELECTION, REMOVAL, REPLACEMENT
## AND COMPENSATION OF TRUSTEE

8.1 <u>Initial Trustee</u>. The Trustee has been selected by the Creditors' Committee and is appointed effective as of the Effective Date. The initial trustee shall be the Trustee.

8.2 <u>Term of Service</u>. The Trustee shall serve until (a) the completion of the administration of the Trust Assets and the Trust, including the winding up of the Trust, in accordance with this Agreement and the Plan; (b) termination of the Trust in accordance with the terms of this Agreement and the Plan; or (c) the Trustee's resignation, death, liquidation, dissolution, incapacity, or removal. In the event that the Trustee's appointment terminates by reason of resignation, death, liquidation, dissolution, incapacity, or removal, the Trustee shall be immediately compensated for all reasonable fees and expenses accrued but unpaid through the effective date of termination, whether or not previously invoiced. The provisions of Article VI of this Agreement shall survive the resignation or removal of any Trustee.

8.3 <u>Removal of Trustee</u>. Any Person serving as Trustee may be removed at any time for cause. Any party in interest, on notice and hearing before the Bankruptcy Court, may seek removal of the Trustee for cause. The Bankruptcy Court shall hear and finally determine any dispute arising out of this section.

8.4 <u>Resignation of Trustee</u>. The Trustee may resign at any time on written notice to the U.S. Trustee and Bankruptcy Court. The resignation shall be effective on the later of (i) the date specified in the notice of resignation and (ii) the date that is thirty (30) days after the date such notice is filed with the Bankruptcy Court and served on the U.S. Trustee. In the event of a

resignation, the resigning Trustee shall render to the U.S. Trustee a full and complete accounting of monies and assets received, disbursed, and held during the term of office of that Trustee.

8.5    _Appointment of Successor Trustee_.    Upon the resignation, death, liquidation, dissolution, incapacity, or removal of a Trustee, any party in interest (including, in the case of resignation, the Trustee) may file a motion in the Bankruptcy Court to appoint a successor Trustee.    In the event no party in interest seeks the appointment of a successor Trustee, the Bankruptcy Court may do so on its own motion.    Any successor Trustee so appointed (a) shall consent to and accept its appointment as successor Trustee, which may be done by e-mail or through acquiescence in not objecting to a motion for approval of its appointment as successor Trustee and (b) shall not have any liability or responsibility for the acts or omissions of any of its predecessor(s).    Any successor Trustee may be appointed to serve only on an interim basis.

8.6    _Powers and Duties of Successor Trustee_.    A successor Trustee shall have all the rights, privileges, powers, and duties of its predecessor under this Agreement, the Plan, and Confirmation Order.

8.7    _Trust Continuance_.    The resignation, death, incapacitation, dissolution, liquidation, or removal of the Trustee shall not terminate the Trust or revoke any existing agency created pursuant to this Agreement or invalidate any action theretofore taken by the Trustee.

8.8    _Compensation of Trustee and Costs of Administration_.    The Trustee shall receive fair and reasonable compensation for its services in accordance with the terms and conditions of the Plan, which shall be a charge against and paid out of the Trust Assets.    All costs, expenses, and obligations incurred by the Trustee (or professionals who may be employed by the Trustee in administering the Trust, in carrying out their other responsibilities under this Agreement, or in any manner connected, incidental, or related thereto) shall be paid by the Trust from the Trust

Assets prior to any Distribution to the Beneficiaries.  The terms of the compensation of the Trustee are set forth on Exhibit A hereto.

8.9    <u>Appointment of Supplemental Trustee</u>.  If the Trustee has a conflict or any of the Trust Assets are situated in any state or other jurisdiction in which the Trustee is not qualified to act as trustee, the Trustee shall nominate and appoint a Person duly qualified to act as trustee (the "<u>Supplemental Trustee</u>") with respect to such conflict, or in such state or jurisdiction, and require from each such Supplemental Trustee such security as may be designated by the Trustee in its discretion.  In the event the Trustee is unwilling or unable to appoint a disinterested Person to act as Supplemental Trustee to handle any such matter, the Bankruptcy Court, on notice and hearing, may do so.  The Trustee or the Bankruptcy Court, as applicable, may confer upon such Supplemental Trustee any or all of the rights, powers, privileges and duties of the Trustee hereunder, subject to the conditions and limitations of this Agreement, except as modified or limited by the laws of the applicable state or other jurisdiction (in which case, the laws of the state or other jurisdiction in which such Supplemental Trustee is acting shall prevail to the extent necessary).  To the extent the Supplemental Trustee is appointed by the Trustee, the Trustee shall require such Supplemental Trustee to be answerable to the Trustee for all monies, assets and other property that may be received in connection with the administration of all property.  The Trustee or the Bankruptcy Court, as applicable, may remove such Supplemental Trustee, with or without cause, and appoint a successor Supplemental Trustee at any time by executing a written instrument declaring such Supplemental Trustee removed from office and specifying the effective date and time of removal.

