## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] | Case No. 20-12168 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 586** |

## NOTICE OF FILING OF BLACKLINE OF PLAN

**PLEASE TAKE NOTICE** that, on November 3, 2020, the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") filed the (i) *First Amended Joint Chapter 11 Plan of Town Sports International, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [D.I. 586] (the "**Plan**").[2]

**PLEASE TAKE FURTHER NOTICE** that, in response to comments from certain parties in interest, the Debtors have revised the Plan (the "**Revised Plan**") in advance of the plan confirmation hearing scheduled for **December 14, 2020 at 2:00 p.m. (ET)** (the "**Hearing**"). For the convenience of the Court and interested parties, a blackline of (i) the Revised Plan marked against the Plan is attached hereto as Exhibit A.

---

[1]  The last four digits of Town Sports International, LLC's federal tax identification number are 7365.  The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523.  Due to the large number of debtors in these cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports, or by contacting the undersigned counsel for the Debtors.

[2]  Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Plan.

The Debtors reserve all rights to further modify the Revised Plan prior to the

Hearing.

Dated:  December 9, 2020
Wilmington, Delaware

*/s/ Sean T. Greecher*
Robert S. Brady (No. 2847)
Sean T. Greecher (No. 4484)
Allison S. Mielke (No. 5934)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Email: rbrady@ycst.com
          sgreecher@ycst.com
          amielke@ycst.com

Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Email: nicole.greenblatt@kirkland.com
          derek.hunter@kirkland.com

Joshua M. Altman (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Email:  josh.altman@kirkland.com

Mark McKane, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Email: mark.mckane@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A

**Blackline Plan**

*Solicitation Version*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

|  |  |  |
|---|---|---|
| In re: | ) | Chapter 11 |
|  | ) |  |
| TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] | ) | Case No. 20-12168 (CSS) |
|  | ) |  |
| Debtors. | ) | (Jointly Administered) |
|  | ) |  |

### ~~FIRST~~ SECOND AMENDED JOINT CHAPTER 11 PLAN OF TOWN SPORTS INTERNATIONAL, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

**NOTHING CONTAINED HEREIN SHALL CONSTITUTE AN OFFER, ACCEPTANCE, COMMITMENT, OR LEGALLY BINDING OBLIGATION OF THE DEBTORS OR ANY OTHER PARTY IN INTEREST AND THIS PLAN IS SUBJECT TO APPROVAL BY THE BANKRUPTCY COURT AND OTHER CUSTOMARY CONDITIONS. THIS PLAN IS NOT AN OFFER WITH RESPECT TO ANY SECURITIES.**

**YOU SHOULD NOT RELY ON THE INFORMATION CONTAINED IN, OR THE TERMS OF, THIS PLAN FOR ANY PURPOSE PRIOR TO THE CONFIRMATION OF THIS PLAN BY THE BANKRUPTCY COURT.**

Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:    (212) 446-4800
Facsimile:    (212) 446-4900

-and-

Joshua M. Altman  (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle
Chicago, Illinois 60654
Telephone:    (312) 862-2000
Facsimile:    (312) 862-2200

*Co-Counsel for the Debtors and Debtors in Possession*

Mark McKane, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Facsimile:    (415) 439-1500

-and-

Robert S. Brady (DE Bar No. 2847)
Sean T. Greecher (DE Bar No. 4484)
Allison S. Mielke (DE Bar No. 5934)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:    (302) 571-6600
Facsimile:    (302) 571-1253

Dated:  ~~November 3~~December 9, 2020

---

[1]    The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. A complete list of all the Debtors in these jointly administered cases, including the last four digits of their federal tax identification numbers and addresses, may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports.

**TABLE OF CONTENTS**

ARTICLE I. DEFINED TERMS, RULES OF INTERPRETATION, COMPUTATION OF TIME, AND GOVERNING LAW ........................................................................................................1

    A.    Defined Terms .......................................................................................................1
    B.    Rules of Interpretation ........................................................................................12
    C.    Computation of Time ..........................................................................................13
    D.    Governing Law ...................................................................................................13
    E.    Reference to Monetary Figures ...........................................................................13
    F.    Reference to the Debtors or the Post-Effective Date Debtor ..............................13
    G.    Non-consolidated Plan ........................................................................................13

ARTICLE II. ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS ..............13

    A.    General Administrative Claims............................................................................13
    B.    Professional Fee Claims......................................................................................14
    C.    DIP Claims.........................................................................................................15
    D.    Priority Tax Claims.............................................................................................16

ARTICLE III. CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS .......................16

    A.    Classification of Claims and Interests..................................................................16
    B.    Treatment of Claims and Interests .......................................................................16
    C.    Special Provision Governing Unimpaired Claims .................................................20
    D.    Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code ....20
    E.    Subordinated Claims...........................................................................................20
    F.    Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes ...............20
    G.    Intercompany Interests........................................................................................21
    H.    Controversy Concerning Impairment ...................................................................21

ARTICLE IV. MEANS FOR IMPLEMENTATION OF THE PLAN .........................................................21

    A.    General Settlement of Claims and Interests...........................................................21
    B.    Restructuring Transactions ..................................................................................21
    C.    Sources of Consideration for Plan Distributions ...................................................22
    D.    Post-Effective Date Debtor ..................................................................................22
    E.    Plan Administrator ..............................................................................................22
    F.    Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation ...23
    G.    Tax Returns........................................................................................................23
    H.    Dissolution of the Post-Effective Date Debtor .....................................................23
    I.    Statutory Committee and Cessation of Fee and Expense Payment ........................23
    J.    Cancellation of Securities and Agreements ..........................................................23
    K.    Corporate Action ................................................................................................24
    L.    Effectuating Documents; Further Transactions ....................................................24
    M.    Section 1146 Exemption .....................................................................................24
    N.    Director and Officer Liability Insurance; Other Insurance.....................................25
    O.    Preservation of Causes of Action.........................................................................25
    P.    Section 1145 Exemption .....................................................................................26
    Q.    The Non-Released Claims Trust ..........................................................................26

ARTICLE V. TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES ................26

    A.    Assumption and Rejection of Executory Contracts and Unexpired Leases ......................26
    B.    Indemnification Obligations. ...............................................................................27
    C.    Claims Based on Rejection of Executory Contracts or Unexpired Leases .........................27
    D.    Cure of Defaults for Assumed Executory Contracts and Unexpired Leases .....................27
    E.    Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases .29

F.      Insurance Policies ....................................................................................................29
G.      Modifications, Amendments, Supplements, Restatements, or Other Agreements ...........29
H.      Reservation of Rights ..............................................................................................29
I.      Nonoccurrence of Effective Date..............................................................................29

ARTICLE VI. PROVISIONS GOVERNING DISTRIBUTIONS ...........................................................29

A.      Timing and Calculation of Amounts to Be Distributed .........................................29
B.      Disbursing Agent ....................................................................................................30
C.      Rights and Powers of Disbursing Agent ...............................................................30
D.      Delivery of Distributions and Undeliverable or Unclaimed Distributions .......................30
E.      Compliance with Tax Requirements .......................................................................31
F.      Allocations ..............................................................................................................31
G.      No Postpetition or Default Interest on Claims .......................................................32
H.      Setoffs and Recoupment .........................................................................................32
I.      No Double Payment of Claims. ...............................................................................32
J.      Claims Paid or Payable by Third Parties ................................................................32

ARTICLE VII. PROCEDURES FOR RESOLVING CONTINGENT, UNLIQUIDATED AND
DISPUTED CLAIMS .......................................................................................................................33

A.      Allowance of Claims ...............................................................................................33
B.      Claims Administration Responsibilities .................................................................33
C.      Estimation of Claims ...............................................................................................33
D.      Adjustment to Claims or Interests Without Objection ...........................................34
E.      Time to File Objections to Claims ..........................................................................34
F.      Disallowance of Claims or Interests .......................................................................34
G.      Amendments to Proofs of Claims or Interests ........................................................34
H.      No Distributions Pending Allowance .....................................................................35
I.      Distributions After Allowance ................................................................................35

ARTICLE VIII. THE NON-RELEASED CLAIMS TRUST ....................................................................35

A.      Creation of the Non-Released Claims Trust ...........................................................35
B.      Transfer of Non-Released Claims Trust Assets to the Non-Released Claims Trust .........35
C.      Administration of the Non-Released Claims Trust .................................................36

ARTICLE IX. SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS .................39

A.      Final Satisfaction of Claims and Termination of Interests ....................................39
B.      **Release of Liens** ......................................................................................................39
C.      **Releases by the Debtors** ........................................................................................40
D.      **Releases by Holders of Claims and Interests** .......................................................41
E.      **Exculpation** .............................................................................................................41
F.      **Injunction** ................................................................................................................42
G.      Preservation of Setoff Rights ..................................................................................42
H.      Protections Against Discriminatory Treatment ......................................................42
I.      Document Retention ................................................................................................43
J.      Reimbursement or Contribution ..............................................................................43
K.      Term of Injunctions or Stays ..................................................................................43

ARTICLE X. CONDITIONS PRECEDENT TO CONFIRMATION AND CONSUMMATION OF THE
PLAN ................................................................................................................................................43

A.      Conditions Precedent to the Confirmation of the Plan ..........................................43
B.      Conditions Precedent to the Effective Date ............................................................43
C.      Waiver of Conditions ..............................................................................................44
D.      Effect of Failure of Conditions ...............................................................................44

ARTICLE XI. MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN ........................45

    A.       Modification and Amendments ....................................................................................45
    B.       Effect of Confirmation on Modifications ...................................................................45
    C.       Revocation or Withdrawal of Plan .............................................................................45

ARTICLE XII. RETENTION OF JURISDICTION ...............................................................................45

ARTICLE XIII. MISCELLANEOUS PROVISIONS ..............................................................................47

    A.       Immediate Binding Effect ...........................................................................................47
    B.       Additional Documents .................................................................................................47
    C.       Payment of Statutory Fees ..........................................................................................48
    D.       Term Lender Expenses and DIP Lender Expenses .....................................................48
    E.       Reservation of Rights ..................................................................................................48
    F.       Successors and Assigns ...............................................................................................48
    G.       Notices ........................................................................................................................48
    H.       Entire Agreement ........................................................................................................50
    I.       Exhibits .......................................................................................................................50
    J.       Non-Severability of Plan Provisions ..........................................................................51
    K.       Votes Solicited in Good Faith .....................................................................................51
    L.       Closing of Chapter 11 Cases .......................................................................................51
    M.       Conflicts ......................................................................................................................51

**INTRODUCTION**

Town Sports International, LLC and the above-captioned debtors and debtors in possession (each, a "Debtor," and collectively, the "Debtors") propose this joint chapter 11 plan (as may be altered, amended, modified, or supplemented from time to time, the "Plan") for the resolution of the outstanding claims against, and equity interests in, the Debtors. The Chapter 11 Cases have been consolidated for procedural purposes only and are being jointly administered pursuant to an order of the Bankruptcy Court. This Plan constitutes a separate chapter 11 plan for each Debtor and, unless otherwise set forth herein, the classifications and treatment of Claims and Interests apply to each individual Debtor.

Holders of Claims and Interests should refer to the Disclosure Statement for a discussion of the Debtors' history, businesses, assets, results of operations, and historical financial information, projections, and future operations, as well as a summary and description of this Plan and certain related matters. Each Debtor is a proponent of the Plan contained herein within the meaning of section 1129 of the Bankruptcy Code.

**ARTICLE I.**
**DEFINED TERMS, RULES OF INTERPRETATION,**
**COMPUTATION OF TIME, AND GOVERNING LAW**

*A.      Defined Terms*

As used in this Plan, capitalized terms have the meanings given to them below.

1.      "*Administrative Claim*" means a Claim for the costs and expenses of administration of the Chapter 11 Cases under sections 503(b), 507(a)(2), 507(b), or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred on or after the Petition Date until and including the Effective Date of preserving the Estates and operating the business of the Debtors; (b) Allowed Professional Fee Claims in the Chapter 11 Cases; (c) Adequate Protection Superpriority Claims (as defined in the DIP Order) (if any); and (d) all fees and charges assessed against the Estates pursuant to section 1930 of chapter 123 of title 28 of the United States Code.

2.      "*Administrative Claim Bar Date*" means the deadline for Filing requests for payment of Administrative Claims, which shall be 30 days after the Effective Date.

3.      "*Administrative Claims Escrow*" means the escrow established by the Plan Administrator on the Effective Date to be used to pay Holders of all Allowed Administrative Claims, to the extent that such Claims have not been paid in full on or before the Effective Date.

4.      "*Administrative Claim Objection Bar Date*" means the deadline for Filing objections to requests for payment of Administrative Claims (other than requests for payment of Professional Fee Claims), which shall be the later of (1) 60 days after the Effective Date and (2) 60 days after the Filing of the applicable request for payment of the Administrative Claims; *provided* that the Administrative Claim Objection Bar Date may be extended by the Bankruptcy Court after notice and a hearing.

5.      "*Affiliate*" has the meaning set forth in section 101(2) of the Bankruptcy Code.

6.      "*Allowed*" means with respect to any Claim or Interest, except as otherwise provided herein: (a) a Claim or Interest in a liquidated amount as to which no objection has been Filed prior to the applicable claims objection deadline and that is evidenced by a Proof of Claim or Interest, as applicable, timely Filed by the Claims Bar Date or that is not required to be evidenced by a Filed Proof of Claim or Interest, as applicable, under the Plan, the Bankruptcy Code, or a Final Order; (b) a Claim or Interest that is listed in the Schedules as not contingent, not unliquidated, and not Disputed, and for which no Proof of Claim or Interest, as applicable, has been timely Filed in an unliquidated or a different amount; or (c) a Claim or Interest that is upheld or otherwise Allowed (i) pursuant to the Plan, (ii) in any stipulation that is approved by the Bankruptcy Court, (iii) pursuant to any contract, instrument, indenture, or other agreement entered into or assumed in connection herewith, or (iv) by Final Order of the Bankruptcy Court (including

1

any such Claim to which the Debtors had objected or which the Bankruptcy Court had disallowed prior to such Final Order); *provided* that with respect to a Claim or Interest described in clauses (a) and (c) above, such Claim or Interest shall be considered Allowed only if and to the extent that, with respect to such Claim or Interest, no objection to the allowance thereof has been or, in the Debtors' or Post-Effective Date Debtor's reasonable good faith judgment may be, interposed within the applicable period of time fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or such an objection is so interposed and the Claim or Interest, as applicable, shall have been Allowed by a Final Order.  Except as otherwise specified in the Plan or any Final Order, and except for Secured Tax Claims or any Claim that is Secured by property of a value in excess of the principal amount of such Claims, the amount of an Allowed Claim shall not include interest on such Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any Claim that the Debtors may hold against the Holder thereof, to the extent such Claim may be offset, recouped, or otherwise reduced under applicable law.  Any Claim that has been or is hereafter listed in the Schedules as contingent, unliquidated, or Disputed, and for which no Proof of Claim is or has been timely Filed, is not considered Allowed and shall be deemed expunged without further action by the Debtors and without further notice to any party or action, approval, or order of the Bankruptcy Court.  Notwithstanding anything to the contrary herein, no Claim of any Entity subject to section 502(d) of the Bankruptcy Code shall be deemed Allowed unless and until such Entity pays in full the amount that it owes such Debtor or the Post-Effective Date Debtor, as applicable.  For the avoidance of doubt:  (x) a Proof of Claim or Interest Filed after the Claims Bar Date shall not be Allowed for any purposes whatsoever absent entry of a Final Order allowing such late-Filed Claim and (y) the Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims and Interests would be allowed under applicable non-bankruptcy law.  "Allow," "Allowing," and "Allowance" shall have correlative meanings.

7.     "***Asset Purchase Agreement***" means that certain purchase agreement, as approved by the Sale Order, executed by and between the Debtors and the Purchaser for the sale of substantially all of the Debtors' assets to the Purchaser as Filed with the Plan Supplement, together with all exhibits, appendices, supplements, and documents, and agreements ancillary thereto, in each case as amended, modified, or supplemented from time to time.

8.     "***Assumed Executory Contracts and Unexpired Leases Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be assumed by the Debtors pursuant to the Plan, which shall be (i) reasonably acceptable to the Term Lender Group and the Purchaser and (ii) included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time, with the consent of the Term Lender Group and the Purchaser, not to be unreasonably withheld.

9.     "***Attorney General Litigation***" means those certain complaints and lawsuits brought by the Attorneys General in Massachusetts, New York, Washington D.C., Pennsylvania, and Rhode Island asserting, among other complaints, certain alleged unlawful membership cancellations and continued collection of membership fees during prepetition COVID-related closures of gym facilities.

10.     "***Available Cash***" means, collectively, all Cash on hand held by the Debtors and Post-Effective Date Debtor on and after the Effective Date, including the net proceeds from the Sale Transaction.

11.     "***Avoidance Actions***" means any and all actual or potential avoidance, recovery, subordination, or other Claims, Causes of Action, or remedies that may be brought by or on behalf of the Debtors or their Estates or other authorized parties in interest under the Bankruptcy Code or applicable non-bankruptcy law, including Claims, Causes of Action, or remedies under sections 502, 510, 542, 544, 545, 547 through 553, and 724(a) of the Bankruptcy Code or under similar local, state, federal, or foreign statutes and common law, including fraudulent transfer laws.

12.     "***Bankruptcy Code***" means title 11 of the United States Code, 11 U.S.C. §§ 100–1532, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

13.     "***Bankruptcy Court***" means the United States Bankruptcy Court for the District of Delaware having jurisdiction over the Chapter 11 Cases and, to the extent of the withdrawal of reference under section 157 of the Judicial Code, the United States District Court for the District of Delaware.

14.    "*Bankruptcy Rules*" means the Federal Rules of Bankruptcy Procedure, as applicable to the Chapter 11 Cases, promulgated under section 2075 of the Judicial Code and the general, local and chambers rules of the Bankruptcy Court.

15.    "*Bar Date Order*" means the *Order (I) Setting Bar Dates for Filing Proofs of Claim, Including Requests for Payment Under Section 503(b)(9), (II) Establishing Amended Schedules Bar Date and Rejection Damages Bar Date, (III) Approving the Form of and Manner For Filing Proofs of Claim, Including Section 503(b)(9) Requests, and (IV) Approving Form and Manner of Notice Thereof* [Docket No. 367] entered by the Bankruptcy Court on October 29, 2020 (as may be modified, amended, or supplemented).

16.    "*Bidding Procedures Order*" means the *Order (I) Approving the Bidding Procedures in Connection with the Sale of Substantially all of the Debtors' Assets, (II) Approving the Form and Manner of Notice Thereof, (III) Scheduling an Auction and Sale Hearing, (IV) Approving the Procedures for the Assumption and Assignment of Contracts, (V) Approving the Sale of the Debtors' Assets Free and Clear, and (VI) Granting Related Relief* [Docket No. 208] entered by the Bankruptcy Court on October 9, 2020 (as may be modified, amended, or supplemented).

17.    "*Business Day*" means any day, other than a Saturday, Sunday, or "legal holiday" (as defined in Bankruptcy Rule 9006(a)(6)).

18.    "*Cash*" means cash and cash equivalents, including bank deposits, checks, and other similar items in legal tender of the United States of America.

