## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] | Case No. 20-12168 (CSS) |
| Debtors. | (Jointly Administered) |
| | **Ref. Docket No. 776** |

### NOTICE OF FILING OF BLACKLINE OF PROPOSED CONFIRMATION ORDER

**PLEASE TAKE NOTICE** that, on December 9, 2020, the above-captioned debtors and debtors-in-possession (collectively, the "**Debtors**") filed the *Findings of Fact, Conclusions of Law, and Order Approving the Debtors' Disclosure Statement For, and Confirming the Second Amended Joint Chapter 11 Plan of Town Sports International, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 776] (the "**Proposed Confirmation Order**").[2]

**PLEASE TAKE FURTHER NOTICE** that, in response to comments from certain parties in interest, the Debtors have revised the Proposed Confirmation Order (the "**Revised Proposed Confirmation Order**") in advance of the plan confirmation hearing scheduled for **December 14, 2020 at 2:00 p.m. (ET)** (the "**Hearing**"). For the convenience of the Court and interested parties, a blackline of the Revised Proposed Confirmation Order marked against the Proposed Confirmation Order is attached hereto as Exhibit A.

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. Due to the large number of debtors in these cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports, or by contacting the undersigned counsel for the Debtors.

[2] Capitalized terms used herein but not otherwise defined herein shall have the meanings ascribed to them in the Proposed Confirmation Order.

The Debtors reserve all rights to further modify the Proposed Confirmation Order

prior to the Hearing.

Dated:  December 14, 2020          */s/ Sean T. Greecher*
Wilmington, Delaware               Robert S. Brady (No. 2847)
                                   Sean T. Greecher (No. 4484)
                                   Allison S. Mielke (No. 5934)
                                   **YOUNG CONAWAY STARGATT & TAYLOR, LLP**
                                   Rodney Square
                                   1000 North King Street
                                   Wilmington, Delaware 19801
                                   Telephone:    (302) 571-6600
                                   Email: rbrady@ycst.com
                                          sgreecher@ycst.com
                                          amielke@ycst.com

                                   Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
                                   Derek I. Hunter (admitted *pro hac vice*)
                                   **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   601 Lexington Avenue
                                   New York, New York 10022
                                   Telephone:    (212) 446-4800
                                   Email: nicole.greenblatt@kirkland.com
                                          derek.hunter@kirkland.com

                                   Joshua M. Altman (admitted *pro hac vice*)
                                   **KIRKLAND & ELLIS LLP**
                                   **KIRKLAND & ELLIS INTERNATIONAL LLP**
                                   300 North LaSalle Street
                                   Chicago, Illinois 60654
                                   Telephone:    (312) 862-2000
                                   Email:  josh.altman@kirkland.com

Mark McKane, P.C. (admitted *pro hac vice*)
**KIRKLAND & ELLIS LLP**
**KIRKLAND & ELLIS INTERNATIONAL LLP**
555 California Street
San Francisco, California 94104
Telephone:    (415) 439-1400
Email: mark.mckane@kirkland.com

*Co-Counsel for the Debtors and Debtors in Possession*

## EXHIBIT A

**Blackline Proposed Confirmation Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] | Case No. 20-12168 (CSS) |
| | (Jointly Administered) |
| Debtors. | |

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER APPROVING THE DEBTORS' DISCLOSURE STATEMENT FOR, AND CONFIRMING THE SECOND AMENDED JOINT CHAPTER 11 PLAN OF TOWN SPORTS INTERNATIONAL, LLC AND ITS DEBTOR AFFILIATES PURSUANT TO CHAPTER 11 OF THE BANKRUPTCY CODE

The above captioned debtors and debtors in possession (collectively, the "Debtors"),

having:[2]

a. commenced, on September 14, 2020 (the "Petition Date"), these chapter 11 cases (the "Chapter 11 Cases") by filing voluntary petitions in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

b. continued to operate and manage their businesses and properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code;

c. obtained, on October 9, 2020, entry of the *Order (I) Approving the Bidding Procedures in Connection With the Sale of Substantially All of the Debtors' Assets, (II) Approving the Form and Notice Thereof, (III) Scheduling an Auction and Sale Hearing, and (IV) Approving Procedures for the Assumption and Assignment of Contracts, (V) Approving the Sale of the*

---

[1]   The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. Due to the large number of debtors in these jointly administered cases a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports, or by contacting the undersigned counsel for the Debtors.

[2]   All capitalized terms used but otherwise not defined in these findings of fact, conclusions of law, and order (collectively, this "Confirmation Order") have the meanings given to them in the *Second Amended Joint Chapter 11 Plan of Reorganization of Town Sports International, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code*, attached hereto as Exhibit A. The rules of interpretation set forth in Article I of the Plan shall apply to this Confirmation Order. This Confirmation Order remains subject to ongoing review and material revision by all parties in interest including, for the avoidance of doubt, the Debtors, the Committee, the U.S. Trustee, the DIP Agent, the Purchaser, and all parties that objected (formally or informally) to confirmation of the Plan.

*Debtors' Assets Free and Clear, and (VI) Granting Related Relief* [Docket No. 208] (the "Bidding Procedures Order");

d.  filed, on October 20, 2020, (a) the *Joint Chapter 11 Plan of Town Sports International, LLC and its Debtor Affiliate Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 298] (as amended, modified, supplemented from time to time, the "Plan"), (b) the *Disclosure Statement Relating to the Joint Chapter 11 Plan of Town Sports International, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 292] (the "Disclosure Statement"), and (c) the *Debtors' Motion for Entry of an Order (I) Approving the Adequacy of the Disclosure Statement; (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing; (III) Shortening Certain Notice Periods and Establishing Related Procedures; (IV) Approving the Solicitation and Notice Procedures; (V) Approving the Combined Hearing Notice, and (VI) Granting Related Relief* [Docket No. 293] (the "Disclosure Statement Motion");

e.  filed, on November 2, 2020, the *Notice of Filing of (I) Blackline of Plan; (II) Blackline of Disclosure Statement and (III) Exhibit B to Disclosure Statement* [Docket No. 549];

f.  filed, on November 3, 2020, (a) the *First Amended Joint Chapter 11 Plan of Town Sports International, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 586], (b) the *Solicitation Version of the Disclosure Statement Relating to the First Amended Joint Chapter 11 Plan of Town Sports International, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. 587], and (c) the *Notice of Hearing to Consider (I) the Adequacy of the Disclosure Statement and (II) Confirmation of the Joint Chapter 11 Plan Filed by the Debtors* [Docket No. 589] (the "Combined Hearing Notice");

g.  obtained, on November 3, 2020, entry of the *Order (I) Approving the Adequacy of the Disclosure Statement on an Interim Basis (II) Scheduling a Combined Disclosure Statement Approval and Plan Confirmation Hearing, (III) Shortening Certain Notice Periods and Establishing Related Procedures, (IV) Approving the Solicitation and Notice Procedures, (V) Approving the Combined Hearing Notice, and (VI) Granting Related Relief* [Docket No. 561] (the "Disclosure Statement Order"), which approved, among other things, solicitation procedures and related notices (the "Solicitation and Notice Procedures"), forms, Ballots, and Master Ballots (collectively, the "Solicitation Packages");

h.  obtained, on November 4, 2020, the *Order (I) Authorizing the Sale of Substantially All of the Debtors' Assets Free and Clear of Liens, Claims, Encumbrances, and Interests, (II) Authorizing the Debtors to Enter Into the Asset Purchase Agreement, (III) Authorizing the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (IV) Granting Related Relief* [Docket No. 639] (the "Sale Order");

i.  caused the Solicitation Packages and the Combined Hearing Notice to be distributed on November 6, 2020, in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules"), and the Disclosure Statement Order, as evidenced by, among other things, the *Affidavit of Service* [Docket No. 708] (the "Solicitation Affidavit") and the Voting Report (as defined below);

2

j.  filed and caused to be served, on November 25, 2020, the *Notice of Filing of Plan Supplement* [Docket No. 706] (as amended, modified, or supplemented from time to time, the "Plan Supplement"), as evidenced by the *Affidavit of Service* [Docket No. 732];

k.  filed, on December 2, 2020, the *Notice of Filing of Additional Exhibit to Plan Supplement* [Docket No. 736], which included the Non-Released Claims Trust Agreement and Declaration of Trust;

l.  filed, on December 9, 2020, the *Notice of Filing of Blackline of Second Amended Joint Chapter 11 Plan of Town Sports International, LLC and its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●772]

m.  filed, on December 9, 2020, the *Debtors' Memorandum of Law in Support of an Order (I) Approving the Debtors' Disclosure Statement on a Final Basis and (II) Confirming the Debtors' Joint Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●773] (the "Confirmation Brief");

n.  filed, on December 9, 2020, the *Declaration of John C. DiDonato in Support of Confirmation of the Joint Plan of Reorganization of Town Sports International, LLC and its Affiliated Debtors Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●774] (the "DiDonato Declaration");

o.  filed, on December 9, 2020, the *Declaration of Stephenie Kjontvedt on Behalf of Epiq Corporate Restructuring, LLC Regarding Voting and Tabulation of Ballots Cast on the First Amended Joint Chapter 11 Plan of Town Sports International, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. ●775] (as may be amended, modified, or supplemented, the "Voting Report"); and

p.  caused the Combined Hearing Notice to be published on December 10, 2020, in *USA Today*, as evidenced by the *Affidavit of Publication* [Docket No. 787].

This Bankruptcy Court having:

a.  entered, on November 3, 2020, the Disclosure Statement Order;

b.  set December 7, 2020, at 4:00 p.m., prevailing Eastern Time, as the deadline for filing objections to the Plan (the "Plan Objection Deadline");

c.  set December 7, 2020, at 4:00 p.m., prevailing Eastern Time, as the deadline for voting on the Plan (the "Voting Deadline");

d.  set December 14, 2020, at 2:00 p.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing pursuant to Bankruptcy Rules 3017 and 3018 and sections 1126, 1128, and 1129 of the Bankruptcy Code;

e.  considered the Plan, the Plan Supplement, the Disclosure Statement, the Confirmation Brief, the DiDonato Declaration, the Voting Report, the Combined Hearing Notice, the Affidavits, and all filed pleadings, exhibits, statements, and comments regarding

Confirmation, including all objections, statements, and reservations of rights filed by parties in interest on the docket of these Chapter 11 Cases;

f.  held the Confirmation Hearing;

g.  heard the statements and arguments made by counsel in respect of approval of the Disclosure Statement and Confirmation of the Plan and the objections thereto;

h.  considered all oral representations, affidavits, testimony, documents, filings, and other evidence regarding approval of the Disclosure Statement and Confirmation of the Plan and having admitted the same into evidence at the Confirmation Hearing;

i.  overruled any and all objections to the approval of the Disclosure Statement and to Confirmation of the Plan and all statements and reservations of rights not consensually resolved or withdrawn unless otherwise indicated herein; and

j.  considered the pleadings and other documents filed and all evidence and arguments proffered or otherwise presented at or with respect to the Confirmation Hearing.

NOW, THEREFORE, the Bankruptcy Court having found that notice of the Confirmation Hearing and the opportunity for any party in interest to object to approval of the Disclosure Statement and Confirmation of the Plan have been adequate and appropriate as to all parties affected or to be affected by the Plan and the transactions contemplated thereby; and the Bankruptcy Court having found that the record of these Chapter 11 Cases and the legal and factual bases set forth in the documents filed in support of approval of the Disclosure Statement and Confirmation of the Plan and all evidence proffered or adduced by counsel at the Confirmation Hearing establish just cause for the relief granted herein; and after due deliberation thereon and good cause appearing therefor, the Bankruptcy Court hereby makes and issues the following findings of fact and conclusions of law, and orders:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

IT IS HEREBY DETERMINED FOUND, ADJUDGED, DECREED, AND ORDERED THAT:

### A.    Findings of Fact and Conclusions of Law

1.    The findings of fact and the conclusions of law set forth in this Confirmation Order and on the record of the Confirmation Hearing (which are incorporated into this Confirmation Order by this reference) constitute the Bankruptcy Court's findings of fact and conclusions of law in accordance with Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  Each finding of fact set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a conclusion of law, shall also constitute a conclusion of law. Each conclusion of law set forth or incorporated in this Confirmation Order, to the extent it is or may be deemed a finding of fact, shall also constitute a finding of fact.

### B.    Jurisdiction, Venue, Core Proceeding

2.    The Bankruptcy Court has subject matter jurisdiction over this matter under sections 157 and 1334 of title 28 of the United States Code, 28 U.S.C. §§ 1–4881 (the "Judicial Code"), and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  The Bankruptcy Court has exclusive jurisdiction to determine whether the Disclosure Statement and the Plan comply with the applicable provisions of the Bankruptcy Code and should be approved and confirmed, respectively.  Venue is proper before the Bankruptcy Court pursuant sections 1408 and 1409 of the Judicial Code.  Approval of the Disclosure Statement and Confirmation of the Plan are core proceedings within the meaning of section 157(b)(2) of the Judicial Code.

