**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

----------------------------------------------------------X
In re:                                              :        Chapter 11
                                                    :
TOWN SPORTS INTERNATIONAL, LLC *et al.*,[1] :        Case No. 20-12168 (CSS)
                                                    :
                         Debtors.      :        (Jointly Administered)
----------------------------------------------------------X

**MOTION OF TOWN SPORTS INTERNATIONAL HOLDINGS, INC.**
**FOR ENTRY OF AN ORDER ENFORCING THE TERMS OF THE**
**CHAPTER 11 PLAN RELEASES AND INJUNCTION**

Town Sports International Holdings, Inc. ("TSIH"), a Related Party and Affiliate[2] of Town

Sports International, LLC (the "Debtor" or "TSIL"), together with its affiliated debtors

(collectively, the "Debtors") in the above-captioned cases, hereby submits this motion for an order

enforcing the Chapter 11 Plan Injunction and related releases (as defined hereafter) against the

NYAG (as defined hereinafter). In support thereof, TSIH respectfully states as follows:

**INTRODUCTION**

1.      The Court's order ("Confirmation Order," D.I. 828) confirming a liquidating plan

(the "Plan", D.I. 828-1) for the Debtors, released and exculpated the Debtors and TSIH from all

claims against them by any "Releasing Party" who did not opt out of the clear and unambiguous

release provisions of the Plan.  Despite ample opportunity to object to confirmation of the Plan or

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. Due to the large number of debtors in these cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein.A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports, or by contacting counsel for the Debtors.

[2] As discussed further below, TSIH is both a Related Party and Affiliate as those terms are defined in the Plan.

opt out of the Plan's release provisions, the New York Attorney General ("NYAG") failed to do so.  This failure to opt-out of the release provisions of the Plan operates to render the NYAG a releasor with respect to all of the releases and exculpation provisions in the Plan and Confirmation Order, including, but not limited to, the release of all of the NYAG's claims and causes of action against TSI and the Debtor.  Thus, the NYAG has no claims against TSIH or Debtor and any judgment obtained by the NYAG against TSIH or the Debtors, including the judgment described in further detail below, is *void ab initio* and unenforceable.

2.      The NYAG and, of course, the Debtors were keenly aware of the proceedings in this Court, as TSIH filed notices of these bankruptcy proceedings in a state court action that the NYAG filed against the Debtor and TSIH, Index No. 0451969/2020 in New York Supreme Court ("NYAG Action"). The NYAG Action was based on claims predating the Debtors' bankruptcy filing and the Plan in these cases. Specifically, pursuant to the NYAG Action, the NYAG seeks reimbursement and related penalties and *monetary* damages arising from alleged unlawful charges to consumers from March through September 1, 2020, which allegedly took place at the beginning of the COVID-19 pandemic. On December 18, 2020, the Court entered the Confirmation Order, which provided for a permanent injunction barring any further prosecution, continuation of, or settlement of lawsuits for claims that were released or exculpated by the Plan, which included all of claims in the NYAG Action.

3.      Despite its awareness of the proceedings in this Court, the NYAG and the counsel for the Debtor proceeded to enter into a purported settlement agreement, an agreement that counsel negotiated and signed on behalf of TSIH although counsel was no longer representing TSIH and TSIH had no knowledge of the purported agreement until it was finalized and publicized by an NYAG press release.  The consideration for the purported settlement is the release of a $250,000

surety bond posted by TSIH. The New York State Supreme Court entered a final judgment approving the claimed settlement in the NYAG Action.  This purported settlement agreement was never agreed to by all parties, and it was in violation of this Court's order granting a permanent injunction prohibiting the prosecution of the NYAG Action and any other acts affecting released claims and causes of action after the Plan's confirmation.  Accordingly, TSIH respectfully requests that the Court declare the claimed settlement *void ab initio* and order the Debtors and NYAG to promptly undo any orders entered in the NYAG action that give any effect whatsoever to this purported settlement.

