**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

---------------------------------------------------------X

In re:                                           :      Chapter 11
                                                 :
TOWN SPORTS INTERNATIONAL, LLC, *et al.*,[1] :   Case No. 20-12168 (CSS)
                                                 :
                                                 :      (Jointly Administered)
                                   Debtors.      :
---------------------------------------------------------X

## <u>DECLARATION OF PATRICK WALSH</u>

I, PATRICK WALSH, hereby declare under penalty of perjury that the following is true and correct:

1.      I am the chief executive officer ("CEO") of Town Sports International Holdings, Inc. ("TSIH"), and a former corporate officer of Town Sports International, LLC, one of the post-confirmation debtors named herein ("Debtors," or, individually, a "Debtor").

2.      I am over 18 years of age, and the statements herein are based on the best of my personal knowledge and recollection.

3.      I submit this declaration in support of TSIH's motion to enforce the injunctions and releases set forth in the liquidating plan (the "Plan") of the Debtor that was confirmed by this Court on or about December 18, 2020.

4.      TSIH was in existence and operation before the Debtors filed for bankruptcy, as it was incorporated in Delaware on or about January 20, 2004.

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. Due to the large number of debtors in these cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports, or by contacting counsel for the Debtors.

5.      Before the Debtor filed for bankruptcy, TSIH was the 100% owner of all of the membership interests of the Debtor (and indirect owner of the other Debtors).

6.      Prior to the bankruptcy filing and during the cases, TSIH had full authority to manage and operate the Debtors' business and properties.

7.      Prior to Debtor's bankruptcy, Debtor and other affiliated Debtors and non-Debtors were engaged in litigation with attorney generals of different states primarily related to member claims for refunds of charges made during the COVID-19 pandemic. Specifically, the actions filed by the attorneys general predominantly seek monetary damages and refunds, as any injunctive relief sought has been mooted by the proactive corrective actions taken by TSIH, the Debtors and their affiliates.  The refunds have largely been made and only a fraction of refunds remain outstanding.

8.      On September 30, 2020, the New York Attorney General ("NYAG") filed a lawsuit against Debtor and TSIH in the Supreme Court of New York, Index Number 451969/2020 (the "NYAG Action").

9.      Attached hereto as **Exhibit A** is a true and correct copy of the "Verified Petition" filed by the NYAG, which initiated the NYAG Action.

10.     Debtor and TSIH are in the business of, among other things, providing gym and athletic facilities and gym memberships.

11.     The Verified Petition is based on alleged charges to gym members in New York who allegedly could not take advantage of their memberships due to executive orders issued by the State of New York closing down all gyms in light of the COVID-19 pandemic.

12.     The Verified Petition alleges that the conduct at issue began on or about March 16, 2020 and continued until September 1, 2020.

2

13.    The Verified Petition explicitly references the bankruptcy proceedings in this Court, which the NYAG was aware of before it filed the NYAG Action.

14.    The Verified Petition alleges that: "TSIH has complied with [a] provision of the Health Club Law by purchasing a bond in the amount of $250,000 from the Guaranty Company of North America USA."

15.    The Verified Petition further alleges that: "Given TSIH's closure of certain New York clubs and its failure to provide refunds after cancellation of members' contracts as provided in section 624 of the Health Club Law, the bond should be released to the NYAG."

16.    After the lawsuit was filed, TSIH was represented by Gordon Rees Scully Mansukhani, LLP ("Gordon Rees").

17.    The very next day after the lawsuit was filed, Gordon Rees sent a letter to the NYAG, which was served on the NYAG by filing the letter on the docket in the NYAG Action, stating that the Debtor had filed a Chapter 11 petition in the U.S. Bankruptcy Court for the District of Delaware and that the NYAG Action was automatically stayed pursuant to the provisions of the Bankruptcy Code. A true and correct copy of this letter is attached hereto as **Exhibit B**. Notwithstanding the foregoing, and without seeking stay relief, the NYAG continued with the lawsuit. The NYAG has taken this position although the relief sought is overwhelmingly monetary in nature.

18.    As CEO of TSIH, I was the only one with settlement authority at TSIH who communicated with Gordon Rees regarding the NYAG Action and the only person who could bind TSIH to a settlement.

19.    In late February 2021, I informed Gordon Rees that I was retaining Akerman LLP as counsel for all litigation matters including the NYAG Action.

3

20.     It was my understanding from Gordon Rees, that Gordon Rees was going to keep Akerman LLP and myself apprised of all significant developments in all the litigation matters relating to TSIH until Akerman LLP was able to be substituted in as new counsel for TSIH.

21.     On or about March 3, 2021, I learned by way of a press release that TSIH was a party to a settlement agreement entered into in the NYAG Action.

22.     To my astonishment, I learned that Gordon Rees had executed a purported settlement agreement, improperly and without my advance knowledge, on TSIH's behalf that was reflected in a proposed "Final Consent Order and Judgment" (the "Consent Order") filed in the NYAG Action on March 3, 2021. A true and correct copy of this document is attached hereto as **Exhibit C**. Also included with **Exhibit C**, is a "Consent and Stipulation" filed the same day in the NYAG Action which inaccurately represents that TSIH, the Debtor, and the NYAG agree to the Consent Order. I never signed this stipulation or authorized anyone to sign this stipulation, nor did I ever review this stipulation. Indeed, it is not signed by me, and is instead only signed by Gordon Rees on behalf of both TSIH and Debtor.

23.     This document inaccurately states that TSIH and Debtor "consent to the entry of this Consent Order and Judgment" which, among other things, agrees to monetary liability for TSIH and the Debtor.  The document provides as follows:

a.   Pursuant to Section 622-a of the New York Health Club Services Law, in 2015 TSIH posted a statutory bond (number 76106469) in the amount of $250,000 with the Guarantee Company of North America USA as surety (the "TSIH Bond").

b.   Under the statute, the TSIH Bond 'shall be payable in favor of the people of the state of New York for the benefit of any [member] injured in the event that the [gym] goes out of business prior to the expiration of the [member's] contract for services, or otherwise fails to provide a refund to the [member] after cancellation of the [member's] contract for services as provided for in section six hundred twenty-four of this article.'" The Consent Order does not differentiate TSIH from Debtor and therefore binds both parties for any obligations related to the bond and any monetary liability.

4

c. The Consent Order imposes other liability and responsibilities on TSIH and Debtor related to the bond as follows: "In consideration of the making and execution of the Judgment, TSIH shall name Petitioner as an obligee to the Bond, and TSIH shall forfeit any and all rights to, and interests in, the TSIH Bond.

d. The Guarantee Company of North America USA, as surety of the TSIH Bond, shall, upon service of a copy of this Judgment, immediately release, transfer, and turn over the entire TSIH Bond to Petitioner, the proceeds of the TSIH Bond to be distributed to TSIH members whose contracts expired prior to TSIH going out of business and TSIH members who were unlawfully denied refunds in violation of Section 624 of the New York Health Club Services Law ("Eligible Consumers").

e. Notwithstanding the foregoing, TSIH makes no affirmation or representation on behalf of the Guarantee Company of North America USA, and TSIH shall not be held responsible for any action or inaction by the Guarantee Company of North America USA. Petitioner shall exercise discretion in disbursing the $250,000 to Eligible Consumers. Petitioner may use a reasonable portion of the $250,000 to hire an administrator to distribute the funds.

24.     I was never presented with the final terms of this Consent Order, nor did I provide any final approval related to these terms. I was not informed of any bankruptcy implications of the Plan as to this settlement agreement.

25.     On March 4, 2021, as soon as possible after learning of these developments, my counsel submitted a letter to the state court in the NYAG Action asking for a status conference to address these developments related to the Consent Order and asked that it not be entered pending analysis and fact finding regarding the genesis of the purported settlement.

26.     NYAG and Gordon Rees were copied on this letter.

27.     I learned that when Gordon Rees was confronted with the issue that I had never authorized the purported settlement, Gordon Rees pointed to email communications between me and them from October 2020 reflecting my support for a proposed settlement, on a very high level and with the condition that I review any final settlement.  At that preliminary stage of the NYAG Action, Gordon Rees did not present me with all of the specific terms of a settlement or with

definitive settlement documents for me to review.  At all times, I made clear that once Gordon

Rees received a final draft of the settlement agreement, I would receive and review such draft and

have to affirmatively approve any final draft. Additionally, these October 2020 communications

occurred before the Confirmation of the Plan (and the attendant releases) such that facts,

circumstances, and related legal issues implicated in evaluating any proposed settlement had

evolved since the earlier preliminary discussions.  In any event, I was never presented with the

definitive settlement documents for the instant purported settlement.

28.     Contemporaneously, my new counsel filed a stipulation substituting Gordon Rees

out of the NYAG action as counsel of record.

29.     After the letter and substitution of counsel was filed with the state court in the

NYAG Action, that court entered a final order approving the "Consent Order," by ruling that "the

[NYAG's] petition is resolved per Final Consent Order and Judgment dated March 3, 2021."

30.     This was followed by the state court executing and filing on the docket a

court-signed copy of the Consent Order. A true and correct copy of these documents are attached

hereto as **Exhibit D**. No hearing was ever scheduled to discuss the purported settlement, or even

to discuss any impact the bankruptcy proceedings might have on the purported settlement given

that all parties had made the state court aware of the pending bankruptcy proceedings.

31.     To the best of my knowledge, no settlement or Consent Order related to the NYAG

Action has ever been brought to the attention of the Bankruptcy Court, much less presented to the

Bankruptcy Court for approval. The impact of the confirmed Plan and the broad releases and

exculpation was never even raised as a defense in the NYAG Action.

32.     This is particularly troubling even from the Debtor's perspective because the

release of the Bond to pay NYAG claims (and presumably those of New York club members of

Debtor locations) may create subrogation liabilities to the Debtors in favor of TSIH. The settlement also ignores the assumption of refund obligations by the buyer of the Debtors' assets which is not even a defendant in the NYAG Action.

33.     I never provided my authorization to any settlement or agreement that is reflected in the Consent Order, nor did anyone else who had any authority to bind TSIH. Any purported agreement described in the Consent Order is not a "meeting of the minds" or entered into with the assent of TSIH.

34.     I believe that the settlement upends the carefully negotiated Plan that had already, to my understanding, released all claims in the NYAG actions against "Released Parties", including TSIH, and enjoined the NYAG from further pursuing the NYAG Action or otherwise settling any purported "claims" in that action against Released Parties, as all of those claims had already been released.

35.     Under the confirmed Plan, the NYAG is limited to pursuing its bankruptcy claims against the Debtors in the claims resolution process, and the unauthorized settlement of previously released claims to the detriment of TSIH violates the terms of the Plan and confirmation order.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information, and belief.


Executed on this 10th day of March, 2021.


                                                            /s/  Patrick Walsh
                                                            Patrick Walsh

# EXHIBIT A

Case 20-12168-CSS   Doc 987-1   Filed 03/10/21   Page 9 of 80

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | | |
|---|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | ) ) ) | Index No. |
| Petitioner, | ) ) | |
| – against – | ) ) | **VERIFIED PETITION** |
| TOWN SPORTS INTERNATIONAL HOLDINGS, INC. and TOWN SPORTS INTERNATIONAL, LLC d/b/a NEW YORK SPORTS CLUB AND LUCILLE ROBERTS, | ) ) ) ) ) | |
| Respondents. | ) | |

The People of the State of New York, by their attorney, Letitia James, Attorney General of the State of New York ("Petitioner" or "NYAG"), respectfully alleges as follows:

<u>**Introduction**</u>

1.      Respondents Town Sports International Holdings, Inc. and Town Sports International, LLC ("TSI") are the owners and operators of nearly 100 gyms and fitness clubs in New York State doing business under the brand names New York Sports Club and Lucille Roberts.[1]

2.      From March 16, 2020 until very recently, all gyms in New York have been closed by executive order due to the COVID-19 pandemic.  While the mandatory closure of gyms has been undeniably challenging for the industry, financial distress does not relieve gyms – or any other companies – from their obligations under the law.

3.      Since the mandatory shutdown order through the present date, TSI has repeatedly and persistently flouted its obligations.  At every turn, TSI has sought to mitigate its precarious financial state at its members' expense, and has effectively used its members as a source of interest-free financing for TSI's operations.

4.      As set forth in detail below and in the accompanying affirmations and consumer complaints, TSI has violated multiple New York State laws by charging consumers membership dues for services not being offered; failing to issue credits as promised; imposing unlawful fees and advance notice requirements on cancellation requests; misleading consumers about their rights to cancel their memberships; and refusing to honor cancellation requests.

---

[1] *See* September 30, 2020 Affirmation of Christopher L. McCall ("McCall Affirmation" or "McCall Aff.") Ex. 1 at p. 24.

5.      TSI brazenly refused to honor its members' cancellation requests.  As described in detail below, consumers went to extraordinary lengths to comply with the letter and spirit of the requirements set forth in TSI's contracts, sending letters by certified and registered mail to multiple TSI addresses, submitting requests by email or on TSI's website following TSI's explicit promise that such cancellations would be accepted, and even appearing in person.[2] Some even received written acknowledgment from TSI that "[y]our cancellation request has been processed as requested.  You will not be billed any further and there is no cancellation fee." No matter.  TSI charged them on September 1, 2020, and there is no reason to think TSI will not continue to do so indefinitely.

6.      Moreover, many of TSI's members cancelled their memberships because they were unemployed due to the pandemic, and could no longer afford the luxury of a gym membership.  Under the circumstances, TSI's *Hotel California*-style approach to its members – "You can check out any time you like, but you can never leave"[3] – is not only unlawful, it is reprehensible.

7.      Since March 16, 2020, the NYAG has received approximately 1,848 complaints against TSI regarding the practices of New York Sports Clubs and Lucille Roberts.[4]  437 of those complaints have been filed since September 1, 2020.

---

[2] Most members also meticulously documented their efforts and submitted this documentation to the NYAG with their complaints.  *See generally* McCall Aff.

