**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

-------------------------------------------------------------X
In re:                                                           :        Chapter 11
                                                                 :
TOWN SPORTS INTERNATIONAL, LLC *et al.*,[1]  :        Case No. 20-12168 (CSS)
                                                                 :
                             Debtors.            :        (Jointly Administered)
                                                                 :
-------------------------------------------------------------X        **Re: D.I. 987, 1021**

**REPLY IN SUPPORT OF MOTION TO ENFORCE
THE COURT'S CHAPTER 11 PLAN RELEASES AND INJUNCTION**

Town Sports International Holdings, Inc. ("TSIH"), by and through its undersigned counsel, hereby submits this reply in opposition to the NYAG's (as defined hereinafter) objection to TSIH's *Motion for Entry of an Order enforcing the Terms of the Chapter 11 Plan Releases and Injunction* (the "Motion"), and in further support of the Motion.

## **REPLY**

1.       The New York Attorney General's ("NYAG") opposition to the Motion does not advance arguments that override the controlling bankruptcy law implicated here and the Court's exclusive jurisdiction to approve and enforce the Plan and Confirmation Order, including the releases. The NYAG does not dispute that the claims it settled by filing the settlement agreement without TSIH's consent or authorization were released by the Plan and Confirmation Order. Beyond this fatal flaw, the NYAG does not rebut the evidence provided by TSIH demonstrating

---

[1] The last four digits of Town Sports International, LLC's federal tax identification number are 7365. The mailing address for Town Sports International, LLC is 399 Executive Boulevard, Elmsford, New York 10523. Due to the large number of debtors in these cases, for which the Debtors have requested joint administration, a complete list of the Debtors, the last four digits of their federal tax identification numbers, and their addresses are not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at http://dm.epiq11.com/TownSports, or by contacting counsel for the Debtors.

that the settlement agreement was not authorized by TSIH. If the settlement is allowed to stand, the effect will be that TSIH will have funded the entire settlement consideration with the cash proceeds from the surety bond that it posted pre-petition, while the application of those proceeds will primarily benefit Town Sports International, LLC, the lead debtor herein (the "Debtor") and New TSI Holdings LLC ("New TSI"), the purchaser of substantially all of the assets of the Debtor.[2]

2.      Significantly, New TSI, a private equity-backed deep pocket, is obligated under its Asset Purchase Agreement with the Debtor to satisfy any refund obligations related to the purchased assets, a significant portion of which are located in New York.  Meanwhile, TSIH only operated two gyms in New York pre-sale. Given the benefits it provides to the Debtor and New TSI,  it is not surprising that the Debtor consented to the settlement with the NYAG but TSIH was not asked and did not provide consent to the entry of the settlement stipulation of previously released claims such that TSIH shall receive no consideration if the settlement is permitted to stand.

3.       The balance of the equities does not favor unauthorized settlements and actions knowingly taken outside of bankruptcy proceedings which affect the rights, interests, and claims dealt with in a Chapter 11 Plan. TSIH does not request "extraordinary" relief [*see NYAG Obj.* D.I. 1021, ¶ 1)]; courts and Congress recognize that bankruptcy courts are a centralized arbiter of claims, rights, and interests affecting a bankruptcy estate. Potential creditors and state courts cannot ignore bankruptcy proceedings to dispose of rights and claims that frustrate relief provided pursuant to a confirmed Chapter 11 Plan.  *See, e.g.*, *In re Knapper*, 407 F.3d 573, 583 n.22 (3d Cir. 2005) ("[B]ankruptcy courts are empowered to avoid state judgments, *see, e.g.,* 11 U.S.C. §§

---

[2] The proceeds would be paid primarily to members of gyms formerly owned by the Debtor and now owned and operated by New TSI.

544, 547, 548, 549; to modify them, *see, e.g.,* 11 U.S.C. §§ 1129, 1325; and to discharge them, *see, e.g.,* 11 U.S.C. §§ 727, 1141, 1328." (quoting *In re Gruntz*, 202 F.3d 1074 (9th Cir. 2000) (en banc)).

4.     The NYAG's Objection focuses significantly on the legal principles of waiver and apparent authority under New York law, but waiver and apparent authority are inapplicable here, as the actions taken in state court were in violation of the Plan and this Court's confirmation order, rendering them *void ab initio*. [Motion, ¶ 22].   First and foremost, TSIH's bond is not the only right, interest, claim, or property at issue—the NYAG settlement affects other legal rights and claims of or against the Debtor, TSIH, and New TSI.   Application of the bond to obligations of the Debtor and New TSI gives rise, at a minimum, to subrogation rights against the Debtors.