## ARTICLE IX

## DURATION OF TRUST

9.1     <u>Duration</u>.  Once the Trust becomes effective upon the Effective Date of the Plan, the Trust and this Agreement shall remain and continue in full force and effect until the Trust is terminated.

9.2     <u>Termination on Payment of Trust Expenses and Distribution of Trust Assets</u>.  Upon the payment of all costs, expenses, and obligations incurred in connection with administering the Trust, and the Distribution of all Trust Assets in accordance with the provisions of the Plan, the Confirmation Order, and this Agreement, the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except as may be required to effectuate such termination under relevant law.

9.3     <u>Termination after Five Years</u>.  If the Trust has not been previously terminated pursuant to section 9.2 hereof, on the fifth (5th) anniversary of the Effective Date, unless the Trust term has been extended in accordance with section Article VIII(B)(3) of the Plan, the Trustee shall distribute all of the Trust Assets to the Beneficiaries in accordance with the Plan, and immediately thereafter the Trust shall terminate and the Trustee shall have no further responsibility in connection therewith except to the limited extent set forth in section 9.5 of this Agreement.

9.4     <u>No Termination by Beneficiaries</u>.  The Trust may not be terminated at any time by the Beneficiaries.

9.5     <u>Continuance of Trust for Winding Up; Discharge and Release of Trustee</u>.  After the termination of the Trust and solely for the purpose of liquidating and winding up the affairs of the Trust, the Trustee shall continue to act as such until its responsibilities have been fully performed.

27411787.1                                          33

Except as otherwise specifically provided herein, upon the Distribution of the Trust Assets including all excess reserves, the Trustee and the Trust's professionals and agents shall be deemed discharged and have no further duties or obligations hereunder. Upon a motion by the Trustee, the Bankruptcy Court may enter an order relieving the Trustee, its employees, professionals, and agents of any further duties, discharging and releasing the Trustee, its employees, professionals, and agents from all liability related to the Trust, and releasing the Trustee's bond, if any.

## ARTICLE X

## MISCELLANEOUS

10.1    <u>Cumulative Rights and Remedies</u>.    The rights and remedies provided in this Agreement are cumulative and not exclusive of any rights and remedies under law or in equity.

10.2    <u>Notices</u>.  All notices to be given to Beneficiaries may be given by ordinary mail, or may be delivered personally, to the Holders at the addresses appearing on the books kept by the Trustee.  Any notice or other communication which may be or is required to be given, served, or sent to the Trustee shall be in writing and shall be sent by registered or certified United States mail, return receipt requested, postage prepaid, or transmitted by hand delivery or facsimile (if receipt is confirmed) addressed as follows:

If to the Trust or Trustee:

META Advisors LLC
101 Park Avenue, 30th Floor
New York, NY 10178
Attn: James S. Carr, Esq.
       Dana P. Kane, Esq.
       Grace Marie Codispoti
TEL: (212) 808-7800
FAX: (212) 808-7897
Email:  jcarr@kelleydrye.com
        dkane@kelleydrye.com
        gcodispoti@kelleydrye.com

with a copy to its counsel:

        Cole Schotz P.C.
        1325 Avenue of the Americas
        19th Floor
        New York, NY 10019
        Attn: Seth Van Aalten, Esq.
        TEL: 212-752-8000
        FAX: 212-752-8393
        Email: svanaalten@coleschotz.com

        If to the Debtors, the Plan Administrator, or the Post-Effective Date
Debtor:

        Kirkland & Ellis LLP
        601 Lexington Avenue
        New York, New York 10022
        Attention:      Nicole Greenblatt, P.C.
                        Derek I. Hunter
        E-mail address:  nicole.greenblatt@kirkland.com
                        derek.hunter@kirkland.com