19.    "*Cause of Action*" or "*Causes of Action*" means any actions, Claims, cross claims, third-party claims, interests, damages, controversies, remedies, causes of action, debts, judgments, demands, rights, actions, suits, obligations, liabilities, accounts, defenses, offsets, powers, privileges, licenses, Liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, contingent or non-contingent, liquidated or unliquidated, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, disputed or undisputed, whether arising before, on, or after the Petition Date, in contract or in tort, in law or in equity, or pursuant to any other theory of law or otherwise. Causes of Action also include: (a) any rights of setoff, counterclaim, or recoupment and any claims under contracts or for breaches of duties imposed by law or in equity; (b) the right to object to or otherwise contest Claims or Interests; (c) claims pursuant to section 362 or chapter 5 of the Bankruptcy Code; (d) any claims or defenses, including fraud, mistake, duress, and usury, and any other defenses set forth in section 558 of the Bankruptcy Code; and (e) any state law fraudulent transfer claim.

20.    "*Challenge Rights*" means the Committee's challenge rights pursuant to and solely to the extent described in the DIP Order.

21.    "*Chapter 11 Cases*" means (a) when used with reference to a particular Debtor, the case pending for that Debtor under chapter 11 of the Bankruptcy Code and (b) when used with reference to all Debtors, the procedurally consolidated chapter 11 cases pending for the Debtors in the Bankruptcy Court.

22.    "*Chief Restructuring Officers*" means John C. DiDonato, as the Debtors' Chief Restructuring Officer, and Laura Marcero, as the Debtors' Deputy Chief Restructuring Officer.

23.    "*Claim*" means any claim, as such term is defined in section 101(5) of the Bankruptcy Code, against a Debtor or a Debtor's Estate.

24.    "*Claims Bar Date*" means, collectively, the date established by the Bankruptcy Court in the Bar Date Order by which Proofs of Claim or Proofs of Interest must be Filed with respect to such Claims or Interests, other than Administrative Claims, Claims held by Governmental Units, or other Claims or Interests for which the Bankruptcy Court entered an order excluding the Holders of such Claims or Interests from the requirement of Filing Proofs of Claim or Proofs of Interest.

3

25.    "*Claims Register*" means the official register of Claims maintained by the Notice and Claims Agent.

26.    "*Class*" means a class of Claims or Interests as set forth in Article III of the Plan in accordance with section 1122(a) of the Bankruptcy Code.

27.    "*Committee*" means the statutory committee of unsecured creditors of the Debtors, appointed in the Chapter 11 Cases pursuant to section 1102 of the Bankruptcy Code by the U.S. Trustee on September 24, 2020, as set forth in the *Notice of Appointment of Creditors' Committee* [Docket No. 98].

28.    "*Confirmation*" means the Bankruptcy Court's entry of the Confirmation Order on the docket of the Chapter 11 Cases within the meaning of Bankruptcy Rules 5003 and 9021.

29.    "*Confirmation Date*" means the date upon which the Bankruptcy Court enters the Confirmation Order on the docket of the Chapter 11 Cases, within the meaning of Bankruptcy Rules 5003 and 9021.

30.    "*Confirmation Hearing*" means the hearing held by the Bankruptcy Court to consider Confirmation of the Plan, pursuant to Bankruptcy Rule 3020(b)(2) and sections 1128 and 1129 of the Bankruptcy Code.

31.    "*Confirmation Order*" means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code, which shall be in form and substance reasonably acceptable to the Term Lender Group and the DIP Lender.

32.    "*Confirmation Timeline*" means the dates and deadlines established in the Disclosure Statement Order.

33.    "*Consummation*" means the occurrence of the Effective Date as to the applicable Debtor.

34.    "*Cure Claim*" means a Claim (unless waived or modified by the applicable counterparty) based upon the Debtors' defaults on an Executory Contract or Unexpired Lease at the time such Executory Contract or Unexpired Lease is assumed by the Debtors pursuant to section 365 of the Bankruptcy Code, other than with respect to a default that is not required to be cured under section 365(b)(2) of the Bankruptcy Code.

35.    "*DIP Claims*" means all Claims, including but not limited to, DIP Lender Expenses, arising under, derived from, based upon, or secured pursuant to the Supplemental DIP Term Sheet, DIP Order, or other DIP Facility Documents, with respect to the DIP Facility.

36.    "*DIP Facility*" means that certain debtor-in-possession financing facility documented pursuant to the DIP Facility Documents and the DIP Order.

37.    "*DIP Facility Documents*" means the Supplemental DIP Term Sheet, the DIP Promissory Note, and any other credit agreement and related agreements, security agreements, or pledge agreements, including the DIP Order.

38.    "*DIP Lender*" means Fitness Recovery Holdings, LLC.

39.    "*DIP Lender Expenses*" means the reasonable and documented fees and expenses of DLA Piper, as counsel to the DIP Lender**.**

40.    "*DIP Order*" means the *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing, (II) Authorizing the Debtors Use of Cash Collateral, (III) Granting Liens and Providing Superpriority Administrative Expense Status, (IV) Granting Adequate Protection to the Prepetition Lenders, (V) Modifying the Automatic Stay, and (VI) Granting Related Relief* [Docket No. 277], as may be amended or modified pursuant to a Bankruptcy Court order.

4

41.     "**DIP Promissory Note**" means that certain promissory note for debtor-in-possession financing, dated as of October 19, 2020.

42.     "**Disbursing Agent**" means the Debtors or the Post-Effective Date Debtor (as applicable), or the Entity or Entities selected by the Debtors or the Post-Effective Date Debtor, as applicable, to make or facilitate distributions contemplated under the Plan, including the Plan Administrator, if applicable.

43.     "**Disclosure Statement**" means the *Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of Town Sports International, LLC and Its Debtors Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, dated as of November 2, 2020, as may be amended, supplemented or modified from time to time, including all exhibits and schedules thereto and references therein that relate to the Plan, that is prepared and distributed in accordance with the Bankruptcy Code, the Bankruptcy Rules, and any other applicable law and approved by the Bankruptcy Court pursuant to the Disclosure Statement Order.

44.     "**Disclosure Statement Order**" means the *Order (I) Approving the Adequacy of the Disclosure Statement on an Interim Basis, (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (III) Shortening Certain Notice Periods and Establishing Related Procedures, (IV) Approving the Solicitation and Notice Procedures, (V) Approving the Combined Hearing Notice, and (VI) Granting Related Relief* [Docket No. 561] entered by the Bankruptcy Court on November 3, 2020 (as may be modified, amended, or supplemented).

45.     "**Disputed**" means, with respect to any Claim or Interest, any Claim or Interest:  (a) that is not Allowed, (b) as to which a dispute is being adjudicated by a court of competent jurisdiction in accordance with non-bankruptcy law, or (c) that is Filed in the Bankruptcy Court and not withdrawn, as to which a timely objection or request for estimation has been Filed.

46.     "**Distribution Record Date**" means the record date for purposes of determining which Holders of Allowed Claims or Allowed Interests are eligible to receive distributions under the Plan, which date shall be the Effective Date, or such other date as is designated in a Final Order of the Bankruptcy Court.

47.     "*DLA Piper*" means DLA Piper LLP (US), as counsel to the DIP Lender.

48.     "**Effective Date**" means, as to the applicable Debtor, the date that is the first Business Day after the Confirmation Date on which (a) the conditions to the occurrence of the Effective Date have been satisfied or waived pursuant to Article X.A and  Article X.C of the Plan and (b) no stay of the Confirmation Order is in effect.  Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable thereafter.

49.     "**Entity**" has the meaning set forth in section 101(15) of the Bankruptcy Code.

50.     "**Estate**" means, as to each Debtor, the estate created on the Petition Date for the Debtor in its Chapter 11 Case pursuant to section 541 of the Bankruptcy Code and all property (as defined in section 541 of the Bankruptcy Code) acquired by the Debtors after the Petition Date through the Effective Date.

51.     "**Excess Distributable Cash**" means Available Cash after funding the Secured Tax Claims, Other Secured Claims, and Other Priority Claims, as applicable; *provided* that any Cash placed in the Post-Effective Date Debtor Account, Administrative Claims Escrow, Professional Fee Escrow Account, or Priority Claims Reserve shall not be Excess Distributable Cash, except, to the extent, following the wind down of the Chapter 11 Cases, any amounts remain in the Post-Effective Date Debtor Account, Administrative Claims Escrow, Professional Fee Escrow Account, or Priority Claims Reserve.

52.     "**Exculpated Party**" means collectively, and in each case solely in its capacity as such:  (a) the Debtors; (b) the Plan Administrator; (c) the Committee and each of their respective members; (d) each current and former Affiliate of each Entity in clause (a) through the following clause (e); and (e) each Related Party of each Entity in clause (a) through this clause (e).

5

53.     "*Executory Contract*" means a contract to which one or more of the Debtors is a party and that is subject to assumption or rejection under section 365 or 1123 of the Bankruptcy Code.

54.     "*Federal Judgment Rate*" means the federal judgment interest rate in effect as of the Petition Date calculated as set forth in section 1961 of the Judicial Code.

55.     "*File*" or "*Filed*" or "*Filing*" means file, filed or filing with the Bankruptcy Court in the Chapter 11 Cases, or, with respect to the filing of a Proof of Claim or Proof of Interest, the Notice and Claims Agent.

56.     "*Final Order*" means, as applicable, an order or judgment of the Bankruptcy Court or other court of competent jurisdiction with respect to the relevant subject matter, which has not been reversed, stayed, modified or amended, and as to which the time to appeal, petition for certiorari, or move for reargument, reconsideration, or rehearing has expired and no appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing has been timely taken or Filed, or as to which any appeal, petition for certiorari, or motion for reargument, reconsideration, or rehearing that has been taken or any petition for certiorari that has been or may be Filed has been resolved by the highest court to which the order or judgment could be appealed or from which certiorari could be sought or the new trial, reargument or rehearing shall have been denied, resulted in no modification of such order or has otherwise been dismissed with prejudice.

57.     "*FTI*" means FTI Consulting, Inc., as financial advisor to the Term Lender Group.

58.     "*General Unsecured Claim*" means any Claim other than an Administrative Claim, an Other Secured Claim, a Priority Tax Claim, an Other Priority Claim, a DIP Claim, a Prepetition Loan Claim, an Intercompany Claim, or a Section 510(b) Claim.

59.     "*General Unsecured Claims Disputed Claims Reserve*" has the meaning set forth in Article VIII.C.5 of this Plan.

60.     "*Gibson Dunn*" means Gibson, Dunn & Crutcher LLP, as counsel to the Term Lender Group and the Prepetition Agent.

61.     "*Governmental Bar Date*" means March 13, 2021, at 11:59 p.m., prevailing Eastern Time, which is the date by which Proofs of Claim must be Filed with respect to such Claims held by Governmental Units pursuant to the Bar Date Order.

62.     "*Governmental Unit*" has the meaning set forth in section 101(27) of the Bankruptcy Code.

63.     "*Holder*" means an Entity holding a Claim or an Interest in any Debtor.

64.     "*Impaired*" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is impaired within the meaning of section 1124 of the Bankruptcy Code.

65.     "*Independent Directors*" means Steven G. Panagos and Jill Frizzley.

66.      "*Initial Non-Released Claims Trust Cash Amount*" means $1,000,000.

67.      "*Intercompany Claim*" means any Claim held by a Debtor or an Affiliate of a Debtor against another Debtor arising before the Petition Date.

68.     "*Intercompany Interest*" means an Interest in a Debtor held by a Debtor or an Affiliate of a Debtor.

69.     "*Interest*" means any equity security in a Debtor as defined in section 101(16) of the Bankruptcy Code, including all issued, unissued, authorized, or outstanding shares of capital stock of the Debtors and any other rights, options, warrants, stock appreciation rights, phantom stock rights, restricted stock units, redemption

6

rights, repurchase rights, convertible, exercisable, or exchangeable securities, or other agreements, arrangements, or commitments of any character relating to, or whose value is related to, any such interest or other ownership interest in any Debtor whether or not arising under or in connection with any employment agreement and whether or not certificated, transferable, preferred, common, voting, or denominated "stock" or a similar security, including any Claims against any Debtor subject to subordination pursuant to section 510(b) of the Bankruptcy Code arising from or related to any of the foregoing.

70. "*Interim Compensation Order*" means the *Order (I) Establishing Procedures for Interim Compensation and Reimbursement of Expenses for Retained Professionals and (II) Granting Related Relief* [Docket No. 195], entered by the Bankruptcy Court on October 9, 2020, as the same may be modified by a Bankruptcy Court order approving the retention of a specific Professional or otherwise.

71. "*Judicial Code*" means title 28 of the United States Code, 28 U.S.C. §§ 1–4001, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

72. "*Lien*" means a lien as defined in section 101(37) of the Bankruptcy Code.

73. "*Non-Released Claims Trust*" means a litigation trust to be established on the Effective Date for the ratable benefit of Non-Released Claims Trust Beneficiaries in accordance with the Plan and pursuant to the Non-Released Claims Trust Agreement.

74. "*Non-Released Claims Trust Agreement*" means the trust or similar agreement providing for the Non-Released Claims Trust, as may be amended, supplemented, restated, or otherwise modified from time to time in accordance with the terms thereof that, among other things, establishes the Non-Released Claims Trust and governs the powers, duties, and responsibilities of the Non-Released Claims Trustee, filed as part of the Plan Supplement.

75. "*Non-Released Claims Trust Assets*" means the Non-Released Claims Trust Funding Amount, the Non-Released Claims Trust Causes of Action, and the proceeds thereof.  For the avoidance of doubt, the Non-Released Claims Trust Assets shall not include any Claims or Causes of Action that are not Non-Released Claims Trust Causes of Action.

76. "*Non-Released Claims Trust Beneficiaries*" means the Holders of Non-Released Claims Trust Interests.

77. "*Non-Released Claims Trust Causes of Action*" means any Causes of Action that the Debtors or their Estates may have that are based on or related to the facts and circumstances giving rise to the Attorney General Litigation; *provided* that Non-Released Claims Trust Causes of Action shall not include any Claims or Causes of Action against any of the Independent Directors or any of the Chief Restructuring Officers.

78. "*Non-Released Claims Trustee*" means the Person or Entity designated by the Committee, and otherwise reasonably acceptable to the Debtors, to serve as the trustee of the Non-Released Claims Trust, identified and disclosed in the Plan Supplement, and any successor thereto appointed pursuant to the Non-Released Claims Trust Agreement, as appointed in accordance with the Non-Released Claims Trust Agreement.

79. "*Non-Released Claims Trust Expense Fund*" shall have the meaning set forth in Article VIII.C.4 of this Plan.

80. "*Non-Released Claims Trust Expenses*" shall have the meaning set forth in Article VIII.C.4 of this Plan.

81. "*Non-Released Claims Trust Funding Amount*" means Cash in the total amount of the Initial Non-Released Claims Trust Cash Amount *plus* any remaining Available Cash and Excess Distributable Cash after payment in full in Cash of the Prepetition Loan Claims, each of which shall be contributed to the Non-Released Claims Trust in accordance with Article IV.C and Article VIII of this Plan.

7

82.     "***Non-Released Claims Trust Interests***" means the beneficial interests in the Non-Released Claims Trust, which shall be allocated Pro Rata to the Holders of Class 5 General Unsecured Claims.

83.     "***Non-Released Claims Trust Proceeds Waterfall***" shall have the meaning set forth in Article VIII.C.6 of this Plan.

84.     "***Notice and Claims Agent***" means Epiq Corporate Restructuring LLC in its capacity as notice and claims agent for the Debtors and any successor.

85.     "***Other Priority Claim***" means any Claim, to the extent such Claim has not already been paid during the Chapter 11 Cases, other than an Administrative Claim or a Priority Tax Claim, entitled to priority in right of payment under section 507(a) of the Bankruptcy Code.

86.     "***Other Secured Claim***" means any Secured Claim that is not a DIP Claim, a Prepetition Loan Claim, or a Secured Tax Claim.

87.     "***Pachulski***" means Pachulski, Stang, Ziehl & Jones LLP, as counsel to the Term Lender Group and the Prepetition Agent.

88.     "***Person***" means a person as such term as defined in section 101(41) of the Bankruptcy Code.

89.     "***Petition Date***" means September 14, 2020, the date on which each of the Debtors commenced the Chapter 11 Cases.

90.     "***Plan Administrator***" means the Person or Entity designated by the Debtors, with the consent of the Term Lender Group not to be unreasonably withheld, who will be disclosed at or prior to the Confirmation Hearing, to have all powers and authorities set forth in Article IV.E of this Plan.

91.     "***Plan Supplement***" means the compilation of documents and forms of documents, agreements, schedules, and exhibits to the Plan (as may be altered, amended, modified, or supplemented from time to time in accordance with the terms hereof and in accordance with the Bankruptcy Code and Bankruptcy Rules), which, in each case, shall be in form and substance reasonably acceptable to the Purchaser and the Term Lender Group, to be Filed by the Debtors no later than the Plan Supplement Filing Date, including the following, as applicable: (a) Rejected Executory Contracts and Unexpired Leases Schedule; (b) Assumed Executory Contracts and Unexpired Leases Schedule, (c) Schedule of Retained Causes of Action; (d) Asset Purchase Agreement; (e) any necessary documentation related to the Sale Transactions; (f) the identity of the Non-Released Claims Trustee; and (g) the Non-Released Claims Trust Agreement.

92.     "***Plan Supplement Filing Date***" means, the date that is (a) the earlier of (i) thirteen days before the earlier of the Voting Deadline or the deadline to object to Confirmation of the Plan and (ii) seventeen days prior the Confirmation Hearing or (b) such later date as may be approved by the Bankruptcy Court.

93.     "***Post-Effective Date Debtor***" means the Debtor or Debtors or any successor or successors thereto after the Effective Date responsible for winding down the Debtors' Estates and implementing the terms of the Plan.

94.     "***Post-Effective Date Debtor Assets***" means all of the assets of the Debtors' Estates (other than the Non-Released Claims Trust Assets) remaining following the Sale Transaction.

95.     "***Post-Effective Date Debtor Account***" means the Debtors' bank account or accounts used to fund all expenses and payments required to be made by the Post-Effective Date Debtor, which account will be funded on the Effective Date with Available Cash in the Post-Effective Date Debtor Account Amount. Following the wind down of the Chapter 11 Cases, any remaining amounts in the Post-Effective Date Debtor Account shall be Excess Distributable Cash. For the avoidance of doubt, the Post-Effective Date Debtor Account shall become property of the Post-Effective Date Debtor on the Effective Date.

8

96.    "***Post-Effective Date Debtor Account Amount***" means $3,200,000, plus any Assumed Liabilities (as defined in the Asset Purchase Agreement) not assumed or paid by the Purchaser as of the Sale Closing and any amounts budgeted to be utilized under the DIP Facility but not actually utilized by the Debtors as of the Effective Date, minus any amounts used to fund the Administrative Claims Escrow, Professional Fee Escrow Account, the Priority Claims Reserve, or otherwise reserved or used by the Plan Administrator to fund the wind down of the Debtors' Estates.

97.    "***Prepetition Agent***" means WSFS Bank, in its capacity as administrative agent under the Prepetition Loan Agreement.

98.    "***Prepetition Facility***" means the Prepetition Revolving Loan Facility and the Prepetition Term Loan Facility.

99.    "***Prepetition Lenders***" means the lenders under the Prepetition Loan Agreement.

100.    "***Prepetition Loan Agreement***" means that certain senior secured credit agreement dated as of November 13, 2013 (as amended, supplemented, amended and restated or otherwise modified from time to time), by and among Debtors Town Sports International, LLC and TSI Holdings II, LLC, as holdings, the Prepetition Lenders, the Prepetition Agent, and the Prepetition Syndication Agent.

101.    "***Prepetition Loan Agreement Documents***" means the Prepetition Loan Agreement and all other agreements, documents, and instruments related thereto, including any guaranty agreements, pledge and collateral agreements, intercreditor agreements, and other security agreements.