**C.      Eligibility for Relief**

3.      The Debtors were at all times during these Chapter 11 Cases and continue to be entities eligible for relief under section 109 of the Bankruptcy Code, and the Debtors are proper proponents of the Plan under section 1121(a) of the Bankruptcy Code.

**D.      Commencement and Joint Administration of these Chapter 11 Cases**

4.      On the Petition Date, the Debtors commenced these Chapter 11 Cases.  On September 16, 2020, the Bankruptcy Court entered the *Order Directing the Joint Administration of the Debtors' Chapter 11 Cases* [Docket No. 56] authorizing the joint administration and procedural consolidation of these Chapter 11 Cases in accordance with Bankruptcy Rule 1015(b). Since the Petition Date, the Debtors have operated their businesses as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made in these Chapter 11 Cases.

**E.      Committee Appointment**

5.      On September 24, 2020, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee") [Docket No. 98] pursuant to section 1102 of the Bankruptcy Code, which Committee currently consists of (i) 575 Lex Property Owner, LLC, (ii) Phillips International Holding Corporation, (iii) BDG 99QB, LLC, (iv) Mykola Kolomiichuk, and (v) Nancy Radford.

**F.       Objections**

6.      This Bankruptcy Court takes judicial notice of the docket of these Chapter 11 Cases. Any resolution of objections to Confirmation explained on the record at the Confirmation Hearing is hereby incorporated by reference.  All unresolved objections, statements, informal objections, and reservations of rights (except with respect to unresolved cure amounts), if any, related to the Disclosure Statement or Confirmation of the Plan are overruled on the merits.

**G.    Plan Supplement**

7.    On November 25, 2020, the Debtors filed the Plan Supplement with the Bankruptcy Court, and on December 2, 2020, the Debtors filed the *Notice of Filing of Additional Exhibit to Plan Supplement*.  The documents identified in the Plan Supplement were filed as required and notice of such documents was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was in compliance with the provisions of the Plan, the Disclosure Statement Order, the Bankruptcy Code, and the Bankruptcy Rules.  All parties required to be given notice of the documents identified in the Plan Supplement have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  The transmittal and notice of the Plan Supplement (and all documents identified in the Plan Supplement) was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases and was conducted in good faith.  No other or further notice with respect to the Plan Supplement (and all documents identified in the Plan Supplement) is necessary or shall be required.  All documents included in the Plan Supplement are integral to, part of, and incorporated by reference into the Plan.  Subject to the terms of the Plan (including the review and consent rights of certain parties as set forth in the Plan), the Debtors reserve the right to alter, amend, update, or modify the Plan Supplement in accordance with the terms of the Plan, this Confirmation Order, the Asset Purchase Agreement, the Bankruptcy Code, and the Bankruptcy Rules.

**H.    Disclosure Statement Order**

8.    On November 3, 2020, the Bankruptcy Court entered the Disclosure Statement Order, which, among other things, (a) approved, on an interim basis, the Disclosure Statement as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and Bankruptcy Rule 3017, (b) approved the Solicitation and Notice Procedures, (c) approved the Solicitation Packages, (d) set December 7, 2020, at 4:00 p.m., prevailing Eastern Time, as the Plan

Objection Deadline and the Voting Deadline, respectively, and (e) set December 14, 2020, at 2:00 p.m., prevailing Eastern Time, as the date and time for the Confirmation Hearing.  The period during which the Debtors solicited acceptances to the Plan is a reasonable and adequate period of time for Holders of Claims or Interests in the Voting Classes to have made an informed decision to accept or reject the Plan.

## I.     Adequacy of the Disclosure Statement

9.     The Disclosure Statement contains extensive material information regarding the Debtors so that parties entitled to vote on the Plan could make informed decisions regarding the Plan.  The Disclosure Statement contains "adequate information" within the meaning of section 1125 of the Bankruptcy Code and complies with any additional applicable requirements of the Bankruptcy Code, the Bankruptcy Rules, and non-bankruptcy law.  The Debtors' solicitation of acceptances and rejections of the Plan via transmittal of the Disclosure Statement and the other materials in the Solicitation Packages was authorized by and complied with the Disclosure Statement Order and was appropriate under the circumstances.

## J.     Solicitation and Notice

10.     The Plan was solicited in good faith and in compliance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.  The Debtors participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, issuance, sale, solicitation, and/or purchase of the securities offered under the Plan, and therefore are entitled to the protections of section 1125(e) of the Bankruptcy Code.

11.     As described in the Voting Report, the Solicitation Packages were transmitted and served in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules of Bankruptcy Practice and Procedure of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), and the Disclosure Statement Order.  The solicitation of votes

on the Plan complied with the Solicitation and Notice Procedures, was appropriate and satisfactory based upon the circumstances of these Chapter 11 Cases, was conducted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, and was in compliance with section 1125, section 1126, and all other applicable sections of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

12.    As described in the Voting Report and the Affidavits, all parties required to be given notice of the Confirmation Hearing (including the deadline for filing and serving objections to Confirmation of the Plan) have been provided due, proper, timely, and adequate notice and have had an opportunity to appear and be heard with respect thereto.  Such notice was adequate and sufficient pursuant to section 1128 of the Bankruptcy Code, Bankruptcy Rules 2002, 3017, and 3020, and other applicable law and rules, and no other or further notice is or shall be required.

**K.    Voting Report**

13.    Prior to the Confirmation Hearing, the Debtors filed the Voting Report.  As set forth in the Voting Report, the procedures used to tabulate the Ballots were fair, in good faith, and conducted in accordance with the Disclosure Statement Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable rules, laws, and regulations.

14.    As set forth in the Plan, Holders of Claims in Classes 4 and 5 (collectively, the "Voting Classes") for each of the Debtors were eligible to vote on the Plan pursuant to the Solicitation and Notice Procedures.  In addition, Holders of Claims in Classes 1, 2, and 3 are Unimpaired and conclusively presumed to accept the Plan and, therefore, are not entitled to vote to accept or reject the Plan.  Depending on their ultimate treatment by the Debtors, Holders of Claims and Interests in Classes 6 and 7 are either Unimpaired or Impaired and will be either conclusively deemed to accept or conclusively deemed to reject the Plan, and in either scenario

are not entitled to vote on the Plan.  Holders of Claims and Interests in Classes 8 and 9 are Impaired under the Plan and are conclusively deemed to have rejected the Plan.

15.    As evidenced by the Voting Report, Class 5 (General Unsecured Claims) voted to accept the Plan at nearly all Debtors and Class 4 (Prepetition Loan Claims) voted to reject the Plan.

**L.    Bankruptcy Rule 3016**

16.    The Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).  The Debtors appropriately filed the Disclosure Statement and the Plan with the Bankruptcy Court, thereby satisfying Bankruptcy Rule 3016(b).

**M.    Burden of Proof**

17.    The Debtors, as proponents of the Plan, have met their burden of proving the applicable elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by a preponderance of the evidence, which is the applicable evidentiary standard for Confirmation of the Plan.  Further, the Debtors have proven the elements of sections 1129(a) and 1129(b) of the Bankruptcy Code by clear and convincing evidence.

**N.    Plan Modifications**

18.    Subsequent to filing the first amended version of the Plan on November 3, 2020, the Debtors made certain amendments to the Plan (the "Plan Modifications"), which are reflected in the version of the Plan attached hereto as Exhibit A.  The Plan Modifications were made to address objections and informal comments received from various parties in interest.  The Plan Modifications neither materially adversely affect the treatment of any Claim against or Interest in any of the Debtors under the Plan nor require resolicitation of votes on the Plan under section 1126 of the Bankruptcy Code or Bankruptcy Rules 3018 or 3019.  The filing with the Bankruptcy Court of the Plan as modified by the Plan Modifications, and the disclosure of the Plan Modifications on the record at the Confirmation Hearing, constitute due and sufficient notice thereof.  Accordingly,

pursuant to section 1127(a) of the Bankruptcy Code and Bankruptcy Rule 3019, none of these modifications require additional disclosure under section 1125 of the Bankruptcy Code or resolicitation of votes under section 1126 of the Bankruptcy Code.  The Plan as modified and attached hereto, and as may be further modified consistent with the terms of this Confirmation Order and the Plan, shall constitute the Plan submitted for Confirmation by the Bankruptcy Court.

## O.     Presumed Acceptance of Plan as Modified

19.     In accordance with section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019, all Holders of Claims who voted to accept the Plan or who are conclusively presumed to have accepted the Plan are presumed to have accepted the Plan as modified by the Plan Modifications.  No Holder of a Claim who has voted to accept the Plan shall be permitted to change its vote as a consequence of the Plan Modifications.  All modifications to the Plan or Plan Supplement made after the Voting Deadline are hereby approved pursuant to section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

## P.     Compliance with the Bankruptcy Code (11 U.S.C. §§ 1125 and 1127)

20.     The Debtors have complied with section 1125 of the Bankruptcy Code with respect to the Disclosure Statement and the Plan.  The requirements of section 1127 of the Bankruptcy Code have been satisfied.

## Q.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129)

21.     The Plan complies with all applicable provisions of section 1129 of the Bankruptcy Code.

### a)  Compliance with Applicable Provisions of the Bankruptcy Code (11 U.S.C. § 1129(a)(1)).

22.     The Plan complies with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(1) of the Bankruptcy Code, including sections 1122 and 1123 of the

Bankruptcy Code.  In addition, the Plan is dated and identifies the Entities submitting it, thereby satisfying Bankruptcy Rule 3016(a).

### i.    Proper Classification (11 U.S.C. §§ 1122 and 1123(a)(1)).

23.    The Plan satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code, and the classification of Claims and Interests under the Plan is proper under the Bankruptcy Code. Article III of the Plan provides for the separate classification of Claims and Interests into eleven Classes, based on differences in the legal nature or priority of such Claims and Interests (other than Administrative Claims, Priority Tax Claims, Professional Fee Claims, DIP Claims, and payment of U.S. Trustee statutory fees, which are addressed in Article II of the Plan and which are not required to be designated as separate Classes pursuant to section 1123(a)(1) of the Bankruptcy Code).  Valid business, factual, and legal reasons exist for the separate classification of the various Classes of Claims and Interests created under the Plan.  The classifications were not promulgated for any improper purpose, and the creation of such Classes does not unfairly discriminate between or among Holders of Claims or Interests.  In accordance with section 1122(a) of the Bankruptcy Code, each Class of Claims and Interests contains only Claims or Interests that are substantially similar to the other Claims or Interests within that Class.  The Plan, therefore, satisfies the requirements of sections 1122(a), 1122(b), and 1123(a)(1) of the Bankruptcy Code.

### ii.    Specified Unimpaired and Impaired Classes (11 U.S.C. §§ 1123(a)(2) and 1123(a)(3)).

24.    The Plan satisfies sections 1123(a)(2) and 1123(a)(3) of the Bankruptcy Code. Article III of the Plan specifies that Claims in Classes 1, 2, and 3 are Unimpaired.  Article III of the Plan also specifies the treatment of each Impaired Class under the Plan, which are Classes 4, 5, 8, and 9.  Holders of Claims and Interests in Classes 6 and 7 are deemed to accept or deemed to

reject the Plan depending on whether such Claims or Interests are reinstated or canceled and released without any distribution on account of such Claims or Interests.

### iii.    No Discrimination (11 U.S.C. § 1123(a)(4)).

25.    The Plan satisfies the requirements of section 1123(a)(4) of the Bankruptcy Code. Article III of the Plan provides the same treatment for each Claim or Interest within a particular Class unless the Holder of a particular Claim or Interest has agreed to a less favorable treatment with respect to such Claim or Interest.

### iv.    Implementation of the Plan (11 U.S.C. § 1123(a)(5)).

26.    The Plan and the various documents included in the Plan Supplement (collectively, the "Plan Documents") satisfy the requirements of section 1123(a)(5) of the Bankruptcy Code. The Plan and the Plan Documents provide adequate and proper means for the Plan's implementation, including by providing for, among other things, consummation of the Restructuring Transactions, the appointment of a Plan Administrator, and the establishment of the Non-Released Claims Trust and appointment of the Non-Released Claims Trustee.

### v.    Non-Voting Equity Securities (11 U.S.C. § 1123(a)(6)).

27.    The Plan does not provide for the issuance of equity or other securities by the Debtors or the Post-Effective Date Debtor.  Accordingly, the requirements of section 1123(a)(6) are inapplicable in these Chapter 11 Cases.