## BACKGROUND AND PROCEDURAL HISTORY

### I.    TSIH and its Existence Pre-Petition

4.    TSIH was incorporated in Delaware on January 20, 2004, more than 16 years before the Debtors filed their Chapter 11 petitions in these cases. (Walsh Decl. at 1).[3]  Prior to the filing of the bankruptcy petitions on September 14, 2020 and during the pendency of the bankruptcy cases, TSIH was a holding company that owned, among other things, 100% of the membership interests of THIL, and therefore was involved in Debtor's operations and was a parent, affiliate and related party managing the Debtor's business. (*Id.* at 1-2). Specifically, as noted in the Declaration of Phillip Juhan, the Chief Financial Officer of TSIH and the former Chief Financial Officer of THIL, filed in these matters in support of the First Day Motions, "[e]ach of the Debtors are direct or indirect subsidiaries of Town Sports International Holdings, Inc. . . ., which is publicly-traded holding company." (D.I. 12, Juhan Decl. at 2). The organizational chart included with that declaration shows the former extent of TSIH's ownership of, and control over, THIL's property and its operations. (*Id*).

---

[3] The Walsh Declaration, including Exhibits A-D, are filed with and attached to this Motion.

**II.     Procedural History in this Court**

5.      On September 14, 2020, THIL filed voluntary Chapter 11 bankruptcy petitions in this Court. (D.I. 1, Voluntary Ch. 11 Petition). On December 18, 2020, the Bankruptcy Court entered its Confirmation Order confirming the Plan for Debtors. (D.I. 828, Confirmation Order).

**A.     The Plan's Releases and Exculpation Provisions**

6.      The Plan provides that "***Releasing Parties***" shall be "deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each ***Debtor, Post-Effective Date Debtor, and Released Party*** from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever[.]" (D.I. 828-1, Plan at 41.)  Under the Plan, "Releasing Parties" include "all Holders of Claims or Interests . . . *provided* that in each case, an Entity shall not be a Releasing Party if it: (x) timely submits a valid opt out form indicating it elects to opt out of the releases contained in the Plan or (y) timely files with the Bankruptcy Court on the docket of the Chapter 11 Cases an objection to the releases contained in the Plan that is not resolved before Confirmation; provided, further, that any such Entity shall be identified by name as a non-Releasing Party in the Confirmation Order." (D.I. 828-1, Plan at 11).  The NYAG, unlike several other parties who took advantage of the opportunity to opt out of the releases conferred under the Plan, is not listed on the Plan's Opt-Out List that was part of the Confirmation Order. (D.I. 828-2 at 2). Nor has there been any objection by the NYAG in these cases that would remove it from the scope of the Plan's releases and exculpation provisions that were approved by the Confirmation Order.

7.      Indeed, the NYAG is not identified anywhere in the Plan or Confirmation Order as a "non-Releasing Party," and the NYAG falls well within the definition of a "Holder of Claims or Interests"—a "Holder" under the Plan is defined as "an Entity holding a Claim or an Interest in

any Debtor." (*Id.* at 6). A "Claim," in turn, is defined as having the same meaning of "claim" under Section 101(5) of the Bankruptcy Code, which includes any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured." (*Id.* at 3); 11 U.S.C. § 101(5).  The NYAG is a Holder of claims against TSIH and Debtor—claims that it raised in the NYAG Action, seeking, among other things, release of a $250,000 bond and "monetary damages or other monetary relief." (Walsh Decl. Ex. A at 23).

8.      The Plan defines "Released Parties," in relevant part as "the Debtors[,] . . . each current and former Affiliate of" the Debtor or any Released Party, and "each Related Party" of the Debtor or any Released Party. (D.I. 828-1, Plan at 10.) An "Affiliate" has the same meaning as Section 101(2) of the Bankruptcy Code (*id.* at 1), which includes:

(A) an "entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor,"

(B) a "corporation 20 percent or more of whose outstanding voting securities are directly or indirectly owned, controlled, or held with power to vote, by the debtor, or by an entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor,"

(C) a "person whose business is operated under a lease or operating agreement by a debtor, or person substantially all of whose property is operated under an operating agreement with the debtor; or

5

(D) [an] entity that operates the business or substantially all of the property of the debtor under a lease or operating agreement."

As noted above, TSIH was the direct parent holding company of 100% of the membership interests of THIL and the indirect majority owner of the other Debtors and therefore had ownership and power over the Debtors and operated the businesses or substantially all of the property of the Debtors. Thus, TSIH is a former Affiliate of the Debtors and a "Released Party."