[3] The Eagles, *Hotel California* (Asylum Records 1976).

[4] *See* Affirmation of Andre Lugo dated September 30, 2020.

2

## I.     Parties

8.      Petitioner is the People of the State of New York by Letitia James, Attorney General of the State of New York.

9.      Since March 16, 2020, the NYAG has received approximately 1,848 complaints against TSI regarding the practices of New York Sports Clubs and Lucille Roberts.[5]  437 of those complaints have been filed since September 1, 2020.

10.      Respondent Town Sports International Holdings, Inc. ("TSI Holdings") is a Delaware corporation with its principal place of business in Florida and an executive office in New York.

11.      Respondent Town Sports International, LLC ("TSI LLC" and, together with TSI Holdings, "TSI") is a New York limited liability company with its principal place of business in New York.  TSI LLC is a wholly-owned subsidiary of TSI Holdings.

12.      As of March 31, 2020, TSI owns 185 fitness clubs around the world with approximately 605,000 members operating under different brand names.[6]

13.      In New York, TSI has operated 92 gyms, 78 of which are New York Sports Club-branded gyms and 14 of which are Lucille Roberts-branded gyms.[7]  For ease of reference this Petition shall use "New York Sports Club" to refer to both.

---

[5] *See* Affirmation of Andre Lugo dated September 30, 2020.

[6] *See* McCall Aff. Ex. 1 at p. 24.

[7] *See id.*

3

14.     On September 14, 2020, TSI LLC and other subsidiaries of TSI Holdings filed petitions for bankruptcy; TSI Holdings has not filed for bankruptcy.[8]

15.     The same day it filed for bankruptcy, TSI LLC filed a motion in the Bankruptcy Court to reject leases for certain New York Sports Clubs and to abandon any property remaining at the property.[9]  According to the motion, prior to the bankruptcy filing TSI LLC "relinquished the keys to the Premises and provided the alarm code(s) to the lessor or its representative, abandoned the Premises and, in conjunction therewith, indicated that they were unequivocally surrendering possession as a result thereof."

16.     Among the leases TSI LLC has sought to reject are the leases for nine New York Sports Clubs in New York.[10]

---

[8] *See In re Town Sports International, LLC, et al.*, Case No. 20-12168 (Bankr. Del. 2020).  The Bankruptcy Code expressly exempts from the automatic stay "the commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment, obtained in an action or proceeding by the governmental unit to enforce such governmental unit's . . . police or regulatory power."  11 U.S.C. § 362(b)(4).  In other words, "'[w]here a governmental unit is suing a debtor to prevent or stop violation of fraud, environmental protection, consumer protection, safety, or similar police or regulatory laws . . . the action or proceeding is not stayed under the automatic stay.'"  *SEC v. Brennan*, 230 F.3d 65, 71 (2d Cir. 2000) (quoting legislative history of the Bankruptcy Code).  Thus, the commencement of this action against TSI LLC is not barred by the automatic stay.  Respondent TSI Holdings has not filed for bankruptcy, and therefore no provisions of the Bankruptcy Code apply to it.

[9] *See* McCall Aff. Ex. 2 at pp. 3-4 ("By this Motion, to preserve and maximize the value of their estates, the Debtors seek to reject the Rejected Leases and abandon any interest that the Debtors have in the underlying Premises, effective as of the Petition Date.  The Debtors have determined that the Rejected Leases are not integral to the Debtors' chapter 11 efforts, are not otherwise beneficial to the Debtors' estates, and present burdensome contingent liabilities.  In addition, the Debtors seek to abandon, effective as of the Petition Date, any Personal Property that remains as of such date on the Premises, to the extent applicable.").

[10] *See id.* at pp. 26-32.

4

## II.     Jurisdiction and Venue

17.     The NYAG is authorized to bring this action under New York Executive Law § 63(12), which authorizes the NYAG to seek injunctive relief, restitution, disgorgement, civil penalties, and costs when any person or entity has engaged in repeated fraudulent or illegal acts or has otherwise demonstrated persistent fraud or illegality in conducting its business, New York General Business Law ("GBL") § 349(b), which authorizes the NYAG to seek injunctive relief and restitution when any person or entity has engaged in deceptive acts or practices, and the New York Health Club Services Law (the "Health Club Law"), GBL § 630, which authorizes the NYAG to seek injunctive and other relief for violations of the law's provisions.

18.     Venue is proper in New York county under CPLR §§ 503(a) and 506(a) because the NYAG's principal office is located in this county, a substantial part of the transactions, acts, practices, and courses of conduct giving rise to the NYAG's claims occurred within this county, and TSI conducted business in this county.

## III.     Facts

### A.     Despite the Mandatory Closure of Its New York Clubs, TSI Charges Members' Dues in April

19.     In response to the COVID-19 pandemic, on March 16, 2020, New York Governor Andrew Cuomo issued an executive order requiring gyms and fitness centers to "cease operation effective at 8 pm on March 16, 2020 until further notice."[11]

---

[11] *See* N.Y. Exec. Order No. 202.3 (Mar. 16, 2020), *available at* https://www.governor.ny.gov/news/no-2023-continuing-temporary-suspension-and-modification-laws-relating-disaster-emergency.

5

Case 20-12168-CSS    Doc 987-1    Filed 03/10/21    Page 15 of 80

20.    The vast majority of gyms in New York responded to the mandatory club closures by automatically freezing memberships at no cost to members until gyms reopen, and promptly communicating this fact to members. [12]  TSI did neither.

21.    Instead, TSI posted an "Emergency Alert" on its website informing members that clubs were closed, but did not address how memberships would be handled going forward.  The alert read in full as follows:

> Emergency Alert!  In adherence with State and Federal guidelines concerning COVID-19, also known as Coronavirus, we will be temporarily closing all of our NY, NJ and Connecticut clubs starting 8PM on March 16th until further guidance from the state government.  We will miss all of our valued members and whenever this passes we'll be back at our clubs waiting for you. [13]

22.    In the days following the club closures, members began to contact TSI by telephone, email, and via social media platforms to try to obtain more information.  Members

---

[12] *See, e.g.*, Anytime Fitness, *Regarding Memberships*, https://www.anytimefitness.com/in-response-to-recent-public-health-concerns/ ("Anytime Fitness, LLC has recommended that the owners of all Anytime Fitness clubs in the United States and Canada that have temporarily closed as a result of the crisis freeze member accounts and cease billing members."); Blink Fitness, *FAQ:  What Happens to My Membership If My Gym Is Closed?*, https://www.blog.blinkfitness.com/blink-fitness-gym-updates ("You will not be billed during the time that your Blink gym is closed.  Your membership will be put on freeze until we re-open.  No action is needed on your part to start the freeze."); Crunch, *Covid-19 FAQ:  Will I Be Paying for My Membership While It's Closed?*, https://info.crunch.com/covid-19_faqs ("All of our corporately owned gyms, as well as the vast majority of our independently owned and operated gyms, suspended billing as quickly as was administratively possible after their closure.  As of April 1, all North American Crunch locations have suspended billing during the closure.  It is possible that some members at some clubs were billed in error while we worked to freeze billing in our systems.  As such, those members will receive an adjustment or credit applied to their membership."); Equinox, *Covid-19 Updates*, https://www.equinox.com/covid19update?icmp=banner-covid ("Your membership will be put on freeze at no cost as of the day the club closed.  No further action is required to freeze."); Planet Fitness, *Covid-19 FAQ How Do I Cancel or Freeze My Account if My Club Is Currently Closed?*, https://www.planetfitness.com/coronavirus-faq ("We have proactively frozen all memberships on your behalf, and you will not be charged any fees during this time.").

[13] *See* TSI, https://www.newyorksportsclubs.com/page/nysc-club-health-updates.

6

were generally unable to reach anyone by telephone at any New York Sports Clubs, because they

were closed, and because TSI had terminated the employment of a majority of its workforce.[14]

23.   For example, consumer A.N. wanted to freeze their membership while TSI's

clubs were closed but was unable to reach anyone at TSI.[15]   Consumer A.N. was an emergency

room doctor at a major hospital in New York City, and they expressed their frustration to the

NYAG:  "I am a doctor fighting on the frontlines of COVID, and I do not have time or money to

have it pilfered."[16]

---

[14] *See* McCall Aff. Ex. 1 at p. 10 ("We have taken some immediate steps to reduce operating costs and to conserve cash.  We informed all non-executive employees working at clubs which have been ordered to close that their employment with us was terminated with immediate effect.").  It is not clear how many, if any, of these employees have been rehired, but it would appear that TSI has sufficient funds to pay employees.  On April 24, 2020, TSI received a $2.7 million small business loan under the federal Paycheck Protection Program.  *See* McCall Aff. Ex. 24 at p. 33.  On September 8, 2020, TSI awarded retention bonuses to its CEO and CFO in the amounts of $1.5 million and $750,000, respectively.  *See* TSI, Form 8-K, Sept. 14, 2020, at p. 3, *available at* http://www.townsportsinternational.com/static-files/e2eec3e3-9bbf-4ff5-b951-3478392748ba.

[15] According to a recent report, TSI experienced a massive data breach after failing to take the most basic information security precaution – password protection.  For over a year TSI maintained an Internet database with 600,000 records of members and employees – including their names, addresses, phone numbers, email addresses, last four credit card digits, and credit card expiration dates – without so much as requiring a password to access the data.  *See* Paul Bischoff, *Gym Chain Town Sports Exposes 600,000 Records of Members and Staff*, Comparitech.com, Sept. 23, 2020, *available at* https://www.comparitech.com/blog/information-security/gym-chain-town-sports-exposes-personal-details-of-600000-members-staff-online-report/ ("In the wrong hands, cybercriminals could use the information stored in the database to scam and phish Town Sports customers and employees.  Staff and gym members should be on the lookout for emails, text messages, and phone calls from fraudsters posing as Town Sports or a related company.").  TSI did not remove the database until September 22, 2020, one day after the author of the report informed TSI of the breach.  *See id.*  In light of TSI's data breach, and to protect the privacy and information security of those consumers whose complaints the NYAG is filing in this public proceeding from potential cyber criminals, the NYAG will identify these consumers by their initials only, refer to the consumers with gender neutral pronouns, and will redact the consumers' names, contact information, and any other personally identifiable information, from the consumer complaints and any documents the consumers submitted with their complaints.  The NYAG will promptly provide unredacted versions of the consumer complaints to TSI and the Court upon request.

[16] *See* McCall Aff. Ex. 3 (A.N. complaint dated March 30, 2020).

7

24.     Consumer J.M. was similarly unable to contact anyone at TSI:

> Now with the COVID-19 pandemic, I wanted to proceed and
> cancel my membership but I haven't been able to contact
> anyone.  I was charged on 04/01/2020 although all gyms have
> been closed since 03/16/2020.  No one from their company has
> been responsive after sending multiple emails.  I went on their
> instagram to finally see hundreds of people complaining about
> the same thing.  We aren't able to cancel our membership or
> freeze any further charges.[17]

25.     In response to numerous consumer complaints, the NYAG contacted TSI and

demanded that it adopt a number of policies, including an automatic membership freeze,

permitting electronic cancellations, and communicating policies clearly to members.  The NYAG

advised TSI that the Health Club Law authorizes gym members to cancel their membership

under certain circumstances, including "after the services are no longer available or substantially

available as provided in the contract because of the [gym's] permanent discontinuance of

operation or substantial change in operation."[18]

26.     In response to TSI's assertion that its standard membership agreement[19] did not

permit cancellation under the circumstances presented by the mandatory gym closures, the

NYAG further advised TSI that the protections afforded to gym members under the Health Club

Law cannot be waived,[20] and any contract that fails to comply with the law "shall be void and

unenforceable as contrary to public policy."[21]

---

[17] *See* McCall Aff. Ex. 4 (J.M. complaint dated April 1, 2020).

[18] GBL § 624(3).

[19] Many consumers attached a copy of their membership agreement to their complaints, including consumer K.M., whose membership agreement is included in exhibit 5 to the McCall Affirmation, and consumer A.H., whose membership agreement is included in exhibit 14 to the McCall Affirmation.

[20] GBL § 627(1).

[21] GBL § 627(2).

27.    TSI refused to implement a membership freeze or to communicate any information about memberships.

28.    On March 31, 2020, TSI's CEO sent an email to members "to address the concerns members have expressed regarding membership dues. I want to reassure you that, as previously promised, we will issue credits to your accounts and address all membership-related concerns once our gyms are operating."[22]  In the email, TSI offered to upgrade memberships for members who did not cancel or freeze their memberships, and stated that "[i]f you want to pass up this opportunity to be upgraded [*i.e.*, cancel or freeze membership], please reach out to MemberHelp@tsiclubs.com where a Customer Service Representative will freeze your membership."[23]

29.    On or about April 1, 2020, without notice and despite the fact that all NYSC locations had been closed since March 16, 2020, TSI billed members their full April dues.[24]

30.    In response to further inquiries from the NYAG, on April 8, 2020, TSI announced that it had "adjusted our policies to align with your needs and industry best practices," implemented a membership freeze at no cost to members, and promised that "members will receive additional days of membership access equal to the number of days paid for while the clubs were closed in your area."[25]  TSI advised members that if they wanted to cancel their

---

[22] *See* McCall Aff. Ex. 6 (March 31, 2020 email from TSI to members).

[23] *See id.*

[24] *See id.* Exs. 7 (B.P. complaint dated April 2, 2020), 8 (E.G. complaint dated April 1, 2020), 9 (N.B. complaint dated April 2, 2020), 10 (T.B. complaint dated April 2, 2020), 11 (J.L. complaint dated April 1, 2020), 12 (C.B. complaint dated April 3, 2020), 13 (M.M. complaint dated April 2, 2020), 14 (A.H. complaint dated April 3, 2020), 15 (N.T. complaint dated September 16, 2020), 4 (J.M. complaint dated September 2, 2020), 16 (A.B. complaint dated September 9, 2020).