5.     Second, as to the gyms it acquired in the bankruptcy §363 sale, New TSI is plainly responsible for the obligations which the NYAG seeks to enforce solely through the TSIH bond. Specifically, the Court's Sale Order and approved asset purchase agreement makes New TSI and a Liquidating Trust responsible for ". . . customer credits, sales promotions, rebates, coupons, gift cards and certificates or (ii) returns of Merchandise, customer prepayments and overpayments, customer refunds, credits, reimbursements and related adjustments with respect to Merchandise." (D.I. 639, Sale Order, Exhibit 1, Asset Purchase Agreement at 4; *see also* D.I. 812, DiDonato Decl. at 3-6).

6.     The NYAG claims that "[a]t no point in the negotiations leading to the Settlement Agreement did [TSIH], [the Debtor], any of [the Debtor's] bankruptcy lawyers, or anyone else state to the NYAG that this Court's December 18, 2020 order confirming the [Plan] . . . had any impact on the settlement agreement."  [McCall Decl. ¶19; NYAG Obj., ¶61].  This statement is misleading.  The NYAG had notice of the terms of the Plan's release provisions, by virtue of the

notice issued by the Debtor on November 3, 2020, which set forth in bold and capital letters "critical information regarding . . . the Plan," including, but not limited to, the effect of the Plan's releases and the Plan's binding nature. (D.I. 589, Notice at 4-7). The NYAG was served with this notice on November 4, 2020, (D.I. 656, Aff. of Service at 3670, listing "STATE OF NEW YORK ATTY GENERAL"), well before the Plan was confirmed. The purpose of the notice was to provide creditors, including the NYAG, ample opportunity to raise any objection to the Plan provisions, including the releases granted therein, and to affirmatively opt-out of the releases. Given the NYAG's assertion that the proposed settlement was under discussion as early as October 2020, the NYAG had an opportunity to weigh the impact of the releases on the proposed settlement and opt-out of the releases as other attorneys general did.

7.      Thus, NYAG was aware of the Plan and the releases thereunder, was provided an opportunity to opt-out of the releases (which, as noted above, other attorneys general did), and is bound by them. *In re Mansaray-Ruffin*, 530 F.3d at 245 (noting the general rule that the acceptance of a plan can be inferred by the absence of an objection). The injunctive provisions protecting the Debtor and its affiliated entities, including TSIH, prevent NYAG from moving forward with the state court action and limit the NYAG to recovery from the Debtor under the plan and rights against New TSI flowing from the terms of the Sale Order. The NYAG's actions in moving forward with the settlement violate the Plan, and the Court should grant TSIH's motion to enforce the Plan's injunctions and releases.

## I.      TSIH Has Standing Under the Plan and Confirmation Order as a Debtor Affiliate

8.      The NYAG does not dispute that TSIH has standing to enforce the Plan as an "Affiliate" and "Related Party" of the Debtor. (Motion, ¶¶ 8-10, referencing Plan at 10, D.I. 828-1).  Nor can it challenge that a settlement, entered into without TSIH's consent, is an "injury in

fact" and an invasion of TSIH's legal interests that is "concrete and particularized." *In re Horizon Healthcare Servs. Inc. Data Breach Litig.*, 846 F.3d 625, 633 (3d Cir. 2017). As such, the NYAG's contention that TSIH lacks standing has no merit and should be rejected.

## II.    TSIH Does Not Dispute that the Settlement Violates the Plan and Waives any Argument Challenging TSIH's Motion

9.      In attempting to sidestep the fact that its actions violated the injunctive provisions of the Plan, the NYAG argues that the bond posted by TSIH does not implicate any rights or property of the estate. This is wrong for the reasons set forth above. The disposal of the bond creates subrogation rights against the Debtor and impacts the legal interests and rights of the Debtors and TSIH (Debtors' affiliate and a released party). Use of the pre-petition bond also makes TSIH the entity satisfying obligations which New TSI assumed under the Sale Order.

10.     The NYAG does not contest that the Plan release provisions apply to TSIH and the Plan injunction provisions apply to the state court action. Failure to respond to TSIH's argument that the NYAG's conduct violates the Plan results in waiver of any argument to the contrary, and therefore the Court should accept as undisputed that the NYAG has violated the Plan. *See Duran v. Equifirst Corp.*, No. 2:09–CV–03856, 2010 WL 936199, at *3 (D.N.J. Mar. 12, 2010) ("The absence of argument constitutes waiver in regard to the issue left unaddressed[.]").