        - and -

        Kirkland & Ellis LLP
        300 North LaSalle
        Chicago, Illinois 60654
        Attention:      Joshua M. Altman
        E-mail address:  joshua.altman@kirkland.com

        -and-

        Kirkland & Ellis LLP

> 555 California Street
> San Francisco, California 94104
> Attention:        Mark McKane
> E-mail address:  mark.mckane@kirkland.com
>
> -and-
>
> Young Conaway Stargatt & Taylor, LLP
> 1000 North King Street
> Wilmington, Delaware 19801
> Attention:        Robert S. Brady
>                        Sean T. Greecher
>                        Allison S. Mielke
> Email address: rbrady@ycst.com
>                        sgreecher@ycst.com
>                        amielke@ycst.com

or to such other address as may from time to time be provided in written notice by the Trustee.

10.3    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of Delaware, without giving effect to rules governing the conflict of laws.

10.4    <u>Successors and Assigns</u>.  This Agreement shall inure to the benefit of and shall be binding upon the Parties and their respective successors and assigns.

10.5    <u>Particular Words</u>.  Reference in this Agreement to any Section or Article is, unless otherwise specified, to that such Section or Article under this Agreement.  The words "hereof," "herein," and similar terms shall refer to this Agreement and not to any particular Section or Article of this Agreement.

10.6    <u>Execution</u>.  All funds in the Trust shall be deemed *in custodia legis* until such times as the funds have actually been paid to or for the benefit of a Beneficiary, and no Beneficiary or any other Person can execute upon, garnish or attach the Trust Assets or the Trustee in any manner

or compel payment from the Trust except by Final Order of the Bankruptcy Court.  Payments will be solely governed by the Plan and this Agreement.

10.7    <u>Amendment</u>.  This Agreement may be amended by written agreement of the Trustee and the Post-Effective Date Debtor or by order of the Bankruptcy Court; <u>provided</u>, <u>however</u>, that such amendment may not be inconsistent with the Plan or the Confirmation Order.

10.8    <u>No Waiver</u>.  No failure or delay of any party to exercise any right or remedy pursuant to this Agreement shall affect such right or remedy or constitute a waiver thereof.

10.9    <u>No Relationship Created</u>.  Nothing contained herein shall be construed to constitute any relationship created by this Agreement as an association, partnership or joint venture of any kind.

10.10    <u>Severability</u>.  If any term, provision covenant or restriction contained in this Agreement is held by a court of competent jurisdiction or other authority to be invalid, void, unenforceable or against its regulatory policy, the remainder of the terms, provisions, covenants and restrictions contained in this Agreement shall remain in full force and effect and shall in no way be affected, impaired or invalidated.

10.11    <u>Further Assurances</u>.  Without limitation of the generality of section 2.5 of this Agreement, the Parties agree to execute and deliver all such documents and notices and to take all such further actions as may reasonably be required from time to time to carry out the intent and purposes and provide for the full implementation of this Agreement and the pertinent provisions of the Plan, and to consummate the transactions contemplated hereby.

10.12  <u>Counterparts</u>.  This Agreement may be executed simultaneously in one or more counterparts, each of which shall be deemed an original and all of which together shall constitute one and the same instrument.

10.13  <u>Jurisdiction</u>.  The Bankruptcy Court shall have jurisdiction regarding the Post-Effective Date Debtor, Trust, Trustee, and Trust Assets, including, without limitation, the determination of all disputes arising out of or related to administration of the Trust.   The Bankruptcy Court shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters among the Parties arising out of or related to this Agreement or the administration of the Trust.   The Parties expressly consent to the Bankruptcy Court hearing and exercising such judicial power as is necessary to finally determine all such disputes and matters.   If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction or is otherwise without jurisdiction over any matter arising in, arising under, or related to the Chapter 11 Cases, including the matters set forth in this Agreement, the provisions of this Agreement shall have no effect on and shall not control, limit or prohibit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter, and all applicable references in this Agreement to an order or decision of the Bankruptcy Court shall instead mean an order or decision of such other court of competent jurisdiction.

IN WITNESS WHEREOF, the Parties have or are deemed to have executed this Agreement as of the day and year written above.

Town Sports International, LLC

By:_____

Name:_____

Title:_____


META Advisors LLC

By:_____

Name:_____

Title:_____

Agreed and Accepted on behalf of
the Post-Effective Date Debtor:

By:_____

Name:_____

Title:_ Plan Administrator_____