102.    "***Prepetition Loan Claims***" means all Claims arising under, derived from, or based on the Prepetition Term Loan Facility.

103.    "***Prepetition Revolving Loan Facility***" means the senior secured revolving loan obligations contemplated by (and as defined in) the Prepetition Loan Agreement.

104.    "***Prepetition Syndication Agent***" means Keybank National Association, in its capacity as syndication agent under the Prepetition Loan Agreement.

105.    "***Prepetition Term Loan Facility***" means the term loan facility obligations contemplated by (and as defined in) the Prepetition Loan Agreement.

106.    "***Priority Claims***" means, collectively, Priority Tax Claims and Other Priority Claims.

107.    "***Priority Claims Reserve***" means the reserve established by the Plan Administrator on the Effective Date to be used to pay Holders of all Allowed Priority Claims, to the extent that such Claims have not been paid in full on or before the Effective Date.

108.    "***Priority Tax Claim***" means any Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

109.    "***Pro Rata***" means the proportion that an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of Allowed Claims or Allowed Interests in that Class, unless otherwise indicated.

110.    "***Professional***" means an Entity: (a) retained pursuant to a Bankruptcy Court order in accordance with sections 327 or 1103 of the Bankruptcy Code and to be compensated for services rendered and expenses incurred pursuant to sections 327, 328, 329, 330, 331, and 363 of the Bankruptcy Code or (b) awarded compensation and reimbursement by the Bankruptcy Court pursuant to section 503(b)(4) of the Bankruptcy Code.

9

111.    "***Professional Fee Claim***" means a Claim by a Professional seeking an award by the Bankruptcy Court of compensation for services rendered or reimbursement of expenses incurred through and including the Confirmation Date under sections 330, 331, 503(b)(2), 503(b)(3), 503(b)(4), or 503(b)(5) of the Bankruptcy Code.

112.    "***Professional Fee Escrow Account***" means an interest-bearing account funded by the Debtors at a third-party bank with Cash on the Effective Date in an amount equal to the Professional Fee Escrow Amount.

113.    "***Professional Fee Escrow Amount***" means the aggregate amount of Professional Claims and other unpaid fees and expenses that the Professionals estimate they have incurred or will incur in rendering services to the Debtors as set forth in Article II.B.3 of the Plan.

114.    "***Proof of Claim***" means a written proof of Claim Filed against any of the Debtors in the Chapter 11 Cases by the Claims Bar Date, the Administrative Claim Objection Bar Date, or the Governmental Bar Date, as applicable.

115.    "***Proof of Interest***" means a written proof of Interest Filed against any of the Debtors in the Chapter 11 Cases.

116.    "***Purchaser***" means the Entity whose bid for part or all of the Debtors' assets is selected by the Debtors and approved by the Bankruptcy Court as the highest or otherwise best bid pursuant to the Bidding Procedures Order.

117.    "***Reinstate***," "***Reinstated***," or "***Reinstatement***" means with respect to Claims and Interests, that the Claim or Interest shall be rendered unimpaired in accordance with section 1124 of the Bankruptcy Code.

118.    "***Rejected Executory Contracts and Unexpired Leases Schedule***" means the schedule of Executory Contracts and Unexpired Leases to be rejected by the Debtors pursuant to the Plan, which schedule shall be included in the Plan Supplement, as the same may be amended, modified, or supplemented from time to time.

119.    "***Related Party***" means, each of, and in each case in its capacity as such, current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees; *provided* that Related Party shall not include any holder of an equity security in Town Sports International Holdings, Inc., in such capacity.

120.    "***Released Party***" means collectively, and in each case in its capacity as such:  (a) the Debtors; (b) the Post-Effective Date Debtor; (c) the Prepetition Agent; (d) each Prepetition Lender; (e) the Purchaser; (f) the DIP Lender; (g) the Committee; (h) all Holders of Claims or Interests; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (i); and (i) each Related Party of each Entity in clause (a) through this clause (i); *provided* that in each case, an Entity shall not be a Released Party if it: (x) timely submits a valid opt out form indicating it elects to opt out of the releases contained in the Plan or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation; *provided, further*, that any such Entity shall be identified by name as a non-Released Party in the Confirmation Order.

121.    "***Releasing Parties***" means collectively, and in each case in its capacity as such: (a) the Debtors; (b) the Post-Effective Date Debtor; (c) the Prepetition Agent; (d) the Prepetition Lenders; (e) the Purchaser; (f) the DIP Lender; (g) the Committee; (h) all Holders of Claims or Interests; (i) each current and former Affiliate of each Entity in clause (a) through the following clause (j); and (j) each Related Party of each Entity in clause (a) through

10

this clause (j); *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) timely submits a valid opt out form indicating it elects to opt out of the releases contained in the Plan or (y) timely Files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation; *provided, further,* that any such Entity shall be identified by name as a non-Releasing Party in the Confirmation Order.

122.    "*Restructuring Transactions*" means the transactions described in Article IV.B of the Plan.

123.    "*Sale Closing*" means the closing of the transaction contemplated by the Asset Purchase Agreement.

124.    "*Sale Order*" means the order of the Bankruptcy Court approving the Sale Transaction as contemplated by the Bidding Procedures Order.

125.    "*Sale Transaction*" means the sale of all or substantially all of the Debtor's assets to Purchaser as set forth in the Asset Purchase Agreement.

126.    "*Sale Transaction Proceeds*" means any Cash and other proceeds of the Sale Transaction.

127.    "*Schedule of Retained Causes of Action*" means the schedule of certain Causes of Action of the Debtors that are not released, waived, or transferred pursuant to the Plan, as the same may be amended, modified, or supplemented from time to time by the Debtors.  For the avoidance of doubt, the Schedule of Retained Causes of Action shall not include any Non-Released Claims Trust Causes of Action.

128.    "*Schedules*" means, collectively, the schedules of assets and liabilities, schedules of Executory Contracts and Unexpired Leases and statements of financial affairs Filed by the Debtors pursuant to section 521 of the Bankruptcy Code, the official bankruptcy forms, and the Bankruptcy Rules, as such schedules may be amended, modified, or supplemented from time to time.

129.    "*Section 510(b) Claim*" means any Claim subject to subordination under section 510(b) of the Bankruptcy Code; provided that a Section 510(b) Claim shall not include any Claim subject to subordination under section 510(b) of the Bankruptcy Code arising from or related to an Interest.  For the avoidance of doubt, neither DIP Claims nor Prepetition Loan Claims are, and shall not be, Section 510(b) Claims.

130.    "*Secured*" means when referring to a Claim: (a) secured by a Lien on collateral in which the applicable Estate has an interest, which Lien is valid, perfected, and enforceable pursuant to applicable law or by reason of a Bankruptcy Court order, or that is subject to setoff pursuant to section 553 of the Bankruptcy Code, to the extent of the value of the creditor's interest in such Estate's interest in such collateral or to the extent of the amount subject to setoff, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code or (b) Allowed pursuant to the Plan as a Secured Claim.

131.    "*Secured Tax Claim*" means any Secured Claim that, absent its secured status would be entitled to priority in right of payment under section 507(a)(8) of the Bankruptcy Code (determined irrespective of time limitations), including any related Secured Claim for penalties.

132.    "*Securities Act*" means the Securities Act of 1933, 15 U.S.C. §§ 77a-77aa, as now in effect or hereafter amended, and the rules and regulations promulgated thereunder.

133.    "*Security*" means a security as defined in section 2(a)(1) of the Securities Act.

134.    "*Supplemental DIP Term Sheet*" means that certain supplemental term sheet for debtor-in-possession financing and alternatively a sale of assets under section 363 of the Bankruptcy Code, dated as of October 16, 2020.

135.    "***Term Lender Group***" means the ad hoc group of certain unaffiliated Holders of Prepetition Loan Claims represented by the Term Lender Advisors.

136.    "***Term Lender Advisors***" means Gibson Dunn, Pachulski, and FTI.

137.    "***Term Lender Expenses***" means the reasonable and documented fees and expenses of the Term Lender Advisors.

138.    "***TSI***" means TSI Holdings II, LLC.

139.    "***U.S. Trustee***" means the Office of the United States Trustee for the District of Delaware.

140.    "***Unexpired Lease***" means a lease to which one or more of the Debtors is a party that is subject to assumption or rejection under section 365 or section 1123 of the Bankruptcy Code.

141.    "***Unimpaired***" means, with respect to a Class of Claims or Interests, a Class of Claims or Interests that is unimpaired within the meaning of section 1124 of the Bankruptcy Code.

142.    "***Voting Deadline***" means 4:00 p.m. (prevailing Eastern Time) on December 7, 2020.

B.    *Rules of Interpretation*

For purposes of this Plan:  (1) in the appropriate context, each term, whether stated in the singular or the plural, shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and the neuter gender; (2) unless otherwise specified, any reference herein to a contract, lease, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that the referenced document shall be substantially in that form or substantially on those terms and conditions; (3) unless otherwise specified, any reference herein to an existing document, schedule, or exhibit, whether or not Filed, having been Filed or to be Filed shall mean that document, schedule, or exhibit, as it may thereafter be amended, restated, supplemented, or otherwise modified in accordance with the Plan or Confirmation Order, as applicable; (4) any reference to an Entity as a Holder of a Claim or Interest includes that Entity's successors and assigns; (5) unless otherwise specified, all references herein to "Articles" are references to Articles hereof or hereto; (6) unless otherwise specified, all references herein to exhibits are references to exhibits in the Plan Supplement; (7) unless otherwise specified, the words "herein," "hereof," and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (8) subject to the provisions of any contract, certificate of incorporation, bylaw, instrument, release, or other agreement or document entered into in connection with the Plan, the rights and obligations arising pursuant to the Plan shall be governed by, and construed and enforced in accordance with, applicable federal law, including the Bankruptcy Code and the Bankruptcy Rules, or, if no rule of law or procedure is supplied by federal law (including the Bankruptcy Code and the Bankruptcy Rules) or otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws; (9) captions and headings to Articles are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (10) the rules of construction set forth in section 102 of the Bankruptcy Code shall apply; (11) all references to docket numbers of documents Filed in the Chapter 11 Cases are references to the docket numbers under the Bankruptcy Court's CM/ECF system; (12) all references to statutes, regulations, orders, rules of courts, and the like shall mean as amended from time to time, and as applicable to the Chapter 11 Cases, unless otherwise stated; (13) any effectuating provisions may be interpreted by the Post-Effective Date Debtor in such a manner that is consistent with the overall purpose and intent of the Plan all without further notice to or action, order, or approval of the Bankruptcy Court or any other Entity, and such interpretation shall be conclusive; (14) any references herein to the Effective Date shall mean the Effective Date or as soon as reasonably practicable thereafter; (15) the words "include" and "including," and variations thereof, shall not be deemed to be terms of limitation, and shall be deemed to be followed by the words "without limitation"; (16) all references herein to consent, acceptance, or approval shall be deemed to include the requirement that such consent, acceptance, or approval be evidenced by a writing, which may be conveyed by counsel for the respective parties that have such consent, acceptance, or approval rights, including by electronic mail; and (17) any term used in capitalized form herein that is not otherwise defined

12

but that is used in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules, as the case may be.

C.      *Computation of Time*

Unless otherwise specifically stated herein, the provisions of Bankruptcy Rule 9006(a) shall apply in computing any period of time prescribed or allowed herein. If the date on which a transaction may occur pursuant to the Plan shall occur on a day that is not a Business Day, then such transaction shall instead occur on the next succeeding Business Day. Any action to be taken on the Effective Date may be taken on or as soon as reasonably practicable after the Effective Date.

D.      *Governing Law*

Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code and Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreement shall control); *provided* that corporate or limited liability company governance matters relating to the Debtors or the Post-Effective Date Debtor, as applicable, not incorporated in Delaware shall be governed by the laws of the state of incorporation or formation of the relevant Debtor or the Post-Effective Date Debtor, as applicable.

E.      *Reference to Monetary Figures*

All references in the Plan to monetary figures shall refer to currency of the United States of America, unless otherwise expressly provided herein.

F.      *Reference to the Debtors or the Post-Effective Date Debtor*

Except as otherwise specifically provided in the Plan to the contrary, references in the Plan to the Debtors or the Post-Effective Date Debtor shall mean the Debtors and the Post-Effective Date Debtor, as applicable, to the extent the context requires.

G.      *Non-consolidated Plan*

Although for purposes of administrative convenience and efficiency the Plan has been Filed as a joint plan for each of the Debtors and presents together Classes of Claims against, and Interests in, the Debtors, the Plan does not provide for the substantive consolidation of any of the Debtors.

## ARTICLE II.
## ADMINISTRATIVE CLAIMS, DIP CLAIMS, AND PRIORITY TAX CLAIMS

In accordance with section 1123(a)(1) of the Bankruptcy Code, Administrative Claims, Professional Fee Claims, DIP Claims, and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Interests set forth in Article III.

A.      *General Administrative Claims*

Unless otherwise agreed to by the Holder of an Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtor, as applicable, to the extent an Allowed Administrative Claim has not already been paid in full or otherwise satisfied during the Chapter 11 Cases, each Holder of an Allowed Administrative Claim (other than Holders of Professional Fee Claims, the DIP Claims, and Claims for fees and expenses pursuant to section 1930 of chapter 123 of title 28 of the United States Code) will receive in full and final satisfaction of its Allowed Administrative Claim in an amount of Cash equal to the amount of the unpaid portion of such Allowed Administrative

13

Claim in accordance with the following: (1) if such Administrative Claim is Allowed on or prior to the Effective Date, no later than 30 days after the Effective Date or as soon as reasonably practicable thereafter (or, if not then due, when such Allowed Administrative Claim is due or as soon as reasonably practicable thereafter); (2) if such Administrative Claim is not Allowed as of the Effective Date, no later than thirty (30) days after the date on which an order Allowing such Administrative Claim becomes a Final Order, or as soon as reasonably practicable thereafter; (3) if such Allowed Administrative Claim is based on liabilities incurred by the Debtors in the ordinary course of their business after the Petition Date, in accordance with the terms and conditions of the particular transaction or course of business giving rise to such Allowed Administrative Claim, without any further action by the Holder of such Allowed Administrative Claim; (4) at such time and upon such terms as may be agreed upon by the Holder of such Allowed Administrative Claim and the Debtors or the Post-Effective Date Debtor, as applicable; or (5) at such time and upon such terms as set forth in a Final Order of the Bankruptcy Court.

Except with respect to Administrative Claims that are Professional Fee Claims, DIP Claims, or subject to section 503(b)(1)(D) of the Bankruptcy Code, and unless previously Filed, requests for payment of Administrative Claims must be Filed and served on the Post-Effective Date Debtor no later than the Administrative Claim Bar Date pursuant to the procedures specified in the Confirmation Order and the notice of entry of the Confirmation Order. Objections to such requests must be Filed and served on the Post-Effective Date Debtor and the requesting party by the Administrative Claim Objection Bar Date. After notice and a hearing in accordance with the procedures established by the Bankruptcy Code, the Bankruptcy Rules, and prior Bankruptcy Court orders, the Allowed amounts, if any, of Administrative Claims shall be determined by, and satisfied in accordance with an order that becomes a Final Order of, the Bankruptcy Court.

Holders of Administrative Claims that are required to File and serve a request for payment of such Administrative Claims that do not file and serve such a request by the Administrative Claim Bar Date shall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Post-Effective Date Debtor, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Post-Effective Date Debtor or any notice to or action, order, or approval of the Bankruptcy Court. Notwithstanding the foregoing, no request for payment of an Administrative Claim need be Filed with the Bankruptcy Court with respect to an Administrative Claim previously Allowed.

B.    *Professional Fee Claims*

    1.    Final Fee Applications and Payment of Professional Fee Claims

All final requests for payment of Professional Fee Claims for services rendered and reimbursement of expenses incurred prior to the Confirmation Date must be Filed no later than sixty (60) days after the Effective Date. The Bankruptcy Court shall determine the Allowed amounts of such Professional Fee Claims after notice and a hearing in accordance with the procedures established by the Bankruptcy Code, Bankruptcy Rules, and prior Bankruptcy Court orders. The Post-Effective Date Debtor shall pay the amount of the Allowed Professional Fee Claims owing to the Professionals in Cash to such Professionals, including from funds held in the Professional Fee Escrow Account, when such Professional Fee Claims are Allowed by entry of an order of the Bankruptcy Court.

    2.    Professional Fee Escrow Account

As soon as is reasonably practicable after the Confirmation Date and no later than the Effective Date, the Debtors shall establish and fund the Professional Fee Escrow Account with Cash equal to the Professional Fee Escrow Amount. The Professional Fee Escrow Account shall be maintained in trust solely for the Professionals and for no other Entities until all Professional Fee Claims Allowed by the Bankruptcy Court have been indefeasibly paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court. No Liens, Claims, or Interests shall encumber the Professional Fee Escrow Account or Cash held in the Professional Fee Escrow Account in any way. Funds held in the Professional Fee Escrow Account shall not be considered property of the Estates of the Debtors or the Post-Effective Date Debtor.

The amount of Professional Fee Claims owing to the Professionals shall be paid in Cash to such Professionals by the Debtors or the Post-Effective Date Debtor, as applicable, from the funds held in the Professional Fee Escrow Account as soon as reasonably practicable after such Professional Fee Claims are Allowed by an order of the Bankruptcy Court; *provided* that the Debtors' and the Post-Effective Date Debtor's obligations to pay Allowed Professional Fee Claims shall not be limited nor be deemed limited to funds held in the Professional Fee Escrow Account.  When all Professional Fee Claims Allowed by the Bankruptcy Court have been irrevocably paid in full to the Professionals pursuant to one or more Final Orders of the Bankruptcy Court, any remaining funds held in the Professional Fee Escrow Account shall promptly be paid to the Post-Effective Date Debtor and constitute part of the Post-Effective Date Debtor Assets without any further notice to or action, order, or approval of the Bankruptcy Court.

3.    Professional Fee Escrow Amount

The Professionals shall provide a reasonable and good-faith estimate of their unpaid Professional Claims and other unpaid fees and expenses incurred in rendering services to the Debtors before and as of the Effective Date projected to be outstanding as of the Effective Date, and shall deliver such estimate to the Debtors no later than five (5) days before the anticipated Effective Date; *provided* that such estimate shall not be considered or deemed an admission or limitation with respect to the amount of the fees and expenses that are the subject of the Professional's final request for payment of Professional Fee Claims and such Professionals are not bound to any extent by the estimates.  If a Professional does not provide an estimate, the Debtors or the Post-Effective Date Debtor, as applicable, may estimate the unpaid and unbilled fees and expenses of such Professional.  The total aggregate amount so estimated as of the Effective Date shall be utilized by the Debtors to determine the amount to be funded to the Professional Fee Escrow Account, *provided* that the Post-Effective Date Debtor shall use Cash on hand to increase the amount of the Professional Fee Escrow Account to the extent fee applications are Filed after the Effective Date in excess of the amount held in the Professional Fee Escrow Account based on such estimates.