### vi.    Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)).

28.    The Plan satisfies the requirements of section 1123(a)(7) of the Bankruptcy Code. The Plan discharges all of the Debtors' officers, directors, members, and managers from their duties effective as of the Effective Date without any further action.  The Plan further provides for continuation of the Post-Effective Date Debtor and the appointment of the Plan Administrator.

**b)  Discretionary Contents of the Plan (11 U.S.C. § 1123(b)).**

29.     The Plan satisfies the requirements of section 1123(b) of the Bankruptcy Code.  The

other provisions of the Plan are appropriate and consistent with the applicable provisions of the

Bankruptcy Code.

**(a)      Executory Contracts and Unexpired Leases (11 U.S.C.
§ 1123(b)(2)).**

30.     Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, upon the

occurrence of the Effective Date, Article V.A of the Plan provides that, except as otherwise

provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed,

assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365

and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is

identified on the Assumed Executory Contracts and Unexpired Leases Schedule; (2) is the subject

of a motion to assume (or assume and assign) such Executory Contract that is pending on the

Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or

document entered into in connection with the Plan; (4) is a directors and officers insurance policy;

(5) is the Asset Purchase Agreement; or (6) is to be assumed by the Debtors and assigned to the

Purchaser in connection with the Sale Transaction and pursuant to the Asset Purchase Agreement.

Neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the

Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired

Leases to Purchaser pursuant to the Asset Purchase Agreement.  Notwithstanding anything to the

contrary in the Plan, the Debtors, the Post-Effective Date Debtor, and the Plan Administrator, as

applicable, with the consent of the Purchaser and the Term Lender Group not to be unreasonably

withheld, shall have the right to alter, amend, modify, or supplement the Assumed Executory

Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired

14

Leases Schedule identified in Article V of the Plan and in the Plan Supplement at any time through and including thirty (30) days after the Effective Date; *provided* that the foregoing extension shall not include leases with respect to real property.

31.    The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan and are in the best interests of the Debtors, their Estates, Holders of Claims or Interests and other parties in interest in these Chapter 11 Cases.

> **(b)  Releases, Exculpation, Injunction, and Preservation of Claims and Causes of Action (11 U.S.C. § 1123(b)(3)).**

32.    **Debtor Release.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article IX.C of the Plan (the "Debtor Release").  The Debtor Release is an essential component of the Plan.  The scope of the Debtor Releases is appropriately tailored under the facts and circumstances of these Chapter 11 Cases.  The Debtor Release is given and made after due notice and opportunity for hearing.

33.    The Debtor Release represents a valid exercise of the Debtors' business judgment and is the result of a good-faith and arm's-length negotiation between sophisticated parties that had representation from able counsel and advisors.  The Debtor Release appropriately offers protection to parties that participated in the Debtors' chapter 11 process, and such participation in these Chapter 11 Cases is critical to the Debtors' successful emergence from bankruptcy.  Each of the Released Parties shares a common goal with the Debtors in seeing the Plan succeed and implementing the transactions contemplated in the Plan.  The record shows that the releases relating to the Debtors' current and former directors, officers, affiliates, and principals have an

identity of interest in supporting the release because the Debtors will assume certain indemnification obligations under the Plan and the Post-Effective Date Debtor will honor such obligations in accordance with the terms of the Plan. The evidence establishes that the Debtors conducted a thorough analysis of the Debtors' claims and causes of action in determining to grant the Debtor Release and that the Debtors have satisfied the business judgment standard in granting the Debtor Release under the Plan.

34.    **Releases by Holders of Claims and Interests.** Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and constitutional adjudicatory authority to approve the release set forth in Article IX.D of the Plan (the "Third-Party Release"). The Third-Party Release is given and made after due notice and opportunity for hearing.

35.    The Third-Party Release is consensual with respect to the Releasing Parties. The Ballots sent to all Holders of Claims and Interests entitled to vote as well as the notice of the Confirmation Hearing sent to parties in interest unambiguously provided in bold letters that the Third-Party Release was contained in the Plan. Such parties in interest were provided due and adequate notice of these Chapter 11 Cases, the Plan, the Third-Party Release, the deadline to object to confirmation of the Plan, the opportunity to opt out of the Third-Party Release, and were properly informed that the Holders of Claims against or Interests in the Debtors that did not check the "Opt Out" box on the applicable Ballot or Opt-Out Form, returned in advance of the Voting Deadline would be deemed to have expressly, unconditionally, generally, individually, and collectively consented to the release of all Claims and Causes of Action against the Debtors and the Released Parties. Additionally, the release provisions of the Plan were conspicuous,

emphasized with boldface type in the Plan, the Disclosure Statement, and the Ballots.  Thus, the Third-Party Release is consensual as to those Releasing Parties that did not specifically and timely object.

36.    **Exculpation.**  Consistent with sections 157 and 1334(a) and (b) of title 28 of the United States Code, and sections 105(a), 1123(b)(3), and 1123(b)(6) of the Bankruptcy Code, the Bankruptcy Court has jurisdiction and authority to approve the exculpation set forth in Article IX.E of the Plan (the "Exculpation").  The Exculpation is essential to the Plan.  The evidence before the Bankruptcy Court demonstrates that the Plan's Exculpation was critical to the parties' willingness to support the Debtors' chapter 11 efforts and that these parties would not have been so inclined to participate in the Plan process without the promise of exculpation, and such parties did so in reliance upon the protections afforded in the Exculpation.  The Exculpation appropriately affords protection to those parties who constructively participated in and contributed to the Debtors' chapter 11 process consistent with their duties under the Bankruptcy Code, and it is appropriately tailored to protect the Exculpated Parties from inappropriate litigation.

37.    **Injunction.**  Section 105(a) and section 1123(b)(3) and (b)(6) of the Bankruptcy Code permit issuance of the injunction provisions set forth in Article IX.F of the Plan (the "Injunction") and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code.  The Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article IX of the Plan.  Such Injunction is appropriately tailored to achieve those purposes.

38.    **Preservation of Causes of Action.**  Article IV.O of the Plan appropriately provides that, except as otherwise provided in the Plan or in the Sale Order, in accordance with section

17

1123(b) of the Bankruptcy Code, but subject to Article IX of the Plan, each Debtor reserves and, as of the Effective Date, assigns to the Post-Effective Date Debtor, the Causes of Action (except for the Non-Released Claims Trust Causes of Action, which shall be transferred to the Non-Released Claims Trust free and clear of all liens, claims, encumbrances, and interests other than the Non-Released Claims Trust Interests) which shall include those actions specifically enumerated in the Schedule of Retained Causes of Action. On and after the Effective Date, the Post-Effective Debtor and the Plan Administrator (following transfer of such Causes of Action to the Plan Administrator) may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (except for the Non-Released Claims Trust Causes of Action) of the Debtors on behalf of and for the benefit of the applicable beneficiaries, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Post-Effective Date Debtor's or the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX, which shall be deemed released and waived by the Debtors and the Post-Effective Date Debtor as of the Effective Date. The provisions regarding retained Causes of Action in the Plan are appropriate and in the best interests of the Debtors, their respective Estates, and all Holders of Claims and Interests.

### vii.  Cure of Defaults (11 U.S.C. § 1123(d)).

39.     Article V.D of the Plan provides for the satisfaction of cure Claims associated with each Executory Contract and Unexpired Lease to be assumed in accordance with section 365(b)(1) of the Bankruptcy Code. Any monetary defaults under each Assumed Executory Contract or Unexpired Lease pursuant to the Plan (it being understood that the assumption and assignment of the Executory Contracts or Unexpired Leases pursuant to the Asset Purchase Agreement shall be

authorized and governed by the Sale Order, and, in the event of any inconsistency between the Plan and Sale Order concerning the assumption and assignment of such Executory Contracts or Unexpired Leases, the terms of the Sale Order shall govern and control) shall be satisfied, pursuant to section 365(b)(1) of the Bankruptcy Code, by payment of the cure amount in Cash on the Effective Date, or as soon as reasonably practicable thereafter, subject to the limitation described below, or on such other terms as the parties to such Executory Contracts or Unexpired Leases may otherwise agree. Any disputed cure amounts will be determined in accordance with the procedures set forth in Article V.D of the Plan, and applicable bankruptcy and non-bankruptcy law. As such, the Plan provides that the Debtors, the Post-Effective Date Debtor, or the Purchaser, as applicable, will cure defaults with respect to assumed Executory Contracts and Unexpired Leases in accordance with section 365(b)(1) of the Bankruptcy Code. Thus, the Plan complies with section 1123(d) of the Bankruptcy Code.

### c) The Debtors' Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(2)).

40. The Debtors, as Plan proponents, have complied with all applicable provisions of the Bankruptcy Code as required by section 1129(a)(2) of the Bankruptcy Code, including sections 1122, 1123, 1124, 1125, 1126, and 1128, and Bankruptcy Rules 3017, 3018, and 3019.

41. The Debtors and their agents solicited votes to accept or reject the Plan after the Bankruptcy Court entered the Disclosure Statement Order approving the Solicitation Packages and Solicitation and Notice Procedures.

42. The Debtors and their agents have solicited and tabulated votes on the Plan and have participated in the activities described in section 1125 of the Bankruptcy Code fairly and in good faith within the meaning of section 1125(e) of the Bankruptcy Code, and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, and all other applicable

rules, laws, and regulations, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provisions set forth in Article IX.E of the Plan.

**d) Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)).**

43.    The Plan satisfies the requirements of section 1129(a)(3) of the Bankruptcy Code. The Debtors have proposed the Plan and Plan Documents in good faith and not by any means forbidden by law.  In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the filing of these Chapter 11 Cases, the Plan itself, the process leading to its formulation, and the transactions to be implemented pursuant thereto.  Consistent with the overriding purpose of chapter 11, these Chapter 11 Cases were filed, and the Plan was proposed, with the legitimate purpose of allowing the Debtors to maximize the value of the Debtors' Estates.  The Debtors' good faith is evident from the facts and record of these Chapter 11 Cases, the Disclosure Statement, the Disclosure Statement Hearing, the record of the Confirmation Hearing, and all the other proceedings held in these Chapter 11 Cases and before the Bankruptcy Court.

44.    The Plan was proposed with the legitimate and honest purpose of maximizing the value of the Debtors' Estates and to effectuate a successful chapter 11 proceeding for the Debtors. The Plan was the product of extensive negotiations conducted at arm's length among the Debtors and certain of their key stakeholders including, but not limited to, the Committee.  Further, the Plan's classification, settlement, exculpation, release, and injunction provisions have been negotiated in good faith and at arm's length, are consistent with sections 105, 1122, 1123(b)(3)(A), 1123(b)(6), 1125(e), 1129, and 1142 of the Bankruptcy Code, and are each necessary for the Debtors to consummate a value-maximizing conclusion to these Chapter 11 Cases.  Accordingly, the requirements of section 1129(a)(3) of the Bankruptcy Code are satisfied.

**e) Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).**

45.    Payments made or to be made by the Debtors for services or for costs and expenses incurred in or in connection with these Chapter 11 Cases, or in connection with the Plan and incident to these Chapter 11 Cases, have been approved by, or are subject to the approval of, the Bankruptcy Court as reasonable.    The Plan, therefore, satisfies the requirements of section 1129(a)(4) of the Bankruptcy Code.

**f) Directors, Officers, and Insiders (11. U.S.C. § 1129(a)(5)).**

46.    Because the Plan provides for the orderly wind-down of the Debtors and resignation of the Debtors' officers, directors, and managers, section 1129(a)(5) of the Bankruptcy Code does not apply.  To the extent section 1129(a)(5) of the Bankruptcy Code applies to the Post-Effective Date Debtor, the Debtors have satisfied the requirements of this provision by, among other things, disclosing the identity of the Plan Administrator.

**g) No Rate Changes (11 U.S.C. § 1129(a)(6)).**

47.    The Plan does not contain any rate changes subject to the jurisdiction of any governmental regulatory commission and will not require governmental regulatory approval. Therefore, section 1129(a)(6) of the Bankruptcy Code does not apply to the Plan.

**h) Best Interests Test (11 U.S.C. § 1129(a)(7)).**

48.    The Plan satisfies the requirements of section 1129(a)(7) of the Bankruptcy Code. The evidence in support of the Plan that was proffered or adduced at the Confirmation Hearing and the facts and circumstances of these Chapter 11 Cases establish that each Holder of Allowed Claims or Interests in each Class will recover as much or more value under the Plan on account of such Claim or Interest, as of the Effective Date, than the amount such Holder would receive if the Debtors were liquidated on the Effective Date under chapter 7 of the Bankruptcy Code.  The Liquidation Analysis (as defined in the Disclosure Statement and attached as <u>Exhibit B</u> thereto),

and the other evidence related thereto, as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are persuasive and credible. The Liquidation Analysis demonstrates that recoveries under the Plan are at least as high as they would be in a hypothetical liquidation. The methodology used and assumptions made in the Liquidation Analysis as supplemented by any evidence proffered or adduced at or prior to the Confirmation Hearing, are reasonable.