9.      "Related Party" under the Plan is defined as:

current and former directors, managers, officers, investment committee members, special or other committee members, equity holders (regardless of whether such interests are held directly or indirectly), affiliated investment funds or investment vehicles, managed accounts or funds, predecessors, participants, successors, assigns, subsidiaries, Affiliates, partners, limited partners, general partners, principals, members, management companies, fund advisors or managers, employees, agents, trustees, advisory board members, financial advisors, attorneys (including any other attorneys or professionals retained by any current or former director or manager in his or her capacity as director or manager of an Entity), accountants, investment bankers, consultants, representatives, and other professionals and advisors and any such Person's or Entity's respective heirs, executors, estates, and nominees; provided that Related Party shall not include any holder of an equity security in Town Sports International Holdings, Inc., in such capacity.

(D.I. 828-1, Plan at 10). TSIH falls within the broad definition of a "Related Party," and therefore also falls in the definition of "Released Parties" which includes current and former Affiliates, Related Parties, Affiliates of Related Parties or Related Parties of Affiliates, "assigns," "managers," "management companies," "principals," "equity holders," "members" and other defined groups that would include TSIH, the former publicly-traded holding company of Debtor.

10.     The Plan also defines an "Exculpated Party" as the Debtor and all current and former Affiliates of the Debtor and Related Party of the Debtor such as TSIH. (D.I. 828-1, Plan at 5). The Plan provides that Exculpated Parties shall "neither have nor incur, and each Exculpated Party is released and exculpated from, any liability to any Holder of a Cause of Action, Claim, or

Interest that arises on or before the Effective Date [of the Plan] for any (a) prepetition act or omission in connection with, relating to, or arising out of, formulating, negotiating, or preparing the Plan, or (b) postpetition act or omission in connection with, relating to, or arising out of, the Chapter 11 Cases[.]" (*Id.* at 41).

### B.    The Confirmation Order's and Plan's Injunction

11.    The Plan provides that "all Entities who have held, hold, or may hold Claims or Interests that have been released, settled, or are subject to exculpation are permanently enjoined, from and after the Effective Date, from taking any of the following actions against, as applicable, the Debtors, the Post- Effective Date Debtor, the Exculpated Parties, or the Released Parties," among other things:

> (1) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests; . . . enforcing, attaching, collecting, or recovering by any manner or means any judgment, award, decree, or order against such Entities on account of or in connection with or with respect to any such Claims or Interests; (3) creating, perfecting, or enforcing any encumbrance of any kind against such Entities or the property or the estates of such Entities on account of or in connection with or with respect to any such Claims or Interests; (4) asserting any right of setoff, subrogation, or recoupment of any kind, except to the extent such assertions are used as a defense to claims or Causes of Action by the Debtors arising prior to the Effective Date, against any obligation due from such Entities or against the property of such Entities on account of or in connection with or with respect to any such Claims or Interests unless such Holder has Filed a motion requesting the right to perform such setoff on or before the Effective Date, and notwithstanding an indication of a Claim or Interest or otherwise that such Holder asserts, has, or intends to preserve any right of setoff pursuant to applicable law or otherwise; and (5) commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan.

(*Id.* at 42). The injunction takes effect upon entry of the Confirmation Order, which took place on December 18, 2020. (*Id*).

12.    The Confirmation Order further provides that the Bankruptcy Code permits "issuance of the injunction provisions set forth in . . . the Plan (the 'Injunction') and are within the jurisdiction of this Bankruptcy Court under sections 1334(a), 1334(b), and 1334(d) of the Judicial Code." (D.I. 828, Confirmation Order at 17). The Court further ruled that the "Injunction is essential to the Plan and is necessary to implement the Plan and to preserve and enforce the Debtor Release, the Third-Party Release, and the Exculpation provisions in Article IX of the Plan." (*Id*).

13.    This Court retains exclusive jurisdiction "over the matters arising in, and under, and related to, these Chapter 11 Cases, as set forth in Article XII of the Plan." (*Id.* at 50). The Plan provides further that the Court has "exclusive jurisdiction over all matters arising out of, or related to, the Chapter 11 Cases and the Plan pursuant to sections 105(a) and 1142 of the Bankruptcy Code, including jurisdiction to: . . . issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Entity with Consummation or enforcement of the Plan;" to "resolve any cases, controversies, suits, disputes or Causes of Action with respect to the releases, injunctions and other provisions contained in Article IX, and enter such orders as may be necessary or appropriate to implement such releases, injunctions and other provisions;" to "hear and determine all disputes involving the existence, nature, scope, or enforcement of any exculpations, discharges, injunctions, and releases granted in connection with and under the Plan, including under Article IX;" and to "enforce all orders previously entered by the Bankruptcy Court[.]" (D.I. 828-1, Plan at 47).