[25] *See id.* Ex. 17 (April 8, 2020 email from TSI to members).

9

membership, "please visit your club-specific website and click on 'contact us' to send your

cancel request to your local club.  You will receive an email confirmation of your cancel

request."

> **B.**    **TSI Fails to Honor Cancellation Rights and Refuses to Freeze Memberships**

31.    Many members followed TSI's instructions for cancelling or freezing their

membership, but TSI ignored their requests.

32.    Consumer J.L. submitted a cancellation request by email to

MemberHelp@tsiclubs.com on April 1, 2020 and never received a response.[26]  The membership

remained in force, and TSI charged J.L. membership dues of $44.95 on April 1, 2020 and

September 1, 2020.[27]

33.    Consumer J.M. submitted a cancellation request on their club-specific website on

April 18, 2020, but never received anything more than an automated response acknowledging the

submission.[28]  Like many other consumers, they continued to be charged.

34.    Consumer B.P. wrote the following:

> I've been trying to cancel my membership in NY Sports Club
> sending email on 3/14 and a certified letter to its Elmsford, NY
> office on 3/20(as required in the membership contract).

---

[26] *See id.* Ex. 11 (J.L. complaint dated April 1, 2020).

[27] *See id.* Ex. 11 (J.L. complaint dated April 1, 2020), Ex. 18 (J.L. complaint dated September 1, 2020).

[28] *See id.* Ex. 19 (J.M. complaint dated September 2, 2020).  Consumer J.M. found out their membership had not been cancelled when TSI charged them monthly membership dues of $59.99 on September 1, 2020, despite their prior cancellation request and the fact that their home gym is closed. The consumer explained their frustration trying to cancel:  "I would like to add that the membership (with corresponding monthly fee) is for NYSC Avenue A location only.  The Avenue A location isn't currently open for business and won't be for the remainder of the year (per the NYSC website).  They are charging for service at a closed location.  There is also no way to contact anyone about my previous cancelation request since no one is at the closed Avenue A location and TSI forces you to cancel it through your membership location."

10

> NYSC has again, charged my credit card for the monthly fee, although the club has been closed since late March. I would appreciate guidance on how to proceed as the credit card company says I must deal with the vendor when trying to cancel automatic monthly payments.[29]

35.    TSI charges anywhere from $20 to $150 for monthly membership dues, and these amounts can make a difference for consumers struggling to make ends meet during the public health and economic crisis caused by COVID-19. As consumer E.G. wrote in a complaint to the NYAG:

> I have repeatedly tried to call and email NYSC to cancel my membership but have not been able to because the office is closed. They just charged me today for another month. I was laid off from my job yesterday and cannot afford to pay for a gym membership for a gym that is closed and won't respond to my calls. Please help.[30]

36.    Another consumer stated that "I have met substantial financial hardship due to the pandemic closures, I can  no longer afford my membership."[31]

37.    The NYAG received a similar complaint from N.B., a Lucille Roberts member who was charged monthly dues of $34.99 on April 1 despite their attempts to cancel, and who noted that TSI "will wrongfully continue to charge me each month when I am out of work and don't [sic] have the means to pay for such services that arent [sic] even available."[32]

---

[29] See id. Ex. 7 (B.P. complaint dated April 2, 2020).

[30] See id. Ex. 8 (E.G. complaint dated April 1, 2020).

[31] See id. Ex. 20 (E.C. complaint dated April 3, 2020).

[32] See id. Ex. 9 (N.B. complaint dated April 2, 2020). The consumer attached to the complaint an email to TSI in which the consumer wrote in part: "My account should be frozen during this pandemic, since you guys are closed but yet I am still being charged by your gym when it is closed and unavailable. THIS IS RIDICULOUS. I lost my job due to the corona virus I do not have the means to afford these type of charges, moreso for a gym that is not even OPEN." Id.

38.     Another consumer who was charged membership dues of $99.99 on April 1 noted that, while TSI purportedly lacked the resources to respond to emails and phone calls requesting cancellation, "apparently someone is there to take the money."[33]

39.     In those rare cases where members were able to reach someone at TSI's corporate office, TSI provided different, and false, information.  TSI told some members that the COVID-19 club closures did not permit members to cancel their membership.[34]

40.     TSI told other members they could only cancel or freeze their memberships in person – which would be impossible, as the clubs were closed – or by sending a letter via certified or registered mail – which would require members to leave their homes, in violation of orders then in place requiring people to remain in their homes except for essential purposes. Consumer C.B. was outraged by this response:

> I tried to cancel my membership on March 23, 2020 via a message online and no one replied to me.  I finally received a reply from an email I sent to Daniel Smith, who told me they only take cancellations in person, or by Certified Mail.  They said will pro-rate my cancellation 45 days from the post mark on my letter.
>
> Since the club is closed, Certified mail is my only option.
>
> In this locked-down environment, the fact that they are making members go out to the POST OFFICE to cancel memberships is nothing short of outrageous.
>
> They have also been closed since 3/17/20, and they did not offer any kind of refund for not being able to use the services i [sic] paid for.[35]

---

[33] *See id.* Ex. 10 (T.B. complaint dated April 2, 2020).

[34] This is also the position TSI has taken in conversations with the NYAG.

[35] *See* McCall Aff. Ex. 12 (C.B. complaint dated April 3, 2020).

41.    In at least one instance, complying with TSI's cancellation requirements would have required a consumer sick with COVID-19 to appear in person at a club, and potentially exposing others to the virus.  Specifically, the NYAG received a complaint from consumer M.M. stating that they were "at home sick with the virus," suggesting that was the reason they were unable to cancel their membership in person or by visiting a post office.[36]  Consumer M.M. was charged $79.99 on April 1, 2020.[37]

42.    TSI also told many members that cancellations were subject to 45-day advance notice requirements and subject to a $10 or $15 cancellation processing fee.[38]

43.    Many of these representations were false and contrary to the requirements of New York law.  New York's Health Club Law prohibits contracts longer than 36 months and authorizes gym members to cancel their membership under certain circumstances, including "after the services are no longer available or substantially available as provided in the contract because of the [gym's] permanent discontinuance of operation or substantial change in operation."  *See* GBL §§ 623(2), 624(3).  The Health Club Law requires gym owners to provide monetary refunds – not credits – for such cancellations within 15 days.  *See* GBL § 624(3) ("All *moneys paid* pursuant to such contract cancelled for the reasons contained in this subdivision *shall be refunded* within fifteen days of receipt of such notice of cancellation . . . .") (emphasis

---

[36] *See id.* Ex. 13 (M.M. complaint dated April 2, 2020).

[37] *See id.*

[38] *See id.* Exs. 14 (A.H. complaint dated April 3, 2020) (consumer was charged a $15 cancellation fee after submitting multiple cancellation requests by telephone, certified mail, regular mail, and email)), 15 (N.T. complaint dated September 16, 2020) (consumer was charged a $15 cancellation fee after submitting multiple cancellation requests by certified mail and email)).

added).  The Health Club Law further prohibits misrepresentations about consumers'
cancellation rights.  *See* GBL § 626(8).

### C.  TSI Charges Members' Dues Without Notice on September 1, Notwithstanding the Fact that Many New York Sports Clubs Remain Closed and that Many Members Had Cancelled Their Membership

44.     On August 17, 2020, Governor Cuomo announced that gyms could reopen
beginning as of August 24, 2020, subject to certain restrictions (such as 33% capacity
limitations).[39]

45.     On or about September 1, 2020, without notice of any kind, TSI billed members
their September membership dues.[40]

46.     TSI billed many members their September membership dues despite the fact that
their home New York Sports Club remains closed.

47.     For example, TSI charged consumer K.M. $64.99 on September 1, 2020, despite
the fact that K.M.'s home gym on Manhattan's Upper West Side had not yet opened.[41]

48.     While TSI is permitting members to work out at any New York Sports Club that
is open, in many instances doing so would require members to use public transportation, which
many are not comfortable doing due to safety concerns, and many members cannot afford the
cost and time associated with the increased travel to a different location.

---

[39] *See* Press Release, *Governor Cuomo Announces Gyms and Fitness Centers Can Reopen Starting August 24*, Aug. 17, 2020, *available at* https://www.governor.ny.gov/news/governor-cuomo-announces-gyms-and-fitness-centers-can-reopen-starting-august-24#:~:text=at%20All%20Times-,Governor%20Andrew%20M.,to%20open%20by%20September%202.

[40] *See* McCall Aff. Exs. 19 (J.M. complaint dated September 2, 2020), 5 (K.M. complaint dated September 2, 2020), 16 (A.B. complaint dated September 9, 2020), 21 (N.W. complaint dated September 1, 2020), 22 (A.G. complaint dated September 13, 2020).

[41] *See id.* Ex. 5 (K.M. complaint dated September 2, 2020).

49.    For example, consumer L.S. belonged to a Staten Island club that was permanently closed and was told to visit another club that was miles away and would have required travel over a toll bridge.[42]  L.S. tried to cancel their membership repeatedly, but to no avail, as L.S. explained in their complaint to the NYAG:

> I have emailed [a TSI employee] a number of times and receive an automated response that the recipient's mailbox is full and is not able to accept messages.
>
> I have also tried calling their customer service number but there is no live person to speak to.  The recording advises you to go the local club and cancel in person or send a certified letter to your local club requesting cancellation of membership.  At this time no gym is open and my location is permanently closed.[43]

50.    Consumer A.B. expressed similar concerns to the NYAG:

> I canceled my New York Sports Club membership in April, after Inwas [*sic*] charged for April, but the gym was closed.  I was charged again on September 1, when gyms reopened even though I had a) canceled and b) the gym that charged me is still closed so I could not use it if I wanted to.  It is on 36th and Madison in Manhattan, and I live in south Brooklyn and will not be going back to work near it for at least a year.  Also I do not feel comfortable going to the gym right now.[44]

51.    Moreover, TSI ceased paying rent on clubs after they were closed,[45] and, as noted above, TSI LCC recently filed a motion in bankruptcy court to reject a number of leases, including many New York Sports Clubs in New York,[46]so for many members it is possible their home club may never reopen.

---

[42] *See id.* Ex. 23 (L.S. complaint dated August 31, 2020).

[43] *See id.* Ex. 23 (L.S. complaint dated August 31, 2020).

[44] *See id.* Ex. 16 (A.B. complaint dated September 9, 2020).

[45] *See id.* Ex. 24 at p. 12 ("The Company has also ceased paying rent at its club locations that are subject to mandatory closure due to COVID-19.").

[46] *See id.* Ex. 2.

Case 20-12168-CSS    Doc 987-1    Filed 03/10/21    Page 25 of 80

52.     Consumers who are no longer able to use the club they contracted to use – i.e., their "home club" – are permitted to cancel their memberships under the Health Club Law because the temporary or permanent closure of the consumers' primary club constitutes a "substantial change in operation" under the Health Club Law.[47]

53.     TSI billed many members for their September membership dues despite the fact that the members had previously cancelled their memberships – some multiple times.

54.     Consumer N.W. submitted two cancellation requests on TSI's website in April 2020, sent a letter via certified mail in May 2020, and was nonetheless charged $64.99 on September 1, 2020.[48]

55.     Consumer A.G. submitted a cancellation request on April 6, 2020, received an email from TSI on April 15, 2020 stating that "[y]our cancellation request has been processed as requested.  You will not be billed any further and there is no cancellation fee." [49]  Sure enough, TSI charged A.G. $69.99 on September 7, 2020.

56.     Similarly, consumer N.T. submitted a cancellation request and on April 29, 2020 received an email from TSI stating that "[y]our cancellation request has been processed as requested.  You will not be billed any further and there is no cancellation fee."[50] Notwithstanding this promise, TSI subsequently charged N.T. dues and fees, including $83.12 for September dues.

---

[47] GBL § 624(3).

[48] *See* McCall Aff. Ex. 21 (N.W. complaint dated September 1, 2020).

[49] *See id.* Ex. 22 (A.G. complaint dated September 13, 2020).

[50] *See id.* Ex. 15 (N.T. complaint dated September 16, 2020).

57. Consumer D.A. submitted cancellation requests to TSI by email and mail in May and August of 2020.[51] TSI ignored these requests, and on September 1, 2020 billed D.A. membership dues. On September 4, 2020, D.A. visited their club in person to cancel, and informed the TSI employee that they had already submitted multiple requests. According to D.A., "The club manager admitted that he had a pile of mail that he had not gotten to and agreed to put a note in the system indicating that I requested a cancelation via mail. He told me that HQ would see that note cancel my membership, without the 45 day notice pre-requisite, and refund me the September dues." As of September 21, 2020, D.A. had not received any refund.

58. Moreover, as D.A. makes clear in their complaint, TSI's failure to honor D.A.'s repeated cancellation requests has consequences beyond inconvenience:

> This process has been extremely frustrating, and while I have blocked transactions from this company with my credit card. I am afraid I will be building up a balance with TSI that will end up with a collection agency. I have been extremely patient and have tried multiple times to resolve this issue, but it feels like I'm getting the run around.[52]

59. Like D.A., numerous consumers have expressed concerns that their credit ratings will be adversely affected by TSI's practice of ignoring repeated cancellation requests.[53]

60. In some instances, TSI has told members that a 45-day advance notice requirement applies to cancellations, but that is not the law. Section 624(3) of the Health Club Law requires gyms to provide monetary refunds to members who cancel their membership for

---

[51] *See id.* Ex. 25 (D.A. complaint dated September 13, 2020).

[52] *See id.*

[53] *See id.* Exs. 26 (C.W. complaint dated September 24, 2020) ("Due to several attempts to contact [TSI], I disputed my September charge on my credit card and blocked future payments. Will this result in them taking me to collections??"), 27 (B.W.S. complaint dated September 18, 2020) ("I fear being sent to collections and having my credit rating suffer as a result of their shady business practices, and I am unsure of any way to proceed other than going to the NY state AG's office here.").