## III.    There is No Authority to Settle Claims Without TSIH's Approval

11.     As noted in TSIH's Motion, any actions taken by the NYAG that violate the Plan injunction are *void ab initio*, and therefore state law issues related to authority, apparent authority, and waiver are irrelevant given that there were no valid actions taken in state court that have any effect. Nevertheless, TSIH addresses the state law issues below.

A.    **There is No Basis to Accept the NYAG's Argument Based on Apparent Authority**

12.    The NYAG's opposition contains factual inaccuracies[3] and cannot prevail on a theory of actual or apparent authority under state law. The NYAG makes two factual assertions to support its argument that the firm of Gordon Rees had actual or apparent authority to bind TSIH to the settlement stipulation it signed on February 26, 2021, and which the NYAG then filed in state court several days later. [NYAG Obj., pp. 20-21]. First the NYAG points to an October 29, 2020 e-mail exchange between Gordon Rees and Patrick Walsh, announcing a tentative settlement with the NYAG, which Mr. Walsh appears to endorse. [See McCall Declaration, Exhibit 26, D.I. 1021-27, p. 4 of 26]. The NYAG then points out that the terms of the stipulation signed on February 26, 2021 are essentially the same as those outlined in the tentative settlement e-mail. [NYAG Obj., ¶ 53]. This assertion ignores, however, the significantly changed circumstances of the case between those two dates, specifically that ownership of the majority of the gyms was transferred to New TSI in November 2020 and the Plan was confirmed a month later, granting a release in favor of TSIH and an injunction on actions against it.  It strains credulity to suggest that an informal approval of a tentative settlement four months earlier carried through these significant events and attendant seismic changes in key legal and economic circumstances, and required no contemporaneous express ratification from TSIH, including the approval of the final settlement agreement itself.

13.    Second, the NYAG attaches a letter from Gordon Rees dated March 5, 2021, which confirms that Gordon Rees had been replaced as counsel in the state court action. [See McCall Declaration, Exhibit 26, D.I. 1021-27, pp. 1-2 of 26 ("our firm was not asked to withdraw as

---

[3] TSIH hereby denies all allegations and factual claims in the NYAG's opposition, unless expressly admitted herein.

counsel of record for this matter; we chose to withdraw as counsel")]. The letter also attaches e-mails indicating that in the two days prior to executing the settlement stipulation on February 26, 2021, Gordon Rees conferred with incoming counsel (the Akerman firm) regarding bonding requirements going forward, given the significantly changed circumstances since the posting of the existing bonds, particularly the changed ownership of the majority of gym locations.  [*Id.* at 21-26]. Yet Gordon Rees never asserts that it advised Akerman that it intended to sign a settlement agreement with the NYAG the following day to commit TSIH's bond to resolve the state court action.  Indeed, Akerman learned from TSIH of the purported "settlement" who received a press release issued by the NYAG and immediately advised Akerman of the news.

14.     These unsworn facts lifted from the exhibits do not rebut the lack of consent set forth by TSIH in the Walsh Declaration, and instead support a conclusion that there was no valid settlement of the state court action. *See Benicorp Ins. Co. v. Nat'l Med. Health Card Sys., Inc.*, 447 F. Supp. 2d 329, 337 (S.D.N.Y. 2006) ("The fundamental basis of a valid, enforceable contract is a meeting of the minds of the parties, and, if there is no meeting of the minds on all essential terms, there is no contract. . . . If the Court finds substantial ambiguity regarding whether both parties have mutually assented to all material terms, then the Court can neither find, nor enforce, a contract."). The policy interest at issue here is not one related to the finality of settlement agreements, but rather a policy discouraging agreements that do not reflect the mutual assent of parties.

15.     The NYAG relies on the case of *Hallock v. State*, 474 N.E.2d 1178 (N.Y. App. 1984) to argue that even without the actual consent of TSIH, its former counsel's apparent authority permits enforcement of the settlement agreement. [NYAG Obj., p. 22]. But the *Hallock* case is different in two significant ways, rendering its holding inapplicable to this case.  In *Hallock*,

a trial judge dictated the terms of a settlement agreement on the record in front of the party that later challenged the settlement. *Hallock*, 474 N.E.2d at 1180. When that party waited two months before voicing any objection, the court declined to undo the parties' settlement based on the significant fact that the settlement was an "open court" settlement. *Id.,* at 1181.