4.    Post-Confirmation Fees and Expenses

Except as otherwise specifically provided in the Plan, from and after the Confirmation Date, the Debtors shall, in the ordinary course of business and without any further notice to or action, order, or approval of the Bankruptcy Court, provided that three (3) Business Days' notice shall be provided to the Prepetition Agent, pay in Cash the reasonable and documented legal, professional, or other fees and expenses related to implementation of the Plan and Consummation incurred by the Debtors or the Post-Effective Date Debtor.  The Debtors and Post-Effective Date Debtor (as applicable) shall pay, within ten (10) Business Days after submission of a detailed invoice to the Debtors or Post-Effective Date Debtor (as applicable) such reasonable claims for compensation or reimbursement of expenses incurred by the Retained Professionals of the Debtors and Post-Effective Date Debtor (as applicable).  If the Debtors or Post-Effective Date Debtor (as applicable) dispute the reasonableness of any such invoice, the Debtors or Post-Effective Date Debtor (as applicable) or the affected professional may submit such dispute to the Bankruptcy Court for a determination of the reasonableness of any such invoice, and the disputed portion of such invoice shall not be paid until the dispute is resolved.  Upon the Confirmation Date, any requirement that Professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code or the Interim Compensation Order in seeking retention or compensation for services rendered after such date shall terminate, and the Debtors may employ and pay any Professional in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court.

C.    *DIP Claims*

Pursuant to the Sale Order, the DIP Claims (other than DIP Lender Expenses) were assumed by the Purchaser in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed DIP Claim as of the Sale Closing, and the Debtors have no further obligation to the DIP Lenders or any other party with respect to the DIP Claims, except to the extent otherwise set forth herein.  For the avoidance of doubt, no Holder of a DIP Claim shall receive any Non-Released Claims Trust Interests or otherwise participate in the distributions to the Holders of Class 5 General Unsecured Claims under this Plan.  Pursuant to the Sale Order, all Liens and security interests granted to secure the Allowed DIP Claims were terminated and of no further force and effect without any further notice to or action, order, or approval of the Bankruptcy Court.  For the avoidance of doubt, and

15

notwithstanding anything to the contrary herein, any requests for payment or reimbursement of expenses issued by a professional pursuant to the DIP Order are not required to be filed or served, and shall not be subject to review, other than as contemplated by the DIP Order.  Notwithstanding the foregoing, the DIP Lender Expenses shall be paid in full in Cash by the Debtors prior to the Effective Date.

D.      *Priority Tax Claims*

Except to the extent that a Holder of an Allowed Priority Tax Claim agrees to a less favorable treatment, in full and final satisfaction, compromise, settlement, release, and discharge of, and in exchange for, each Allowed Priority Tax Claim, each Holder of such Allowed Priority Tax Claim shall be treated in accordance with the terms set forth in section 1129(a)(9)(C) of the Bankruptcy Code.

## ARTICLE III.
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

A.      *Classification of Claims and Interests*

Except for the Claims addressed in Article II of the Plan, all Claims and Interests are classified in the Classes set forth in this Article III for all purposes, including voting, Confirmation, and distributions pursuant to the Plan and in accordance with section 1122 and 1123(a)(1) of the Bankruptcy Code.  A Claim or an Interest is classified in a particular Class only to the extent that such Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any portion of such Claim or Interest qualifies within the description of such other Classes.  A Claim or an Interest also is classified in a particular Class for the purpose of receiving distributions under the Plan only to the extent that such Claim or Interest is an Allowed Claim or Allowed Interest in that Class and has not been paid, released, or otherwise satisfied prior to the Effective Date.

The classification of Claims and Interests against each Debtor pursuant to the Plan is as set forth below.  The Plan shall apply as a separate Plan for each of the Debtors, and the classification of Claims and Interests set forth herein shall apply separately to each of the Debtors.  All of the potential Classes for the Debtors are set forth herein.

| Class | Claim/Interest | Status | Voting Rights |
|-------|----------------|--------|---------------|
| 1 | Secured Tax Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 2 | Other Secured Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 3 | Other Priority Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept) |
| 4 | Prepetition Loan Claims | Impaired | Entitled to Vote |
| 5 | General Unsecured Claims | Impaired | Entitled to Vote |
| 6 | Intercompany Claims | Unimpaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 7 | Intercompany Interests | Unimpaired | Not Entitled to Vote (Deemed to Accept or Reject) |
| 8 | Section 510(b) Claims | Impaired | Not Entitled to Vote (Deemed to Reject) |
| 9 | Interests in TSI | Impaired | Not Entitled to Vote (Deemed to Reject) |

B.      *Treatment of Claims and Interests*

Subject to Article VI hereof, each Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive under the Plan the treatment described below in full and final satisfaction, compromise, settlement, and release

of, and in exchange for such Holder's Allowed Claim or Allowed Interest, except to the extent different treatment is agreed to by the Debtors and the Holder of such Allowed Claim or Allowed Interest, as applicable. Unless otherwise indicated, the Holder of an Allowed Claim or Allowed Interest, as applicable, shall receive such treatment on the later of the Effective Date and the date such Holder's Claim or Interest becomes an Allowed Claim or Allowed Interest or as soon as reasonably practicable thereafter.

1. <u>Class 1 - Secured Tax Claims</u>

    (a)   *Classification:* Class 1 consists of all Secured Tax Claims.

    (b)   *Treatment:* Except to the extent that a Holder of an Allowed Secured Tax Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Secured Tax Claim, each Holder of an Allowed Secured Tax Claim shall receive, at the option of the Plan Administrator:

        (i)   payment in full in Cash of such Holder's Allowed Secured Tax Claim; or

        (ii)   equal semi-annual Cash payments commencing as of the Effective Date or as soon as reasonably practicable thereafter and continuing for five years, in an aggregate amount equal to such Allowed Secured Tax Claim, together with interest at the applicable non-default rate under non-bankruptcy law, subject to the option of the Plan Administrator to prepay the entire amount of such Allowed Secured Tax Claim during such time period.

    (c)   *Voting:* Class 1 is Unimpaired under the Plan. Holders of Secured Tax Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

2. <u>Class 2 - Other Secured Claims</u>

    (a)   *Classification:* Class 2 consists of all Other Secured Claims.

    (b)   *Treatment:* Except to the extent that a Holder of an Allowed Other Secured Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Secured Claim, each Holder of an Allowed Other Secured Claim shall receive, at the option of the Plan Administrator:

        (i)   payment in full in Cash of such Holder's Allowed Other Secured Claim;

        (ii)   the collateral securing such Holder's Allowed Other Secured Claim;

        (iii)   Reinstatement of such Holder's Allowed Other Secured Claim; or

        (iv)   such other treatment rendering such Holder's Allowed Other Secured Claim Unimpaired.

    (c)   *Voting:* Class 2 is Unimpaired under the Plan. Holders of Other Secured Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

27393445.1

3.     Class 3 - Other Priority Claims

    (a)    *Classification*:  Class 3 consists of all Other Priority Claims.

    (b)    *Treatment*:  Except to the extent that a Holder of an Allowed Other Priority Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed Other Priority Claim, each Holder of an Allowed Other Priority Claim shall receive payment in full in Cash on account of such Holder's Allowed Other Priority Claim or such other treatment rendering such Holder's Allowed Other Priority Claim Unimpaired.

    (c)    *Voting*:  Class 3 is Unimpaired under the Plan.  Holders of Other Priority Claims are conclusively presumed to have accepted the Plan pursuant to section 1126(f) of the Bankruptcy Code.  Therefore, such Holders are not entitled to vote to accept or reject the Plan.

4.     Class 4 – Prepetition Loan Claims

    (a)    *Classification*:  Class 4 consists of all Prepetition Loan Claims.

    (b)    On the Effective Date, the Prepetition Loan Claims shall be Allowed in the aggregate principal amount of the sum of (i) the principal amount outstanding under the Prepetition Loan Agreement *plus* (ii) all accrued but unpaid interest, costs, fees, and expenses due and owing under the Prepetition Loan Agreement, as reduced by any amounts credit bid in connection with any disposition of property of the Debtors, including the Sale Transaction.

    (c)    *Treatment*:  Except to the extent that a Holder of an Allowed Prepetition Loan Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, release, and discharge of and in exchange for such Allowed Prepetition Loan Claim, each Holder of an Allowed Prepetition Loan Claim shall receive its Pro Rata share of (not to exceed the amount of such Holder's Prepetition Loan Claim) the Excess Distributable Cash in accordance with the distribution waterfall set forth in Article IV.C. For the avoidance of doubt, no Holder of a Prepetition Loan Claim shall receive any Non-Released Claims Trust Interests or otherwise participate in the distributions to the Holders of Class 5 General Unsecured Claims under this Plan, including on account of any deficiency claims.

    (d)    *Voting*:  Class 4 is Impaired under the Plan.  Holders of Prepetition Loan Claims are entitled to vote to accept or reject the Plan.

5.     Class 5 – General Unsecured Claims

    (a)    *Classification*:  Class 5 consists of all General Unsecured Claims.

    (b)    *Treatment:*  Except to the extent that a Holder of an Allowed General Unsecured Claim agrees to less favorable treatment, on the Effective Date, in full and final satisfaction, compromise, settlement, and release of and in exchange for such Allowed General Unsecured Claim, each Holder of an Allowed General Unsecured Claim shall receive:

        (i)    its Pro Rata share of the Non-Released Claims Trust Interests; and

        (ii)    a complete waiver and release of any and all Claims, Causes of Action, and other rights against the Holders of Allowed Class 5 Claims based on claims pursuant to chapter 5 of the Bankruptcy Code or under similar or related state or federal

18

statutes and common law including fraudulent transfer laws from the Debtors, the Post-Effective Date Debtor, and their respective Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, subject to and in accordance with Article IX of the Plan.

(c)     *Voting:* Class 5 is Impaired under the Plan. Holders of General Unsecured Claims are entitled to vote to accept or reject the Plan.

6.     <u>Class 6 - Intercompany Claims</u>

(a)     *Classification*: Class 6 consists of all Intercompany Claims.

(b)     *Treatment*: Holders of Intercompany Claims shall not receive any distribution on account of such Intercompany Claims. On or after the Effective Date, the Post-Effective Date Debtor may reconcile such Intercompany Claims as may be advisable in order to avoid the incurrence of any past, present, or future tax or similar liabilities by such Post-Effective Date Debtor.

(c)     *Voting*: Class 6 is Impaired under the Plan. Holders of Intercompany Claims are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

7.     <u>Class 7 - Intercompany Interests</u>

(a)     *Classification:* Class 7 consists of all Intercompany Interests.

(b)     *Treatment*: Intercompany Interests shall be, at the option of the Debtors either:

(i)     Reinstated in accordance with Article III.G; or

(ii)     Discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Intercompany Interests will not receive any distribution on account of such Intercompany Interests.

(c)     *Voting*: Class 7 is Impaired under the Plan. Holders of Intercompany Interests are conclusively deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

8.     <u>Class 8 - Section 510(b) Claims</u>

(a)     *Classification:* Class 8 consists of all Section 510(b) Claims.

(b)     *Allowance:* Notwithstanding anything to the contrary herein, a Section 510(b) Claim, if any such Claim exists, may only become Allowed by Final Order of the Bankruptcy Court. The Debtors are not aware of any valid Section 510(b) Claim and believe that no such Section 510(b) Claim exists.

(c)     *Treatment*: Allowed Section 510(b) Claims, if any, shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and

19

Holders of Allowed Section 510(b) Claims will not receive any distribution on account of such Allowed Section 510(b) Claims.

(d)     *Voting:*  Class 8 is Impaired under the Plan.  Holders (if any) of Section 510(b) Claims are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code.  Therefore, such Holders (if any) are not entitled to vote to accept or reject the Plan.

9.    Class 9 – Interests in TSI

(a)     *Classification:*  Class 9 consists of all Interests in TSI.

(b)     *Treatment*:  Interests in TSI shall be discharged, canceled, released, and extinguished as of the Effective Date, and will be of no further force or effect, and Holders of Interests in TSI will not receive any distribution on account of such Interests.

(c)     *Voting:*  Class 9 is Impaired under the Plan.  Holders of Interests in TSI are conclusively deemed to have rejected the Plan under section 1126(g) of the Bankruptcy Code. Therefore, such Holders are not entitled to vote to accept or reject the Plan.

C.    *Special Provision Governing Unimpaired Claims*

Except as otherwise provided in the Plan, nothing under the Plan shall affect the Debtors' or the Post-Effective Date Debtor's rights in respect of any Claims that are Unimpaired, including all rights in respect of legal and equitable defenses to or setoffs or recoupments against any such Claims that are Unimpaired.  Unless otherwise Allowed, Claims that are Unimpaired shall remain Disputed Claims under the Plan.

D.    *Confirmation Pursuant to Sections 1129(a)(10) and 1129(b) of the Bankruptcy Code*

Section 1129(a)(10) of the Bankruptcy Code shall be satisfied for purposes of Confirmation by acceptance of the Plan by one or more of the Classes entitled to vote pursuant to Article III.B herein.  The Debtors shall seek Confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code with respect to any rejecting Class of Claims or Interests.  The Debtors reserve the right to modify the Plan in accordance with Article XI of the Plan to the extent, if any, that Confirmation pursuant to section 1129(b) of the Bankruptcy Code requires modification, including by modifying the treatment applicable to a Class of Claims or Interests to render such Class of Claims or Interests Unimpaired to the extent permitted by the Bankruptcy Code and the Bankruptcy Rules.

E.    *Subordinated Claims*

Except as expressly provided herein, the allowance, classification, and treatment of all Allowed Claims and Allowed Interests and the respective distributions and treatments under the Plan take into account and conform to the relative priority and rights of the Claims and Interests in each Class in connection with any contractual, legal, and equitable subordination rights relating thereto, whether arising under general principles of equitable subordination, section 510(b) of the Bankruptcy Code, or otherwise.  Pursuant to section 510 of the Bankruptcy Code, the Debtors and the Post-Effective Date Debtor reserve the right to reclassify any Allowed Claim or Interest in accordance with any contractual, legal, or equitable subordination relating thereto; *provided, however*, that in no event shall the Prepetition Loan Claims be reclassified as Section 510(b) Claims.

F.    *Elimination of Vacant Classes; Presumed Acceptance by Non-Voting Classes*

Any Class of Claims or Interests that does not have a Holder of an Allowed Claim or Allowed Interest or a Claim or Interest temporarily Allowed by the Bankruptcy Court in an amount greater than zero as of the date of the Confirmation Hearing shall be considered vacant and deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

20

If a Class contains Claims or Interests eligible to vote and no Holders of Claims or Interests eligible to vote in such Class vote to accept or reject the Plan, the Holders of such Claims or Interests in such Class shall be deemed to have accepted the Plan.

G.    *Intercompany Interests*

To the extent Reinstated under the Plan, distributions on account of Intercompany Interests are not being received by Holders of such Intercompany Interests on account of their Intercompany Interests but for the purposes of administrative convenience, for the ultimate benefit of Purchaser, and in exchange for the Debtors' and Post-Effective Date Debtor's agreement under the Plan to provide management services to certain other Debtors and Post-Effective Date Debtor, to use certain funds and assets as set forth in the Plan to make certain distributions and satisfy certain obligations of certain other Debtors and Post-Effective Date Debtor to the Holders of certain Allowed Claims.

H.    *Controversy Concerning Impairment*

If a controversy arises as to whether any Claims or Interests, or any Class of Claims or Interests, are Impaired, the Bankruptcy Court shall, after notice and a hearing, determine such controversy on or before the Confirmation Date.

## ARTICLE IV.
## MEANS FOR IMPLEMENTATION OF THE PLAN

A.    *General Settlement of Claims and Interests*

As discussed in detail in the Disclosure Statement and as otherwise provided herein, pursuant to section 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 (as applicable), and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan, including the settlement between the Debtors, the Term Lender Group, the Purchaser, and the Committee embodied in the Plan. The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies pursuant to Bankruptcy Rule 9019, and the entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of such compromise and settlement, as well as a finding by the Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI hereof, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

B.    *Restructuring Transactions*

On or before the Effective Date, the applicable Debtors or the Post-Effective Date Debtor shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of the Sale Transaction pursuant to the Asset Purchase Agreement, the issuance of all certificates and other documents required to be issued pursuant to the Plan, one or more intercompany mergers, consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively, the "Restructuring Transactions"). The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and Asset Purchase Agreement and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the Filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or

dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making Filings or recordings that may be required by applicable law in connection with the Plan. The Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

C.      *Sources of Consideration for Plan Distributions*

The Debtors and Post-Effective Date Debtor, as applicable, shall fund the distributions and obligations under the Plan with Available Cash held in the Administrative Claims Escrow, Priority Claims Reserve, and the Post-Effective Date Debtor Account, as applicable, on the Effective Date. After the funding from Available Cash of the Administrative Claims Escrow, the Priority Claims Reserve, and the Post-Effective Date Debtor Account, all remaining Available Cash shall be applied towards the Prepetition Loan Claims until the Prepetition Loan Claims are paid in full in Cash. In addition, any remaining Available Cash and Excess Distributable Cash after payment in full in Cash of the Prepetition Loan Claims, shall be paid to the Non-Released Claims Trust promptly after the full payment of the Prepetition Loan Claims. The Non-Released Claims Trustee will fund distributions related to Holders of General Unsecured Claims with Cash from the Non-Released Claims Trust. As indicated in Article II, pursuant to the Sale Order, the DIP Claims have been satisfied in connection with the Sale Transaction.

D.      *Post-Effective Date Debtor*

The Debtors shall continue in existence after the Effective Date as the Post-Effective Date Debtor solely for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Post-Effective Date Debtor, if any, (2) resolving any Disputed Claims (other than Disputed General Unsecured Claims), (3) paying Allowed Claims, (4) Filing appropriate tax returns, and (5) administering the Plan in an efficacious manner. The Post-Effective Date Debtor shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in the Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of the Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

On the Effective Date, the Post-Effective Date Debtor Assets (other than the Non-Released Claims Trust Assets) shall vest in the Post-Effective Date Debtor for the primary purpose of liquidating the Post-Effective Date Debtor Assets and winding down the Debtors' Estates, with no objective to continue or engage in the conduct of a trade or business. The Post-Effective Date Debtor will, in an expeditious but orderly manner, liquidate and convert to Cash the Post-Effective Date Debtor Assets, make timely distributions pursuant to the Plan and Confirmation Order, and not unduly prolong its duration. Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Post-Effective Date Debtor shall be deemed to be fully bound by the terms of the Plan and the Confirmation Order.

E.      *Plan Administrator*

On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by the Debtors as the sole director and the sole officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtors' directors and officers. The Plan Administrator shall be the sole representative of, and shall act for the Post-Effective Date Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). For the avoidance of doubt, the foregoing shall not limit the authority of the Post-Effective Date Debtor or the Plan Administrator, as applicable, to continue the employment any former director or officer.

The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the

27393445.1

performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Post-Effective Date Debtor, upon the monthly submission of statements to the Plan Administrator.  The payment of the reasonable fees and expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

F.      *Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation*

The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post-Effective Date Debtor.  The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtor, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtor.  The Plan Administrator may rely upon written information previously generated by the Debtors.

G.      *Tax Returns*

After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and the Post-Effective Date Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

H.      *Dissolution of the Post-Effective Date Debtor*

Upon a certification to be Filed with the Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of the Chapter 11 Cases, the Post-Effective Date Debtor shall be deemed to be dissolved without any further action by the Post-Effective Date Debtor, including the Filing of any documents with the secretary of state for the state in which the Post-Effective Date Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtor in and withdraw the Post-Effective Date Debtor from applicable states.

I.      *Statutory Committee and Cessation of Fee and Expense Payment*

On the Effective Date, any statutory committee appointed in the Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to the Chapter 11 Cases, except for the Filing of applications for compensation.  The Post-Effective Date Debtor shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with any fees or expenses for services rendered prior to the Effective Date that are Allowed by the Bankruptcy Court.