### i) Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).

49.    The Plan satisfies section 1129(a)(8) of the Bankruptcy Code. Classes 1, 2, and 3 are Unimpaired Classes of Claims, each of which is conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code. Class 5 (General Unsecured Claims) voted to accept the Plan, and Class 4 (Prepetition Loan Claims) voted to reject the Plan. Class 6 and Class 7 are either Unimpaired by the Plan and conclusively presumed to have accepted the Plan or Impaired and deemed to have rejected the Plan. Class 8 and Class 9 are Impaired Classes that will not receive or retain any property under the Plan on account of the Claim in each such Class, are not entitled to vote on the Plan, and are deemed to reject the Plan. Nevertheless, as set forth below, the Debtors satisfy the requirements under section 1129(b) of the Bankruptcy Code with respect to the Claims that have rejected or are deemed to reject the Plan.

### j) Treatment of Claims Entitled to Priority Pursuant to Section 507(a) of the Bankruptcy Code (11 U.S.C. § 1129(a)(9)).

50.    The treatment of Administrative Claims, Priority Tax Claims, Professional Fee Claims, DIP Claims, and payment of U.S. Trustee statutory fees under Article II of the Plan satisfies the requirements of, and complies in all respects with, section 1129(a)(9) of the Bankruptcy Code.

**k) Acceptance by at Least One Impaired Class of Claims (11 U.S.C. § 1129(a)(10)).**

51.     The Plan satisfies the requirements of section 1129(a)(10) of the Bankruptcy Code. As set forth in the Voting Report, all Voting Classes are Impaired, and the requisite number and amount of Claims specified under the Bankruptcy Code voted to accept the Plan, determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code).  Further, as set forth in the Voting Report, the Classes that are not entitled to receive or retain any property under the Plan are, therefore, deemed to have rejected the Plan pursuant to section 1126(g) of the Bankruptcy Code.

**l)   Feasibility of the Plan (11 U.S.C. § 1129(a)(11)).**

52.     The evidence proffered or adduced at or prior to the Confirmation Hearing and in the DiDonato Declaration and the Confirmation Brief:  (a) is reasonable, persuasive, and credible as of the dates such evidence was prepared, presented, and/or proffered; (b) has not been controverted by other evidence; (c) establishes that the Plan is feasible; and (d) establishes that the Debtors or the Post-Effective Date Debtor will have sufficient funds available to meet their obligations under the Plan.  The Plan, therefore, satisfies the requirements of section 1129(a)(11) of the Bankruptcy Code.

**m) Payment of Bankruptcy Fees (11 U.S.C. § 1129(a)(12)).**

53.     Article XIII.C of the Plan provides for the payment of all fees payable by the Debtors under section 1930(a) of the Judicial Code.  The Plan, therefore, satisfies the requirements of section 1129(a)(12) of the Bankruptcy Code.

**n)   Non-Applicability of Certain Sections (11 U.S.C. §§ 1129(a)(13), 1129(a)(14), (15), and (16)).**

54.     The Debtors do not owe retiree benefit obligations, any domestic support obligations, are not individuals, and are not nonprofit corporations.    Therefore, sections

1129(a)(13), 1129(a)(14), 1129(a)(15), and 1129(a)(16) of the Bankruptcy Code do not apply to these Chapter 11 Cases.

**o)  Only One Plan (11 U.S.C. § 1129(c)).**

55.     Other than the Plan (including previous versions thereof), no other plan has been filed for the Debtors in these Chapter 11 Cases.  The Plan, therefore, satisfies the requirements of section 1129(c) of the Bankruptcy Code.

**p)  Principal Purpose of the Plan (11 U.S.C. § 1129(d)).**

56.     The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of Section 5 of the Securities Act, 15 U.S.C. § 77e.  The Plan, therefore, satisfies the requirements of section 1129(d) of the Bankruptcy Code.

**q)  Not a Small Business Case (11 U.S.C. § 1129(e)).**

57.     These Chapter 11 Cases are not small business cases, and accordingly section 1129(e) of the Bankruptcy Code is inapplicable in these Chapter 11 Cases.

**r)  Satisfaction of Confirmation Requirements.**

58.     Based upon the foregoing, the Plan satisfies the requirements for plan confirmation set forth in section 1129 of the Bankruptcy Code.

**R.      Likelihood of Satisfaction of Conditions Precedent to the Effective Date**

59.     Each of the conditions precedent to the Effective Date, as set forth in Article X.B of the Plan, has been or is reasonably likely to be satisfied or waived in accordance with Article X.C of the Plan.

**S.      Implementation**

60.     The Plan, all documents contained in the Plan Supplement, and all other relevant and necessary documents have been negotiated in good faith and at arm's length, are fair and reasonable, are supported by reasonably equivalent value and fair consideration, are in the best

interests of the Debtors, their Estates, and the Post-Effective Date Debtor, and shall, upon completion of documentation and execution in accordance with the terms and conditions of the Plan, be valid, binding, and enforceable documents and agreements not in conflict with any federal, state, or local law.  The documents and agreements are essential elements of the Plan and the Debtors have exercised reasonable business judgment in determining which documents and agreements to enter into and have provided sufficient and adequate notice of such documents and agreements.

**T.    Good Faith Solicitation (11 U.S.C. § 1125(e))**

61.    The Debtors have proposed the Plan in good faith, with the legitimate and honest purpose of maximizing the value of the Debtors' Estates for the benefit of their stakeholders.  The Plan accomplishes this goal.  Accordingly, the Debtors, the Released Parties, and the Exculpated Parties have been, are, and will continue to be acting in good faith if they proceed to: (a) consummate the Plan and the agreements, transactions, transfers, and other actions contemplated thereby, regardless of whether such agreements, transactions, transfers, and other actions are expressly authorized by this Confirmation Order; and (b) take any actions authorized and directed or contemplated by this Confirmation Order.  Therefore, the Plan has been proposed in good faith to achieve a result consistent with the objectives and purposes of the Bankruptcy Code and the aforementioned parties have also acted in good faith within the meaning of section 1125(e) of the Bankruptcy Code and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and the Exculpation provision set forth in Article IX.E of the Plan.

**U.    Executory Contracts and Unexpired Leases**

62.    Pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code, the Plan provides for the assumption or rejection of certain Executory Contracts and Unexpired Leases, effective as

of the Effective Date except as otherwise provided in the Plan or the Asset Purchase Agreement. The Debtors' determinations regarding the assumption or rejection of Executory Contracts and Unexpired Leases are based on and within the sound business judgment of the Debtors, are necessary to the implementation of the Plan, and are in the best interests of the Debtors, their Estates, Holders of Claims and Interests and other parties in interest in these Chapter 11 Cases.

## V.    Disclosure:  Agreements and Other Documents

63.    The Debtors have disclosed all material facts regarding:  (a) the Plan; (b) the sources and distribution of Cash under the Plan; (c) the adoption, execution, and delivery of all contracts, leases, instruments, releases, indentures, and other agreements related to any of the foregoing; (d) the various releases set forth in Article IX of the Plan; and (e) the adoption, execution, and implementation of the other matters provided for under the Plan involving corporate action to be taken by or required of the Post-Effective Date Debtor.

## <u>ORDER</u>

BASED ON THE FOREGOING FINDINGS OF FACT AND CONCLUSIONS OF LAW, IT IS THEREFORE ORDERED, JUDGED, AND DECREED THAT:

## A.    Findings of Fact and Conclusions of Law

64.    The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth in this Confirmation Order and constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable by Bankruptcy Rule 9014.  To the extent that any finding of fact is determined to be a conclusion of law, it is deemed so, and vice versa.

## B.    Final Approval of Disclosure Statement

65.    The Disclosure Statement shall be, and hereby is, approved on a final basis as containing adequate information within the meaning of section 1125 of the Bankruptcy Code and

sufficient information of a kind necessary to satisfy the disclosure requirements of any applicable non-bankruptcy laws, rules, and regulations.

## C.     Confirmation of the Plan

66.     The Plan shall be, and hereby is, confirmed under section 1129 of the Bankruptcy Code. With respect to Confirmation of the Plan as to any Debtors that do not currently have an impaired accepting class as set forth on the latest Voting Report, Confirmation is contingent upon the Debtors filing an amended Voting Report reflecting that an impaired accepting class (either Class 4 or Class 5) has accepted the Plan with respect to those Debtors, without prejudice to the right of the Debtors to seek Confirmation of the Plan as to such Debtors at a later date or to seek dismissal of such Debtors' Chapter 11 Cases. The Debtors are authorized to enter into and execute the all documents and agreements related to the Plan (including all exhibits and attachments thereto and documents referred to therein), and the execution, delivery, and performance thereafter by the Post-Effective Date Debtor, are hereby approved and authorized. The Debtors and the Post-Effective Date Debtor, as applicable, are authorized to take all actions necessary or appropriate to enter into, implement, and consummate the contracts, instruments, releases, leases, indentures, and other agreements or documents created in connection with the Plan, including without limitation entry into any agreements contained in the Plan Supplement, as applicable, as may be modified by the Debtors in their business judgment subject to the terms and conditions of the Plan. The terms of the Plan (including the Plan Supplement) shall be effective and binding as of the Effective Date.

67.     The failure to include or refer to any particular article, section, or provision of the Plan, the Plan Supplement (including, for the avoidance of doubt, the Non-Released Claims Trust Agreement), or any related document, agreement, or exhibit does not impair the effectiveness of that article, section, or provision; it being the intent of the Court that the Plan, the Plan Supplement, and any related document, agreement, or exhibit are approved in their entirety.

D.    **Objections**

68.    To the extent that any objections (including any reservations of rights contained therein) to Confirmation of the Plan or approval of the Disclosure Statement have not been withdrawn, waived, or settled before entry of this Confirmation Order, are not cured by the relief granted in this Confirmation Order, or have not been otherwise resolved as stated on the record of the Confirmation Hearing, all such objections (including any reservation of rights contained therein) are hereby overruled in their entirety and on the merits in all respects.

E.    **The Releases, Injunction, Exculpation, and Related Provisions Under the Plan**

69.    The following releases, exculpations, injunctions, and related provisions set forth in Article IX of the Plan are incorporated herein in their entirety, are hereby approved and authorized in their entirety, are so ordered, and shall be immediately effective and binding upon the Effective Date without further action or notice by this Bankruptcy Court, any of the Parties subject to such provisions, or any other party: (a) Release of Liens (Article IX.B), (b) Releases by the Debtors (Article IX.C), (c) Releases by Holders of Claims and Interests (Article IX.D), (d) Exculpation (Article IX.E), (e) Injunction (Article IX.F).  For the avoidance of doubt, none of the Plan's releases, exculpations, injunctions, and related provisions shall be deemed to release, enjoin, stay, or otherwise modify or impact any Non-Released Claims Trust Cause of Action or exculpate any party (including, but not limited to, any Released Party or Exculpated Party) from liability on account of any Non-Released Claims Trust Cause of Action.  Notwithstanding anything contained in this Order, the Plan, Disclosure Statement, or otherwise and regardless of whether 429-441 86th Street LLC ("Bayridge Landlord") has accepted or voted in favor of the Plan: (i) Bayridge Landlord is a non-Releasing Party as provided for on Exhibit B; (ii) the Third-Party Release shall not operate to release any rights, claims and remedies of Bayridge Landlord against non-debtor guarantor, Town Sports International Holdings, Inc. and any insider, director, officer, employee,

representative, agent, affiliate, predecessor, or successor and assign thereof (collectively, the "Guarantor"); and (iii) the Third-Party Release, the Injunction as it relates to the Third-Party Release, or any other provision herein or in the Plan, shall not hinder, modify, release, enjoin, or in any way affect Bayridge Landlord's rights, claims and remedies against Guarantor or release Guarantor's obligations to Bayridge Landlord.