III.    **The NYAG Action and Purported Settlement in that Action**

14.    On September 30, 2020, the NYAG filed suit against TSIH and TSIL (the "NYAG Action"). (Walsh Decl. at 2-3, Ex. A). The suit was entirely based on conduct that occurred before the bankruptcy petition in this case was filed and the Plan was confirmed—consumer complaints

from the start of the current COVID-19 pandemic until September 1, 2020. (*Id*).  The lawsuit brought claims related to fraud and other causes of action and asked for, among other things, a court order requiring a $250,000 surety bond posted by TSIH, for the benefit of TSIL and other Debtors and no-debtors, to be released to the NYAG. (*Id*).  The case proceeded without any answer being filed by TSIH or TSIL, and on March 3, 2021, the NYAG and purported counsel for the Debtors and TSIH in that matter announced in a press release a purported settlement (the "Settlement") agreement between all of the parties. (*Id.* at 4). The Settlement contains a mutual release of all claims between the parties, but with TSIH and TSIL agreeing to the release of a $250,000 bond to the NYAG. (*Id.* at 4-5, Ex. C).  The Settlement does not differentiate between TSIH and TSIL, leaving it unclear upon whom bond obligations fall, whether TSIH or TSIL. (*Id*). The claimed agreement was not signed by any officer of TSIH and instead was only signed by prior counsel for TSIH. (*Id.*, Ex. C).  After the Settlement was filed with the court in the NYAG action, the state court approved it and entered a final judgment based on the terms of the Settlement. (*Id.* at 6-7, Ex. D).

15.    Before the Settlement was executed, the undersigned was retained as counsel to replace the prior counsel of record for TSIH in the NYAG action, who was the same counsel that represented TSIL in the NYAG Action. (*Id* at 5-6).  Although prior counsel was joint counsel for TSIH and TSIL, neither TSIH or the undersigned was ever informed of the Settlement Agreement before it was executed, and its chief executive officer learned of the Settlement Agreement by way of a press release from the NYAG, after prior counsel was informed that it was being replaced. (*Id.* at 5-7).  The undersigned promptly raised these issues with TSIH's prior counsel, the NYAG, and the court in the NYAG action. (*Id* at 5-6).

16.    Neither the NYAG nor the Debtors sought this Court's approval before settling on behalf of TSIL, a Debtor, or entering into an agreement relating to the $250,000 bond (which could lead to significant subrogation claims against the estate by TSIH); nor, did either party disclose to the court in the NYAG action the scope of the releases or injunction under the Plan that was confirmed by this Court. (*Id.* at 6-7). The NYAG only attached as an exhibit to its Verified Petition in state court a copy of the Debtor's motion to abandon certain property and referenced the petition, and TSIH's prior counsel also filed a letter on the docket to the NYAG notifying the NYAG and state court that the action was subject to the Bankruptcy Court's automatic stay. (*Id.* at 2-3. Ex. A, Ex. B).

## LEGAL STANDARD

17.    "A bankruptcy court plainly has jurisdiction to enforce its own injunction," and the Court has broad discretion to enforce its orders. *In re LandSource Communities Dev., LLC*, 612 B.R. 484, 494 (D. Del. 2020) ("[T]he Bankruptcy Court was best suited to interpret its own order and properly exercised its discretion to reopen the cases and adjudicate the Enforcement Motion."), *aff'd sub nom. LandSource Communities Dev. LLC v. Citizens Against Corp. Crime, LLC*, 834 F. App'x 747 (3d Cir. 2020); *In re Cont'l Airlines, Inc.*, 236 B.R. 318, 326 (Bankr. D. Del. 1999) ("[W]e do not find significant the fact that the Plan may have been substantially consummated in this case. That fact does not divest us of our inherent jurisdiction to enforce the Confirmation Order issued by this Court."), *aff'd sub nom. In re Cont'l Airlines, Inc.*, 279 F.3d 226 (3d Cir. 2002). Parties are entitled to ask the Court to enforce an injunction that the Court has already put in place, without filing an adversary proceeding. *In re Cont'l Airlines, Inc.*, 236 B.R. at 327.