17

one of the enumerated reasons (such as when gyms are no longer providing the services contracted for),[54] which is inconsistent with a 45-day notice requirement. And Section 623(2) of the Health Club Law prohibits membership agreements longer than 36 months. Thus, regardless of what TSI's standard membership agreement may state,[55] the Health Club Law does not permit TSI to impose a 45-day advance notice requirement when consumers exercise their statutory right to cancel.

61.     TSI has refused to refund member dues for the time period from March 16, 2020 to April 8, when members were charged membership dues despite the fact that all New York Sports Clubs were closed, and despite the fact that the Health Club Law requires gyms to issue monetary refunds, not credits.[56]

62.     And contrary to the promise made on April 8, 2020, TSI does not appear to have given any member credits for this time period. In a member letter recently posted on TSI's website, TSI states that "[b]ased on our deep desire for a fresh start and to guarantee that all of our members feel that we appreciate their business, all members will be receiving 45 days of credit towards membership dues and/or ancillary services."[57]

63.     However, TSI had not issued credits when it billed consumers on September 1, and it is not clear if these credits have actually been issued since that date.

---

[54] GBL § 624(3).

[55] As noted above, the provisions of the Health Club Law cannot be waived, and any contract that fails to comply with the law "shall be void and unenforceable as contrary to public policy." GBL §§ 627(1), (2).

[56] *See* GBL § 624(3).

[57] *See* McCall Aff. Ex. 28 (member letter).

18

### D.    **TSI's $250,000 Bond**

64.    Section 622-a of the Health Club Law requires gyms to post a bond, letter of

credit, or certificate of deposit

> payable in favor of the people of the state of New York for the
> benefit of any [member] injured in the event that the [gym]
> goes out of business prior to the expiration of the [member's]
> contract for services, or otherwise fails to provide a refund to
> the [member] after cancellation of the [member's] contract for
> services as provided for in section six hundred twenty-four of
> this article.[58]

65.    TSI has complied with this provision of the Health Club Law by purchasing a

bond in the amount of $250,000 from the Guaranty Company of North America USA.[59]

66.    Given TSI's closure of certain New York clubs and its failure to provide refunds

after cancellation of members' contracts as provided in section 624 of the Health Club Law, the

bond should be released to the NYAG.

---

[58] GBL § 622-a(4).

[59] *See* McCall Aff. Ex. 29.

19

## <u>Claims</u>

### I.    <u>New York Executive Law § 63(12) (Fraud)</u>

67.    The NYAG repeats and realleges paragraphs 1-66 as if fully set forth herein.

68.    New York Executive Law § 63(12) authorizes the NYAG to bring an action or proceeding for injunctive and other relief when any individual or business engages in repeated or persistent fraudulent conduct.

69.    Executive Law § 63(12) broadly defines fraud to include "any device, scheme or artifice to defraud and any deception, misrepresentation, concealment, suppression, false pretense, false promise or unconscionable contractual provisions."

70.    As described in detail above, TSI has repeatedly engaged in fraudulent conduct in violation of Executive Law § 63(12) by:

      a)    charging consumers membership dues for services not being offered;

      b)    failing to issue time credits as promised;

      c)    imposing unlawful fees and advance notice requirements on cancellation requests;

      d)    misleading consumers about their rights to cancel their memberships; and

      e)    refusing to honor cancellation requests.

## II.    New York Executive Law § 63(12) (Illegality – Health Club Law (GBL Article 30))

71.    The NYAG repeats and realleges paragraphs 1-70 as if fully set forth herein.

72.    New York Executive Law § 63(12) authorizes the NYAG to bring an action or proceeding for injunctive and other relief when any individual or business engages in repeated or persistent illegal conduct.

73.    The New York Health Club Services Law prohibits membership contracts of more than 36 months, authorizes gym members to cancel their membership under certain circumstances, including "after the services are no longer available or substantially available as provided in the contract because of the [gym's] permanent discontinuance of operation or substantial change in operation," and requires gym owners to provide refunds within 15 days for such cancellations. GBL §§ 623(2), 624(3).

74.    The law further provides that it is "an unfair and deceptive trade practice and unlawful" for a gym to, *inter alia*, "[m]isrepresent in any manner . . . the [member's] right to cancel" his or her membership under the law.[60]

75.    As described in detail above, TSI has repeatedly violated the Health Club Services Law by:

      a)  charging consumers membership dues for services not being offered;

      b)  failing to issue time credits as promised;

      c)  imposing unlawful fees and advance notice requirements on cancellation requests;

      d)  misleading consumers about their rights to cancel their memberships;

---

[60] GBL § 626(8).

e) refusing to honor cancellation requests; and

f) refusing to issue refunds for cancellations within 15 days.

76.    By its actions in violation of the Health Club Services Law, TSI has engaged in

repeated and persistent illegality in violation of New York Executive Law § 63(12).

### III.  New York Executive Law § 63(12) (Illegality – GBL § 349)

77.    The NYAG repeats and realleges paragraphs 1-76 as if fully set forth herein.

78.    New York Executive Law § 63(12) authorizes the NYAG to bring an action or proceeding for injunctive and other relief when any individual or business engages in repeated or persistent illegal conduct.

79.    New York General Business Law § 349 prohibits "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" and aiding and abetting such acts or practices.

80.    As described in detail above, TSI has repeatedly violated GBL § 349 by:

 a) charging consumers membership dues for services not being offered;

 b) failing to issue time credits as promised;

 c) imposing unlawful fees and advance notice requirements on cancellation requests;

 d) misleading consumers about their rights to cancel their memberships; and

 e) refusing to honor cancellation requests.

81.    By its actions in violation of GBL § 349, TSI has engaged in repeated and persistent illegality in violation of New York Executive Law § 63(12).

## Prayer for Relief

WHEREFORE, the NYAG respectfully requests that the Court enter an order and

judgment:

a) enjoining TSI from violating New York law, including, but not limited to, charging consumers dues for clubs that have not reopened, failing to provide credits for the period from March 16 through April 8, 2020 and failing to honor consumers' statutory rights to cancel their contracts;

b) granting restitution for New York consumers and disgorgement of all ill-gotten gains;

c) imposing civil money penalties on TSI of $5,000 for each violation of GBL § 349, as authorized by GBL § 350-d;

d) imposing civil money penalties on TSI of $2,500 for each violation of the Health Club Law, as authorized by GBL § 629(1).

e) awarding monetary damages or other monetary relief;

f) ordering TSI to pay costs pursuant to CPLR § 8303(a)(6);

24

g) transferring the $250,000 bond TSI posted pursuant to GBL 622-a to the NYAG; and

h) awarding such other relief as the Court deems just and proper.

Dated:   New York, New York
         September 30, 2020

LETITIA JAMES
Attorney General of the State of New York

By:_____
Jane M. Azia, Bureau Chief
Laura Levine, Deputy Bureau Chief
Christopher L. McCall, Assistant Attorney General
Office of the New York Attorney General
Bureau of Consumer Frauds and Protection
28 Liberty Street, 20th Floor
New York, New York  10005
(212) 416-8303
christopher.mccall@ag.ny.gov

*Attorneys for Petitioner*
*People of the State of New York, by Letitia James,*
*Attorney General of the State of New York*

25

# **VERIFICATION**

STATE OF NEW YORK    )

                                       ):ss.:

COUNTY OF NEW YORK  )

        Christopher L. McCall, being duly sworn, deposes and says:

        I am an Assistant Attorney General in the Office of Letitia James, Attorney General of the State of New York, assigned to the Bureau of Consumer Frauds and Protection. I am duly authorized to make this verification.

        I have read the foregoing Petition and know the contents thereof, which are to my knowledge true, except as to matters therein stated to be alleged upon information and belief, and as to those matters, I believe them to be true. The grounds for my beliefs as to all matters stated upon information and belief are investigatory materials contained in the files of the Bureau of Consumer Frauds and Protection in the Office of Letitia James, Attorney General of the State of New York.

        The reason this verification is not made by Petitioner is because Petitioner is a body politic, and the Attorney General of the State of New York is the Petitioner's duly authorized representative.

_____
Christopher L. McCall
Assistant Attorney General

Sworn to before me this

30th day of September, 2020

JACQUELINE DUBOULAY
Notary Public, State of New York
No. 01DU6130136
Qualified in Queens County
Commission Expires February 27, 2022

# EXHIBIT B

ANDREW NADLER
ANADLER@GRSM.COM
DIRECT DIAL: (914) 777-2233



GORDON&REES
SCULLY MANSUKHANI
YOUR 50 STATE PARTNER

ATTORNEYS AT LAW
500 MAMARONECK AVENUE, SUITE 503
HARRISON, NY 10528
WWW.GRSM.COM

October 1, 2020

**BY U.S. MAIL AND NYSCEF**

Jane M. Azia, Bureau Chief
Laura Levine, Deputy Bureau Chief
Christopher L. McCall, Assistant Attorney General
Office of the New York Attorney General
Bureau of Consumer Frauds and Protection
28 Liberty Street, 20th Floor
New York, New York 10005
(212) 416-8308

   Re:   PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES,
        Attorney General of the State of New York v. TOWN SPORTS
        INTERNATIONAL HOLDINGS, INC. and TOWN SPORTS
        INTERNATIONAL, LLC d/b/a NEW YORK SPORTS CLUB AND
        LUCILLE ROBERTS
   Index No.: 451969/2020

To Who It May Concern:

   Please be advised that Town Sports International, LLC d/b/a New York Sports Club and
Lucille Roberts filed a voluntary petition for bankruptcy in the United State Bankruptcy Court for
the District of Delaware on September 14, 2020. Please see the attached Notice of Bankruptcy
and a copy of the Chapter 11 petition filed by Town Sports International, LLC. Please note that
this matter is automatically stayed pursuant to section 362(a) of the Bankruptcy Code.

        Best regards,

        GORDON & REES LLP

        Andrew Nadler

AN:
Enclosures

October 1, 2020
Page 2

CC VIA NYSCEF:

New York County Supreme Court
60 Centre Street
New York, New York 10007

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK, by
LETITIA JAMES, Attorney General of the State of New
York,

Index No.: 451969

**NOTICE OF BANKRUPTCY**

                Plaintiff,

    -against-

TOWN SPORTS INTERNATIONAL HOLDINGS,
INC. and TOWN SPORTS INTERNATIONAL, LLC
d/b/a NEW YORK SPORTS CLUB AND LUCILLE
ROBERTS,

                Respondents.

-------------------------------------------------------------------X

PLEASE TAKE NOTICE that on September 14, 2020, TOWN SPORTS
INTERNATIONAL, LLC, and their debtor affiliates (collectively, the "**_Debtors_**")[1] each filed
voluntary petitions under chapter 11 of title 11 of the United States Code (the "**_Bankruptcy Code_**")
in the United States Bankruptcy Court for the District of Delaware (the "**_Bankruptcy Court_**"). The
Debtors' bankruptcy cases are being jointly administered under Case No. 20-12168-CSS pursuant
to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure. A copy of the chapter 11 petition
filed by TOWN SPORTS INTERNATIONAL, LLC is attached hereto as **_Exhibit "A"_**.

PLEASE TAKE FURTHER NOTICE that pursuant to section 362(a) of the Bankruptcy
Code, the filing of a voluntary petition operates as an automatic stay of "the commencement or
continuation, including issuance or employment of process, of a judicial, administrative, or other
action or proceeding against the debtor that was or could have been commenced before the
commencement of the case under [the Bankruptcy Code], or to recover a claim against the debtor

---

[1]      For a complete list of debtor affiliates, please see Schedule 1 of the annexed chapter 11 petition.

Case 20-12168-CSS    Doc 987-1    Filed 03/10/21    Page 40 of 80

that arose before the commencement of the case under [the Bankruptcy Code]" and of "any act to

obtain possession of property of the estate or of property from the estate or to exercise control over

property of the estate." 11 U.S.C. §§ 362(a)(1) and 362(a)(3).

PLEASE TAKE FURTHER NOTICE that continuation of the above-referenced action is

automatically stayed under the Bankruptcy Code. The Debtors reserve their right to bring an action

in the Bankruptcy Court for any violation of the automatic stay under section 362(a) of the

Bankruptcy Code related, among other things, to the continuation of the above-referenced action.

Dated: Harrison, New York
October 1, 2020

Respectfully Submitted,

**GORDON REES SCULLY
MANSUKHANI, LLP**

By:

Andrew Nadler, Esq.
GORDON, REES, SCULLY,
MANSUKHANI, LLP
500 Mamaroneck Avenue, Ste. 503
Harrison, New York 10604
(914) 777-2233

TO:  Jane M. Azia, Bureau Chief
Laura Levine, Deputy Bureau Chief
Christopher L. McCall, Assistant Attorney General
Office of the New York Attorney General
Bureau of Consumer Frauds and Protection
28 Liberty Street, 20th Floor
New York, New York 10005
(212) 416-8308

# EXHIBIT A

---

**Fill in this information to identify your case:**

United States Bankruptcy Court for the:

DISTRICT OF DELAWARE

Case number *(if known)* _____  Chapter __**11**__

☐ Check if this an
amended filing

---

Official Form 201

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

04/20

If more space is needed, attach a separate sheet to this form. On the top of any additional pages, write the debtor's name and the case number (if known). For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals,* is available.

| | | |
|---|---|---|
| 1. | **Debtor's name** | **Town Sports International, LLC** |
| 2. | **All other names debtor used in the last 8 years** <br><br> Include any assumed names, trade names and *doing business as* names | |
| 3. | **Debtor's federal Employer Identification Number** (EIN) | **20-5047365** |

4. **Debtor's address**

| Principal place of business | Mailing address, if different from principal place of business |
|---|---|
| **399 Executive Blvd.,** <br> **Elmsford, NY 10523** <br> Number, Street, City, State & ZIP Code | <br><br> P.O. Box, Number, Street, City, State & ZIP Code |
| **Westchester** <br> County | **Location of principal assets, if different from principal place of business** <br><br> Number, Street, City, State & ZIP Code |

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | **www.townsportsinternational.com** |

6. **Type of debtor**

☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))

☐ Partnership (excluding LLP)

☐ Other. Specify: _____

3.    267368

| Debtor | Town Sports International, LLC | Case number (if known) | |
|---|---|---|---|
| | Name | | |

**7.** **Describe debtor's business**

A. *Check one:*

☐ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☒ None of the above

B. *Check all that apply*

☐ Tax-exempt entity (as described in 26 U.S.C. §501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. §80a-3)

☐ Investment advisor (as defined in 15 U.S.C. §80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor.
See http://www.uscourts.gov/four-digit-national-association-naics-codes.