16.     The *Hallock* court expressly recognized that "without a grant of authority from the client, an attorney cannot compromise or settle a claim . . .  and settlements negotiated by attorneys without authority from their clients have not been binding." *Hallock*, at 1181. Unlike the objecting party in *Hallock*, TSIH contacted Mr. Derrico, the Gordon Reese attorney, and the NYAG immediately after learning of the purported settlement through a press release, and notified the state court the following day that TSIH had not agreed to the settlement.  In addition, this was not a settlement in "open court" scrutinized by a judge, but rather an agreement signed by an attorney who was being replaced and who had not informed TSIH of final settlement terms or obtained TSIH's approval for the agreement. The basic precept of *Hallock*— that "settlements negotiated by attorneys without authority from their clients have not been binding"—remains applicable.

17.     There is nothing in the balance of the equities or state law that would favor a settlement agreement that does not reflect a meeting of the minds and sidesteps this Court's jurisdiction and confirmed Chapter 11 Plan. Contrary to the underlying principle expressed in *Hallock* and established attorney ethical rules, the NYAG proposes an outcome that would require clients to sue their lawyers for entering into agreements without authority, rather than putting the onus on lawyers to obtain the authority of their clients to settle a case. [NYAG Obj., ¶ 59]. As such, the NYAG's apparent authority argument does not meet the standards for supporting enforcement of the settlement agreement under state law.

**B.     There is No Waiver of the Plan Release and Injunction Provisions**

18.     The NYAG's argument that TSIH waived any rights it has under the confirmed Plan is not supported in law or fact. [NYAG Obj., ¶¶ 65-71].  First, without reference to applicable authority, the NYAG argues that TSIH's participation in the state court action and its conduct following the entry of the Confirmation Order constitutes a waiver of any rights conferred by that order. To be clear, there were no proceedings in the state court action — other than settlement discussions—following the filing of the initial pleadings in the fall of 2020. In particular, the NYAG acknowledges that the only "acts" taken by any party in the case since then were the continuation of the "status quo" to allow parties to evaluate the status of issues relating to ongoing gym operations and the unauthorized entry of the settlement stipulation in violation of the Plan injunction. [NYAG Obj., ¶ 66]. The negotiation of the tentative settlement agreement in October 2020 preceded the entry of the Confirmation Order. In addition, whether or not the state court action was exempt from the automatic stay of 11 U.S.C. §362 (b)(4) as the exercise of police and regulatory authority has no bearing on the impact of the release and injunction provisions of the confirmed plan.[4]  The NYAG fails to match the acts it references against the legal standards for waiver—the voluntary relinquishment of a known right—because they would never meet the standard.   Thus, none of the conduct by TSIH or any party in state court had any legal effect or significance, and all acts in violation of the Plan injunction are *void ab initio*.

---

[4] The NYAG cites to *In re Cobb*, 88 B.R. 119, 120 (Bankr. W.D. Tex. 1988), to argue that a debtor-in-possession can waive the benefit of the automatic stay by participating in proceedings. This has no applicability with respect to the enforcement of the terms of a confirmed Plan.

C.    **Settlement Discussions are Inadmissible**

19.    The NYAG's arguments regarding follow-on settlement discussions between TSIH and the NYAG after TSIH raised the lack of authority issue with the NYAG are not only inadmissible under FED. R. EVID. 408, they are irrelevant.[5] They do not alter the fundamental principle that the attempt to implement a settlement agreement which would liquidate security posted by TSIH violates the Plan release and injunction provisions approved by this Court. These settlement discussions also have no bearing on whether TSIH agreed to the purported settlement filed in state court.

## CONCLUSION

WHEREFORE, for the foregoing reasons, TSIH respectfully requests the entry of an Order enforcing the release and injunctive provisions of the Plan and voiding the unauthorized settlement agreement filed in the state court action, and granting such other and further relief as is just and proper.

Dated: April 15, 2021
  Wilmington, Delaware     **SULLIVAN HAZELTINE ALLINSON LLC**

                 */s/ William D. Sullivan*
                William D. Sullivan (No. 2820)
                919 North Market Street, Suite 420
                Wilmington, DE  19801
                Telephone: (302) 428-8191
                Facsimile:  (302) 428-8195
                Email:  bsullivan@sha-llc.com

                and

---

[5] The McCall Declaration incorrectly characterizes TSIH's motivations for filing the Motion based on these discussions, but given that these discussions are inadmissible and irrelevant, TSIH will not address them further herein. TSIH reserves the right to address them at the hearing if necessary.

Massimo F. D'Angelo, Esq.
Mark S. Lichtenstein, Esq.
Akerman LLP
520 Madison Avenue, 20th Floor
New York, NY 10022
Tel: 212.880.3800
Fax: 212.880.8965
massimo.dangelo@akerman.com

*Attorneys for Town Sports International Holdings, Inc.*