J.      *Cancellation of Securities and Agreements*

On the Effective Date, except as otherwise specifically provided for in the Plan:  (1) the obligations of the Debtors under the Prepetition Loan Agreement Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Post-Effective Date Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or

23

other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged. Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

K.    *Corporate Action*

Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including: (1) selection of the Plan Administrator; (2) implementation of the Restructuring Transactions; (3) consummation of the Sale Transaction under the Asset Purchase Agreement; (4) funding of all applicable escrows and accounts; (5) entry into and consummation of the Non-Released Claims Trust Agreement; and (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date). All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Post-Effective Date Debtor, and any corporate action required by the Debtors or the Post-Effective Date Debtor in connection with the Plan or corporate structure of the Debtors or Post-Effective Date Debtor shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtor. Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtor. The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under non-bankruptcy law.

L.    *Effectuating Documents; Further Transactions*

On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

M.    *Section 1146 Exemption*

To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Post-Effective Date Debtor or to any other Person) of property under the Plan or pursuant to: (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Post-Effective Date Debtor; (2) the Restructuring Transactions; (3) any Sale Transaction; (4) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (5) the making, assignment, or recording of any lease or sublease; or (6) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code Filing or recording fee, regulatory Filing or recording fee, or other similar tax or governmental assessment, and upon entry of the Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, or governmental assessment. All Filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

24

N.    *Director and Officer Liability Insurance; Other Insurance*

On or before the Effective Date, the Debtors shall purchase (to the extent not already purchased) and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date , or such other directors, officers, managers, and employee liability coverage as the Debtors determine in their business judgment, on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement. Reasonable directors and officers insurance policies shall remain in place in the ordinary course during the Chapter 11 Cases and from and after the Effective Date.

Any directors and officers insurance policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any such policies shall remain available to all individuals within the definition of "Insured" in any such policies.

O.    *Preservation of Causes of Action*

Except as otherwise provided herein or in the Sale Order, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX hereof, each Debtor reserves and, as of the Effective Date, assigns to the Post-Effective Date Debtor, the Causes of Action (except for the Non-Released Claims Trust Causes of Action), which shall include those actions specifically enumerated in the Schedule of Retained Causes of Action. On and after the Effective Date, the Post-Effective Date Debtor and the Plan Administrator (following transfer of such Causes of Action to the Plan Administrator) may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (except for the Non-Released Claims Trust Causes of Action) of the Debtors on behalf of and for the benefit of the applicable beneficiaries, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Post-Effective Date Debtor's or the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX, which shall be deemed released and waived by the Debtors and the Post-Effective Date Debtor as of the Effective Date.

The Post-Effective Date Debtor or the Plan Administrator, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtor. **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Post-Effective Date Debtor, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it. The Debtors, the Post-Effective Date Debtor, or the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Causes of Action (except for any Non-Released Claims Trust Causes of Action) against any Entity, except as otherwise expressly provided in the Plan, includingArticle IXof the Plan.** Unless any Causes of Action of the Debtors (except for any Non-Released Claims Trust Causes of Action) against a Person or Entity are waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Post-Effective Date Debtor, or the Plan Administrator, as applicable, expressly reserve all Causes of Action (except for any Non-Released Claims Trust Causes of Action), for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

The Debtors, the Post-Effective Date Debtor, or the Plan Administrator, as applicable reserve and shall retain such Causes of Action of the Debtors (except for any Non-Released Claims Trust Causes of Action) notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during the Chapter 11 Cases or pursuant to the Plan. In accordance with section 1123(b)(3) of the Bankruptcy Code, (a) any Causes of Action that a Debtor may hold against any Person or Entity that is not a Non-Released Claims Trust Cause of Action shall vest in the Post-

25

Effective Date Debtor, except as otherwise expressly provided in the Plan, including Article III and Article VIII of the Plan and (b) any Non-Released Claims Trust Causes of Action that a Debtor may hold against any Person or Entity shall vest in the Non-Released Claims Trust.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Post-Effective Date Debtor, or the Plan Administrator, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, File, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

P.      *Section 1145 Exemption*

Pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of any Interests pursuant to the Plan is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.  As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, Interests issued pursuant to the Plan are not "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and are freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Post-Effective Date Debtor (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

Q.      *The Non-Released Claims Trust*

On the Effective Date, the Non-Released Claims Trust shall be established in accordance with Article VIII of this Plan and the Non-Released Claims Trust Agreement.

## ARTICLE V.
### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

A.      *Assumption and Rejection of Executory Contracts and Unexpired Leases*

On the Effective Date, except as otherwise provided herein, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is the Asset Purchase Agreement; or (6) is to be assumed by the Debtors and assigned to the Purchaser in connection with the Sale Transaction and pursuant to the Asset Purchase Agreement.

Entry of the Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor the Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to Purchaser pursuant to the Asset Purchase Agreement.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by the Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Post-Effective Date Debtor.  Each Executory Contract and Unexpired Lease assumed pursuant to this Article V.A of the Plan or by any order of the Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Post-Effective Date Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of the Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

26

Notwithstanding anything to the contrary in the Plan, the Debtors, the Post-Effective Date Debtor, and the Plan Administrator, as applicable, with the consent of the Purchaser and the Term Lender Group not to be unreasonably withheld, reserve the right to alter, amend, modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in this Article V of the Plan and in the Plan Supplement at any time through and including thirty (30) days after the Effective Date; *provided* that the foregoing extension shall not include leases with respect to real property.  The Debtors or the Post-Effective Date Debtor, as applicable, shall provide notice of any amendments to the Rejected Executory Contracts and Unexpired Leases Schedule or the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby.

B.      *Indemnification Obligations.*

Subject to the occurrence of the Effective Date, the obligations of the Debtors as of the Effective Date to indemnify, defend, reimburse, or limit the liability of the current and former directors, managers, officers, employees, attorneys, other professionals and agents of the Debtors, and such current and former directors', managers', and officers' respective Affiliates, respectively, against any Claims or Causes of Action under any indemnification provisions or applicable law, shall survive Confirmation, shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtor which shall be deemed to have assumed the obligation, and will remain in effect after the Effective Date if such indemnification, defense, reimbursement, or limitation is owed in connection with an event occurring before the Effective Date; provided that, notwithstanding anything herein to the contrary, the Post-Effective Date Debtor's obligation to fund such indemnification obligations shall be limited to the extent of coverage available under any insurance policy assumed by the Debtors and assigned to the Post-Effective Date Debtor, including any directors and officers insurance policies.

C.      *Claims Based on Rejection of Executory Contracts or Unexpired Leases*

Unless otherwise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or the Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including the Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date.  **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Post-Effective Date Debtor, the Estates, or their property without the need for any objection by the Post-Effective Date Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and discharged, notwithstanding anything in a Proof of Claim to the contrary, unless otherwise ordered by the Bankruptcy Court.**  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Post-Effective Date Debtor and the Holder of such Claim.

D.      *Cure of Defaults for Assumed Executory Contracts and Unexpired Leases*

Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan (it being understood that the assumption and assignment of the Executory Contracts or Unexpired Leases pursuant to the Asset Purchase Agreement shall be authorized and governed by the Sale Order, and, in the event of any inconsistency between this Plan and Sale Order concerning the assumption and assignment of such Executory Contracts or Unexpired Leases, the terms of the Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree.  In the event of a dispute regarding (1) the amount of any payments to cure such a default, (2) the ability of the Post-Effective Date Debtor or any assignee to provide "adequate

27

assurance of future performance"[2] (within the meaning of section 365 of the Bankruptcy Code) under the Executory Contract or Unexpired Lease to be assumed, or (3) any other matter pertaining to assumption, the cure payments required by section 365(b)(1) of the Bankruptcy Code shall be made following the entry of a Final Order or orders resolving the dispute and approving the assumption; *provided*, *however*, that in connection with a dispute regarding the amount of any cure payment, the Debtors (i) will pay the undisputed cure amounts, if any, on the Effective Date, and (ii) shall place an amount equal to the disputed portion of such cure amount, in Cash, in a segregated account specifically designated for holding such amounts pending resolution of the applicable cure dispute. Upon resolution of the applicable cure dispute, the Debtors or Post-Effective Date Debtor, as applicable, shall pay the remaining amount due to the applicable counterparty. At least ten (10) days prior to the Confirmation Hearing, the Debtors shall provide for notices of proposed assumption and proposed cure amounts to be sent to applicable third parties and for procedures for objecting thereto and resolution of disputes by the Bankruptcy Court.

Any objection by a lease or contract counterparty to proposed assumption of an Executory Contract or Unexpired Lease or the related cure amount (including as set forth in the Assumed Executory Contracts and Unexpired Leases Schedule) must be Filed, served, and actually received by the Debtors at least three (3) days prior to the Confirmation Hearing. The Debtors, Post-Effective Date Debtor, or Purchaser, as applicable, with the consent of the Term Lender Group not to be unreasonably withheld, may settle any cure amounts without any further notice to or action, order, or approval of the Bankruptcy Court. If an objection to a proposed assumption or related cure amount is not withdrawn or resolved, the cure amount shall be paid promptly in full following (a) an agreement between the Debtors, Post-Effective Date Debtor, or Purchaser, as applicable, and the objecting counterparty to the Executory Contract or Unexpired Lease or (b) the entry of a Final Order resolving the dispute and approving the assumption pursuant to a hearing not more than thirty (30) days after the Confirmation Date or such other date set by the Bankruptcy Court. Any counterparty to an Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption or cure amount will be deemed to have consented to such assumption or proposed cure amount. For the avoidance of doubt, to the extent an Executory Contract or Unexpired Lease proposed to be assumed is not listed as having a related cure cost, any counterparty to such Executory Contract or Unexpired Lease that fails to object timely to the proposed assumption will be deemed to have consented to such assumption and deemed to release any Claim or Cause of Action for any monetary defaults under such Executory Contract or Unexpired Lease.

Subject to payment of the cure, assumption of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall result in the full release and satisfaction of any Claims or defaults, whether monetary or nonmonetary (solely to the extent agreed between the Debtors and the counterparty to an applicable Executory Contract or Unexpired Lease), including defaults of provisions restricting the change in control or ownership interest composition or other bankruptcy-related defaults arising under any Assumed Executory Contract or Unexpired Lease at any time prior to the effective date of assumption. **Any Proofs of Claim Filed with respect to an Assumed Executory Contract or Unexpired Lease shall be deemed disallowed and expunged, without further notice to or action, order, or approval of the Bankruptcy Court.**

Notwithstanding anything to the contrary herein, upon assumption of an Unexpired Lease, the Debtors or Post-Effective Debtor, as applicable, shall be obligated to pay any accrued but unbilled amounts under the Unexpired Lease including, but not limited to, common area maintenance charges, taxes, year-end adjustments and indemnity obligations under the Unexpired Lease, regardless of when such amounts were incurred.

---

2    Evidence of adequate assurance may include: (i) the specific name of the proposed assignee/tenant, if not the prospective purchaser, and the proposed name under which the assignee intends to operate the store if not a current trade-name of the Debtors; (ii) the potential assignee's intended use for the space if different from the present retail operation; (iii) audited financial statements and annual reports for the proposed assignee for the past three (3) years, including all supplements or amendments thereto; (iv) cash flow projections for the proposed assignee, the proposed assignee's most recent business plan, all cash flow projections for the lease(s) subject to the assignment request, and any financial projections, calculations, and/or pro-formas prepared in contemplation of purchasing the lease(s); (v) all documents and other evidence of the potential assignee's retail experience and experience operating stores in a shopping center; and (vi) a contact person for the proposed assignee that landlords may directly contact in connection with the adequate assurance of future performance.

27393445.1

E.      *Preexisting Obligations to the Debtors Under Executory Contracts and Unexpired Leases*

Rejection of any Executory Contract or Unexpired Lease pursuant to the Plan or otherwise shall not constitute a termination of preexisting obligations owed to the Debtors or the Post-Effective Date Debtor, as applicable, under such Executory Contracts or Unexpired Leases.  In particular, notwithstanding any non-bankruptcy law to the contrary, the Post-Effective Date Debtor expressly reserves and does not waive any right to receive, or any continuing obligation of a counterparty to provide, warranties or continued maintenance obligations with respect to goods previously purchased by the Debtors pursuant to rejected Executory Contracts or Unexpired Leases.

F.      *Insurance Policies*

Each of the Debtors' insurance policies and any agreements, documents, or instruments relating thereto, are treated as Executory Contracts under the Plan.  Unless otherwise provided in the Plan, on the Effective Date, (a) the Debtors shall be deemed to have assumed all insurance policies and any agreements, documents, and instruments relating to coverage of all insured Claims and (b) such insurance policies and any agreements, documents, or instruments relating thereto shall revest in the Post-Effective Date Debtor.

G.      *Modifications, Amendments, Supplements, Restatements, or Other Agreements*

Unless otherwise provided in the Plan, each Executory Contract or Unexpired Lease that is assumed shall include all modifications, amendments, supplements, restatements, or other agreements that in any manner affect such Executory Contract or Unexpired Lease, and Executory Contracts and Unexpired Leases related thereto, if any, including easements, licenses, permits, rights, privileges, immunities, options, rights of first refusal and any other interests, unless any of the foregoing agreements has been previously rejected or repudiated or is rejected or repudiated under the Plan.

Modifications, amendments, supplements, and restatements to prepetition Executory Contracts and Unexpired Leases that have been executed by the Debtors during the Chapter 11 Cases shall not be deemed to alter the prepetition nature of the Executory Contract or Unexpired Lease, or the validity, priority, or amount of any Claims that may arise in connection therewith.

H.      *Reservation of Rights*

Neither the exclusion nor inclusion of any Executory Contract or Unexpired Lease on the Rejected Executory Contracts and Unexpired Leases Schedule or the Assumed Executory Contracts and Unexpired Leases Schedule, nor anything contained in the Plan, shall constitute an admission by the Debtors that any such contract or lease is in fact an Executory Contract or Unexpired Lease or that the Post-Effective Date Debtor has any liability thereunder.  If there is a dispute regarding whether a contract or lease is or was executory or unexpired at the time of assumption or rejection, the Debtors or the Post-Effective Date Debtor, as applicable, shall have thirty (30) days following entry of a Final Order resolving such dispute to alter their treatment of such contract or lease under the Plan.

I.      *Nonoccurrence of Effective Date*

In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting Unexpired Leases pursuant to section 365(d)(4) of the Bankruptcy Code.

## ARTICLE VI.
## PROVISIONS GOVERNING DISTRIBUTIONS

A.      *Timing and Calculation of Amounts to Be Distributed*

Unless otherwise provided in the Plan, on the Effective Date (or if a Claim or Interest is not an Allowed Claim or Allowed Interest on the Effective Date, on the date that such Claim or Interest becomes an Allowed Claim

27393445.1

or Allowed Interest, or as soon as reasonably practicable thereafter), or as soon as is reasonably practicable thereafter, each Holder of an Allowed Claim or Allowed Interests (as applicable) shall receive the full amount of the distributions that the Plan provides for Allowed Claims or Allowed Interests (as applicable) in the applicable Class.

With respect to Holders of Allowed General Unsecured Claims, each such Holder shall receive its Pro Rata share of Non-Released Claims Trust Interests on the Effective Date.

In the event that any payment or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or the performance of such act may be completed on the next succeeding Business Day, but shall be deemed to have been completed as of the required date. If and to the extent that there are Disputed Claims or Disputed Interests, distributions on account of any such Disputed Claims or Disputed Interests shall be made pursuant to the provisions set forth in Article VII hereof. Except as otherwise provided in the Plan, Holders of Claims or Interests shall not be entitled to interest, dividends, or accruals on the distributions provided for in the Plan, regardless of whether such distributions are delivered on or at any time after the Effective Date.

B.      *Disbursing Agent*

Distributions under the Plan (except for distributions made with respect to the Allowed General Unsecured Claims) shall be made by the Disbursing Agent. The Disbursing Agent shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court. Additionally, in the event that the Disbursing Agent is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Post-Effective Date Debtor. For the avoidance of doubt, distributions under the Plan made by the Non-Released Claims Trustee with respect to the Allowed General Unsecured Claims shall be governed by Article VIII.C.2 hereof.

C.      *Rights and Powers of Disbursing Agent*

1.      Powers of the Disbursing Agent

The Disbursing Agent shall be empowered to: (a) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan; (b) make all distributions contemplated hereby; (c) employ professionals to represent it with respect to its responsibilities; and (d) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof.

2.      Expenses Incurred On or After the Effective Date

Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Disbursing Agent on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Disbursing Agent shall be paid in Cash by the Post-Effective Date Debtor.

D.      *Delivery of Distributions and Undeliverable or Unclaimed Distributions*

1.      Record Date for Distribution.

On the Distribution Record Date, the Claims Register shall be closed and any party responsible for making distributions shall instead be authorized and entitled to recognize only those record Holders listed on the Claims Register as of the close of business on the Distribution Record Date. If a Claim, other than one based on a publicly traded Security is transferred twenty (20) or fewer days before the Distribution Record Date, distributions shall be made to the transferee only to the extent practical and, in any event, only if the relevant transfer form contains an unconditional and explicit certification and waiver of any objection to the transfer by the transferor.

2.    Delivery of Distributions

Except as otherwise provided herein, the Disbursing Agent or the Non-Released Claims Trustee, as applicable, shall make distributions to Holders of Allowed Claims and Allowed Interests (as applicable) as of the Distribution Record Date at the address for each such Holder as indicated on the Debtors' records as of the date of any such distribution; *provided* that the manner of such distributions shall be determined at the discretion of the Disbursing Agent or the Non-Released Claims Trustee, as applicable; *provided further*, that the address for each Holder of an Allowed Claim shall be deemed to be the address set forth in any Proof of Claim Filed by that Holder. Distributions to Holders of Allowed Prepetition Loan Claims shall be consistent with the DIP Order and the Prepetition Loan Agreement Documents.

3.    Minimum Distributions

Notwithstanding any other provision of the Plan, the Disbursing Agent and the Non-Released Claims Trustee will not be required to make distributions of Cash less than $100 in value, and each such Claim to which this limitation applies shall be discharged pursuant to Article IX and its Holder is forever barred pursuant to Article IX from asserting that Claim against the Debtors, the Non-Released Claims Trust, or their respective property.

4.    Undeliverable Distributions and Unclaimed Property

In the event that any distribution to any Holder of an Allowed Claim or Allowed Interests (as applicable) is returned as undeliverable, no distribution to such Holder shall be made unless and until the Disbursing Agent or Non-Released Claims Trustee, as applicable, has determined the then-current address of such Holder, at which time such distribution shall be made to such Holder without interest; *provided* that such distributions shall be deemed unclaimed property under section 347(b) of the Bankruptcy Code at the expiration of one year 120 days from the Effective Date. After such date, all unclaimed property or interests in property shall revert to the Post-Effective Date Debtor or Non-Released Claims Trust, as applicable, automatically and without need for a further order by the Bankruptcy Court (notwithstanding any applicable federal, provincial, or state escheat, abandoned, or unclaimed property laws to the contrary), and the Claim of any Holder of Claims and Interests to such property or Interest in property shall be discharged and forever barred.

E.    *Compliance with Tax Requirements*

In connection with the Plan, to the extent applicable, the Debtors, the Post-Effective Date Debtor, and the Non-Released Claims Trust, as applicable, shall comply with all tax withholding and reporting requirements imposed on them by any Governmental Unit, and all distributions pursuant to the Plan shall be subject to such withholding and reporting requirements. Notwithstanding any provision in the Plan to the contrary, the Disbursing Agent and the Non-Released Claims Trustee shall each be authorized to take all actions necessary or appropriate to comply with such withholding and reporting requirements, including liquidating a portion of the distribution to be made under the Plan to generate sufficient funds to pay applicable withholding taxes, withholding distributions pending receipt of information necessary to facilitate such distributions, or establishing any other mechanisms they believe are reasonable and appropriate. The Debtors, Post-Effective Date Debtor, and the Non-Released Claims Trustee, as applicable, reserve the right to allocate all distributions made under the Plan in compliance with applicable wage garnishments, alimony, child support, and other spousal awards, Liens, and encumbrances.