70.     Notwithstanding anything to the contrary contained in this Confirmation Order, the Plan, any Plan Document, the Disclosure Statement, the Disclosure Statement Motion, each Ballot, or any other document, each Holder of a Class 4 Prepetition Loan Claim shall not be, and shall not be deemed to be, a Releasing Party as to the Purchaser, the DIP Lender, each respective current and former Affiliate of each of the Purchaser and the DIP Lender, and each respective Related Party of each of the Purchaser and the DIP Lender (collectively, the "Purchaser Parties"), and shall not provide, and shall not be deemed to provide, the Third-Party Release as set forth in Article IX.D of the Plan or otherwise to any Purchaser Party unless and until such Holder of a Class 4 Prepetition Loan Claim receives its pro rata share of consideration pursuant to the Sale Transaction and as set forth in the Sale Order (and further described in the *Declaration of Kyle Cleeton* [Docket No. 713]) on terms that are mutually agreeable to the Purchaser and the Term Lender Group, including, without limitation, a stockholders' agreement that is mutually agreeable to the Purchaser and the Term Lender Group; *provided, however*, that to the extent any Holder of a Class 4 Prepetition Loan Claim checked the box to "opt out" of the Third-Party Release on a timely submitted Ballot or otherwise timely objected to the Third-Party Release, such opt out and/or objection will continue to be effective and such party shall not constitute a Releasing Party regardless of its receipt of consideration pursuant to the Sale Transaction and as set forth in the Sale Order.

**F.      Classifications of Claims and Interests**

70.71.  The terms of the Plan shall govern the classification of Claims and Interests for purposes of the distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims or Interests in connection with voting on the Plan: (a) were set forth thereon solely for purposes of voting to accept or reject the Plan; (b) do not necessarily represent, and in no event shall be deemed to modify or otherwise affect, the actual classification of Claims and Interests under the Plan for distribution purposes; (c) may not be relied upon by any Holder of a Claim or Interest as representing the actual classification of such Claim or Interest under the Plan for distribution purposes; and (d) shall not be binding on the Debtors except for voting purposes.

**G.      Plan Supplement**

71.72.  The documents contained in the Plan Supplement, and any amendments, modifications, and supplements thereto, and all documents and agreements introduced into evidence by the Debtors at the Confirmation Hearing (including all exhibits and attachments thereto and documents referred to in the Plan Supplement), and the execution, delivery, and performance thereof by the Debtors and the Post-Effective Date Debtor and their successors are authorized when they are finalized, executed, and delivered.  Without further order or authorization of this Bankruptcy Court, the Debtors, the Post-Effective Date Debtor, and their successors are authorized and empowered to make all modifications to all documents included as part of the Plan Supplement that are consistent with the Plan.  Execution versions of the documents comprising or contemplated by the Plan Supplement shall constitute legal, valid, binding, and authorized obligations of the respective parties thereto, enforceable in accordance with their terms and, to the extent applicable, shall create all mortgages, Liens, deeds of trust, pledges, and security interests purported to be created thereby to the extent set forth in this Confirmation Order.

## H.    General Settlement of Claims and Interests

72.73.  Pursuant to section 1123 of the Bankruptcy Code, Bankruptcy Rule 9019 (as applicable), and in consideration for the classification, distributions, releases, and other benefits provided under the Plan, upon the Effective Date, the provisions of the Plan shall constitute a good-faith compromise and settlement of all Claims, Interests, Causes of Action, and controversies released, settled, compromised, or otherwise resolved pursuant to the Plan, including the settlement between the Debtors, the Term Lender Group, the Purchaser, and the Committee embodied in the Plan; *provided that*, for the avoidance of doubt, any settlement with the Committee is only with the Committee in its capacity as the official unsecured creditors' committee in these Chapter 11 Cases, and the Committee's agreement to any settlement does not bind individual creditors..  The Plan shall be deemed a motion to approve the good-faith compromise and settlement of all such Claims, Interests, Causes of Action, and controversies between the Debtors, the Term Lender Group, the Purchaser, and the Committee pursuant to Bankruptcy Rule 9019, and the entry of this Confirmation Order shall constitute this Bankruptcy Court's approval of such compromise and settlement, as well as a finding by this Bankruptcy Court that such settlement and compromise is fair, equitable, reasonable, and in the best interests of the Debtors and their Estates. Subject to Article VI of the Plan, all distributions made to Holders of Allowed Claims and Allowed Interests (as applicable) in any Class are intended to be and shall be final.

## I.    Restructuring Transactions

73.74.  On or before the Effective Date, the applicable Debtors or the Post-Effective Date Debtor shall enter into any transaction and shall take any actions as may be necessary or appropriate to effect the transactions described herein, including, as applicable, consummation of the Sale Transaction pursuant to the Asset Purchase Agreement, the issuance of all certificates and other documents required to be issued pursuant to the Plan, one or more intercompany mergers,

consolidations, amalgamations, arrangements, continuances, restructurings, conversions, dispositions, dissolutions, transfers, liquidations, spinoffs, intercompany sales, purchases, or other corporate transactions (collectively, the "Restructuring Transactions"). The actions to implement the Restructuring Transactions may include: (1) the execution and delivery of appropriate agreements or other documents of merger, consolidation, amalgamation, arrangement, continuance, restructuring, conversion, disposition, dissolution, transfer, liquidation, spinoff, sale, or purchase containing terms that are consistent with the terms of the Plan and Asset Purchase Agreement and that satisfy the applicable requirements of applicable law and any other terms to which the applicable Entities may agree; (2) the execution and delivery of appropriate instruments of transfer, assignment, assumption, or delegation of any asset, property, right, liability, debt, or obligation on terms consistent with the terms of the Plan and having other terms for which the applicable Entities agree; (3) the Filing of appropriate certificates or articles of incorporation, reincorporation, formation, merger, consolidation, conversion, amalgamation, arrangement, continuance, or dissolution pursuant to applicable state or provincial law; and (4) all other actions that the applicable Entities determine to be necessary or appropriate, including making Filings or recordings that may be required by applicable law in connection with the Plan. This Confirmation Order shall, and shall be deemed to, pursuant to sections 363 and 1123 of the Bankruptcy Code, authorize, among other things, all actions as may be necessary or appropriate to effect any transaction described in, contemplated by, or necessary to effectuate the Plan.

**J.      Sources of Consideration for Plan Distribution**

74.75. The Debtors and Post-Effective Date Debtor, as applicable, shall fund the distributions and obligations under the Plan with Available Cash held in the Administrative Claims Escrow, Priority Claims Reserve, and the Post-Effective Date Debtor Account, as applicable, on the Effective Date. After the funding from Available Cash of the Administrative Claims Escrow,

the Priority Claims Reserve, and the Post-Effective Date Debtor Account, all remaining Available Cash shall be applied towards the Prepetition Loan Claims until the Prepetition Loan Claims are paid in full in Cash.  In addition, any remaining Available Cash and Excess Distributable Cash after payment in full in Cash of the Prepetition Loan Claims, shall be paid to the Non-Released Claims Trust promptly after the full payment of the Prepetition Loan Claims.  The Non-Released Claims Trustee will fund distributions related to Holders of General Unsecured Claims with Cash from the Non-Released Claims Trust in accordance with the terms and conditions of the Non-Released Claims Trust Agreement.  As indicated in Article II of the Plan, pursuant to the Sale Order, the DIP Claims have been satisfied in connection with the Sale Transaction.

**K.    Post-Effective Date Debtor**

75.76.  The Debtors shall continue in existence after the Effective Date as the Post-Effective Date Debtor solely for the purposes of (l) winding down the Debtors' businesses and affairs as expeditiously as reasonably possible and liquidating any assets held by the Post-Effective Date Debtor, if any, (2) resolving any Disputed Claims (other than Disputed General Unsecured Claims), (3) paying Allowed Claims, (4) Filing appropriate tax returns, and (5) administering the Plan in an efficacious manner.  The Post-Effective Date Debtor shall be deemed to be substituted as the party-in-lieu of the Debtors in all matters, including (x) motions, contested matters, and adversary proceedings pending in this Bankruptcy Court and (y) all matters pending in any courts, tribunals, forums, or administrative proceedings outside of this Bankruptcy Court, in each case without the need or requirement for the Plan Administrator to file motions or substitutions of parties or counsel in each such matter.

76.77.  On the Effective Date, the Post-Effective Date Debtor Assets (other than the Non-Released Claims Trust Assets) shall vest in the Post-Effective Date Debtor for the primary purpose of liquidating the Post-Effective Date Debtor Assets and winding down the Debtors' Estates, with

33

no objective to continue or engage in the conduct of a trade or business. The Post-Effective Date Debtor will, in an expeditious but orderly manner, liquidate and convert to Cash the Post-Effective Date Debtor Assets, make timely distributions pursuant to the Plan and this Confirmation Order, and not unduly prolong its duration. Such assets shall be held free and clear of all Liens, Claims, and interests of Holders of Claims and Interests, except as otherwise provided in the Plan. The Post-Effective Date Debtor shall be deemed to be fully bound by the terms of the Plan and this Confirmation Order.

**L.    Plan Administrator**

77.78.  On the Effective Date, the authority, power, and incumbency of the persons acting as directors and officers of the Debtors shall be deemed to have resigned, solely in their capacities as such, and the Plan Administrator shall be appointed by the Debtors as the sole director and the sole officer of the Post-Effective Date Debtor and shall succeed to the powers of the Debtors' directors and officers. The Plan Administrator shall be the sole representative of, and shall act for the Post-Effective Date Debtor in the same fiduciary capacity as applicable to a board of managers and officers, subject to the provisions hereof (and all certificates of formation, membership agreements, and related documents are deemed amended by the Plan to permit and authorize the same). For the avoidance of doubt, the foregoing shall not limit the authority of the Post-Effective Date Debtor or the Plan Administrator, as applicable, to continue the employment any former director or officer.

78.79.  The Plan Administrator shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Plan Administrator, are necessary to assist the Plan Administrator in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Post-Effective Date Debtor, upon the monthly submission of statements to the Plan Administrator. The payment of the reasonable fees and

expenses of the Plan Administrator's retained professionals shall be made in the ordinary course of business and shall not be subject to the approval of the Bankruptcy Court.

**M.     Plan Administrator Exculpation, Indemnification, Insurance, and Liability Limitation**

79.80.  The Plan Administrator and all professionals retained by the Plan Administrator, each in their capacities as such, shall be deemed exculpated and indemnified, except for fraud, willful misconduct, or gross negligence, in all respects by the Post-Effective Date Debtor.  The Plan Administrator may obtain, at the expense of the Post-Effective Date Debtor, commercially reasonable liability or other appropriate insurance with respect to the indemnification obligations of the Post-Effective Date Debtor.  The Plan Administrator may rely upon written information previously generated by the Debtors.

**N.     Tax Returns**

80.81.  After the Effective Date, the Plan Administrator shall complete and file all final or otherwise required federal, state, and local tax returns for each of the Debtors and the Post-Effective Date Debtor, and, pursuant to section 505(b) of the Bankruptcy Code, may request an expedited determination of any unpaid tax liability of such Debtor or its Estate for any tax incurred during the administration of such Debtor's Chapter 11 Case, as determined under applicable tax laws.

**O.     Dissolution of the Post-Effective Date Debtor**

81.82.  Upon a certification to be Filed with this Bankruptcy Court by the Plan Administrator of all distributions having been made and completion of all its duties under the Plan and entry of a final decree closing the last of these Chapter 11 Cases, the Post-Effective Date Debtor shall be deemed to be dissolved without any further action by the Post-Effective Date Debtor, including the Filing of any documents with the secretary of state for the state in which the

Post-Effective Date Debtor is formed or any other jurisdiction.  The Plan Administrator, however, shall have authority to take all necessary actions to dissolve the Post-Effective Date Debtor in and withdraw the Post-Effective Date Debtor from applicable states.

**P.      Statutory Committee and Cessation of Fee and Expense Payment**

82.83.  On the Effective Date, any statutory committee appointed in these Chapter 11 Cases, including the Committee, shall dissolve and members thereof shall be released and discharged from all rights and duties from or related to these Chapter 11 Cases, except for the Filing of applications for compensation.  The Post-Effective Date Debtor shall no longer be responsible for paying any fees or expenses incurred by any statutory committee, including the Committee, after the Effective Date, except in connection with any fees or expenses for services rendered prior to the Effective Date that are Allowed by this Bankruptcy Court.

**Q.      Cancellation of Securities and Agreements**

83.84.  On the Effective Date, except as otherwise specifically provided for in the Plan: (1) the obligations of the Debtors under the Prepetition Loan Agreement Documents and any other certificate, Security, share, note, bond, indenture, purchase right, option, warrant, or other instrument or document directly or indirectly evidencing or creating any indebtedness or obligation of or ownership interest in the Debtors giving rise to any Claim or Interest (except such certificates, notes, or other instruments or documents evidencing indebtedness or obligation of or ownership interest in the Debtors that are Reinstated pursuant to the Plan) shall be cancelled solely as to the Debtors and their affiliates, and the Post-Effective Date Debtor shall not have any continuing obligations thereunder; and (2) the obligations of the Debtors and their affiliates pursuant, relating, or pertaining to any agreements, indentures, certificates of designation, bylaws, or certificate or articles of incorporation or similar documents governing the shares, certificates, notes, bonds, indentures, purchase rights, options, warrants, or other instruments or documents evidencing or

creating any indebtedness or obligation of or ownership interest in the Debtors (except such agreements, certificates, notes, or other instruments evidencing indebtedness or obligation of or ownership interest in the Debtors that are specifically Reinstated pursuant to the Plan) shall be released and discharged.  Notwithstanding the foregoing, no executory contract or unexpired lease that (i) has been, or will be, assumed pursuant to Section 365 of the Bankruptcy Code or (ii) relating to a Claim that was paid in full prior to the Effective Date, shall be terminated or cancelled on the Effective Date.