18.    "[W]here there is a close nexus to the bankruptcy plan or proceeding, as when a matter affects the interpretation, implementation, consummation, execution, or administration of a confirmed plan or incorporated litigation trust agreement, retention of post-confirmation bankruptcy court jurisdiction is normally appropriate." *Binder v. Price Waterhouse & Co., LLP (In re Resorts Int'l, Inc.),* 372 F.3d 154, 168-69 (3d Cir. 2004).  Because the Settlement involves claims against the Debtor and Debtor's Affiliates and Related Parties, as well as a bond that was purportedly released to the NYAG in a settlement agreement by both the Debtor and TSIH, it is a "core proceeding" under the Bankruptcy Code and, in any event, there is a close nexus to the Plan and the NYAG Action which would confer jurisdiction upon this Court. *See id.*; 28 U.S.C. § 157(b)(1), (2).  Accordingly, this Court has jurisdiction to enforce the permanent injunction and releases set forth in the Plan and Confirmation Order to the extent the Settlement violates the Plan and Confirmation Order.

## ARGUMENT

### I.    The Plan's Releases and Exculpation are Enforceable Against the NYAG

19.    It is undisputed that the Releases in the Plan and Confirmation Order cover the NYAG and the claims in the NYAG Action. The Plan provides that "Releasing Parties shall be deemed to have conclusively, absolutely, unconditionally, irrevocably, and forever, released and discharged each Debtor, Post-Effective Date Debtor, and Released Party from any and all any and all Claims, interests, obligations, rights, suits, damages, Causes of Action, remedies, and liabilities whatsoever[.]" (D.I. 828-1, Plan at 41).  The Debtor is listed as a Released Party, as are its Affiliates and Related parties such as TSIH. (*Id.* at 10).  The NYAG is a "Holder of Claims or Interests" and therefore a Releasing Party under the Plan. (*Id*). Thus, the NYAG has released the Debtor and TSIH from all claims.

20.      These Releases and discharge provisions are enforceable against the NYAG.   In

particular, the Court has already found that third party releases in this case were: (1) consensual

with respect to the Releasing Parties; (2) provided with adequate notice and opportunity to object;

and (3) provided with an opportunity to opt out. (D.I. 828, Confirmation Order at 17).   Indeed,

other parties opted out and the NYAG was presented with an opportunity to opt out, but it did not

opt out. (D.I. 828-2, Opt Out List).   The Court further found that the Release, Exculpation, and

Injunction provisions in the Plan, which release the Debtor and TSIH from all claims held by a

Holder of a Claim like the NYAG, were essential to the plan, such that the these provisions were

critical to the parties' willingness to support the Debtors' chapter 11 efforts and that parties would

not have been so inclined to participate in the Plan process without these provisions, and such

parties did so in reliance upon the protections afforded by these provisions. (D.I. 828, Confirmation

Order at 16-17).   Accordingly, all the factors are satisfied for any third-party releases to be binding

against a Releasing Party like the NYAG as to Released Parties such as the Debtor and TSIH. *See*

*In re Millennium Lab Holdings II, LLC.*, 945 F.3d 126, 137 (3d Cir. 2019) (affirming third party

releases where restructuring was only possible because of the release provisions and the provisions

were "thoroughly and thoughtfully addressed by the Bankruptcy Court"), *cert. denied sub nom.*,

*ISL Loan Tr. v. Millennium Lab Holdings II, LLC*, 140 S. Ct. 2805, 207 L. Ed. 2d 142 (2020); *In*

*re S B Bldg. Assocs. Ltd. P'ship*, 621 B.R. 330, 373 (Bankr. D.N.J. 2020) (approving third party

releases that were part of a Chapter 11 plan that "was heavily negotiated and allows the Debtors

to proceed with their efforts to maximize the recovery to secured and unsecured creditors"); *see*

*also In re Drexel Burnham Lambert Grp., Inc.*, 960 F.2d 285, 293 (2d Cir. 1992) ("In bankruptcy

cases, a court may enjoin a creditor from suing a third party, provided the injunction plays an

important part in the debtor's reorganization plan").   The claims in the NYAG action, therefore,

were released as of December 18, 2020,[4] and there were no NYAG claims that could have been

settled in March 2021, when the Settlement was executed, rendering the Settlement illusory and

unenforceable.