7139

**8.** **Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub-box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box.

*Check one:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply*:

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $2,725,625. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, **and it chooses to proceed under Subchapter V of Chapter 11.** If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

**9.** **Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No.

☐ Yes.

| | District | | When | | Case number | |
|---|---|---|---|---|---|---|
| | District | | When | | Case number | |

**10.** **Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

List all cases. If more than 1, attach a separate list

☐ No

☒ Yes.

| | Debtor | See Schedule 1 | | | Relationship | |
|---|---|---|---|---|---|---|
| | District | | When | | Case number, if known | |

Official Form 201          Voluntary Petition for Non-Individuals Filing for Bankruptcy          page 2

2.  267368

| Debtor | **Town Sports International, LLC** | Case number (*if known*) |
|---|---|---|
| | Name | |

**11. Why is the case filed in *this district*?**

*Check all that apply:*

☐ Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒ A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No

☐ Yes.    Answer below for each property that needs immediate attention. Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐ It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard? _____

☐ It needs to be physically secured or protected from the weather.

☐ It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐ Other _____

**Where is the property?** _____
Number, Street, City, State & ZIP Code

**Is the property insured?**

☐ No

☐ Yes.    Insurance agency _____

Contact name _____

Phone _____

---

**Statistical and administrative information (on a consolidated basis)**

**13. Debtor's estimation of available funds**    .    *Check one:*

☒ Funds will be available for distribution to unsecured creditors.

☐ After any administrative expenses are paid, no funds will be available to unsecured creditors.

**14. Estimated number of creditors**

☐ 1-49
☐ 50-99
☐ 100-199
☐ 200-999
☐ 1,000-5,000
☐ 5001-10,000
☒ 10,001-25,000
☐ 25,001-50,000
☐ 50,001-100,000
☐ More than 100,000

**15. Estimated Assets**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million
☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million
☒ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

**16. Estimated liabilities**

☐ $0 - $50,000
☐ $50,001 - $100,000
☐ $100,001 - $500,000
☐ $500,001 - $1 million
☐ $1,000,001 - $10 million
☐ $10,000,001 - $50 million
☐ $50,000,001 - $100 million
☐ $100,000,001 - $500 million
☒ $500,000,001 - $1 billion
☐ $1,000,000,001 - $10 billion
☐ $10,000,000,001 - $50 billion
☐ More than $50 billion

| Debtor | **Town Sports International, LLC** | Case number (*if known*) | |
|---|---|---|---|
| | Name | | |

▮ **Request for Relief, Declaration, and Signatures**

**WARNING** -- Bankruptcy fraud is a serious crime. Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    **09/14/2020**
        MM / DD / YYYY

**X**   **/s/ Patrick Walsh**                **Patrick Walsh**
    Signature of authorized representative of debtor       Printed name

Title    **Chief Executive Officer**

---

**18. Signature of attorney**

**X** **/s/ Robert S. Brady**           Date **09/14/2020**
    Signature of attorney for debtor         MM / DD / YYYY

**Robert S. Brady**
Printed name

**Young Conaway Stargatt & Taylor, LLP**
Firm name

**1000 North King Street**
**Wilmington, DE 19801**
Number, Street, City, State & ZIP Code

Contact phone   302-571-6600      Email address   **rbrady@ycst.com**

**2847 (DE)**
Bar number and State

**SCHEDULE 1**

**Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor**

On the date hereof, each of the affiliated entities listed below, including the Debtor in this chapter 11 case, filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code in the United States Bankruptcy Court for the District of Delaware.

| Company | Tax ID# |
|---|---|
| TSI Lincoln, LLC | 13-3217462 |
| TSI Cobble Hill, LLC | 13-3285675 |
| TSI East 76, LLC | 13-3680542 |
| TSI West 80, LLC | 13-3694556 |
| TSI Glover, LLC | 52-1842000 |
| TSI First Avenue, LLC | 13-3736708 |
| TSI Broadway, LLC | 11-3000086 |
| TSI East 23, LLC | 13-3834638 |
| TSI Scarsdale, LLC | 13-3593359 |
| TSI East 51, LLC | 13-3866959 |
| TSI West 23, LLC | 13-3896459 |
| TSI Forest Hills, LLC | 11-3327332 |
| TSI East 91, LLC | 13-3910665 |
| TSI Princeton, LLC | 22-3511330 |
| TSI East 36, LLC | 13-3486149 |
| TSI North Bethesda, LLC | 52-2033988 |
| TSI Allston, LLC | 20-2106668 |
| TSI Hoboken, LLC | 22-3539811 |
| TSI Fenway, LLC | 20-2106936 |
| TSI Society Hill, LLC | 23-2931237 |
| TSI West 125, LLC | 13-3978641 |
| TSI Croton, LLC | 13-3982171 |
| TSI Matawan, LLC | 22-3567666 |
| TSI Marlboro, LLC | 22-3567661 |
| TSI Oceanside, LLC | 11-3432030 |
| TSI Staten Island, LLC | 13-4007763 |
| TSI Brooklyn Belt, LLC | 11-3436781 |
| TSI Ramsey, LLC | 22-2396438 |
| TSI Whitestone, LLC | 11-3438769 |
| TSI Springfield, LLC | 22-3598663 |
| TSI Bulfinch, LLC | 20-2107143 |
| TSI West 73, LLC | 13-4020357 |
| TSI Larchmont, LLC | 13-4032565 |
| TSI Commack, LLC | 11-3466826 |
| TSI Long Beach, LLC | 11-2787121 |
| TSI Garden City, LLC | 11-3496320 |

3.   267368

Debtor   **Town Sports International, LLC**                      Case number (*if known*)
         Name

| | |
|---|---|
| TSI Connecticut Avenue, LLC | 52-2185711 |
| TSI Highpoint, LLC | 54-1880836 |
| TSI Central Square, LLC | 20-2106837 |
| TSI Court Street, LLC | 11-3549905 |
| TSI Lynnfield, LLC | 04-3100325 |
| TSI Lexington (MA), LLC | 04-2931936 |
| TSI Wellesley,   LLC | 04-3259257 |
| TSI West 16, LLC | 13-4145988 |
| TSI West 94, LLC | 13-4159717 |
| TSI West 41, LLC | 13-4162540 |
| TSI Ridgewood, LLC | 13-4178569 |
| TSI South Park Slope, LLC | 11-3576282 |
| TSI Gallery Place, LLC | 90-0016157 |
| TSI Murray Hill, LLC | 13-4185032 |
| TSI Downtown Crossing, LLC | 22-3821061 |
| TSI West 48, LLC | 30-0033088 |
| TSI Westwood, LLC | 01-0715576 |
| TSI Jersey City, LLC | 01-0715570 |
| TSI Newark, LLC | 22-3860893 |
| TSI Waltham, LLC | 45-0489363 |
| TSI Grand Central, LLC | 35-2187324 |
| TSI Astoria, LLC | 81-0611120 |
| TSI Livingston, LLC | 22-3768516 |
| TSI Hoboken North, LLC | 13-4278513 |
| TSI White Plains City Center, LLC | 13-4278511 |
| TSI Bay Ridge, LLC | 56-2457922 |
| TSI Watertown, LLC | 34-2011362 |
| TSI South End, LLC | 34-2011367 |
| TSI Boylston, LLC | 20-3391971 |
| TSI South Station, LLC | 20-2106457 |
| TSI South Bethesda, LLC | 20-3392176 |
| TSI Hawthorne, LLC | 20-3392045 |
| TSI Varick Street, LLC | 20-3442477 |
| TSI Rego Park, LLC | 20-4249854 |
| TSI Radnor, LLC | 20-3601836 |
| TSI Glendale, LLC | 20-4310458 |
| TSI Carmel, LLC | 26-2300417 |
| TSI Newton, LLC | 20-5288787 |
| TSI Clifton LLC | 20-5306663 |
| TSI West 115th, LLC | 20-5683543 |
| TSI West 145th Street, LLC | 20-8987153 |
| TSI Morris Park, LLC | 20-5331095 |
| TSI Davis Square, LLC | 20-5330714 |
| TSI Smithtown, LLC | 20-4073505 |
| TSI Bayridge 86th Street LLC | 20-5330923 |
| TSI Dobbs Ferry, LLC | 20-4742691 |

Debtor    **Town Sports International, LLC**    Case number (*if known*)
Name

| | |
|---|---|
| TSI Butler, LLC | 26-3338194 |
| TSI Columbia Heights, LLC | 20-2602018 |
| TSI Wellington Circle, LLC | 20-5331149 |
| TSI Hicksville, LLC | 26-2720808 |
| TSI Sunnyside, LLC | 26-1150637 |
| TSI Westborough, LLC | 26-2047867 |
| TSI West Hartford, LLC | 26-0850565 |
| TSI Garnerville, LLC | 26-1761910 |
| TSI Deer Park, LLC | 26-3299026 |
| TSI Providence Eastside, LLC | 26-2955808 |
| TSI Bayonne, LLC | 61-1652557 |
| TSI Greenpoint, LLC | 35-2469962 |
| TSI Back Bay, LLC | 38-3906383 |
| TSI Avenue A, LLC | 32-0422162 |
| TSI Dorchester, LLC | 35-2506644 |
| TSI Wayland, LLC | 30-0819132 |
| TSI 30 Broad Street, LLC | 46-5686787 |
| TSI 1231 3rd Avenue, LLC | 36-4788966 |
| TSI Elite Back Bay, LLC | 37-1767808 |
| TSI 555 6th Avenue, LLC | 46-4238513 |
| TSI Astor Place, LLC | 61-1843400 |
| TSI Massapequa, LLC | 36-4876291 |
| TSI Westboro Tennis, LLC | 32-0548423 |
| TSI - Studio City, LLC | 32-0556425 |
| TSI - Northridge, LLC | 36-4891666 |
| TSI - Irvine, LLC | 38-4062283 |
| TSI - San Jose, LLC | 61-1870502 |
| TSI - Alameda, LLC | 35-2617476 |
| TSI - Westlake, LLC | 38-4065018 |
| TSI - Valencia, LLC | 35-2619990 |
| TSI - Torrance, LLC | 30-1040164 |
| TSI - Topanga, LLC | 30-1042632 |
| TSI - Cal.Glendale, LLC | 36-4893001 |
| TSI Peabody, LLC | 37-1913596 |
| TSI Salisbury, LLC | 30-1141332 |
| TSI Methuen, LLC | 36-4914128 |
| TSI Pine Street, LLC | 37-1916577 |
| TSI-ATC Cape Coral, LLC | 30-1174876 |
| TSI-ATC Boyscout, LLC | 38-4107078 |
| TSI-ATC Alico Mission, LLC | 30-1171940 |
| TSI-ATC Beneva Road, LLC | 36-4927816 |
| TSI-ATC Ben Pratt, LLC | 36-4927817 |
| TSI-ATC Tamiami Trail, LLC | 30-1174829 |
| TSI - Lucille 38th Avenue, LLC | 32-0534621 |
| TSI - Lucille Austin Street, LLC | 61-1847853 |
| TSI - Lucille Clifton, LLC | 32-0534724 |

| Debtor | **Town Sports International, LLC** | | Case number (*if known*) | |
| | Name | | | |

| | |
|---|---|
| TSI - Lucille Kings Highway, LLC | 38-4040881 |
| TSI - Lucille Valley Stream, LLC | 32-0536228 |
| TSI Dupont II, Inc. | 52-1887282 |
| TSI East 86, LLC | 13-4036613 |
| TSI Cash Management, LLC | 13-3607389 |
| TSI Hartsdale, LLC | 34-2011353 |
| TSI Sheridan, LLC | 13-3754408 |
| TSI West 38, LLC | 13-4046618 |
| TSI White Plains, LLC | 13-3965540 |
| TSI Giftco, LLC | 36-4785941 |
| TSI Holdings (CIP), LLC | 11-3465800 |
| TSI-ATC Holdco, LLC | 30-1166015 |
| TSI-HR 13th Street, LLC | 30-1194317 |
| TSI-HR 45th Street, LLC | 36-4936607 |
| TSI-HR 76th Street, LLC | 32-0598093 |
| TSI-HR Whitehall Street, LLC | 61-1927953 |
| TSI Stoked, LLC | N/A |
| TSI Total Woman Holdco, LLC | 36-4889261 |
| TSI Placentia, LLC | 36-4892098 |
| TSI Holdings (IP), LLC | 52-1868513 |
| TSI Holdings (DC), LLC | 52-1786716 |
| TSI Georgetown, LLC | 13-4278506 |
| TSI University Management, LLC | 90-0238870 |
| TSI International, Inc. | 13-3433612 |
| TSI Holdings (MA), LLC | 80-0920973 |
| TSI Holdings (MD), LLC | 52-1483416 |
| TSI Holdings (NJ), LLC | 20-2118374 |
| TSI Colonia, LLC | 22-3598664 |
| TSI Holdings (PA), LLC | 23-2995708 |
| TSI Holdings (VA), LLC | 52-2103430 |
| TSI Beacon Street, LLC | 61-1712404 |
| TSI Clarendon, LLC | 22-3768520 |
| Town Sports International, LLC | 20-5047365 |
| TSI Holdings II, LLC | 61-1723368 |

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| TOWN SPORTS INTERNATIONAL, LLC, | Case No. 20-_____ (____) |
| Debtor. | |