F.    *Allocations*

Distributions in respect of Allowed Claims shall be allocated first to the principal amount of such Claims (as determined for federal income tax purposes) and then, to the extent the consideration exceeds the principal amount of the Claims, to the remainder of the Claims, including any Claims for accrued but unpaid interest.

G.      *No Postpetition or Default Interest on Claims*

Unless otherwise specifically provided for in the Plan, the Confirmation Order or the DIP Order, or required by applicable bankruptcy and non-bankruptcy law, (a) postpetition and/or default interest shall not accrue or be paid on any Claims, and (b) no Holder of a Claim shall be entitled to (i) interest accruing on or after the Petition Date on any such Claim or (ii) interest at the contract default rate, as applicable.

H.      *Setoffs and Recoupment*

Except as expressly provided in this Plan and the DIP Order, the Post-Effective Date Debtor may, pursuant to section 553 of the Bankruptcy Code, setoff and/or recoup against any Plan distributions to be made on account of any Allowed Claim, any and all claims, rights, and Causes of Action that the Post-Effective Date Debtor may hold against the Holder of such Allowed Claim to the extent such setoff or recoupment is either (1) agreed in amount among the Post-Effective Date Debtor and the Holder of the Allowed Claim or (2) otherwise adjudicated by the Bankruptcy Court or another court of competent jurisdiction; *provided*, that neither the failure to effectuate a setoff or recoupment nor the allowance of any Claim hereunder shall constitute a waiver or release by the Post-Effective Date Debtor or its successor of any and all claims, rights, and Causes of Action that the Post-Effective Date Debtor or its successor may possess against the applicable Holder.  In no event shall any Holder of a Claim to recoup such Claim against any claim, right, or Cause of Action of the Debtors or the Post-Effective Date Debtor, as applicable, unless such Holder actually has performed such recoupment and provided notice thereof in writing to the Debtors in accordance with Article XIII.G of the Plan on or before the Effective Date, notwithstanding any indication in any Proof of Claim or otherwise that such Holder asserts, has, or intends to preserve any right of recoupment.  Notwithstanding anything to the contrary herein, in no event shall any Holder of a Claim be entitled to setoff any such Claim against Purchaser following consummation of the Sale Transaction except as provided for in the Asset Purchase Agreement.

I.      *No Double Payment of Claims.*

To the extent that a Claim is Allowed against more than one Debtor's Estate, there shall be only a single recovery on account of that Allowed Claim, but the Holder of an Allowed Claim against more than one Debtor may recover distributions from all co-obligor Debtors' Estates until the Holder has received payment in full on the Allowed Claims.  No Holder of an Allowed Claim shall be entitled to receive more than payment in full of its Allowed Claim, and each Claim shall be administered and treated in the manner provided by the Plan only until payment in full on that Allowed Claim.

J.      *Claims Paid or Payable by Third Parties*

1.      <u>Claims Paid by Third Parties</u>

The Debtors or the Post-Effective Date Debtor, as applicable, shall reduce in full a Claim, and such Claim shall be disallowed without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court, to the extent that the Holder of such Claim receives payment in full on account of such Claim from a party that is not a Debtor or the Post-Effective Date Debtor.  Subject to the last sentence of this paragraph, to the extent a Holder of a Claim receives a distribution on account of such Claim and receives payment from a party that is not a Debtor or the Post-Effective Date Debtor on account of such Claim, such Holder shall, within fourteen (14) days of receipt thereof, repay or return the distribution to the applicable Debtor or the Post-Effective Date Debtor, to the extent the Holder's total recovery on account of such Claim from the third party and under the Plan exceeds the amount of such Claim as of the date of any such distribution under the Plan.  The failure of such Holder to timely repay or return such distribution shall result in the Holder owing the applicable Debtor or the Post-Effective Date Debtor annualized interest at the Federal Judgment Rate on such amount owed for each Business Day after the fourteen (14) day grace period specified above until the amount is repaid.

32

2.        Claims Payable by Third Parties

No distributions under the Plan shall be made on account of an Allowed Claim that is payable pursuant to one of the Debtors' insurance policies until the Holder of such Allowed Claim has exhausted all remedies with respect to such insurance policy.  To the extent that one or more of the Debtors' insurers agrees to satisfy in full or in part a Claim (if and to the extent adjudicated by a court of competent jurisdiction), then immediately upon such insurers' agreement, the applicable portion of such Claim may be expunged without a Claims objection having to be Filed and without any further notice to or action, order, or approval of the Bankruptcy Court.

3.        Applicability of Insurance Policies

Except as otherwise provided in the Plan, distributions to Holders of Allowed Claims shall be in accordance with the provisions of any applicable insurance policy.  Nothing contained in the Plan shall constitute or be deemed a waiver of any Cause of Action that the Debtors or any Entity may hold against any other Entity, including insurers under any policies of insurance, nor shall anything contained herein constitute or be deemed a waiver by such insurers of any defenses, including coverage defenses, held by such insurers.

# ARTICLE VII.
# PROCEDURES FOR RESOLVING CONTINGENT,
# UNLIQUIDATED AND DISPUTED CLAIMS

A.        *Allowance of Claims*

After the Effective Date, the Post-Effective Date Debtor, the Plan Administrator, or the Non-Released Claims Trustee as applicable, shall have and retain any and all rights and defenses such Debtor had with respect to any Claim or Interest immediately before the Effective Date.  The Debtors may affirmatively determine to deem Unimpaired Claims Allowed to the same extent such Claims would be allowed under applicable non-bankruptcy law.

B.        *Claims Administration Responsibilities*

Except as otherwise specifically provided in the Plan, after the Effective Date, other than with respect to General Unsecured Claims, the Plan Administrator shall have the sole authority:  (1) to File, withdraw, or litigate judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Post-Effective Date Debtor shall have and retain any and all rights and defenses such Debtor had immediately prior to the Effective Date with respect to any Disputed Claim or Interest, including the Causes of Action retained pursuant to Article IV.O of the Plan.

With respect to Allowed General Unsecured Claims, the Non-Released Claims Trustee shall have the sole authority: (1) to File, withdraw, or litigate judgment objections to Claims or Interests; (2) to settle or compromise any Disputed Claim without any further notice to or action, order, or approval by the Bankruptcy Court; and (3) to administer and adjust the Claims Register to reflect any such settlements or compromises without any further notice to or action, order, or approval by the Bankruptcy Court.  For the avoidance of doubt, except as otherwise provided herein, from and after the Effective Date, the Non-Released Claims Trust shall have and retain any and all rights and defenses the applicable Debtor had immediately prior to the Effective Date with respect to any Disputed General Unsecured Claim.

C.        *Estimation of Claims*

Before, on, or after the Effective Date, the Debtors, the Non-Released Claims Trustee, or the Plan Administrator, as applicable, may (but are not required to) at any time request that the Bankruptcy Court estimate any Claim pursuant to applicable law, including, without limitation pursuant to section 502(c) of the Bankruptcy Code for

33

any reason, regardless of whether any party previously has objected to such Claim or Interest or whether the Bankruptcy Court has ruled on any such objection, and the Bankruptcy Court shall retain jurisdiction under 28 U.S.C. §§ 157 and 1334 to estimate any such Claim or Interest, including during the litigation of any objection to any Claim or Interest or during the pendency of any appeal relating to such objection. Notwithstanding any provision to the contrary in the Plan, a Claim that has been expunged from the Claims Register, but that either is subject to appeal or has not been the subject of a Final Order, shall be deemed to be estimated at zero dollars, unless otherwise ordered by the Court. In the event that the Bankruptcy Court estimates any Claim or Interest, such estimated amount shall constitute a maximum limitation on such Claim or Interest for all purposes under the Plan (including for purposes of distributions and discharge) and may be used as evidence in any supplemental proceedings, and the Post-Effective Date Debtor may elect to pursue any supplemental proceedings to object to any ultimate distribution on such Claim or Interest.

D.     *Adjustment to Claims or Interests Without Objection*

Any Claim or Interest that has been paid or satisfied, or any Claim or Interest that has been amended or superseded, cancelled or otherwise expunged (including pursuant to the Plan), may be adjusted or expunged (including on the Claims Register, to the extent applicable) by the Post-Effective Date Debtor or, with respect to General Unsecured Claims, the Non-Released Claims Trustee, after notice to the Holder of such Claim, but without any further notice to or action, order or approval of the Bankruptcy Court.

E.     *Time to File Objections to Claims*

Any objections to Claims shall be Filed on or before the later of (1) one-hundred eighty (180) days after the Effective Date and (2) such other period of limitation as may be specifically fixed by the Debtors, the Post-Effective Date Debtor, or, with respect to General Unsecured Claims, the Non-Released Claims Trustee, as applicable, by motion, providing notice and an opportunity to object, or by a Final Order of the Bankruptcy Court, subject to a notice and objection period, for objecting to such Claims. For the avoidance of doubt, Administrative Claims are subject to the Administrative Claim Objection Bar Date and the period of limitation set herein shall not apply to Administrative Claims.

F.     *Disallowance of Claims or Interests*

Any Claims or Interests held by Entities from which property is recoverable under section 542, 543, 550, or 553 of the Bankruptcy Code, or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of the Bankruptcy Code, shall be deemed disallowed pursuant to section 502(d) of the Bankruptcy Code, and Holders of such Claims or Interests may not receive any distributions on account of such Claims until such time as such Causes of Action against that Entity have been settled or a Bankruptcy Court order with respect thereto has been entered and all sums due, if any, to the Debtors by that Entity have been turned over or paid to the Post-Effective Date Debtor. All Claims Filed on account of an indemnification obligation to a director, officer, or employee shall be deemed satisfied and expunged from the Claims Register as of the Effective Date to the extent such indemnification obligation is assumed (or honored or reaffirmed, as the case may be) pursuant to the Plan after notice to the Holder of such Claim, but without any further notice to or action, order, or approval of the Bankruptcy Court.

**Except as otherwise provided herein, as agreed to by the Post-Effective Date Debtor (or, with respect to General Unsecured Claims, the Non-Released Claims Trustee) or as ordered otherwise by the Bankruptcy Court, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Proof of Claim has been deemed timely Filed by a Final Order.**

G.     *Amendments to Proofs of Claims or Interests*

On or after the applicable bar date, a Proof of Claim or Interest may not be Filed or amended without the prior authorization of the Bankruptcy Court, the Post-Effective Date Debtor, or, with respect to General Unsecured

34

Claims, the Non-Released Claims Trustee.  Absent such authorization, any new or amended Claim or Interest Filed shall be deemed disallowed in full and expunged without any further action.

H.      *No Distributions Pending Allowance*

Notwithstanding any other provision of the Plan, if any portion of a Claim or Interest is a Disputed Claim or Interest, as applicable, no payment or distribution provided under the Plan shall be made on account of such Claim or Interest unless and until such Disputed Claim or Interest becomes an Allowed Claim or Interest.

I.      *Distributions After Allowance*

To the extent that a Disputed Claim or Interest ultimately becomes an Allowed Claim or Allowed Interest, distributions (if any) shall be made to the Holder of such Allowed Claim or Allowed Interest (as applicable) in accordance with the provisions of the Plan.  As soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court allowing any Disputed Claim or Disputed Interest becomes a Final Order, the Disbursing Agent shall provide to the Holder of such Claim or Interest the distribution (if any) to which such Holder is entitled under the Plan as of the Effective Date, without any interest, dividends, or accruals to be paid on account of such Claim or Interest unless required under applicable bankruptcy law.

**ARTICLE VIII.**
**THE NON-RELEASED CLAIMS TRUST**

A.      *Creation of the Non-Released Claims Trust*

On the Effective Date, the Post-Effective Date Debtor (solely in their capacity as successors to Debtors) and the Non-Released Claims Trustee shall execute the Non-Released Claims Trust Agreement and shall take all steps necessary to establish the Non-Released Claims Trust in accordance with the Plan, which shall be for the benefit of the Non-Released Claims Trust Beneficiaries.  The Non-Released Claims Trust shall be governed by the Non-Released Claims Trust Agreement and administered by the Non-Released Claims Trustee. The powers, rights, responsibilities, and compensation of the Non-Released Claims Trustee shall be specified in the Non-Released Claims Trust Agreement. The Non-Released Claims Trustee shall hold and distribute the Non-Released Claims Trust Assets in accordance with the Plan and the Non-Released Claims Trust Agreement.

B.      *Transfer of Non-Released Claims Trust Assets to the Non-Released Claims Trust*

1.      Transfer Free and Clear

On the Effective Date the Debtors and Post-Effective Date Debtor shall transfer and/or assign and shall be deemed to transfer and/or assign to the Non-Released Claims Trust all of their rights, title and interest in and to all of the Non-Released Claims Trust Assets, and in accordance with section 1141 of the Bankruptcy Code, the Non-Released Claims Trust Assets shall automatically vest in the Non-Released Claims Trust free and clear of all Claims and Liens, subject only to the Non-Released Claims Trust Interests.  For the avoidance of doubt, the Non-Released Claims Trust shall retain all defenses, Claims, counterclaims, and rights of setoff or recoupment.

2.      Non-Released Claims Trust Funding Amount

The Initial Non-Released Claims Trust Cash Amount shall be funded by the Debtors or the Post-Effective Date Debtor on or before the Effective Date.  Any Available Cash or Excess Distributable Cash payable to the Non-Released Claims Trust in accordance with Article IV.C of this Plan shall be paid to the Non-Released Claims Trust by the Post-Effective Date Debtor promptly after the full payment of all Allowed Class 4 Prepetition Loan Claims.

The Non-Released Claims Trust Funding Amount shall be used solely to fund the administration of the Non-Released Claims Trust and to fund distributions to the Non-Released Claims Trust Beneficiaries consistent with the Non-Released Claims Trust Proceeds Waterfall.  Other than with respect to the Non-Released Claims Trust Funding

35

Amount, no party, including without limitation the Debtors, the Post-Effective Date Debtor, the DIP Lenders, the Prepetition Lenders, and the Purchaser shall have any responsibility to fund the Non-Released Claims Trust unless otherwise agreed to.

3.    Certain Tax Consequences

Subject to definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Non-Released Claims Trust is intended to be treated as a "liquidating trust" for U.S. federal income tax purposes pursuant to Treasury Regulation section 301.7701-4(d), and the Non-Released Claims Trustee will take this position on the Non-Released Claims Trust's tax return accordingly. The Non-Released Claims Trust Beneficiaries shall be treated as the grantors of the Non-Released Claims Trust and as the deemed owners of the Non-Released Claims Trust Assets. For U.S. federal income tax purposes, the transfer of assets to the Non-Released Claims Trust will be deemed to occur as (a) a first-step transfer of the Non-Released Claims Trust Assets to the Non-Released Claims Trust Beneficiaries and, to the extent the Non-Released Claims Trust Assets are allocable to Disputed General Unsecured Claims, to the General Unsecured Claims Disputed Claims Reserve described in the subsequent paragraph, and (b) a second-step transfer by such Non-Released Claims Trust Beneficiaries and, to the extent relevant with respect to the General Unsecured Claims Disputed Claims Reserve, to the Non-Released Claims Trust. As a result, the transfer of the Non-Released Claims Trust Assets to the Non-Released Claims Trust should be a taxable transaction, and the Debtors should recognize gain or loss equal to the difference between the tax basis and fair value of such assets. As soon as possible after the transfer of the Non-Released Claims Trust Assets to the Non-Released Claims Trust, the Non-Released Claims Trustee shall make a good faith valuation of the Non-Released Claims Trust Assets. This valuation will be made available from time to time, as relevant for tax reporting purposes. Each of the Debtors, Non-Released Claims Trustee, and the Non-Released Claims Trust Beneficiaries shall take consistent positions with respect to the valuation of the Non-Released Claims Trust Assets, and such valuations shall be utilized for all U.S. federal income tax purposes. The Non-Released Claims Trust shall in no event be dissolved later than five (5) years from the creation of such Non-Released Claims Trust unless the Bankruptcy Court, upon motion within the 6-month period prior to the fifth anniversary (or within the 6-month period prior to the end of an extension period), determines that a fixed period extension (not to exceed five (5) years with a private letter ruling from the IRS or an opinion of counsel satisfactory to the Non-Released Claims Trustee that any further extension would not adversely affect the status of the trust as a liquidating trust for United States federal income tax purposes) is necessary to facilitate or complete the recovery and liquidation of the Non-Released Claims Trust Assets.

With respect to amounts, if any, in a reserve for Disputed General Unsecured Claims, ~~it is expected that~~ the Non-Released Claims Trustee may elect to treat such account ~~will be treated~~ as a "disputed ownership fund" governed by Treasury Regulation Section 1.468B-9, that any appropriate elections with respect thereto shall be made, and that such treatment will also be applied to the extent possible for state and local tax purposes. Under such treatment, a separate federal income tax return shall be filed with the IRS for such disputed claims reserve and will be subject to tax annually on a separate entity basis. Any taxes (including with respect to interest, if any, earned in the account, or any recovery on the portion of assets allocable to such account in excess of the disputed claims reserve's basis in such assets) imposed on such account shall be paid out of the assets of the respective account (and reductions shall be made to amounts disbursed from the account to account for the need to pay such taxes). Non-Released Claims Trust Beneficiaries will be bound by such election, if made by the Non-Released Claims Trustee, and, as such, will, for U.S. federal income tax purposes (and, to the extent permitted by law, for state and local income tax purposes), report consistently therewith.

C.    *Administration of the Non-Released Claims Trust*

1.    In General

The Non-Released Claims Trust shall be administered by the Non-Released Claims Trustee pursuant to the Non-Released Claims Trust Agreement.  In the event of any inconsistency solely between this Article VIII.C of the Plan and the Non-Released Claims Trust Agreement, the Non-Released Claims Trust Agreement shall control, with the Plan controlling in all other cases.  All compensation for the Non-Released Claims Trustee and other costs of administration for the Non-Released Claims Trust shall be paid by the Non-Released Claims Trust in accordance with

36

this Plan and the Non-Released Claims Trust Agreement.  The Non-Released Claims Trust Agreement generally will provide for, among other things: (a) the payment of the expenses of the Non-Released Claims Trust, including the cost of pursuing the Non-Released Claims Trust Causes of Action; (b) the retention of counsel, accountants, financial advisors, or other professionals and the payment of their reasonable compensation; (c) the investment of Cash by the Non-Released Claims Trustee on such terms specified in Article VIII.C.4 herein; (d) the orderly liquidation of the Non-Released Claims Trust Assets; and (e) litigation of any Non-Released Claims Trust Causes of Action, which may include the prosecution, settlement, abandonment, or dismissal of any such Non-Released Claims Trust Causes of Action; *provided*, *however*, that the Non-Released Claims Trust and Non-Released Claims Trustee shall only be permitted to recover on account of any Non-Released Claims Trust Causes of Action to the extent of available insurance coverage pursuant to the terms specified in Article VIII.C.3.