## R.    Corporate Action

84.85.  Upon the Effective Date, all actions contemplated under the Plan, regardless of whether taken before, on or after the Effective Date, shall be deemed authorized and approved in all respects, including:   (1) selection of the Plan Administrator; (2) implementation of the Restructuring Transactions; (3) consummation of the Sale Transaction under the Asset Purchase Agreement; (4) funding of all applicable escrows and accounts; (5) entry into and consummation of the Non-Released Claims Trust Agreement; and (6) all other actions contemplated under the Plan (whether to occur before, on, or after the Effective Date).  All matters provided for in the Plan or deemed necessary or desirable by the Debtors before, on, or after the Effective Date involving the corporate structure of the Debtors or the Post-Effective Date Debtor, and any corporate action required by the Debtors or the Post-Effective Date Debtor in connection with the Plan or corporate structure of the Debtors or Post-Effective Date Debtor shall be deemed to have occurred and shall be in effect on the Effective Date, without any requirement of further action by the security holders, directors, managers, or officers of the Debtors or the Post-Effective Date Debtor.  Before, on, or after the Effective Date, the appropriate officers of the Debtors or the Post-Effective Date Debtor, as applicable, shall be authorized to issue, execute, and deliver the agreements and documents, securities, and instruments contemplated under the Plan (or necessary or desirable to effect the

transactions contemplated under the Plan) in the name of and on behalf of the Post-Effective Date Debtor.  The authorizations and approvals contemplated by this Article IV.K shall be effective notwithstanding any requirements under non-bankruptcy law.

**S.      Effectuating Documents; Further Transactions**

85.86.   On and after the Effective Date, the Plan Administrator may issue, execute, deliver, file, or record such contracts, Securities, instruments, releases, and other agreements or documents and take such actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, the Restructuring Transactions, without the need for any approvals, authorization, or consents except for those expressly required pursuant to the Plan.

**T.      Section 1146 Exemption**

86.   To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, any transfers (whether from a Debtor to the Post-Effective Date Debtor or to any other Person) of property under the Plan or pursuant to:  (1) the issuance, distribution, transfer, or exchange of any debt, equity security, property, or other interest in the Debtors or the Post-Effective Date Debtor; (2) the Restructuring Transactions; (3) any Sale Transaction; (4) the transfer of the Non-Released Claims Trust Assets to the Non-Released Claims Trust; (5) the creation, modification, consolidation, termination, refinancing, and/or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (6) the making, assignment, or recording of any lease or sublease; or (7) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or

similar tax, mortgage tax, real estate or bulk transfer tax, mortgage recording tax, Uniform Commercial Code Filing or recording fee, regulatory Filing or recording fee, or other similar tax or governmental assessment, and upon entry of this Confirmation Order, the appropriate state or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax, recordation fee, governmental assessment. All Filing or recording officers (or any other Person with authority over any of the foregoing), wherever located and by whomever appointed, shall comply with the requirements of section 1146(a) of the Bankruptcy Code, shall forgo the collection of any such tax or governmental assessment, and shall accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

87.    To the fullest extent permitted by section 1146(a) of the Bankruptcy Code, the issuance, transfer, or exchange of a security, or the making or delivery of an instrument of transfer under the Plan, may not be taxed under any law imposing a stamp tax or similar tax.

**U.    Director and Officer Liability Insurance; Other Insurance**

87.88.  On or before the Effective Date, the Debtors shall purchase (to the extent not already purchased) and maintain directors, officers, managers, and employee liability tail coverage for the six-year period following the Effective Date, or such other directors, officers, managers, and employee liability coverage as the Debtors determine in their business judgment, on terms no less favorable than the Debtors' existing director, officer, manager, and employee coverage and with an aggregate limit of liability upon the Effective Date of no less than the aggregate limit of liability under the existing director, officer, manager, and employee coverage upon placement. Reasonable directors and officers insurance policies shall remain in place in the ordinary course during these Chapter 11 Cases and from and after the Effective Date.

88.89.  Any directors and officers insurance policies shall be assumed by the Debtors on behalf of the applicable Debtor and assigned to the Post-Effective Date Debtor effective as of the Effective Date, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such insurance policy previously was rejected by the Debtors or the Debtors' Estates pursuant to a Bankruptcy Court order or is the subject of a motion to reject pending on the Effective Date, and coverage for defense and indemnity under any such policies shall remain available to all individuals within the definition of "Insured" in any such policies.

## V.    Preservation of Causes of Action

89.90.  Except as otherwise provided in the Plan or in the Sale Order, in accordance with section 1123(b) of the Bankruptcy Code, but subject to Article IX of the Plan, each Debtor reserves and, as of the Effective Date, assigns to the Post-Effective Date Debtor, the Causes of Action (except for the Non-Released Claims Trust Causes of Action), which shall include those actions specifically enumerated in the Schedule of Retained Causes of Action.  On and after the Effective Date, the Post-Effective Debtor and the Plan Administrator (following transfer of such Causes of Action to the Plan Administrator) may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action (except for the Non-Released Claims Trust Causes of Action) of the Debtors on behalf of and for the benefit of the applicable beneficiaries, whether arising before or after the Petition Date, including any actions specifically enumerated in the Schedule of Retained Causes of Action, and the Post-Effective Date Debtor's or the Plan Administrator's rights to commence, prosecute, or settle such Causes of Action shall be preserved notwithstanding the occurrence of the Effective Date, other than the Causes of Action released by the Debtors pursuant to the releases and exculpations contained in the Plan, including in Article IX, which shall be deemed released and waived by the Debtors and the Post-Effective Date Debtor as of the Effective Date.

90.91.  The Post-Effective Date Debtor or the Plan Administrator, as applicable, may pursue such Causes of Action, as appropriate, in accordance with the best interests of the Post-Effective Date Debtor.  **No Entity may rely on the absence of a specific reference in the Plan, the Plan Supplement, or the Disclosure Statement to any Cause of Action against it as any indication that the Debtors, the Post-Effective Date Debtor, or the Plan Administrator, as applicable, will not pursue any and all available Causes of Action against it.  The Debtors, the Post-Effective Date Debtor, or the Plan Administrator, as applicable, expressly reserve all rights to prosecute any and all Causes of Action (except for any Non-Released Claims Trust Causes of Action) against any Entity, except as otherwise expressly provided in the Plan, including Article IX of the Plan.**  Unless any Causes of Action of the Debtors (except for any Non-Released Claims Trust Causes of Action) against a Person or Entity are waived, relinquished, exculpated, released, compromised, or settled in the Plan or a Final Order, the Post-Effective Date Debtor, or the Plan Administrator, as applicable, expressly reserve all Causes of Action (except for any Non-Released Claims Trust Causes of Action), for later adjudication, and, therefore, no preclusion doctrine, including the doctrines of res judicata, collateral estoppel, issue preclusion, claim preclusion, estoppel (judicial, equitable, or otherwise), or laches, shall apply to such Causes of Action upon, after, or as a consequence of the Confirmation or Consummation.

91.92.  The Debtors, the Post-Effective Date Debtor, or the Plan Administrator, as applicable reserve and shall retain such Causes of Action of the Debtors (except for any Non-Released Claims Trust Causes of Action) notwithstanding the rejection or repudiation of any Executory Contract or Unexpired Lease during these Chapter 11 Cases or pursuant to the Plan.  In accordance with section 1123(b)(3) of the Bankruptcy Code, (a) any Causes of Action that a Debtor may hold against any Person or Entity that is not a Non-Released Claims Trust Cause of Action

shall vest in the Post-Effective Date Debtor, except as otherwise expressly provided in the Plan, including Article III and Article VIII of the Plan and (b) any Non-Released Claims Trust Causes of Action that a Debtor may hold against any Person or Entity shall be transferred to ~~an~~ and automatically vest in the Non-Released Claims Trust free and clear of all liens, claims, encumbrances, and other interests other than the Non-Released Claims Trust Interests.  Prior to the Effective Date, the Debtors, and on and after the Effective Date, the Post-Effective Date Debtor, or the Plan Administrator, shall retain and shall have, including through their authorized agents or representatives, the exclusive right, authority, and discretion to determine and to initiate, File, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any such Causes of Action and to decline to do any of the foregoing without the consent or approval of any third party or further notice to or action, order, or approval of the Bankruptcy Court.

**W.     Section 1145 Exemption**

~~92.~~93.  Pursuant to section 1145 of the Bankruptcy Code and, to the extent that section 1145 of the Bankruptcy Code is inapplicable, section 4(a)(2) of the Securities Act, the issuance of any Interests pursuant to the Plan is exempt from, among other things, the registration requirements of section 5 of the Securities Act and any other applicable United States, state, or local law requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security.  As long as the exemption to registration under section 1145 of the Bankruptcy Code is applicable, Interests issued pursuant to the Plan are not "restricted securities" (as defined in rule 144(a)(3) under the Securities Act) and are freely tradable and transferable by any initial recipient thereof that (x) is not an "affiliate" of the Post-Effective Date Debtor (as defined in rule 144(a)(1) under the Securities Act), (y) has not been such an "affiliate" within 90 days of such transfer, and (z) is not an entity that is an "underwriter" as defined in section 1145(b) of the Bankruptcy Code.

X.      **The Non-Released Claims Trust**

~~93.~~94.  On the Effective Date, the Non-Released Claims Trust shall be established in accordance with Article VIII of this Plan and the Non-Released Claims Trust Agreement and the Non-Released Claims Trust Assets shall be transferred to or deemed transferred to, and automatically vest in, the Non-Released Claims Trust free and clear of all liens, claims, encumbrances, and other interests other than the Non-Released Claims Trust Interests.

~~94.~~95.  In accordance with Section 1123(b)(3) of the Bankruptcy Code, the Non-Released Claims Trustee, as representative of the Estates, shall have the exclusive right, authority, and standing to initiate, file, prosecute, enforce, abandon, settle, compromise, release, withdraw, or litigate to judgment any Non-Released Claims Trust Cause of Action, and to decline to do any of the foregoing without the consent or approval of any third party or further notice to, or action, order, or approval of, the Bankruptcy Court.  The Non-Released Claims Trustee shall be entitled to enjoy the benefits of section 108(a) of the Bankruptcy Code, and shall be deemed to be a trustee (as that term is used in section 108(a) of the Bankruptcy Code) for purposes of prosecuting the Non-Released Claims Trust Causes of Action.

Y.      **Treatment of Executory Contracts and Unexpired Leases**

~~95.~~96.  The provisions governing the treatment of Executory Contracts and Unexpired Leases set forth in Article V of the Plan (including the procedures regarding any and all disputes concerning the assumption, assumption and assignment, or rejection, as applicable, of such Executory Contracts and Unexpired Leases) shall be, and hereby are, approved in their entirety.

~~96.~~97.  On the Effective Date, except as otherwise provided in the Plan, each Executory Contract or Unexpired Lease not previously assumed, assumed and assigned, or rejected shall be deemed automatically rejected, pursuant to sections 365 and 1123 of the Bankruptcy Code, unless such Executory Contract or Unexpired Lease:  (1) is identified on the Assumed Executory

Contracts and Unexpired Leases Schedule; (2) is the subject of a motion to assume (or assume and assign) such Executory Contract that is pending on the Confirmation Date; (3) is a contract, instrument, release, indenture, or other agreement or document entered into in connection with the Plan; (4) is a directors and officers insurance policy; (5) is the Asset Purchase Agreement; or (6) is to be assumed by the Debtors and assigned to the Purchaser in connection with the Sale Transaction and pursuant to the Asset Purchase Agreement.

97.98.  Entry of this Confirmation Order by the Bankruptcy Court shall constitute a Final Order approving the assumptions, assumptions and assignments, or rejections of the Executory Contracts or Unexpired Leases pursuant to the Plan; *provided* that neither the Plan nor this Confirmation Order is intended to or shall be construed as limiting the Debtors' authority under the Sale Order to assume and assign Executory Contracts and Unexpired Leases to Purchaser pursuant to the Asset Purchase Agreement.  Any motions to assume Executory Contracts or Unexpired Leases pending on the Effective Date shall be subject to approval by this Bankruptcy Court on or after the Effective Date by a Final Order but may be withdrawn, settled, or otherwise prosecuted by the Post-Effective Date Debtor.  Each Executory Contract and Unexpired Lease assumed pursuant to Article V.A of the Plan or by any order of this Bankruptcy Court, which has not been assigned to a third party prior to the Confirmation Date, shall revest in and be fully enforceable by the Post-Effective Date Debtor in accordance with its terms, except as such terms are modified by the provisions of the Plan or any order of this Bankruptcy Court authorizing and providing for its assumption under applicable federal law.