21.    Even beyond the bankruptcy-related flaws affecting the Settlement, the Settlement

was executed on behalf of TSIH by TSIH's prior counsel who had no authority to execute and

finalize the Settlement on behalf of TSIH in light of the facts set forth above. (*See* Walsh Decl. at

20-24). There was simply no mutual assent or any binding agreement that would render the

Settlement enforceable. *Morales v. Sun Constructors, Inc.*, 541 F.3d 218, 221, 50 V.I. 1069, 1073

(3d Cir. 2008) ("[M]utual assent between parties is necessary for the formation of a contract.").

Accordingly, the Court must declare the Settlement unenforceable and void *ab initio.*

## II.    The Settlement Violates the Bankruptcy Court's Injunction and the Court Must Declare the Settlement Void *Ab Initio*

22.    The Settlement violates the injunction set forth in the Plan and Confirmation Order,

and therefore it is void *ab initio*. "It is well settled bankruptcy law that a state court judgment

obtained in violation of a discharge injunction is void." *In re Mariner Post-Acute Network, Inc.*,

303 B.R. 42, 47 (Bankr. D. Del. 2003). "Actions which violate the discharge injunction, similar to

actions which violate the automatic stay, are void *ab initio*." *(Id).*

23.    The Plan, which was confirmed by this Court months before the Settlement,

imposes an injunction against, among other things, "commencing or continuing in any manner any

action or other proceeding of any kind on account of or in connection with or with respect to any

such Claims or Interests," "enforcing, attaching, collecting, or recovering by any manner or means

---

[4] TSIH also notes that even if the NYAG claims were not released, the Settlement would still violate the Plan and Plan injunction as the NYAG Action cannot be settled, pursuant to the Plan, without approval and involvement of the Non-Released Claims Trust Trustee, as all attorney general lawsuits, as set forth in the Plan, are "Non-Released Claims Trust Causes of Action" subject to the Non-Released Claims Trust. (D.I. 828-1, Plan at 2, 7, 36-39).

any judgment, award, decree, or order . . . in connection with or with respect to any such Claims or Interests," and "commencing or continuing in any manner any action or other proceeding of any kind on account of or in connection with or with respect to any such Claims or Interests released or settled pursuant to the Plan." (D.I. 828-1, Plan at 42). The continuation of the NYAG action after the Plan's confirmation and the entry into a Settlement after the entry of the Confirmation Order violates the Court's injunction and all of those actions are void *ab initio* and in violation of the Court's Confirmation Order. This violation was willful, as notices were filed in the NYAG action showing that all parties were aware of the pending bankruptcy proceedings in this Court. (Walsh Decl. at 17).

24.    Accordingly, the Court should declare the Settlement void ab initio and order the NYAG and Debtor to file a motion and stipulation in the NYAG Action to withdraw the Settlement and dismiss the NYAG action with prejudice. If the Debtor and NYAG fail to dismiss the NYAG Action and withdraw the Settlement, the Court should hold any noncompliant parties in contempt of the Court's orders. *See, e.g.*, *In re Residential Cap., LLC*, 508 B.R. 838, 851 (Bankr. S.D.N.Y. 2014) ("The Court hereby **ORDERS** Mustafanos to dismiss his claims against AFI with prejudice no later than fourteen (14) days from the date of this Order. If Mustafanos fails to do so, AFI may file a motion seeking to hold Mustafanos in contempt." (emphasis in original)).

### CONCLUSION

For the foregoing reasons, TSIH respectfully requests that the Court declare the Settlement void *ab initio*, order the Debtor and NYAG to file a stipulation and motion to withdraw the Settlement in the NYAG Action and dismiss that suit with prejudice, and grant TSIH such further relief that is just and proper.

Dated: March 10, 2021
     Wilmington, Delaware         **SULLIVAN HAZELTINE ALLINSON LLC**

        */s/ William D. Sullivan*
        William D. Sullivan (No. 2820)
        919 North Market Street, Suite 420
        Wilmington, DE  19801
        Telephone: (302) 428-8191
        Facsimile:  (302) 428-8195
        Email:  bsullivan@sha-llc.com

        and

        Massimo F. D'Angelo, Esq.
        Mark S. Lichtenstein, Esq.
        Akerman LLP
        520 Madison Avenue, 20th Floor
        New York, NY 10022
        Tel: 212.880.3800
        Fax: 212.880.8965
        massimo.dangelo@akerman.com
        mark.lichtenstein@akerman.com

        *Attorneys for Town Sports International Holdings, Inc.*