### COMBINED CORPORATE OWNERSHIP STATEMENT
### AND LIST OF EQUITY INTEREST HOLDERS
### PURSUANT TO FED. R. BANKR. P. 1007(a)(1), 1007(a)(3), AND 7007.1

Pursuant to Rules 1007(a)(1), 1007(a)(3), and 7007.1 of the Federal Rules of Bankruptcy

Procedure, the above-captioned debtor and debtor in possession (collectively, the "Debtors"),

hereby states as follows:

1.      Town Sports International, LLC is 100% owned by TSI Holdings II, LLC

2.      TSI Holdings II, LLC is 100% owned by Town Sports International, Inc.

The following is a list of all entities that directly or indirectly own 10% or more of any

class of equity security interests in Town Sports International Holdings, Inc:

| Equity Holder | Nature of Interest Held | Unit Holdings and % Ownership |
|---|---|---|
| Fitness TSI, LLC | Common Stock | 4,200,000 (14.13%) |

3.    267368

# UNANIMOUS WRITTEN CONSENT
## OF THE
## BOARD OF DIRECTORS
## OF
## TOWN SPORTS INTERNATIONAL, LLC

September 13, 2020

The board of directors (the "Board") of Town Sports International, LLC, a New York limited liability company (the "Company"), hereby takes the following actions and adopts, approves, and consents to the following resolutions by written consent as of the date hereof:

**WHEREAS**, the Board has reviewed and considered the financial and operational condition of the Company and each of its subsidiaries (each a "Subsidiary" and collectively, the "Subsidiaries" and together with the Company, each an "Entity" and collectively, the "Entities"), and the Entities' business on the date hereof, including the assets of the Entities, and current and long-term liabilities of the Entities, and the recommendations of the Entities' legal, financial, and restructuring advisors as to the relative risks and benefits of pursuing a bankruptcy proceeding under the provisions of chapter 11 of title 11 of the United States Code (the "Bankruptcy Code");

**WHEREAS**, the Board has determined that it is in the best interests of the Entities and the Entities' stakeholders, creditors, and other interested parties to commence a case under the provisions of chapter 11 of the Bankruptcy Code;

**WHEREAS**, the special committee of the Company, formed on September 13, 2020 (the "Special Committee") has had an opportunity to consult with the Company's financial and legal advisors and review the chapter 11 preparation materials, and the Special Committee recommends the filing of chapter 11 petitions; and

**WHEREAS**, the Board wishes to approve and authorize the taking of actions and execution of documents in connection with the foregoing.

**NOW, THEREFORE, BE IT:**

**RESOLVED**, that, in the judgment of the Board, it is desirable and in the best interests of the Company, the creditors of the Company, and other interested parties of the Company, that a voluntary petition (the "Petition") be filed by the Company with the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") under the provisions of chapter 11 of the Bankruptcy Code; and it is further

**RESOLVED**, that the officers of the Company and Patrick Walsh (each, an "Authorized Person" and collectively, the "Authorized Persons") be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company (i) to execute and verify the Petition and all documents ancillary thereto, and to cause the Petition to be filed with the Bankruptcy Court commencing a case (the "Bankruptcy Case"), and to make or cause to be made prior to the execution thereof any modifications to the Petition or ancillary documents, and (ii) to execute, verify, and file or cause to be filed all other petitions, schedules, lists, motions, applications, declarations, affidavits, and

other papers or documents necessary, appropriate, or desirable in connection with the foregoing; and it is further

**RESOLVED**, that the law firms of Kirkland & Ellis LLP, Kirkland & Ellis International LLP (collectively, with Kirkland & Ellis LLP, "Kirkland"), and Young Conaway Stargatt & Taylor, LLP be, and hereby are, authorized and empowered to represent the Company as bankruptcy counsel on the terms set forth in their respective engagement letters with the Company, which is hereby ratified and approved, and to represent and assist the Company in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights, including without limitation the preparation of certain documents to be filed simultaneously with the Petition or during the Bankruptcy Case; and it is further

**RESOLVED**, that Houlihan Lokey, Inc. be, and hereby is, authorized and empowered to serve as the financial advisor and investment banker to represent and assist the Company in connection with the sale of the Company's assets and in carrying out its duties under the Bankruptcy Code, and to take any and all actions to advance the Company's rights and obligations in connection with the Bankruptcy Case; and it is further

**RESOLVED**, that Epiq Corporate Restructuring, LLC be, and hereby is, authorized and empowered to serve as the claims, noticing, solicitation and balloting agent for the Company in connection with the Bankruptcy Case; and it is further

**RESOLVED**, that the Authorized Persons be, and each of them, acting alone or in any combination, hereby is, authorized and empowered, on behalf of and in the name of the Company, to obtain the use of cash collateral and post-petition financing according to terms substantially similar to those negotiated by the management of the Company prior to the Petition Date, including under debtor-in-possession credit facilities, if any, and to enter into any guarantees and to pledge and grant liens on its assets as may be contemplated by or required under the terms of such Bankruptcy Court-approved post-petition financing or cash collateral agreements, and in connection therewith, the Authorized Persons are hereby authorized and directed to execute appropriate loan agreements, cash collateral agreements, and related ancillary documents; and it is further

**RESOLVED**, that the Authorized Persons be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company, to secure the payment and performance of any such Bankruptcy Court-approved post-petition financing by (i) (a) pledging or granting liens or mortgages on, or security interests in, all or any portion of the Company's assets, including all or any portion of the issued and outstanding membership interests of any subsidiaries, whether now or hereafter acquired, and (b) causing its subsidiaries, to pledge or grant liens or mortgages or security interests in, all or any portion of such subsidiaries' assets, whether now owned or hereafter acquired, and (ii) entering into or causing to be entered into, including without limitation causing its subsidiaries to enter into such credit agreements, guarantees, other debt instruments, security agreements, pledge agreements, control agreements, inter-creditor agreements, mortgages, deeds of trust, and other agreements as are necessary, appropriate or desirable to effectuate the intent of, or matters reasonably contemplated or implied by, this resolution in such form, covering such collateral and having such other terms and conditions as are approved or deemed necessary, appropriate, or

desirable by the Authorized Persons executing the same, the execution thereof by such Authorized Persons to be conclusive evidence of such approval or determination; and it is further

**RESOLVED**, that the Authorized Persons be, and each of them, acting alone or in any combination, hereby is, authorized, directed, empowered, on behalf of and in the name of the Company, to perform the obligations of the Company under the Bankruptcy Code, with all such actions to be performed in such manner, and all such certificates, instruments, guaranties, notices, and documents to be executed and delivered in such form, as the Authorized Persons performing or executing the same shall approve, and the performance or execution thereof by such Authorized Persons shall be conclusive evidence of the approval thereof by such Authorized Persons and by the Company; and it is further

**RESOLVED**, that the Authorized Persons be, and each of them, acting alone or in any combination is, hereby authorized, directed, and empowered, in the name of and on behalf of the Company, to cause the Company to enter into, execute, deliver, certify, file, record and perform under such agreements, instruments, motions, affidavits, applications for approvals or rulings of governmental or regulatory authorities, certificates or other documents, to pay all expenses, including filing fees, and to take such other actions as in the judgment of such Authorized Persons, shall be necessary, proper, and desirable to prosecute a successful completion of the Bankruptcy Case and to effectuate the restructuring or liquidation of the Company's debts, other obligations, organizational form and structure and ownership of the Company, all consistent with the foregoing resolutions and to carry out and put into effect the purposes of which the foregoing resolutions, and the transactions contemplated by these resolutions, their authority thereunto to be evidenced by the taking of such actions; and it is further

**RESOLVED**, that the Company's and each and any of its Subsidiaries' and each and any of their subsidiaries' execution of any and all documents in connection with the foregoing be, and hereby is, consented to, approved, and ratified; and it is further

**RESOLVED**, that the Authorized Persons be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company, as the Controlling Person of each of its Subsidiaries, to take all actions, and execute such further documents, as may be necessary or desirable, on behalf of each Subsidiary set forth in the foregoing resolutions, including without limitation a written consent by the Company, approving the foregoing, and any actions, including the execution of documents, taken prior to the date hereof by such persons in accordance with the foregoing are hereby consented to, approved, and ratified; and it is further

**RESOLVED**, that the Authorized Persons be, and each of them, acting alone or in any combination, hereby is, authorized, directed, and empowered, on behalf of and in the name of the Company, to take such actions and execute and deliver such documents as may be required or as the Authorized Persons may determine to be necessary, appropriate, or desirable to carry out the intent and purpose of the foregoing resolutions or to obtain the relief sought thereby, including without limitation the execution and delivery of any petitions, schedules, lists, declarations, affidavits, and other papers or documents, with all such actions to be taken in such manner, and all such petitions, schedules, lists, declarations, affidavits, and other papers or documents to be executed and delivered in such form as the Authorized Persons shall approve, the taking or

3

execution thereof by any Authorized Persons being conclusive evidence of the approval thereof by the Authorized Persons; and it is further

        **RESOLVED**, that all of the acts and transactions relating to matters contemplated by the foregoing resolutions, which acts and transactions would have been authorized and approved by the foregoing resolutions except that such acts and transactions were taken prior to the adoption of these resolutions, be, and they hereby are, in all respects confirmed, approved, and ratified; and it is further

        **RESOLVED**, that facsimile or photostatic copies of signatures to this consent shall be deemed to be originals and may be relied on to the same extent as the originals.

*[Signature Page Follows]*

**IN WITNESS WHEREOF**, the undersigned, being the Board of the Company, hereby executes this written consent effective as of the date first written above.

*/s/ Patrick Walsh*
Patrick Walsh
Director

*/s/ Martin Annese*
Martin Annese
Director

*/s/ Jefferu Crivello*
Jeffery Crivello
Director

*/s/ Justin Lundberg*
Justin Lundberg
Director

*/s/ Steven G. Panagos*
Steven G. Panagos
Director

*/s/ Jill Frizzley*
Jill Frizzley
Director

<table>
<tr><td colspan="2"><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

Debtor name:  **Town Sports International, LLC, _et al._**

United States Bankruptcy Court for the:                    District of Delaware

                                      (State)

Case number (if known):  20-

☐ Check if this is an amended filing

Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

**12/15**

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1. | ABC Realty 152 West 57th Street, 12th Floor New York, NY 10019 | Bill Harra (212) 307-0500, Ext. 226 bharra@abcmgmt.net | Rent And Other Related Amounts | Contingent, Disputed | | | $1,255,433 |
| 2. | TFG Winter Street Property, LLC c/o Davis Marcus Management, Inc. 125 High Street, Ste 2111 Attn: Kevin Bransfield Boston, MA 02110-2704 | Mark Bush (617) 986-6341 mbush@thedaviscompanies.com Colin C. Macdonald (617) 986-6341 cmacdonald@thedaviscompanies.com | Rent And Other Related Amounts | Contingent, Disputed | | | $1,107,516 |
| 3. | Babson College Attn: Controller, Nichols Building Babson Park, MA 02157 | Steve Gusmini 781-239-5697 sgusmini@babson.edu | Rent And Other Related Amounts | Contingent, Disputed | | | $1,081,644 |
| 4. | 575 Lex Property Owner, LLC PO Box 780236 Philadelphia, PA 19178-0236 | Monica Saavedra-Garcia 212-702-9824 Monica.SaavedraGarcia@columbia.reit | Rent And Other Related Amounts | Contingent, Disputed | | | $962,495 |

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 5. Con Edison PO Box 1701 New York, NY 10116-1701 | Spero Poulimeros NUS Consulting Group 201-391-4300 spoulimeros@nusconsulting.com | Utilities | | | | $948,248 |
| 6. New Roc Parcel 1A, LLC Attn: Aaron Kosakowski 1720 Post Road Fairfield, CT 06824 | Marcia Nurse-Daniel 203-256-4066 Mnurse-daniel@ceruzzi.com and Louis Cappelli louis@icapelli.com | Rent And Other Related Amounts | Contingent, Disputed | | | $945,079 |
| 7. Garth Organization 161 East 86th Street New York, NY 10019 | Daniel Friedland 212-586-8800 dan@garthorg.com | Rent And Other Related Amounts | Contingent, Disputed | | | $940,659 |
| 8. Trea 350 Washington Street LLC 4400 W 78th St, Suite 200, Attn: Allison Barron Minneapolis, MN 55435 | Chris Daley 617 204 1030 Christopher.Daley@cbre.com | Rent And Other Related Amounts | Contingent, Disputed | | | $935,804 |
| 9. Related Broadway Development, LLC 60 Columbus Circle, 19th Floor New York, NY 10023 | Debbie Bronisevsky 917-734-4868 Debbie.Bronisevsky@related.com | Rent And Other Related Amounts | Contingent, Disputed | | | $934,504 |
| 10. Larstrand Corp. C/O ZKZ Assoc. - Friedland 500 Park Avenue New York, NY 10022 | Andrea Cardella 212-744-3300 ac@friedlandproperties.com | Rent And Other Related Amounts | Contingent, Disputed | | | $901,870 |

4. 267368

| Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim. If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|
| | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 11. Lafayette-Astor Associates LLC P.O. Box 432 Emerson, NJ 07630 | Donna Vogel 212.431.9416 dsiciliani@gfpre.com; and Bibi Husseain 212-609-8030 BHusseain@gfpre.com | Rent And Other Related Amounts | Contingent, Disputed | | | $844,022 |
| 12. Dobbs Ferry Shopping LLC C/O Philips International 295 Madison Avenue, 2nd Floor New York, NY 10017 | Maria Lange 212.951.3813 mlange@pihc.com | Rent And Other Related Amounts | Contingent, Disputed | | | $802,289 |
| 13. Rock Mcgraw , Inc. 1221 Avenue of the Americas New York, NY 10020 | Jeffrey Kim 212 282 2031 jkim@rockefellergroup.com | Rent And Other Related Amounts | Contingent, Disputed | | | $771,951 |
| 14. ARE-MA Region No. 75, LLC PO Box 975383 Dallas, TX 75397-5383 | Shelby McKenney 617-500-8703 smckenney@are.com | Rent And Other Related Amounts | Contingent, Disputed | | | $770,926 |
| 15. Station Landing III LLC 2310 Washington Street Newton Lower Falls, MA 02462 | Chuck Landry and Jessica Pollack 617-559-5027 clandry@natdev.com jpollack@natdev.com | Rent And Other Related Amounts | Contingent, Disputed | | | $747,516 |
| 16. Inland Diversified Real Estate Services, L.L.C 15961 Collections Center Drive Chicago, IL 60693-0139 | Jennifer Surber 317 713 5656 jsurber@kiterealty.com | Rent And Other Related Amounts | Contingent, Disputed | | | $741,231 |