2.    Powers and Duties of Non-Released Claims Trustee

In furtherance of and consistent with the purpose of the Non-Released Claims Trust and the Plan, and subject to the terms of the Non-Released Claims Trust Agreement, the Non-Released Claims Trustee, for the benefit of the Non-Released Claims Trust, shall (a) hold the Non-Released Claims Trust Assets for the benefit of the Non-Released Claims Trust Beneficiaries, (b) make distributions of proceeds of the Non-Released Claims Trust Assets as provided in the Non-Released Claims Trust Agreement, (c) have the power and authority to prosecute and resolve any Non-Released Claims Trust Causes of Action solely to the extent of available insurance coverage pursuant to the terms specified in Article VIII.C.3, (d)  take all actions and execute all agreements, instruments, and other documents necessary to perform its respective duties under the Plan and the Non-Released Claims Trust Agreement, and (e) otherwise exercise such other powers as may be vested in the Non-Released Claims Trustee in accordance with the Plan and pursuant to the Non-Released Claims Trustee, or as may be deemed by the Non-Released Claims Trustee to be necessary and proper to implement the provisions of the Plan and the Non-Released Claims Trust Agreement. The Non-Released Claims Trustee shall be responsible for all decisions and duties with respect to the Non-Released Claims Trust and the Non-Released Claims Trust Assets, except as otherwise provided in the Non-Released Claims Trust Agreement.  In all circumstances, the Non-Released Claims Trustee shall act in the best interests of the Non-Released Claims Trust Beneficiaries.

Subject to the provisions of the Non-Released Claims Trust Agreement, the Non-Released Claims Trustee may settle, compromise, abandon, or withdraw any Non-Released Claims Trust Cause of Action on any grounds or terms it deems reasonable, without further order of the Bankruptcy Court.  The Non-Released Claims Trustee may also settle or compromise any Disputed General Unsecured Claim, or withdraw any objection thereto, on any grounds or terms he or she deems reasonable, without further order of the Bankruptcy Court, but subject to the terms of the Non-Released Claims Trust Agreement.

The Non-Released Claims Trustee, on behalf of the Non-Released Claims Trust, may employ, without further order of the Bankruptcy Court, professionals to assist in carrying out its duties and responsibilities with respect to the Plan and the Non-Released Claims Trust Agreement and may compensate and reimburse the reasonable expenses of those professionals without further order of the Bankruptcy Court from the Non-Released Claims Trust Assets in accordance with the Plan and the Non-Released Claims Trust Agreement.  Except as otherwise ordered by the Bankruptcy Court, the amount of any reasonable fees and out-of-pocket expenses incurred by the Non-Released Claims Trustee on or after the Effective Date (including taxes) and any reasonable compensation and out-of-pocket expense reimbursement claims (including reasonable attorney fees and expenses) made by the Non-Released Claims Trustee shall be paid in Cash by the Non-Released Claims Trust.

Distributions made with respect to the Allowed General Unsecured Claims shall be made by the Non-Released Claims Trustee.  The Non-Released Claims Trustee shall not be required to give any bond or surety or other security for the performance of its duties unless otherwise ordered by the Bankruptcy Court.  Additionally, in the event that the Non-Released Claims Trustee is so otherwise ordered, all costs and expenses of procuring any such bond or surety shall be borne by the Non-Released Claims Trust.

27393445.1

3.        Claims Against Debtors' Directors, Officers, or Managers

To the extent that any Non-Released Claims Trust Causes of Action held by the Debtors and their respective Estates or creditors are against the Debtors' directors, officers, or managers (except any of the Independent Directors or any of the Chief Restructuring Officers) in their respective capacities as such (such claims the "D&O Claims" and each such party in its capacity as such, a "D&O Party"), such D&O Claims are preserved and shall be transferred and/or assigned to the Non-Released Claims Trust, provided that: (i) any recovery by the Non-Released Claims Trust (and the beneficiaries thereof) on account of any D&O Claim, including in each case by way of settlement or judgment, shall be satisfied solely by and to the extent of the proceeds of the Debtors' available D&O liability insurance policies, including any tail policies (the "D&O Insurance Policies"), after payment from such D&O Insurance Policies of any and all covered costs and expenses incurred by any of the D&O Parties in connection with the defense of the D&O Claims; (ii) any party, including any trustee or any beneficiary of the Non-Released Claims Trust, seeking to execute, garnish, or otherwise attempt to collect on any settlement of or judgment in the D&O Claims shall do so solely upon available insurance coverage; and (iii) no party shall (a) record any judgment against any D&O Party, or (b) otherwise attempt to collect, directly or indirectly, from the personal assets of any D&O Party.

Only upon the occurrence of the earlier of (i) a release being given as part of any later settlement of the D&O Claims; (ii) final resolution of any coverage claims asserted against the Debtors' available D&O Insurance Policies on account of the D&O Claims; (iii) exhaustion of the available insurance coverage under the D&O Insurance Policies; or (iv) the dissolution or winding-up of the Non-Released Claims Trust, the D&O Claims shall be released and discharged without the need for further action or Bankruptcy Court order.

4.        Non-Released Claims Trust Expense Fund

The Non-Released Claims Trustee shall maintain a reserve, solely from the Initial Non-Released Claims Trust Cash Amount, in an initial funding amount not to exceed $500,000 in the aggregate (the "Non-Released Claims Trust Expense Fund"), as is reasonably necessary to pay the costs and expenses incurred or expected to be incurred by the Non-Released Claims Trust and Non-Released Claims Trustee in connection with administering the Non-Released Claims Trust Assets and performing the duties set forth in the Plan and the Non-Released Claims Trust Agreement, including, without limitation, paying the fees and expenses of the Non-Released Claims Trustee, and attorneys, advisors, and professionals retained by the Non-Released Claims Trust and/or Non-Released Claims Trustee (the "Non-Released Claims Trust Expenses"); *provided* that the initial funding amount of the Non-Released Claims Trust Expense Fund may be increased solely from Non-Released Claims Trust Assets at the discretion of the Non-Released Claims Trustee.

The Non-Released Claims Trust may borrow money or raise capital on such terms as determined by the Non-Released Claims Trustee to fund the Non-Released Claims Trust Expense Fund. Except for purposes of funding the Non-Released Claims Trust Expense Fund, the Non-Released Claims Trust shall not incur any debt.

5.        General Unsecured Claims Disputed Claims Reserve

The Non-Released Claims Trustee may establish, for the benefit of each holder of a Disputed General Unsecured Claim, solely from the Non-Released Claims Trust Assets, a reserve (the "General Unsecured Claims Disputed Claims Reserve") consisting of Cash in an amount equal to the Pro Rata share of distributions that would have been made to the holder of such Disputed General Unsecured Claim if it were an Allowed General Unsecured Claim in an amount equal to the lesser of (i) the liquidated amount set forth in the filed Proof of Claim relating to such Disputed General Unsecured Claim or if no Proof of Claim has been filed the liquidated amount set forth in the Schedules, (ii) the amount in which the Disputed General Unsecured Claim has been estimated by the Bankruptcy Court pursuant to section 502 of the Bankruptcy Code as constituting and representing the maximum amount in which such Claim may ultimately become an Allowed General Unsecured Claim, or (iii) such other amount as may be agreed upon by the holder of such Disputed General Unsecured Claim and the Non-Released Claims Trustee. Amounts held in the General Unsecured Claims Disputed Claims Reserve shall be retained by the Non-Released Claims Trustee for the benefit of holders of Disputed General Unsecured Claims pending determination of their entitlement thereto under the terms of the Plan. No payments or distributions shall be made with respect to all or any portion of any Disputed

38

General Unsecured Claim pending the entire resolution thereof by Final Order or agreement between the Non-Released Claims Trustee and the Holder of the applicable Disputed General Unsecured Claim.

At such time as a Disputed General Unsecured Claim becomes an Allowed General Unsecured Claim, the Non-Released Claims Trustee shall distribute to the holder thereof the distributions, if any, to which such holder is then entitled under the Plan or Non-Released Claims Trust Agreement. Such distribution, if any, shall be made as soon as reasonably practicable after the date that the order or judgment of the Bankruptcy Court Allowing such Disputed General Unsecured Claim becomes a Final Order or the effective date of the relevant agreement between the Non-Released Claims Trustee and the Holder of the applicable Disputed General Unsecured Claim.

If a Disputed General Unsecured Claim is Disallowed, in whole or in part, the Non-Released Claims Trustee shall distribute amounts held in the General Unsecured Claims Disputed Claims Reserve with respect to such Claim (or, if Disallowed in part, the amounts held in the General Unsecured Claims Disputed Claims Reserve with respect to the Disallowed portion of such Claim) in accordance with the Non-Released Claims Trust Proceeds Waterfall.

6.     Non-Released Claims Trust Proceeds Waterfall

Any proceeds of the Non-Released Claims Trust Assets, including proceeds recovered from the successful prosecution or settlement of any Non-Released Claims Trust Causes of Action shall be distributed as follows (the "Non-Released Claims Trust Proceeds Waterfall"): (a) first, to the extent the Non-Released Claims Trust Funding Amount is insufficient to pay in full all accrued and unpaid Non-Released Claims Trust Expenses, to pay such Non-Released Claims Trust Expenses; and (b) second, after the amounts in clause (a) are fully satisfied, to fund pro rata distributions to the Non-Released Claims Trust Beneficiaries in accordance with their Non-Released Claims Trust Interests.

## ARTICLE IX.
## SETTLEMENT, RELEASE, INJUNCTION, AND RELATED PROVISIONS

A.     *Final Satisfaction of Claims and Termination of Interests*

To the maximum extent provided by section 1141(d) of the Bankruptcy Code, and except as otherwise specifically provided in the Plan or in any contract, instrument, or other agreement or document created pursuant to the Plan, the distributions, rights, and treatment that are provided in the Plan shall be in complete satisfaction, and release, effective as of the Effective Date, of Claims (including any Intercompany Claims resolved or compromised after the Effective Date by the Post-Effective Date Debtor), Interests, and Causes of Action of any nature whatsoever, including any interest accrued on Claims or Interests from and after the Petition Date, whether known or unknown, against, liabilities of, Liens on, obligations of, rights against, and Interests in, the Debtors or any of their assets or properties, regardless of whether any property shall have been distributed or retained pursuant to the Plan on account of such Claims and Interests, including demands, liabilities, and Causes of Action that arose before the Effective Date, any liability (including withdrawal liability) to the extent such Claims or Interests relate to services performed by current or former employees of the Debtors prior to the Effective Date and that arise from a termination of employment, any contingent or non-contingent liability on account of representations or warranties issued on or before the Effective Date, and all debts of the kind specified in sections 502(g), 502(h), or 502(i) of the Bankruptcy Code, in each case whether or not:  (1) a Proof of Claim or Proof of Interest is Filed or deemed Filed pursuant to section 501 of the Bankruptcy Code; (2) a Claim or Interest based upon such debt, right, or Interest is Allowed pursuant to section 502 of the Bankruptcy Code; or (3) the Holder of such a Claim or Interest has accepted the Plan.  Any default by the Debtors or their Affiliates with respect to any Claim or Interest that existed immediately prior to or on account of the Filing of the Chapter 11 Cases shall be deemed cured on the Effective Date.

B.     **Release of Liens**

**Except as otherwise provided in the Plan, the Plan Supplement, or any contract, instrument, release, or other agreement or document created pursuant to the Plan, immediately following the making of all distributions to be made to an applicable Holder pursuant to the Plan and, in the case of a Secured Claim,**

39

including, for the avoidance of doubt, any Prepetition Loan Claim, satisfaction in full of the portion of the Secured Claim that is Allowed as of the Effective Date, except for Other Secured Claims that the Debtors elect to reinstate in accordance with Article III.B.2 hereof, all mortgages, deeds of trust, Liens, pledges, or other security interests against any property of the Estates shall be fully released, settled, compromised, and discharged, and all of the right, title, and interest of any Holder of such mortgages, deeds of trust, Liens, pledges, or other security interests shall revert automatically to the applicable Debtor and its successors and assigns. Any Holder of such Secured Claim (and the applicable agents for such Holder) shall be authorized and directed to release any collateral or other property of any Debtor (including any cash collateral and possessory collateral) held by such Holder (and the applicable agents for such Holder), and to take such actions as may be reasonably requested by the Post-Effective Date Debtor to evidence the release of such Lien, including the execution, delivery, and Filing or recording of such releases. The presentation or Filing of the Confirmation Order to or with any federal, state, provincial, or local agency or department shall constitute good and sufficient evidence of, but shall not be required to effect, the termination of such Liens.

*C.*     ***Releases by the Debtors***

As of the Effective Date, for good and valuable consideration, the adequacy of which is hereby confirmed, each Released Party is deemed released and discharged by each and all of the Debtors, the Post-Effective Date Debtor, and their Estates, in each case on behalf of themselves and their respective successors, assigns, and representatives, and any and all other entities who may purport to assert any Cause of Action, directly or derivatively, by, through, for, or because of the foregoing entities, from any and all Claims, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtor, or their Estates, as applicable, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, that the Debtors, the Post-Effective Date Debtor, or their Estates or affiliates would have been legally entitled to assert in their own right (whether individually or collectively) or on behalf of the Holder of any Claim against, or Interest in, a Debtor or other Entity, based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Restructuring Transactions, the Sale Transaction, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or consummation of the Disclosure Statement, the DIP Facility, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, or the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date. Notwithstanding anything to the contrary in the foregoing, the releases set forth above do not release (a) any right to enforce the Plan and Confirmation Order, (b) any Cause of Action that is a Non-Released Claims Trust Cause of Action, and (c) Retained Causes of Action, if any; *provided* that, for the avoidance of doubt, the Independent Directors and the Chief Restructuring Officers are not subject to the Non-Released Claims Trust Causes of Action.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article IX.C by the Debtors, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article IX.C is: (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) a bar to any of the Debtors or Post-Effective Date Debtor or their respective Estates asserting any claim, Cause of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

27393445.1

D.       *Releases by Holders of Claims and Interests*

As of the Effective Date, in exchange for good and valuable consideration, including the obligations of the Debtors under the Plan and the contributions of the Released Parties to facilitate and implement the Plan, to the fullest extent permissible under applicable law, as such law may be extended or integrated after the Effective Date, each of the Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, Post-Effective Date Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, existing or hereinafter arising, in law, equity, or otherwise, including any derivative claims, asserted or assertable on behalf of any of the Debtors, the Post-Effective Date Debtor, or their Estates, that such Entity would have been legally entitled to assert (whether individually or collectively), based on or relating to, or in any manner arising from, in whole or in part, the Debtors, the purchase, sale, or rescission of the purchase or sale of any security of the Debtors or the Post-Effective Date Debtor, the subject matter of, or the transactions or events giving rise to, any Claim or Interest that is treated in the Plan, the business or contractual arrangements between any Debtor and any Released Party, the Debtors' in- or out-of-court restructuring efforts, intercompany transactions, the Restructuring Transactions, the Sale Transaction, the Chapter 11 Cases, the formulation, preparation, dissemination, negotiation, Filing, or consummation of the Disclosure Statement, the DIP Facility, the Sale Transaction, the Plan (including, for the avoidance of doubt, the Plan Supplement), or any Restructuring Transaction, contract, instrument, release, or other agreement or document created or entered into in connection with the Disclosure Statement, the DIP Facility, or the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance or distribution of securities pursuant to the Plan, or the distribution of property under the Plan or any other related agreement, or upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date; *provided* that any right to enforce the Plan and Confirmation Order is not so released.

Entry of the Confirmation Order shall constitute the Bankruptcy Court's approval, pursuant to Bankruptcy Rule 9019, of the releases described in this Article IX.CArticle IX.D, which includes by reference each of the related provisions and definitions contained in this Plan, and further, shall constitute the Bankruptcy Court's finding that each release described in this Article IX.D is:  (1) in exchange for the good and valuable consideration provided by the Released Parties, (2) a good-faith settlement and compromise of such Claims; (3) in the best interests of the Debtors and all Holders of Claims and Interests; (4) fair, equitable, and reasonable; (5) given and made after due notice and opportunity for hearing; and (6) an absolute and complete bar to any of the Debtors or the Post-Effective Date Debtor or their respective Estates conveying direct or derivative standing to any person or entity to pursue any claim, Causes of Action or liability against any Released Party, or asserting any claim, Causes of Action, or liability related thereto, of any kind whatsoever, against any of the Released Parties or their property.

E.       *Exculpation*

Notwithstanding anything herein to the contrary, the Exculpated Parties shall neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Cause of Action, Claim, or Interest that arises on or before the Effective Date for any (a) prepetition act or omission in connection with, relating to, or arising out of, formulating, negotiating, or preparing the Plan, or (b) postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases, consummation of the Sale Transaction, the formulation, preparation, dissemination, negotiation, Filing, or consummation of the Disclosure Statement, the Plan, or any Restructuring Transaction, contract, instrument, release or other agreement or document created or entered into in connection with the Disclosure Statement or the Plan, the Filing of the Chapter 11 Cases, the pursuit of Confirmation, the pursuit of Consummation, the administration and implementation of the Plan, including the issuance of securities pursuant to the Plan or the distribution of property under the Plan or any other related agreement (whether or not such issuance or distribution occurs following the Effective Date), negotiations regarding or concerning any of the foregoing, the administration of the Plan or property to be distributed hereunder, or any other postpetition act or omission

41

in connection with, relating to, arising out of, or in contemplation of the restructuring of the Debtors, except for the Non-Released Claims Trust Causes of Action and actions determined by Final Order to have constituted actual fraud or gross negligence, but in all respects such Entities shall be entitled to reasonably rely upon the advice of counsel with respect to their duties and responsibilities pursuant to the Plan.  The Exculpated Parties have, and upon completion of the Plan shall be deemed to have, participated in good faith and in compliance with the applicable laws with regard to the solicitation of votes and distribution of consideration pursuant to the Plan and, therefore, are not, and on account of such distributions shall not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or such distributions made pursuant to the Plan.

F.    *Injunction*

Except as otherwise expressly provided in the Plan or for obligations issued or required to be paid pursuant to the Plan or the Confirmation Order, all Entities who have held, hold, or may hold Claims or Interests that have been released, discharged, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post-Effective Date Debtor, the Exculpated Parties, or the Released Parties:  (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; (2) enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, except to the extent such assertions are used as a defense to claims or Causes of Action by the Debtors arising prior to the Effective Date, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.  For the avoidance of doubt, the Non-Released Claims Trust and the Non-Released Claims Trustee shall not be enjoined from pursuing any Non-Released Claims Trust Cause of Action.

Upon entry of the Confirmation Order, all Holders of Claims and Interests and their respective current and former employees, agents, officers, directors, principals, and direct and indirect affiliates shall be enjoined from taking any actions to interfere with the implementation or Consummation of the Plan.  Each Holder of an Allowed Claim or Allowed Interest, as applicable, by accepting, or being eligible to accept, distributions under or Reinstatement of such Claim or Interest, as applicable, pursuant to the Plan, shall be deemed to have consented to the injunction provisions set forth in this Article IX.F of the Plan.

G.    *Preservation of Setoff Rights*

Nothing herein shall modify the rights, if any, of any Holder of Claims or any current or former party to an Executory Contract or Unexpired Lease, to assert any right of setoff or recoupment with respect to the Debtors that such party may have under applicable bankruptcy or non-bankruptcy law.

H.    *Protections Against Discriminatory Treatment*

To the maximum extent provided by section 525 of the Bankruptcy Code and the Supremacy Clause of the U.S. Constitution, all Entities, including Governmental Units, shall not discriminate against the Post-Effective Date Debtor or deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, discriminate with respect to such a grant against, the Post-Effective Date Debtor, or another Entity with whom the Post-Effective Date Debtor has been associated, solely because each Debtor has been a debtor under chapter 11 of the Bankruptcy Code, has been insolvent before the commencement of the Chapter 11 Cases (or

42

during the Chapter 11 Cases but before the Debtors are granted or denied a discharge), or has not paid a debt that is dischargeable in the Chapter 11 Cases.