98.99.  Notwithstanding anything to the contrary in the Plan, the Debtors, the Post-Effective Date Debtor, and the Plan Administrator, as applicable, with the consent of the Purchaser and the Term Lender Group not to be unreasonably withheld, reserve the right to alter, amend,

modify, or supplement the Assumed Executory Contracts and Unexpired Leases Schedule and the Rejected Executory Contracts and Unexpired Leases Schedule identified in this Article V of the Plan and in the Plan Supplement at any time through and including thirty (30) days after the Effective Date; *provided* that the foregoing extension shall not include leases with respect to real property.  The Debtors or the Post-Effective Date Debtor, as applicable, shall provide notice of any amendments to the Rejected Executory Contracts and Unexpired Leases Schedule or the Assumed Executory Contracts and Unexpired Leases Schedule to the parties to the Executory Contracts or Unexpired Leases affected thereby.

**Z.     Provisions Governing Distributions**

99.100.The procedures governing distributions contained in Article VI of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise set forth in the Plan or this Confirmation Order, the Distributions under the Plan shall be made by the Disbursing Agent (except for distributions made with respect to the Allowed General Unsecured Claims), which may be the Debtors or the Post-Effective Date Debtor (as applicable), or the Entity or Entities selected by the Debtors or the Post-Effective Date Debtor, as applicable, to make or facilitate distributions contemplated under the Plan, including the Plan Administrator, if applicable.

**AA.    Procedures for Resolving Disputed, Contingent, and Unliquidated Claims or Equity Interests**

100.101.     The procedures for resolving disputed, contingent, and unliquidated claims or equity interests contained in Article VII of the Plan shall be, and hereby are, approved in their entirety.  Except as otherwise provided in the Plan, as agreed to by the Post-Effective Date Debtor (or, with respect to General Unsecured Claims, the Non-Released Claims Trustee) or as ordered otherwise by the Bankruptcy Court, any and all Proofs of Claim Filed after the Claims Bar Date shall be deemed disallowed and expunged as of the Effective Date without any further notice to or

action, order, or approval of the Bankruptcy Court, and Holders of such Claims may not receive any distributions on account of such Claims, unless on or before the Confirmation Hearing such late Proof of Claim has been deemed timely Filed by a Final Order.

**BB.  The Non-Released Claims Trust**

~~101.~~102.    The provisions governing the Non-Released Claims Trust set forth in Article VIII of the Plan shall be, and hereby are, approved in their entirety.  Distributions made with respect to the Allowed General Unsecured Claims shall be made by the Non-Released Claims Trustee.  META Advisors LLC is recognized and approved as the initial Non-Released Claims Trustee, and the Non-Released Claims Trustee is (a) authorized to execute and perform under the Non-Released Claims Trust Agreement, to appear and be heard before this Bankruptcy Court on all matters relating to these Chapter 11 Cases and to present to creditors, other courts of competent jurisdiction, and any other party the Non-Released Claims Trust Agreement, the Plan, and this Confirmation Order as evidence of its authority and (b) vested with all of the power and authority set forth in the Plan and the Non-Released Claims Trust Agreement and otherwise as is necessary or proper to carry out the provisions of the Plan or the Non-Released Claims Trust Agreement, as applicable.

**CC.  Conditions to Effective Date**

~~102.~~103.    The provisions governing the conditions precedent to the Effective Date set forth in Article X of the Plan shall be, and hereby are, approved in their entirety.  The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order, subject to satisfaction or waiver of such provisions pursuant to their terms.

**DD.    Opt-Out Provision**

~~103.~~104.        Notwithstanding anything to the contrary in the Plan or this Confirmation Order, the Entities listed on Exhibit B shall be neither Released Parties nor Releasing Parties under the Plan with respect to the Third-Party Releases only.

**EE.    Provisions Governing Motionsoft, Inc.**

~~104.~~105.        Notwithstanding any terms to the contrary, nothing in the Plan or this Confirmation Order alters, modifies, prejudices, impairs, releases, or otherwise limits Motionsoft, Inc.'s rights, claims, interests, and defenses against the Purchaser under: (i) that certain Assignment and Assumption Agreement dated December 3, 2020, by and among Motionsoft, Inc., the Debtors, and the Purchaser (the "Motionsoft Assignment") and (ii) the Motionsoft Agreements described in the Motionsoft Assignment.

**FF.    Provisions Governing Liberty Mutual Insurance Company**

~~105.~~106.        Notwithstanding anything to the contrary in the Disclosure Statement, the Plan, any Plan Supplement, this Confirmation Order, any bar date notice or claim objection, any other document related to any of the foregoing, or any other order of the Bankruptcy Court (including, without limitation, any other provision that purports to be preemptory or supervening, grants an injunction, discharge or release, or requires a party to opt out of any release): (1) pursuant to Article V.F of the Plan, the Debtors shall be deemed to have assumed all insurance policies that have been issued by Liberty Mutual Insurance Company and any and all of its affiliates and subsidiaries (collectively, "Liberty Mutual") at any time or provide coverage, benefits or proceeds to any of the Debtors (or their predecessors) and all agreements, documents, or instruments relating thereto (collectively, the "Insurance Policies"), such Insurance Policies shall revest in the Post-Effective Date Debtor, and the Post-Effective Date Debtor shall remain liable in full for all of its and the Debtors' obligations thereunder, regardless of whether such obligations arise before or

after the Effective Date, without the requirement or need for Liberty Mutual ~~Insurance Company~~ to file a Proof of Claim, an Administrative Claim, a Cure Claim, or to object to any cure amount; (2) nothing shall alter, modify, amend, affect, impair, or prejudice the legal, equitable, or contractual rights, remedies, obligations, claims and defenses of Liberty Mutual, the Debtors (or, after the Effective Date, the Post-Effective Date Debtor) or any other individual or Entity, as applicable, under the Insurance Policies and applicable non-bankruptcy law, and all such rights and obligations shall be determined under the Insurance Policies and applicable non-bankruptcy law as if these Chapter 11 Cases had not occurred; and (3) nothing shall be deemed to prejudice any rights and/or defenses of Liberty Mutual in any pending or subsequent litigation or proceeding in which Liberty Mutual, the Debtors, the Debtors' Estates, the Post-Effective Date Debtor, the Plan Administrator, and each of the foregoing's agents or representatives may seek any declaration or other form of relief, in contract or in tort, in law or in equity, regarding the nature and/or extent of any insurance coverage under the Insurance Policies; *provided, however*, the rights, duties and obligations of Liberty Mutual under its Insurance Policies and applicable law shall not be impaired, altered or expanded by the exonerations, exculpations, and releases and injunctions contained in the Plan, including Article IX thereof, and nothing contained herein shall constitute a determination, consent to, or waiver of jurisdiction as to any dispute regarding insurance coverage or any of Liberty Mutual's rights and obligations arising under or in connection with the Insurance Policies or applicable law.  Additionally, for the avoidance of doubt, nothing contained in the Plan or this Confirmation Order shall release any claims or Causes of Action held by Liberty Mutual against the Debtors, the Debtors' Estates, and the Post-Effective Date Debtor.

**GG.    Provisions Governing Middlesex Lawsuit**

107.    Notwithstanding anything to the contrary contained herein, all claims asserted by TSI Wellington Circle, LLC in *TSI Wellington Circle, LLC v. Station Landing III, LLC,*

Massachusetts Superior Court Department of the Trial Court (Middlesex, SS) Civil Action No. 2081-cv-01603 (the "Middlesex Lawsuit"), or which could have been asserted by TSI Wellington Circle, LLC in the Middlesex Lawsuit, or which relate to the facts and allegations set forth in the pleadings filed in the Middlesex Lawsuit, are hereby released and discharged and shall not constitute Causes of Action or Retained Causes of Action, shall not be added to Exhibit C to the Plan Supplement, and shall not be assigned to the Post-Effective Date Debtor or Plan Administrator as of the Effective Date.

**HH.    Provisions Governing Oracle**

108.    By agreement of Oracle America, Inc. ("Oracle"), the Purchaser and the Debtors, the deadline to assume and assign any Executory Contract between Oracle and one or more Debtors (each an "Oracle Contract") shall be extended until such time as the Purchaser and Oracle reach an agreement regarding the terms for assumption and assignment of such Oracle Contract or the Purchaser gives notice to the Debtors and Oracle that such an agreement will not be reached (at which time such Oracle Contract shall automatically be deemed rejected) (such period, the "Oracle Designation Period"); provided, however, that during the Oracle Designation Period, the Purchaser shall be responsible for all costs and fees incurred by the Plan Administrator or Post-Effective Date Debtors that arise under such Oracle Contract(s) on or after the Effective Date, and to the extent that the Plan Administrator makes any payments on account thereof, the Purchase shall promptly reimburse the Plan Administrator for such payments.

**~~GG.~~II. Retention of Jurisdiction**

~~106.~~109.    The provisions governing the retention of jurisdiction set forth in Article XII of the Plan shall be, and hereby are, approved in their entirety.  This Bankruptcy Court may, and upon the Effective Date shall, retain exclusive jurisdiction over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XII of the Plan.

**III.JJ.        Immediate Binding Effect**

107.110.        Subject to Article X of the Plan and notwithstanding Bankruptcy Rules 3020(e), 6004(h), or 7062 or otherwise, upon the occurrence of the Effective Date, the terms of the Plan and the Plan Supplement shall be immediately effective and enforceable to the fullest extent permitted under the Bankruptcy Code and applicable nonbankruptcy law and deemed binding upon the Debtors, the Post-Effective Date Debtor, and any and all Holders of Claims or Interests (irrespective of whether their Claims or Interests are deemed to have accepted the Plan), the Purchaser and its affiliates, all Entities that are parties to or are subject to the settlements, compromises, releases, and injunctions described in the Plan, each Entity acquiring property under the Plan and any and all non-Debtor parties to Executory Contracts and Unexpired Leases with the Debtors.

**II.KK. Additional Documents**

108.111.        On or before the Effective Date, the Debtors may File with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.  The Debtors or Post-Effective Date Debtor, as applicable, and all Holders receiving distributions pursuant to the Plan, the Non-Released Claims Trustee and all other parties in interest may, from time to time, prepare, execute, and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of the Plan.

**JJ.LL. Payment of Statutory Fees**

109.112.        All fees payable pursuant to section 1930(a) of the Judicial Code, as determined by the Bankruptcy Court at a hearing pursuant to section 1128 of the Bankruptcy Code, shall be paid by the Post-Effective Date Debtor (or the Disbursing Agent on behalf of the Post-

Effective Date Debtor) for each quarter (including any fraction thereof) until these Chapter 11 Cases are converted, dismissed, or closed, whichever occurs first.

**KK.MM.      Term Lender Expenses and DIP Lender Expenses**

110.113.      The Term Lender Expenses and DIP Lender Expenses incurred, up to and including the Effective Date, shall be paid in full in Cash on the Effective Date (to the extent not previously paid during the course of these Chapter 11 Cases) without the requirement to file a fee application with this Bankruptcy Court or comply with any guidelines of the U.S. Trustee, and without any requirement for review or approval by this Bankruptcy Court or any other party.  All Term Lender Expenses and all DIP Lender Expenses to be paid on the Effective Date shall be estimated prior to and as of the Effective Date and such estimates shall be delivered to the Debtors at least five (5) Business Days before the anticipated Effective Date; provided, that such estimate shall not be considered an admission or limitation with respect to such Term Lender Expenses or DIP Lender Expenses, respectively.  In addition, the Debtors and Post-Effective Date Debtor (as applicable) shall continue to pay the Term Lender Expenses and DIP Lender Expenses, as necessary, after the Effective Date when due and payable in the ordinary course solely to the extent related to implementation, consummation and defense of the Plan, whether incurred before, on or after the Effective Date.

**LL.NN.      Reservation of Rights**

111.114.      Except as expressly set forth in the Plan, the Plan shall have no force or effect until entry of this Confirmation Order, and this Confirmation Order shall have no force or effect if the Effective Date does not occur.  None of the Filing of the Plan, any statement or provision contained in the Plan or the taking of any action by any Debtor with respect to the Plan, the Disclosure Statement or the Plan Supplement shall be or shall be deemed to be an admission

or waiver of any rights of any Debtor with respect to the Holders unless and until the Effective Date has occurred.