4.   267368

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 17. | SCF RC Funding IV LLC 47 Hulfish St, Suite 210 Princeton, NJ 08542 | Claudia Curto 609-285-2969 ccurto@essentialproperties.com | Rent And Other Related Amounts | Contingent, Disputed | | | $730,018 |
| 18. | Imperial Bag & Paper Company, LLC 255 Route 1 and 9 Jersey City, NJ 07306 | Virginia Wotman 201-437-7440 ext. 5104 virginia@imperialdade.com | Trade | | | | $726,621 |
| 19. | 110 BP Property LLC 64 Beaver St., Suite 108 New York, NY 10004 | Jessica Eller 212.563.9200, Ext.135 jeller@hidrock.com | Rent And Other Related Amounts | Contingent, Disputed | | | $715,644 |
| 20. | DC USA Operating Co., LLC 2309 Frederick Douglass Blvd., 2nd Floor New York, NY 10027 | Steven A. Sterneck 212-678-4400 ext. 106 ssterneck@gridproperties.com | Rent And Other Related Amounts | Contingent, Disputed | | | $700,013 |
| 21. | WMAP, LLC C/O The Shops At Atlas Park P.O. BOX 843383 Los Angeles, CA 90084-3383 | Joanna Grace Morrow (818) 265-7601 Jmorrow@onni.com | Rent And Other Related Amounts | Contingent, Disputed | | | $694,773 |
| 22. | Tolleson One, LLC 4012 Via Solano Palos Verdes Estates, CA 90274 | Chuck Grace 213-388-5416 cgrace@itcelectronics.com and Daniel B. Leon, Esq. 310-312-3289 dbl@msk.com | Rent And Other Related Amounts | Contingent, Disputed | | | $682,815 |
| 23. | Yorkville Towers Associates 1619 Third Ave. New York, NY 10128 | Diana Bosnjak 212.534.7771 x 136 dbosnjak@RYManagement.com | Rent And Other Related Amounts | Contingent, Disputed | | | $678,526 |

4.   267368

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 24. | 200 Park LP General Post Office P.O. Box 27996 New York, NY 10087 | Jean Baptiste David 212-867-0750 JDavid@TishmanSpeyer.com | Rent And Other Related Amounts | Contingent, Disputed | | | $654,398 |
| 25. | Clearbrook Cross LLC c/o Robert Martin Company, LLC 100 Clearbrook Road Elmsford, NU 10523 | Customer Service 914-592-4800 customerservice@rmcdev.com | Rent And Other Related Amounts | Contingent, Disputed | | | $643,808 |
| 26. | T-C 501 Boylston Street LLC 14626 Collections Center Drive Chicago, IL 60693 | Devin O'Keeffe 617 247 3676 devin.o'keeffe@cbre.com | Rent And Other Related Amounts | Contingent, Disputed | | | $632,131 |
| 27. | 100 Duffy, LLC 102 Duffy Avenue Hicksville, NY 11801 | Ana Morgan 216-588-7141 Ana.Morgan@mynycb.com | Rent And Other Related Amounts | Contingent, Disputed | | | $606,288 |
| 28. | George Comfort & Sons, Inc. 200 Madison Ave, 26th Floor New York, NY 10016 | Anita Polczynska 212.542.2139 apolczynska@gcomfort.com | Rent And Other Related Amounts | Contingent, Disputed | | | $586,817 |
| 29. | Club Investors Group, LP Attention: Frank Napolitano 640 Spruce Street Philadelphia, PA 19106 | Frank Napolitano 215 341-6130 franknapolitanojr@gmail.com; | Rent And Other Related Amounts | Contingent, Disputed | | | $567,894 |
| 30. | SOF-IX Blueback Square Holdings, L.P. P.O.BOX 75762 Baltimore, MD 21275-5762 | Vincent Banda 312.242.3184 vbanda@starwoodretail.com | Rent And Other Related Amounts | Contingent, Disputed | | | $562,152 |

4.    267368

**Fill in this information to identify the case and this filing:**

Debtor Name   Town Sports International, LLC

United States Bankruptcy Court for the:   District of Delaware

Case number (*If known*):   20-

# Official Form 202

## Declaration Under Penalty of Perjury for Non-Individual Debtors          12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date.   Bankruptcy Rules 1008 and 9011.

**WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.   18 U.S.C. §§ 152, 1341, 1519, and 3571.**

### Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

- [ ] *Schedule A/B: Assets–Real and Personal Property* (Official Form 206A/B)

- [ ] *Schedule D: Creditors Who Have Claims Secured by Property* (Official Form 206D)

- [ ] *Schedule E/F: Creditors Who Have Unsecured Claims* (Official Form 206E/F)

- [ ] *Schedule G: Executory Contracts and Unexpired Leases* (Official Form 206G)

- [ ] *Schedule H: Codebtors* (Official Form 206H)

- [ ] *Summary of Assets and Liabilities for Non-Individuals* (Official Form 206Sum)

- [ ] Amended *Schedule* _____

- [x] *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders* (Official Form 204)

- [x] Other document that requires a declaration: *Combined Corporate Ownership Statement and List of Equity Interest Holders*

I declare under penalty of perjury that the foregoing is true and correct. Executed on   09/14/2020
          MM / DD / YYYY

**/s/ Patrick Walsh**
Signature of individual signing on behalf of debtor

**Patrick Walsh**
Printed name

**Chief Executive Officer**
Position or relationship to debtor

6

4.   267368

# EXHIBIT C

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, ) ) | Index No. 451969/2020 |
| ) | |
| Petitioner, ) | Hon. Debra A. James |
| ) | |
| – against – ) | **CONSENT AND STIPULATION** |
| ) | |
| TOWN SPORTS INTERNATIONAL HOLDINGS, INC. and TOWN SPORTS INTERNATIONAL, LLC d/b/a NEW YORK SPORTS CLUB AND LUCILLE ROBERTS, ) ) ) | |
| ) | |
| Respondents. ) | |

IT IS HEREBY ACKNOWLEDGED, STIPULATED, CONSENTED TO, AND

AGREED, by and among petitioner the People of the State of New York, by their attorney,

Letitia James, Attorney General of the State of New York ("Petitioner"), and respondents Town

Sports International Holdings, Inc. and Town Sports International, LLC ("TSI" and, together

with Petitioner, the "Parties") as follows:

1.      The Parties, through their undersigned counsel, have agreed to the entry of the

attached Final Consent Order and Judgment ("Judgment") by this Court without trial or

adjudication of any issue of fact or law and without admission of any wrongdoing or admission

of any of the violations of New York law alleged by Petitioner in this proceeding.

2.      On September 14, 2020, respondent Town Sports International LLC and other

subsidiaries of respondent Town Sports International Holdings, Inc. filed petitions for

bankruptcy in Delaware bankruptcy court.[1]

3.      On November 4, 2020, the bankruptcy court approved a transaction pursuant to

which a third party will purchase substantially all of TSI's assets free of any pre-petition

---

[1] *See In re Town Sports International, LLC, et al.*, Case No. 20-12168 (Bankr. Del. 2020).

liabilities (including liability arising out of this proceeding); any remaining assets will be sold; and TSI will be wound down and will cease to exist.[2]

4.      The Judgment is not intended to be, and should not be construed as, an admission of liability by TSI.

5.      The Judgment does not constitute an approval by Petitioner of TSI's business practices, and TSI shall make no representation or claim to the contrary.

6.      All notices, reports, requests, and other communications pursuant to the Judgment shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery; express courier; or electronic mail at an address designated in writing by the recipient, followed by postage prepaid mail, and shall be addressed as follows:

> If to Petitioner:
>
> New York State Office of the Attorney General
> Bureau of Consumer Frauds and Protection
> Attn:  Christopher L. McCall, Assistant Attorney General
> 28 Liberty Street, 20th Floor
> New York, New York  10005
> Telephone:  (212) 416-8303
> Email:  christopher.mccall@ag.ny.gov
>
> If to TSI:
>
> Gregory N. Brescia
> GORDON, REES, SCULLY & MANSUKHANI, LLP
> 500 Mamaroneck Avenue
> Suite 503
> Harrison, New York  10528
> Telephone:  (914) 777-2215
> Email:  gbrescia@grsm.com

---

[2] *See* Doc. No. 639, *In re Town Sports International, LLC, et al.*, Case No. 20-12168 (Bankr. Del. 2020).

7.      TSI represents and warrants, through the signatures below, that the terms and conditions of the Judgment are duly approved.

8.      Nothing in the Judgment shall relieve TSI of other obligations imposed by any applicable state or federal law or regulation or other applicable law.

9.      The Judgment resolves and releases any and all claims by Petitioner against TSI for the conduct described in the Judgment and the Verified Petition from the commencement of Petitioner's investigation until the Judgment is entered by the Court (the "Effective Date"); provided, however, that nothing in the Judgment shall be deemed to preclude Petitioner's review of conduct by TSI that occurs after the Effective Date, or any claims that may be brought by Petitioner to enforce TSI's compliance with the Judgment.

10.     TSI acknowledges that it has entered the Judgment freely and voluntarily and upon due deliberation with the advice of counsel.

11.     This Consent and Stipulation may be executed in multiple counterparts by the Parties hereto.  All counterparts so executed shall constitute one agreement binding upon all Parties, notwithstanding that all Parties are not signatories to the original or the same counterpart. Each counterpart shall be deemed an original to this Consent and Stipulation, all of which shall constitute one agreement to be valid as of the effective date of the Judgment.  For purposes of this Consent and Stipulation, copies of signatures shall be treated the same as originals. Documents executed, scanned and transmitted electronically and electronic signatures shall be deemed original signatures for purposes of this Consent and Stipulation and all matters related thereto, with such scanned and electronic signatures having the same legal effect as original signatures.

Dated:       New York, New York
             February 26, 2021

LETITIA JAMES                              GORDON, REES, SCULLY &
Attorney General of the State of New York  MANSUKHANI, LLP

By: _____       By: _____

Jane M. Azia                               Gregory N. Brescia
Bureau Chief                               500 Mamaroneck Avenue
                                           Suite 503
By: _____        Harrison, New York  10528

Christopher L. McCall                      *Attorneys for Respondents*
Assistant Attorney General

Consumer Frauds and Protection Bureau
28 Liberty Street
New York, New York  10005

*Attorneys for Petitioner*

4

SLIP SHEET

At Part _____ of the Supreme
Court of the State of New
York, in and for the County of
New York at _____
this day of _____, 2021

**PRESENT:**

**HON.** _____
                              **Justice**

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

| | |
|---|---|
| PEOPLE OF THE STATE OF NEW YORK, by LETITIA JAMES, Attorney General of the State of New York, | ) Index No. 451969/2020 |
| | ) |
| | ) Hon. Debra A. James |
| Petitioner, | ) |
| | ) |
| – against – | ) **FINAL CONSENT ORDER** |
| | ) **AND JUDGMENT** |
| TOWN SPORTS INTERNATIONAL HOLDINGS, INC. | ) |
| and TOWN SPORTS INTERNATIONAL, LLC d/b/a | ) |
| NEW YORK SPORTS CLUB AND LUCILLE ROBERTS, | ) |
| | ) |
| Respondents. | ) |

UPON the Verified Petition by petitioner People of the State of New York, by their

attorney, Letitia James, Attorney General of the State of New York ("Petitioner"), verified on

September 30, 2020, the Affirmation of Christopher L. McCall dated September 30, 2020, and

the exhibits attached thereto, the Affirmation of Andre D. Lugo dated September 30, 2020, and

the Affirmation of Emergency dated September 30, 2020, seeking a permanent injunction and

other relief in this proceeding under New York Executive Law § 63(12), New York General

Business Law § 349(b), and the New York Health Club Services Law, GBL § 630, alleging that

respondents Town Sports International Holdings, Inc. and Town Sports International, LLC

("TSI") have engaged in fraudulent, deceptive, and illegal business practices in connection with

their management and operation of New York Sports Club- and Lucille Roberts-branded health

clubs;

UPON respondent Town Sports International LLC and other subsidiaries of respondent Town Sports International Holdings, Inc. having filed petitions for bankruptcy in Delaware bankruptcy court, and the bankruptcy court having approved on November 4, 2020 a transaction pursuant to which a third party will purchase substantially all of TSI's assets free of any pre-petition liabilities (including liability arising out of this proceeding); any remaining assets will be sold; and TSI will be wound down and will cease to exist[1];

UPON the transaction described in the foregoing paragraph having closed effective as of November 30, 2020, and TSI having ceased to operate; and

UPON the Consent and Stipulation, dated February 26, 2021, in which Petitioner and TSI (the "Parties") consent to the entry of this Consent Order and Judgment (the "Judgment").

IT NOW APPEARS that TSI consents to entry of the Judgment, without admitting any of the allegations in the Verified Petition;

NOW, on application of Petitioner and upon consent of TSI, it is HEREBY ORDERED, ADJUDGED, AND DECREED as follows:

## I.    **MONETARY RELIEF**

1.    Pursuant to Section 622-a of the New York Health Club Services Law, in 2015 TSI posted a statutory bond (number 76106469) in the amount of $250,000 with the Guarantee Company of North America USA as surety (the "TSI Bond").[2]  Under the statute, the TSI Bond "shall be payable in favor of the people of the state of New York for the benefit of any [member]

---

[1] *See* Doc. No. 639, *In re Town Sports International, LLC, et al.*, Case No. 20-12168 (Bankr. Del. 2020).