I.      *Document Retention*

On and after the Effective Date, the Non-Released Claims Trustee and the Purchaser shall cooperate in good faith to preserve all books, records, electronically stored information, and other documents that are relevant to the allegations asserted in the Attorney General Litigation and the allegations of any Non-Released Claims Trust Causes of Action.  For the avoidance of doubt, nothing herein shall impair the Post-Effective Date Debtor's ability to comply with their document retention obligations pursuant to the Asset Purchase Agreement.

J.      *Reimbursement or Contribution*

If the Bankruptcy Court disallows a Claim for reimbursement or contribution of an Entity pursuant to section 502(e)(1)(B) of the Bankruptcy Code, then to the extent that such Claim is contingent as of the time of allowance or disallowance, such Claim shall be forever disallowed and expunged notwithstanding section 502(j) of the Bankruptcy Code, unless prior to the Confirmation Date: (1) such Claim has been adjudicated as non-contingent or (2) the relevant Holder of a Claim has Filed a non-contingent Proof of Claim on account of such Claim and a Final Order has been entered prior to the Confirmation Date determining such Claim as no longer contingent.

K.      *Term of Injunctions or Stays*

Unless otherwise provided in the Plan or in the Confirmation Order, all injunctions or stays in effect in the Chapter 11 Cases pursuant to sections 105 or 362 of the Bankruptcy Code or any order of the Bankruptcy Court, and extant on the Confirmation Date (excluding any injunctions or stays contained in the Plan or the Confirmation Order), shall remain in full force and effect until the Effective Date.  All injunctions or stays contained in the Plan or the Confirmation Order shall remain in full force and effect in accordance with their terms.

**ARTICLE X.**
**CONDITIONS PRECEDENT TO CONFIRMATION**
**AND CONSUMMATION OF THE PLAN**

A.      *Conditions Precedent to the Confirmation of the Plan*

It shall be a condition precedent to the Confirmation of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C hereof:

1.      The Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in form and substance reasonably acceptable to the Debtors and the Term Loan Lender Group; and

2.      The Bankruptcy Court shall have entered a Confirmation Order with respect to the Plan in form and substance reasonably acceptable to the Debtors and the Term Lender Group.

B.      *Conditions Precedent to the Effective Date*

It shall be a condition to the Effective Date of the Plan that the following conditions shall have been satisfied or waived pursuant to the provisions of Article X.C hereof:

1.      the Bankruptcy Court shall have entered the Confirmation Order (and such order shall be a Final Order) in form and substance reasonably acceptable to the Debtors, the Term Lender Group, and the Purchaser which shall

43

(a)     authorize the Debtors to take all actions necessary to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan;

(b)     decree that the provisions of the Confirmation Order and the Plan are nonseverable and mutually dependent;

(c)     authorize the Debtors, as applicable or necessary, to the extent not previously authorized by the Sale Order, to: (i) implement the Restructuring Transactions, including the Sale Transaction; (ii) make all distributions required under the Plan; and (iii) enter into any agreements, transactions, and sales of property as set forth in the Plan Supplement;

(d)     authorize the implementation of the Plan in accordance with its terms; and

(e)     provide that, pursuant to section 1146 of the Bankruptcy Code, the assignment or surrender of any lease or sublease, and the delivery of any deed or other instrument or transfer order, in furtherance of, or in connection with the Plan, including any deeds, bills of sale, or assignments executed in connection with any disposition or transfer of assets contemplated under the Plan, shall not be subject to any stamp, real estate transfer, mortgage recording, or other similar tax; and

2.     the Debtors shall have obtained all authorizations, consents, regulatory approvals, rulings, or documents that are necessary to implement and effectuate the Plan;

3.     the Professional Fee Escrow Account shall have been established and funded with the Professional Fee Escrow Amount;

4.     the final version of the Plan Supplement and all of the schedules, documents, and exhibits contained therein shall have been Filed in a manner consistent in all material respects with the Plan and shall be in form and substance acceptable to the Debtors;

5.     the Non-Released Claims Trust shall have been funded with the Initial Non-Released Claims Trust Cash Amount.

6.     all unpaid reasonable and documented fees and out-of-pocket professional fees and expenses of the Prepetition Agent, the Prepetition Lenders, the Term Lender Group, and the DIP Lender including the DIP Lender Expenses shall have been paid in full in Cash by the Debtors; and

7.     the Debtors shall have implemented the Restructuring Transactions and all transactions contemplated herein, in a manner consistent in all respects with the Plan, pursuant to documentation acceptable to the Debtors.

C.     *Waiver of Conditions*

The conditions to Confirmation and to Consummation set forth in Article X may be waived by the Debtors, only with the consent of the Term Lender Group, without notice, leave, or order of the Bankruptcy Court or any formal action other than proceeding to confirm or consummate the Plan.

D.     *Effect of Failure of Conditions*

If the Consummation of the Plan does not occur, the Plan shall be null and void in all respects and nothing contained in the Plan or the Disclosure Statement shall:  (1) constitute a waiver or release of any Claims by the Debtors, any Holders, or any other Entity; (2) prejudice in any manner the rights of the Debtors, any Holders, or any other Entity; or (3) constitute an admission, acknowledgment, offer or undertaking by the Debtors, any Holders, or any other Entity in any respect.  Notwithstanding the foregoing, the non-Consummation of the Plan shall not require or result in

44

the voiding, rescission, reversal, or unwinding of the Sale Transaction under the Asset Purchase Agreement or the revocation of the Debtors' authority under the Sale Order to consummate such Sale Transaction.

## ARTICLE XI.
## MODIFICATION, REVOCATION, OR WITHDRAWAL OF THE PLAN

A.      *Modification and Amendments*

Except as otherwise specifically provided in the Plan, the Debtors reserve the right to modify the Plan, with the written consent of the Term Lender Group, whether such modification is material or immaterial, and seek Confirmation consistent with the Bankruptcy Code and, as appropriate, not re-solicit votes on such modified Plan. Subject to certain restrictions and requirements set forth in section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 (as well as those restrictions on modifications set forth in the Plan), the Debtors expressly reserve their respective rights to revoke or withdraw, to alter, amend or modify the Plan with respect to such Debtor, one or more times, before or after Confirmation, and, to the extent necessary, may initiate proceedings in the Bankruptcy Court to so alter, amend or modify the Plan, or remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement or the Confirmation Order, in such matters as may be necessary to carry out the purposes and intent of the Plan; *provided*, *however*, that the Debtors or the Post-Effective Date Debtor, as the case may be, shall not amend or modify the Plan in a manner that adversely affects the treatment of any Class of Claims and/or Interests without resoliciting such Class of Holders of Claims or Interests.

B.      *Effect of Confirmation on Modifications*

Entry of a Confirmation Order shall mean that all modifications or amendments to the Plan since the solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or re-solicitation under Bankruptcy Rule 3019.

C.      *Revocation or Withdrawal of Plan*

The Debtors, with the written consent of the Term Lender Group, reserve the right to revoke or withdraw the Plan before the Confirmation Date and to file subsequent chapter 11 plans. If the Debtors revoke or withdraw the Plan, or if Confirmation or Consummation does not occur, then: (1) the Plan shall be null and void in all respects; (2) any settlement or compromise embodied in the Plan (including the fixing or limiting to an amount certain of the Claims or Interests or Class of Claims or Interests), assumption or rejection of Executory Contracts or Unexpired Leases effected by the Plan, and any document or agreement executed pursuant to the Plan, shall be deemed null and void; and (3) nothing contained in the Plan shall: (a) constitute a waiver or release of any Claims or Interests; (b) prejudice in any manner the rights of such Debtor, any Holder, or any other Entity; or (c) constitute an admission, acknowledgement, offer or undertaking of any sort by such Debtor, any Holder, or any other Entity.

## ARTICLE XII.
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, on and after the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to:

1.      allow, disallow, determine, liquidate, classify, estimate, or establish the priority, Secured or unsecured status, or amount of any Claim or Interest, including the resolution of any request for payment of any Administrative Claim and the resolution of any and all objections to the Secured or unsecured status, priority, amount, or allowance of Claims or Interests;

27393445.1

2.      decide and resolve all matters related to the granting and denying, in whole or in part, any applications for allowance of compensation or reimbursement of expenses to Professionals (including Accrued Professional Compensation Claims) authorized pursuant to the Bankruptcy Code or the Plan;

3.      resolve any matters related to:  (a) the assumption, assumption and assignment, or rejection of any Executory Contract or Unexpired Lease to which a Debtor is party or with respect to which a Debtor may be liable and to hear, determine, and, if necessary, liquidate, any Claims arising therefrom, including Cure Claims pursuant to section 365 of the Bankruptcy Code; (b) any potential contractual obligation under any Executory Contract or Unexpired Lease that is assumed; (c) the Post-Effective Date Debtor amending, modifying or supplementing, after the Effective Date, pursuant to Article V, the Executory Contracts and Unexpired Leases to be assumed or rejected or otherwise; and (d) any dispute regarding whether a contract or lease is or was executory, expired, or terminated;

4.      ensure that distributions to Holders of Allowed Claims and Interests are accomplished pursuant to the provisions of the Plan;

5.      adjudicate, decide, or resolve any motions, adversary proceedings, contested or litigated matters, and any other matters, and grant or deny any applications involving a Debtor that may be pending on the Effective Date;

6.      adjudicate, decide, or resolve any and all matters related to section 1141 of the Bankruptcy Code;

7.      enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan and all contracts, instruments, releases, indentures, and other agreements or documents created in connection with the Plan, the Plan Supplement, or the Disclosure Statement;

8.      enter and enforce any order for the sale of property pursuant to sections 363, 1123, or 1146(a) of the Bankruptcy Code;

9.      resolve any cases, controversies, suits or disputes that may arise in connection with the interpretation of the Sale Order;

10.      resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with Consummation, including interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

11.      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;

12.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;

13.      resolve any cases, controversies, suits, disputes or Causes of Action with respect to the repayment or return of distributions and the recovery of additional amounts owed by the Holder of a Claim for amounts not timely repaid pursuant to Article VI.J.1;

14.      hear and determine all Non-Released Claims Trust Causes of Action and to liquidate such claims for the benefit of the Non-Released Claims Trust Beneficiaries;

15.      enter and implement such orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked, or vacated;

46

27393445.1

16.    determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release, indenture, or other agreement or document created in connection with the Plan or the Disclosure Statement;

17.    enter an order or final decree concluding or closing any of the Chapter 11 Cases;

18.    adjudicate any and all disputes arising from or relating to distributions under the Plan;

19.    consider any modifications of the Plan, to cure any defect or omission or to reconcile any inconsistency in any Bankruptcy Court order, including the Confirmation Order;

20.    determine requests for the payment of Claims entitled to priority pursuant to section 507 of the Bankruptcy Code;

21.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Plan or the Confirmation Order, including disputes arising under agreements, documents, or instruments executed in connection with the Plan;

22.    hear and determine disputes arising in connection with the interpretation, implementation, or enforcement of the Restructuring Transactions, whether they occur before, on or after the Effective Date;

23.    hear and determine matters concerning state, local, and federal taxes in accordance with sections 346, 505, and 1146 of the Bankruptcy Code;

24.    hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article IX;

25.    enforce all orders previously entered by the Bankruptcy Court; and

26.    hear any other matter not inconsistent with the Bankruptcy Code.

## ARTICLE XIII.
## MISCELLANEOUS PROVISIONS

A.    *Immediate Binding Effect*

Subject to Article X.A and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable and deemed binding upon the Debtors, the Post-Effective Date Debtor, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), all Entities that are parties to or are subject to the settlements, compromises, releases, discharges, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

B.    *Additional Documents*

On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan. The Debtors or Post-Effective Date Debtor, as applicable, and all Holders receiving distributions pursuant to the Plan and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

27393445.1

C.    *Payment of Statutory Fees*

All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Post-Effective Date Debtor (or the Disbursing Agent on behalf of the Post-Effective Date Debtor) for each quarter (including any fraction thereof) until the Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

D.    *Term Lender Expenses and DIP Lender Expenses*

The Term Lender Expenses and DIP Lender Expenses incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of the Chapter 11 Cases) without the requirement to file a fee application with the Bankruptcy Court or comply with any guidelines of the U.S. Trustee, and without any requirement for review or approval by the Bankruptcy Court or any other party.  All Term Lender Expenses and all DIP Lender Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective Date; *provided*, that such estimate shall not be considered an admission or limitation with respect to such Term Lender Expenses or DIP Lender Expenses, respectively.  In addition, the Debtors and Post-Effective Date Debtor (as applicable) shall continue to pay the Term Lender Expenses and DIP Lender Expenses, as necessary, after the Effective Date when due and payable in the ordinary course solely to the extent related to implementation, consummation and defense of the Plan, whether incurred before, on or after the Effective Date.

E.    *Reservation of Rights*

Except as expressly set forth in the Plan, the Plan shall have no force or effect unless the Bankruptcy Court enters the Confirmation Order, and the Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

F.    *Successors and Assigns*

The rights, benefits, and obligations of any Entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of any heir, executor, administrator, successor or assign, Affiliate, officer, director, agent, representative, attorney, beneficiaries, or guardian, if any, of each Entity.

G.    *Notices*

To be effective, all notices, requests and demands to or upon the Debtors shall be in writing (including by facsimile transmission).  Unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed to the following:

1.    <u>If to the Debtors, to:</u>

Town Sports International, LLC
399 Executive Boulevard
Elmsford, New York 10523
Attention:  John C. DiDonato
E-mail address:  jdidonato@huronconsultinggroup.com

with copies (which shall not constitute notice) to:

48

Kirkland & Ellis LLP
601 Lexington Avenue
New York, New York 10022
Attention:  Nicole Greenblatt, P.C.
          Derek I. Hunter
E-mail address:  nicole.greenblatt@kirkland.com
          derek.hunter@kirkland.com

- and -

Kirkland & Ellis LLP
300 North LaSalle
Chicago, Illinois 60654
Attention:  Joshua M. Altman
E-mail address:  joshua.altman@kirkland.com

-and-

Kirkland & Ellis LLP
555 California Street
San Francisco, California 94104
Attention:   Mark McKane
E-mail address:   mark.mckane@kirkland.com

-and-

Young ~~Conway~~ Conaway Stargatt & Taylor, LLP
1000 North King Street
Wilmington, Delaware 19801
Attention: Robert S. Brady
          Sean T. Greecher
          Allison S. Mielke
Email address: rbrady@ycst.com
          sgreecher@ycst.com
          amielke@ycst.com

2.   If to the Committee, to:

Cole Schotz P.C.
500 Delaware Avenue, Suite 1410
Wilmington, Delaware 19801
Attention:  Justin R. Alberto
E-mail address: jalberto@coleschotz.com

-and-

Cole Schotz P.C.
1325 Avenue of the Americas, 19th Floor
New York, New York 10019
Attention: Michael D. Sirota
          Seth Van Aalten
          Anthony De Leo
E-mail address: msirota@coleschotz.com
          svanaalten@coleschotz.com
          adeleo@coleschotz.com

49

27393445.1

-and-

Cole Schotz P.C.
25 Main Street
Hackensack, New Jersey 07601
Attention: Stuart Komrower
Email address: skomrower@coleschotz.com

3.   <u>If to the Term Lender Group, to:</u>

Gibson, Dunn & Crutcher LLP
200 Park Ave.
New York, New York 10166
Attn: Scott J. Greenberg, Jason Zachary Goldstein
Email address: sgreenberg@gibsondunn.com
                    jgoldstein@gibsondunn.com

-and-

Pachulski Stang Ziehl & Jones LLP
919 N. Market St. # 1700
Wilmington, Delaware 19801
Attn: Laura Davis Jones
Email address: ljones@pszjlaw.com

4.   <u>If to the United States Trustee, to:</u>

Office of the United States Trustee
for the District of Delaware,
844 King Street, Suite 2207
Wilmington, Delaware 19801
Attention:  David Buchbinder
E-mail address: david.l.buchbinder@usdoj.gov

After the Effective Date, the Post-Effective Date Debtor may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

*H.*     *Entire Agreement*

Except as otherwise indicated, the Plan and the Plan Supplement supersede all previous and contemporaneous negotiations, promises, covenants, agreements, understandings, and representations on such subjects, all of which have become merged and integrated into the Plan.

*I.*     *Exhibits*

All exhibits and documents included in the Plan Supplement are incorporated into and are a part of the Plan as if set forth in full in the Plan.  After the exhibits and documents are Filed, copies of such exhibits and documents shall be available upon written request to the Debtors' counsel at the address above or by downloading such exhibits and documents from the website of the Notice and Claims Agent at http://dm.epiq11.com/TownSports or the Bankruptcy Court's website at http://www.deb.uscourts.gov/.  To the extent any exhibit or document is inconsistent with the terms of the Plan, unless otherwise ordered by the Bankruptcy Court, the non-exhibit or non-document portion

50

of the Plan shall control.

J.        *Non-Severability of Plan Provisions*

The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent, *provided* that, notwithstanding the inclusion of the Asset Purchase Agreement or any documents ancillary thereto in the Plan Supplement, the Sale Transaction contemplated in the Asset Purchase Agreement is severable from the Plan and the Confirmation Order, and the non-Confirmation or non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transaction contemplated in the Asset Purchase Agreement or the revocation of the Debtors' authority under the Sale Order to consummate such Sale Transaction.

K.        *Votes Solicited in Good Faith*

Upon entry of the Confirmation Order, the Debtors will be deemed to have solicited votes on the Plan in good faith and in compliance with the Bankruptcy Code, and pursuant to section 1125(e) of the Bankruptcy Code, the Debtors and each of their respective affiliates, agents, representatives, members, principals, shareholders, officers, directors, employees, advisors, and attorneys will be deemed to have participated in good faith and in compliance with the Bankruptcy Code in the offer, issuance, sale, and purchase of Securities offered and sold under the Plan and any previous plan and, therefore, no such parties will have any liability for the violation of any applicable law, rule, or regulation governing the solicitation of votes on the Plan or the offer, issuance, sale, or purchase of the Securities offered and sold under the Plan or any previous plan.

L.        *Closing of Chapter 11 Cases*

The Post-Effective Date Debtor shall, promptly after the full administration of the Chapter 11 Cases, File with the Bankruptcy Court all documents required by Bankruptcy Rule 3022 and any applicable order necessary to close the Chapter 11 Cases.

M.        *Conflicts*

In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects.  In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order).  In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

[*Remainder of Page Intentionally Left Blank*]

Town Sports International, LLC

By:      */s/ John C. DiDonato*
Name:    John C. DiDonato
Title:   Chief Restructuring Officer

COUNSEL:

Dated: ~~November 3~~December 9, 2020
Wilmington, Delaware

*/s/ Robert S. Brady*
Robert S. Brady (DE Bar No. 2847)
Sean T. Greecher (DE Bar No. 4484)
Allison S. Mielke (DE Bar No. 5934)
**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
Rodney Square
1000 North King Street
Wilmington, Delaware 19801
Telephone:      (302) 571-6600
Facsimile:      (302) 571-1253

Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
601 Lexington Avenue
New York, New York 10022
Telephone:      (212) 446-4800
Facsimile:      (212) 446-4900

Joshua M. Altman  (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
300 North LaSalle Street
Chicago, Illinois 60654
Telephone:      (312) 862-2000
Facsimile:      (312) 862-2200

Mark McKane, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:      (415) 439-1400
Facsimile:      (415) 4391500

*Co-Counsel for the Debtors and Debtors in Possession*