**MM.OO.**    **Notices**

~~112.~~115.    To the extent not consensually resolved, any notices, requests and demands to or upon the Debtors shall be made by filing a motion with the Bankruptcy Court.  After the Effective Date, the Post-Effective Date Debtor may notify Entities that, in order to continue to receive documents pursuant to Bankruptcy Rule 2002, such Entity must File a renewed request to receive documents pursuant to Bankruptcy Rule 2002.  After the Effective Date, the Debtors are authorized to limit the list of Entities receiving documents pursuant to Bankruptcy Rule 2002 to those Entities who have Filed such renewed requests.

**NN.PP.**    **Non-severability of Plan Provisions Upon Confirmation**

~~113.~~116.    The provisions of the Plan, including its release, injunction, exculpation and compromise provisions, are mutually dependent and non-severable.  This Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is:  (1) valid and enforceable pursuant to its terms; (2) integral to the Plan and may not be deleted or modified without the consent of the Debtors, consistent with the terms set forth herein; and (3) non-severable and mutually dependent, provided that, notwithstanding the inclusion of the Asset Purchase Agreement or any documents ancillary thereto in the Plan Supplement, the Sale Transaction contemplated in the Asset Purchase Agreement is severable from the Plan and this Confirmation Order, and the non-Confirmation or non-Consummation of the Plan shall not require or result in the voiding, rescission, reversal, or unwinding of the Sale Transaction contemplated in the Asset Purchase Agreement or the revocation of the Debtors' authority under the Sale Order to consummate such Sale Transaction.

### OO.QQ.   Governmental Approvals Not Required

114.117.   Except as otherwise specifically provided in this Confirmation Order, this Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

### PP.RR.   Recording

115.118.   The Debtors and the Post-Effective Date Debtor hereby are authorized to deliver a notice or short form of this Confirmation Order, with the Plan and Asset Purchase Agreement attached (in a form complying with any applicable non-bankruptcy rules or regulations), to any state or local recording officer.

### QQ.SS.   Effect of Conflict between Plan and Confirmation Order

116.119.   In the event of an inconsistency between the Plan and the Disclosure Statement, the terms of the Plan shall control in all respects. In the event of an inconsistency between the Plan and the Plan Supplement, the terms of the relevant provision in the Plan Supplement shall control (unless stated otherwise in such Plan Supplement document or in the Confirmation Order). In the event of an inconsistency between the Confirmation Order and the Plan or Plan Supplement, the Confirmation Order shall control.

### RR.TT.   Documents, Mortgages, and Instruments

117.120.   Each federal, state, commonwealth, local, foreign, or other governmental agency is authorized to accept any and all documents, mortgages, and instruments necessary or appropriate to effectuate, implement, or consummate the Plan, including the Restructuring Transactions, and this Confirmation Order.

**SS.UU.**        **Authorization to Consummate**

118.121.        The Debtors are authorized to consummate the Plan at any time after the entry of this Confirmation Order subject to the satisfaction or waiver (by the required parties) of the conditions precedent to the Effective Date set forth in Article X of the Plan.

**TT.VV.**        **Debtors' Actions Post-Confirmation Through the Effective Date**

119.122.        During the period from entry of this Confirmation Order through and until the Effective Date, each of the Debtors shall continue to operate their business as a debtor in possession, subject to the oversight of this Bankruptcy Court as provided under the Bankruptcy Code, the Bankruptcy Rules, and this Confirmation Order and any order of this Bankruptcy Court that is in full force and effect.  During such period, the Debtors and all other parties in interest under the Plan are authorized to execute such documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions without any further order of this Bankruptcy Court or corporate action, and to take any actions necessary or advisable or appropriate to implement the documents, agreements, or filings that are contemplated by the Plan, the Plan Supplement or the Restructuring Transactions, in each case subject to the terms and conditions of the Plan.

**UU.WW.**        **Notices of Confirmation and Effective Date**

120.123.        The Post-Effective Date Debtor shall serve notice of entry of this Confirmation Order, substantially in the form attached hereto as Exhibit C (the "Confirmation Order Notice") in accordance with Bankruptcy Rules 2002 and 3020(c), on all known Holders of Claims and Interests and the Bankruptcy Rule 2002 service list within ten Business Days after the Effective Date.  As soon as reasonably practicable after the Effective Date, the Post-Effective Date Debtor shall file notice of the Effective Date and shall serve a copy of the same on the above-referenced parties.  The notice of the Effective Date may be included in this Confirmation Order

Notice.  Notwithstanding the above, no notice of Confirmation or Consummation or service of any kind shall be required to be mailed or made upon any Entity to whom the Debtors mailed notice of the Confirmation Hearing, but received such notice returned marked "undeliverable as addressed," "moved, left no forwarding address," or "forwarding order expired," or similar reason, unless the Debtors have been informed in writing by such Entity, or are otherwise aware, of that Entity's new address.  Further, the Post-Effective Date Debtor shall only be required to serve those members who have not filed a proof of claim in these Chapter 11 cases with the Confirmation Order Notice to the extent that such members have active electronic mail addresses.  In addition, no later than five Business Days after the Effective Date, the Post-Effective Date Debtor shall cause this Confirmation Order Notice, modified for publication, to be published on one occasion in *USA TODAY* or another similar nationally circulated news publication.  The above-referenced notices are adequate under the circumstances of these Chapter 11 Cases, and no other or further notice is necessary.

## VV. XX.     Headings

121. 124.     Headings utilized in this Confirmation Order are for convenience and reference only, and do not constitute a part of the Plan or this Confirmation Order for any other purpose.

## WW. YY.     Final Order and Waiver of Stay

122. 125.     For good cause shown, the stay of this Confirmation Order provided by any Bankruptcy Rule is waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry by this Bankruptcy Court.  This Confirmation Order is a Final Order and shall take effect immediately be effective and enforceable immediately upon entry, and its provisions shall be self-executing, and the period in which an appeal must be filed shall commence

upon the entry hereof.  In the absence of any Person obtaining a stay pending appeal, the Debtors

are authorized to consummate the Plan.

## **Exhibit A**

**Plan**

**<u>Exhibit B</u>**

**Opt-Out Parties**

27445870.1                                    **Exhibit C**

**Confirmation Order Notice**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] | Case No. 20-12168 (CSS) |
| | (Jointly Administered) |
| Debtors. | |

**NOTICE OF (I) ENTRY OF CONFIRMATION ORDER,
(II) OCCURRENCE OF EFFECTIVE DATE, AND (III) RELATED BAR DATES**

 **PLEASE TAKE NOTICE THAT** on December 14, 2020, the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") confirmed the *Second Amended Joint Chapter 11 Plan of Reorganization of Town Sports International, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Plan"),[2] which was attached as Exhibit A to the *Findings of Fact, Conclusions of Law, and Order Confirming the First Amended Joint Chapter 11 Plan of Reorganization of Town Sports International, LLC and Its Debtor Affiliates Pursuant to Chapter 11 of the Bankruptcy Code* [Docket No. [●]] (the "Confirmation Order").

 **PLEASE TAKE FURTHER NOTICE THAT** the Effective Date, as defined in the Plan, occurred on [_____], **2020**.

 **PLEASE TAKE FURTHER NOTICE THAT** pursuant to Article V.C of the Plan, unless otherwise wise provided by a Final Order of the Bankruptcy Court, all Proofs of Claim with respect to Claims arising from the rejection of Executory Contracts or Unexpired Leases, pursuant to the Plan or this Confirmation Order, if any, must be Filed with the Bankruptcy Court within thirty (30) days after the later of (1) the date of entry of an order of the Bankruptcy Court (including this Confirmation Order) approving such rejection, (2) the effective date of such rejection, or (3) the Effective Date. **Any Claims arising from the rejection of an Executory Contract or Unexpired Lease not Filed with the Bankruptcy Court within such time will be automatically disallowed, forever barred from assertion, and shall not be enforceable against the Debtors or the Post-Effective Date Debtor, the Estates, or their property without the need for any objection by the Post-Effective Date Debtor or further notice to, or action, order, or approval of the Bankruptcy Court or any other Entity, and any Claim arising out of the rejection of the Executory Contract or Unexpired Lease shall be deemed fully satisfied, released, and**

---

[1]  The last four digits of Town Sports International, LLC's federal tax identification number are 7365.  The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523.  Due to the large number of debtors in these jointly administered cases a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports, or by contacting the undersigned counsel for the Debtors.

[2]  Capitalized terms used but not otherwise defined herein shall have the meanings given to them in Plan.

**discharged, notwithstanding anything in a Proof of Claim to the contrary, unless otherwise ordered by the Bankruptcy Court.**  All Allowed Claims arising from the rejection of the Debtors' Executory Contracts or Unexpired Leases shall be classified as General Unsecured Claims and shall be treated in accordance with Article III of the Plan or such other treatment as agreed to by the Post-Effective Date Debtor and the Holder of such Claim.

**PLEASE TAKE FURTHER NOTICE THAT**, except as otherwise provided by this Confirmation Order, the Plan, or a Final Order of the Bankruptcy Court, the deadline for filing requests for payment of Administrative Claims shall be the later of [_____**], 2021** (the "Administrative Claim Bar Date"), which is the first Business Day that is 30 days after the Effective Date.  If a Holder of an Administrative Claim (other than DIP Claims, Professional Fee Claims, or claims subject to section 503(b)(1)(D) of the Bankruptcy Code) that is required to, but does not, file and serve a request for payment of such Administrative Claim by the Administrative Claim Bar Date, such Holder shall be hall be forever barred, estopped, and enjoined from asserting such Administrative Claims against the Debtors, the Post-Effective Date Debtor, or their property, and such Administrative Claims shall be deemed discharged as of the Effective Date without the need for any objection from the Post-Effective Date Debtor or any notice to or action, order, or approval of the Bankruptcy Court.

**PLEASE TAKE FURTHER NOTICE THAT**, pursuant to the Plan, the Deadline to file final requests for payment of Professional Fee Claims is [_____**], 2021** (the "Professional Fee Application Deadline"), which is the first Business Day that is sixty (60) days after the Effective Date.  All professionals must file final requests for payment of Professional Fee Claims by no later than the Professional Fee Application Deadline to receive final approval of the fees and expenses incurred in these Chapter 11 Cases.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan and its provisions are binding on the Debtors, the Post-Effective Date Debtor, any Holder of a Claim or Interest and such Holder's respective successors and assigns, whether or not the Claim or Interest of such Holder is Impaired under the Plan, and whether or not such Holder or Entity voted to accept the Plan.

**PLEASE TAKE FURTHER NOTICE THAT** the Plan, this Confirmation Order, and other documents and materials filed in these Chapter 11 Cases may be obtained at no charge from Epiq Corporate Restructuring, LLC, the notice and claims agent retained by the Debtors in these Chapter 11 Cases (the "Notice and Claims Agent") by (a) visiting the Debtors' restructuring website at https://dm.epiq11.com/TownSports, (b) writing to: Epiq Corporate Restructuring, LLC, Re: Town Sports International, LLC, et al., 10300 SW Allen Blvd., Beaverton, OR 97005, (c) emailing TownSports@epiqglobal.com, or (d) calling the Debtors' Notice and Claims Agent at (888) 490-0677 (Domestic) or +1 (503) 520-4484 (International).  You may also obtain copies of any pleadings filed in these Chapter 11 Cases for a fee via PACER at: https://ecf.deb.uscourts.gov/.

Dated: Wilmington, Delaware
December [●], 2020

YOUNG CONAWAY STARGATT & TAYLOR, LLP

_____

Robert S. Brady (No. 2847)
Sean T. Greecher (No. 4484)
Travis G. Buchanan (No. 5595)
Allison S. Mielke (No. 5934)
1000 North King Street
Wilmington, Delaware 19801
Telephone:  (302) 571-6600
Email: rbrady@ycst.com
        sgreecher@ycst.com
        tbuchanan@ycst.com
        amielke@ycst.com
and

KIRKLAND & ELLIS LLP
Nicole L. Greenblatt, P.C. (admitted *pro hac vice*)
Derek I. Hunter (admitted *pro hac vice*)
601 Lexington Avenue
New York, New York 10022
Telephone:  (212) 446-4800
Email: nicole.greenblatt@kirkland.com
        derek.hunter@kirkland.com

KIRKLAND & ELLIS LLP
Mark McKane, P.C. (admitted *pro hac vice*)
555 California Street
San Francisco, CA 94104
Telephone:  (415) 439-1400
Email:  mark.mckane@kirkland.com

KIRKLAND & ELLIS LLP
Joshua M. Altman (admitted *pro hac vice*)
300 North LaSalle Street
Chicago, Illinois 60654
Telephone: (312) 862-2000
Email:  josh.altman@kirkland.com

*Counsel to the Debtors*
*and Debtors in Possession*