[2] A true and correct copy of the TSI Bond was filed in this case as exhibit 29 to the September 30, 2020 McCall Affirmation (NYSCEF Doc. No. 36).

injured in the event that the [gym] goes out of business prior to the expiration of the [member's] contract for services, or otherwise fails to provide a refund to the [member] after cancellation of the [member's] contract for services as provided for in section six hundred twenty-four of this article."[3]

2.      In consideration of the making and execution of the Judgment, TSI shall name Petitioner as an obligee to the Bond, and TSI shall forfeit any and all rights to, and interests in, the TSI Bond.

3.      The Guarantee Company of North America USA, as surety of the TSI Bond, shall, upon service of a copy of this Judgment, immediately release, transfer, and turn over the entire TSI Bond to Petitioner, the proceeds of the TSI Bond to be distributed to TSI members whose contracts expired prior to TSI going out of business and TSI members who were unlawfully denied refunds in violation of Section 624 of the New York Health Club Services Law ("Eligible Consumers").  Notwithstanding the foregoing, TSI makes no affirmation or representation on behalf of the Guarantee Company of North America USA, and TSI shall not be held responsible for any action or inaction by the Guarantee Company of North America USA.

4.      Petitioner shall exercise discretion in disbursing the $250,000 to Eligible Consumers.  Petitioner may use a reasonable portion of the $250,000 to hire an administrator to distribute the funds.

5.      Petitioner shall be solely responsible for collecting the TSI Bond. Notwithstanding the foregoing, TSI agrees to provide reasonable assistance and/or cooperation to Petitioner to effectuate the terms contemplated by the Judgment.

---

[3] GBL § 622-a(4).

## II.    <u>INJUNCTIVE RELIEF</u>

6.      Until such time as TSI ceases to exist, TSI shall not engage, or attempt to engage, in conduct in violation of any applicable law, including, but not limited to, New York Executive Law § 63(12), New York General Business Law § 349(b), and the New York Health Club Services Law, GBL § 630.

## III.    <u>GENERAL PROVISIONS</u>

7.      The Judgment does not constitute an approval by Petitioner of TSI's business practices, and TSI shall make no representation or claim to the contrary.

8.      Any failure by Petitioner to insist upon the strict performance by TSI of any of the provisions of the Judgment shall not be deemed a waiver of any of the provisions thereof, and Petitioner, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of the Judgment to be performed by TSI.

9.      Nothing contained herein shall be construed as to deprive any person of any private right under the law.

10.     All notices, reports, requests, and other communications pursuant to the Judgment shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery; express courier; or electronic mail at an address designated in writing by the recipient, followed by postage prepaid mail, and shall be addressed as follows:

> If to Petitioner:
>
> New York State Office of the Attorney General
> Bureau of Consumer Frauds and Protection
> Attn:  Christopher L. McCall, Assistant Attorney General
> 28 Liberty Street, 20th Floor
> New York, New York  10005
> Telephone:  (212) 416-8303
> Email:  christopher.mccall@ag.ny.gov

If to TSI:

Gregory N. Brescia
GORDON, REES, SCULLY & MANSUKHANI, LLP
500 Mamaroneck Avenue
Suite 503
Harrison, New York  10528
Telephone:  (914) 777-2215
Email:  gbrescia@grsm.com

11.    Nothing in the Judgment shall relieve TSI of other obligations imposed by any applicable state or federal law or regulation or other applicable law.

12.    Nothing contained herein shall be construed to limit the remedies available to Petitioner in the event that TSI violates the Judgment after its entry by the Court (the "Effective Date").

13.    The Judgment resolves and releases all claims by Petitioner against TSI for the conduct described in the Judgment and the Verified Petition from the commencement of Petitioner's investigation until the Judgment is entered by the Court (the "Effective Date"); provided, however, that nothing in the Judgment shall be deemed to preclude Petitioner's review of conduct by TSI that occurs after the Effective Date, and any claims that may be brought by Petitioner to enforce TSI's compliance with the Judgment.

**IT IS SO ORDERED, ADJUDGED AND DECREED** this _____ day of _____, 2021.

_____
JUSTICE, SUPREME COURT

# EXHIBIT D

## SUPREME COURT OF THE STATE OF NEW YORK
## NEW YORK COUNTY

| | |
|---|---|
| **PRESENT:**    **HON. DEBRA A. JAMES** | **PART**    **IAS MOTION 59EFM** |
| *Justice* | |

--------------------------------------------------------------------X

PEOPLE OF THE STATE OF NEW YORK, BY LETITIA
JAMES, ATTORNEY GENERAL OF THE STATE OF NEW
YORK,

                 Petitioner,

           - v -

TOWN SPORTS INTERNATIONAL HOLDINGS, INC. D/B/A
NEW YORK SPORTS CLUB AND LUCILLE ROBERTS,
TOWN SPORTS INTERNATIONAL, LLC D/B/A NEW YORK
SPORTS CLUB AND LUCILLE ROBERTS

                 Respondent.

--------------------------------------------------------------------X

| | |
|---|---|
| **INDEX NO.** | 451969/2020 |
| **MOTION DATE** | 2/26/2021 |
| **MOTION SEQ. NO.** | 001 |

**DECISION + ORDER ON
MOTION**

The following e-filed documents, listed by NYSCEF document number (Motion 001) 2, 42, 43, 44, 45, 49, 50, 51, 52, 54, 55, 56

were read on this motion to/for       _____INJUNCTION/RESTRAINING ORDER_____.

     Upon the foregoing documents, it is

     ORDERED that the petition is resolved per Final Consent

Order and Judgment dated March 3, 2021.

| | |
|---|---|
| **3/3/2021** | ![signature] DEBRA A. JAMES, J.S.C. |
| **DATE** | |

| CHECK ONE: | [X] CASE DISPOSED | [ ] NON-FINAL DISPOSITION |
|---|---|---|
| | [ ] GRANTED   [ ] DENIED | [ ] GRANTED IN PART    [X] OTHER |
| APPLICATION: | [ ] SETTLE ORDER | [ ] SUBMIT ORDER |
| CHECK IF APPROPRIATE: | [ ] INCLUDES TRANSFER/REASSIGN | [ ] FIDUCIARY APPOINTMENT    [ ] REFERENCE |

**451969/2020  PEOPLE OF THE STATE OF NEW vs. TOWN SPORTS INTERNATIONAL**       **Page 1 of 1**
**Motion No. 001**

SLIP SHEET

At Part $59$ of the Supreme
Court of the State of New
York, in and for the County of
New York at _____
this day of _____, 2021

**PRESENT:**

HON. **DEBRA A. JAMES**

Justice

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

PEOPLE OF THE STATE OF NEW YORK, by LETITIA ) Index No. 451969/2020
JAMES, Attorney General of the State of New York, )
                                                  ) Hon. Debra A. James
                       Petitioner,                )
                                                  )
                  – against –                     ) **FINAL CONSENT ORDER**
                                                  ) **AND JUDGMENT**
TOWN SPORTS INTERNATIONAL HOLDINGS, INC.          )
and TOWN SPORTS INTERNATIONAL, LLC d/b/a          )
NEW YORK SPORTS CLUB AND LUCILLE ROBERTS,         )
                                                  )
_____ Respondents. _____)

UPON the Verified Petition by petitioner People of the State of New York, by their

attorney, Letitia James, Attorney General of the State of New York ("Petitioner"), verified on

September 30, 2020, the Affirmation of Christopher L. McCall dated September 30, 2020, and

the exhibits attached thereto, the Affirmation of Andre D. Lugo dated September 30, 2020, and

the Affirmation of Emergency dated September 30, 2020, seeking a permanent injunction and

other relief in this proceeding under New York Executive Law § 63(12), New York General

Business Law § 349(b), and the New York Health Club Services Law, GBL § 630, alleging that

respondents Town Sports International Holdings, Inc. and Town Sports International, LLC

("TSI") have engaged in fraudulent, deceptive, and illegal business practices in connection with

their management and operation of New York Sports Club- and Lucille Roberts-branded health

clubs;

UPON respondent Town Sports International LLC and other subsidiaries of respondent

Town Sports International Holdings, Inc. having filed petitions for bankruptcy in Delaware

bankruptcy court, and the bankruptcy court having approved on November 4, 2020 a transaction

pursuant to which a third party will purchase substantially all of TSI's assets free of any pre-

petition liabilities (including liability arising out of this proceeding); any remaining assets will be

sold; and TSI will be wound down and will cease to exist[1];

UPON the transaction described in the foregoing paragraph having closed effective as of

November 30, 2020, and TSI having ceased to operate; and

UPON the Consent and Stipulation, dated February 26, 2021, in which Petitioner and TSI

(the "Parties") consent to the entry of this Consent Order and Judgment (the "Judgment").

IT NOW APPEARS that TSI consents to entry of the Judgment, without admitting any of

the allegations in the Verified Petition;

NOW, on application of Petitioner and upon consent of TSI, it is HEREBY ORDERED,

ADJUDGED, AND DECREED as follows:

## I.   MONETARY RELIEF

1.      Pursuant to Section 622-a of the New York Health Club Services Law, in 2015

TSI posted a statutory bond (number 76106469) in the amount of $250,000 with the Guarantee

Company of North America USA as surety (the "TSI Bond").[2]  Under the statute, the TSI Bond

"shall be payable in favor of the people of the state of New York for the benefit of any [member]

---

[1] *See* Doc. No. 639, *In re Town Sports International, LLC, et al.*, Case No. 20-12168 (Bankr. Del. 2020).

[2] A true and correct copy of the TSI Bond was filed in this case as exhibit 29 to the September 30, 2020 McCall Affirmation (NYSCEF Doc. No. 36).

2

injured in the event that the [gym] goes out of business prior to the expiration of the [member's] contract for services, or otherwise fails to provide a refund to the [member] after cancellation of the [member's] contract for services as provided for in section six hundred twenty-four of this article."[3]

2.  In consideration of the making and execution of the Judgment, TSI shall name Petitioner as an obligee to the Bond, and TSI shall forfeit any and all rights to, and interests in, the TSI Bond.

3.  The Guarantee Company of North America USA, as surety of the TSI Bond, shall, upon service of a copy of this Judgment, immediately release, transfer, and turn over the entire TSI Bond to Petitioner, the proceeds of the TSI Bond to be distributed to TSI members whose contracts expired prior to TSI going out of business and TSI members who were unlawfully denied refunds in violation of Section 624 of the New York Health Club Services Law ("Eligible Consumers"). Notwithstanding the foregoing, TSI makes no affirmation or representation on behalf of the Guarantee Company of North America USA, and TSI shall not be held responsible for any action or inaction by the Guarantee Company of North America USA.

4.  Petitioner shall exercise discretion in disbursing the $250,000 to Eligible Consumers. Petitioner may use a reasonable portion of the $250,000 to hire an administrator to distribute the funds.

5.  Petitioner shall be solely responsible for collecting the TSI Bond. Notwithstanding the foregoing, TSI agrees to provide reasonable assistance and/or cooperation to Petitioner to effectuate the terms contemplated by the Judgment.

---

[3] GBL § 622-a(4).

3

## II.    INJUNCTIVE RELIEF

6.    Until such time as TSI ceases to exist, TSI shall not engage, or attempt to engage, in conduct in violation of any applicable law, including, but not limited to, New York Executive Law § 63(12), New York General Business Law § 349(b), and the New York Health Club Services Law, GBL § 630.

## III.    GENERAL PROVISIONS

7.    The Judgment does not constitute an approval by Petitioner of TSI's business practices, and TSI shall make no representation or claim to the contrary.

8.    Any failure by Petitioner to insist upon the strict performance by TSI of any of the provisions of the Judgment shall not be deemed a waiver of any of the provisions thereof, and Petitioner, notwithstanding that failure, shall have the right thereafter to insist upon the strict performance of any and all of the provisions of the Judgment to be performed by TSI.

9.    Nothing contained herein shall be construed as to deprive any person of any private right under the law.

10.    All notices, reports, requests, and other communications pursuant to the Judgment shall be in writing and shall, unless expressly provided otherwise herein, be given by hand delivery; express courier; or electronic mail at an address designated in writing by the recipient, followed by postage prepaid mail, and shall be addressed as follows:

If to Petitioner:

New York State Office of the Attorney General
Bureau of Consumer Frauds and Protection
Attn: Christopher L. McCall, Assistant Attorney General
28 Liberty Street, 20th Floor
New York, New York 10005
Telephone: (212) 416-8303
Email: christopher.mccall@ag.ny.gov

4

If to TSI:

Gregory N. Brescia
GORDON, REES, SCULLY & MANSUKHANI, LLP
500 Mamaroneck Avenue
Suite 503
Harrison, New York 10528
Telephone: (914) 777-2215
Email: gbrescia@grsm.com

11.     Nothing in the Judgment shall relieve TSI of other obligations imposed by any applicable state or federal law or regulation or other applicable law.

12.     Nothing contained herein shall be construed to limit the remedies available to Petitioner in the event that TSI violates the Judgment after its entry by the Court (the "Effective Date").

13.     The Judgment resolves and releases all claims by Petitioner against TSI for the conduct described in the Judgment and the Verified Petition from the commencement of Petitioner's investigation until the Judgment is entered by the Court (the "Effective Date"); provided, however, that nothing in the Judgment shall be deemed to preclude Petitioner's review of conduct by TSI that occurs after the Effective Date, and any claims that may be brought by Petitioner to enforce TSI's compliance with the Judgment.

**IT IS SO ORDERED, ADJUDGED AND DECREED** this _____ day of _____, 2021.

_____
JUSTICE, SUPREME COURT
**DEBRA A. JAMES**

**MAR 0 3 2021**

5